**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| LEAGUE OF WOMEN VOTERS OF MASSACHUSETTS, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*, <br><br> Defendants. | Case No. 1:26-cv-11549-IT |
| STATE OF CALIFORNIA, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*, <br><br> Defendants. | Case No. 1:26-cv-11581-IT |

<u>**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF**</u>
<u>**DEFENDANTS' MOTIONS TO TRANSFER**</u>

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................... 1

BACKGROUND ................................................................................................................ 1

LEGAL STANDARD......................................................................................................... 5

ARGUMENT...................................................................................................................... 6

   I.    TRANSFER IS WARRANTED UNDER THE FIRST-TO-FILE RULE .......................... 6

      A.   The leading case was filed first in the District of Columbia............................................. 6

      B.   The parties involved are similar....................................................................................... 7

      C.   The issues involved are similar........................................................................................ 8

      D.   Principles of efficiency and inter-district comity support transfer. ............................. 10

CONCLUSION................................................................................................................. 11

# TABLE OF AUTHORITIES

**CASES**                                                                                                  **PAGE(S)**

*Alltrade, Inc. v. Uniweld Prods., Inc.*,
  946 F.2d 622 (9th Cir. 1991) ................................................................................ 6

*Baatz v. Columbia Gas Transmission, LLC*,
  814 F.3d 785 (6th Cir. 2016) ............................................................................. 5, 6

*Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp.*,
  511 F.3d 535 (6th Cir. 2007) ................................................................................ 6

*Coady v. Ashcraft & Gerel*,
  223 F.3d 1 (1st Cir. 2000)..................................................................................... 5

*Colo. River Water Conservation Dist. v. United States*,
  424 U.S. 800 (1976)............................................................................................. 6

*EEOC v. Univ. of Pennsylvania*,
  850 F.2d 969 (3d Cir. 1988), aff'd, 493 U.S. 182 (1990)................................. 5, 11

*Intersearch Worldwide, Ltd. v. Intersearch Grp., Inc.*,
  544 F. Supp. 2d 949 (E.D. Cal. 2011).................................................................. 8

*Thakkar v. United States*,
  389 F. Supp. 3d 160 (D. Mass. 2019) ..........................................................*passim*

*TPM Holdings v. Intra-Gold Indus.*,
  91 F.3d 1 (1st Cir. 1996)....................................................................................... 5

*Trump v. CASA, Inc.*,
  606 U.S. 831 (2025)............................................................................................ 11

*Widakuswara v. Lake*,
  2025 WL 1020231 (S.D.N.Y. Apr. 4, 2025)........................................................ 10

*Zimmer Enters., Inc. v. Atlandia Imports, Inc.*,
  478 F. Supp. 2d 983 (S.D. Ohio 2007) ................................................................. 6

**STATUTE**

5 U.S.C. § 703................................................................................................................ 7

**OTHER AUTHORITY**

*Ensuring Citizenship Verification and Integrity in Federal Elections*,
   Exec. Order 14,399, 91 Fed. Reg. 17125 (Mar. 31, 2026)............................................... 1, 9, 10

## INTRODUCTION

The above-captioned cases, *League of Women Voters of Massachusetts v. Trump*, No. 26-cv-11549 (D. Mass. Apr. 2, 2026) ("*LWVM* Case") and *State of California v. Trump*, No. 26-cv-11581 (D. Mass. Apr. 3, 2026) ("*California* Case") (together "D. Mass. Cases"), are two of five lawsuits challenging Executive Order 14,399 ("Executive Order" or "EO"). The other three suits were filed in the United States District Court for the District of Columbia, including the earliest filed case, and have since been consolidated. All cases involve similar legal claims. The interests of sound judicial economy, avoidance of possibly conflicting orders, and promotion of inter-district comity all counsel in favor of applying the "first-to-file" (or "first-filed rule") whereby later-filed litigation on the same subject is transferred to the court hearing the earliest filed case.

Maintaining litigation of the D. Mass. Cases in this Court would result in duplicative filings from the government and a wasteful expenditure of resources by the federal judiciary. It would also give rise to the possibility of conflicting district court orders issuing from this Court and from the United States District Court for the District of Columbia. At best, such orders would be merely redundant. At worst, they would be conflicting, harming the spirit of deference and mutual respect for other federal tribunals that a court hearing a later-filed action owes to the court hearing the first-filed action. Defendants therefore respectfully request that the D. Mass. Cases be transferred to the United States District Court for the District of Columbia under the first-to-file rule.[1]

## BACKGROUND

On March 31, 2026, President Trump issued Executive Order 14,399, *Ensuring Citizenship Verification and Integrity in Federal Elections*. 91 Fed. Reg. 17125 (Mar. 31, 2026). The Executive Order, inter alia, directs the "Secretary of Homeland Security . . . in coordination with the Commissioner of [the Social Security Administration]" to "the extent feasible and consistent with applicable law" to "compile and transmit" "a list of individuals confirmed to be United States

---

[1] Absent further court order, Defendants will continue to abide by the briefing schedule as set forth in No. 26-cv-11581 (D. Mass. Apr. 14, 2026), Scheduling Order, Doc. No. 39 and No. 26-cv-11549 (D. Mass. Apr. 16, 2026), Joint Motion for Hearing Schedule, Doc. No. 18, if these cases are transferred to the United States District Court for the District of Columbia.

citizens who will be above the age of 18 at the time of an upcoming Federal election and who maintain a residence in the subject State," i.e., the "State Citizenship List." EO § 2(a).

The EO also directs the United States Postal Service ("USPS") "to initiate a proposed rulemaking" with regards to "all outbound ballot mail" to conform to certain technical specifications and to coordinate with states regarding "State-specific Mail-In and Absentee Participation List[s]." EO § 3. The EO also tasks the "Attorney General and the heads of executive departments" to "take all lawful steps to deter and address noncompliance with Federal law." EO § 5.

The *LWVM* Case was filed on April 2, 2026, in the United States District Court for the District of Massachusetts, challenging the EO in its entirety under six causes of action, invoking separation of powers, *ultra vires*, federalism, First and Fifth Amendment, Voting Rights Act, Privacy Act, and Administrative Procedure Act claims. No. 26-cv-11549 (D. Mass. Apr. 2, 2026), Complaint, Doc. No. 1 ¶¶ 120-205. The *LWVM* Case was brought by the League of Women Voters of Massachusetts, League of Women Voters Lotte E. Scharfman Memorial Education Fund, League of Women Voters of the United States, League of Women Voters Education Fund, Association of Americans Resident Overseas, U.S. Vote Foundation, OCA-Asian Pacific American Advocates, and Delta Sigma Theta Sorority, Inc. against President Donald J. Trump, United States Postal Service, United States Postal Service Board of Governors, Department of Homeland Security, Social Security Administration, U.S. Citizenship and Immigration Services, and various department and agency heads and officials in their official capacities. *Id.* ¶¶ 19-55.

The *California* Case was filed on April 3, 2026, in the United States District Court for the District of Massachusetts, challenging sections 2, 3, and 5 of the EO under three causes of action, invoking "Separation of Powers," "Elections and Electors Clause," and "Commandeering" legal theories. No. 26-cv-11581 (D. Mass. Apr. 3, 2026), Complaint, Doc. No. 1 ¶¶ 116-127, 146-182. The *California* Case is brought by the States of California, Nevada, Washington, Arizona, Colorado, Connecticut, Delaware, Illinois, Maine, Maryland, Michigan, Minnesota, New Jersey, New Mexico, New York, North Carolina, Oregon, Rhode Island, Vermont, and Wisconsin, the

2

Commonwealths of Massachusetts and Virgina, the District of Columbia, and Josh Shapiro (in his official capacity as Governor of the Commonwealth of Pennsylvania) against President Trump, the United States Department of Justice, United States Department of Homeland Security, United States Social Security Administration, United States Postal Service, and various department and agency heads and officials in their official capacities. *Id.* ¶¶ 14-52.

Prior to the filing of the D. Mass. Cases, three cases challenging the same Executive Order were filed in the United States District Court for the District of Columbia and later consolidated ("D.D.C. Consolidated Cases"). *See* No. 26-cv-1132 (D.D.C. Apr. 1, 2026), Order Consolidating Cases, Doc. No. 27. D.D.C. Consolidated Cases are *DSCC v. Trump*, No. 26-cv-1114 (D.D.C. Apr. 1, 2026), *League of United Latin American Citizens v. Exec. Office of the President*, No. 26-cv-1132 (D.D.C. Apr. 2, 2026), and *National Association for the Advancement of Colored People v. Trump*, No. 26-cv-1151 (D.D.C. Apr. 3, 2026).

Plaintiffs in the D.D.C. Consolidated Cases filed motions for preliminary injunction on April 10, 2026. No. 26-cv-1132 (D.D.C. Apr. 10, 2026), Motion for Preliminary Injunction, Doc. No. 29 ("to preliminarily enjoin Defendants from implementing Sections 2(a) and 3(b)" of the EO), Motion for Preliminary Injunction, Doc. No. 34 ("to preliminarily enjoin Defendants" with respect to "Sections 2(a), 3(b), and 4(a)" of the EO), and Motion for Preliminary Injunction, Doc. No. 37 ("to preliminarily enjoin Defendants from implementing Sections 2, 3(b)-(d), 4, and 5" of the EO). Plaintiffs in D.D.C. Consolidated Cases will file their memoranda in support of their motions for preliminary relief on April 17, 2026. No. 26-cv-1132 (D.D.C. Apr. 9, 2026), Doc. No. 27 (ordering all parties to abide by the briefing schedule outlined in No. 26-cv-1132 (D.D.C. Apr. 7, 2026), Motion for Expedited Discovery, Doc. No. 14). Defendants in D.D.C. Consolidated Cases will file their opposition briefs on May 1, 2026, and Plaintiffs in D.D.C. Consolidated Cases will file their reply briefs on May 8, 2026. *Id.*

The lead D.D.C. Consolidated Case, *DSCC v. Trump*, No. 26-cv-1114 (D.D.C. Apr. 1, 2026) ("*DSCC* Case") was filed on April 1, 2026, in the District of Columbia, challenging sections 2(a), 3(b), 4(a), and 4(c) of the EO under seven counts, invoking *ultra vires*, separation of powers,

3

USPS statutory authority, Privacy Act, Administrative Procedure Act ("APA"), First and Fifth Amendment, and Voting Rights Act claims. No. 26-cv-1114 (D.D.C. Apr. 1, 2026), Complaint, Doc. No. 1 ¶¶ 106-172 and at 59-60 (Prayer for Relief). The case was brought by the Democratic Senatorial Campaign Committee (DSCC), Democratic Congressional Campaign Committee (DCCC), Democratic National Committee, Democratic Governors Association, U.S. Senate Minority Leader Charles E. Schumer, and U.S. House Minority Leader Hakeem S. Jeffries against President Trump, the Executive Office of the President, U.S. Department of Justice, U.S. Postal Service, U.S. Department of Homeland Security, U.S. Citizenship and Immigration Services, Social Security Administration, U.S. Department of Commerce, and various department and agency heads in their official capacities. *Id.* ¶¶ 11-23.

*League of United Latin American Citizens v. Exec. Office of the President*, No. 26-cv-1132 (D.D.C. Apr. 2, 2026) ("*LULAC* Case") was filed on April 2, 2026, in the District of Columbia, challenging sections 2(a), 3(b)(iii), and 3(b)(iv) of the EO under five counts, invoking *ultra vires*, separation of powers, APA, and Privacy Act claims. No. 26-cv-1132 (D.D.C. Apr. 2, 2026), Compliant, Doc. No. 1 ¶¶ 214-327 and at 72 (Prayer for Relief). The case was brought by the League of United Latin American Citizens, Secure Families Initiative, and Arizona Students' Association against the Executive Office of the President, United States Postal Service, Board of Governors of the United States Postal Service, United States Department of Homeland Security, United States Citizenship and Immigration Services, United States Social Security Administration, United States Department of Commerce, United States Department of Justice, and various department and agency heads in their official capacities. *Id.* ¶¶ 9-43.

*National Association for the Advancement of Colored People v. Trump*, No. 26-cv-1151 (D.D.C. Apr. 3, 2026) ("*NAACP* Case") was filed on April 3, 2026, in the District of Columbia, challenging sections 2(a), 3(b), 4(a), and 4(c) of the EO under six counts, invoking *ultra vires*, separation of powers, First and Fifth Amendment, USPS statutory authority, and APA claims. No. 26-cv-1151 (D.D.C. Apr. 3, 2026), Complaint, Doc. No. 1 ¶¶ 214-327 and at 67-68 (Prayer for Relief). The case was brought by the National Association for the Advancement of Colored People

4

("NAACP"), Common Cause, Common Cause Education Fund, Black Voters Matter Fund, Inc., and BVM Capacity Building Institute, Inc. against President Trump, the Executive Office of the President, U.S. Department of Justice, U.S. Postal Service, U.S. Postal Service Board of Governors, U.S. Department of Homeland Security, U.S. Citizenship and Immigration Services, Social Security Administration, U.S. Department of Commerce, and various department and agency heads in their official capacities. *Id.* ¶¶ 17-50.

## LEGAL STANDARD

"The First Circuit has noted that '[o]bvious concerns' arise where, as here, actions involving similar parties and similar subject matter are pending in different federal district courts, including 'wasted resources because of piecemeal litigation, the possibility of conflicting judgments, and a general concern that the courts may unduly interfere with each other's affairs.'" *Thakkar v. United States*, 389 F. Supp. 3d 160, 170 (D. Mass. 2019) (citing *TPM Holdings v. Intra-Gold Indus.*, 91 F.3d 1, 4 (1st Cir. 1996)). A "principal concern" behind the "first-filed rule" is "preventing duplication of effort and incompatible rulings." *Coady v. Ashcraft & Gerel*, 223 F.3d 1, 11 (1st Cir. 2000).

In addition to promoting efficiency, the first-to-file rule has been adopted by many courts to promote inter-district comity among federal district courts. For instance, the Third Circuit first "adopted what has become known as the 'first-filed rule'" in 1941. *EEOC v. Univ. of Pennsylvania*, 850 F.2d 969, 971 (3d Cir. 1988), *aff'd*, 493 U.S. 182 (1990) (citations omitted). Since then, this venerable rule has promoted a "policy of comity" which, "absent unusual circumstances" "requires federal district courts . . . to exercise care to avoid interference with each other's affairs." *Id.* (citations omitted). "The first-filed rule encourages sound judicial administration and promotes comity among federal courts of equal rank." *Id.*

"The first-to-file rule is a prudential doctrine that grows out of the need to manage overlapping litigation across multiple districts." *Baatz v. Columbia Gas Transmission, LLC*, 814 F.3d 785, 789 (6th Cir. 2016). Generally, it provides that "'when actions involving nearly identical parties and issues have been filed in two different district courts, 'the court in which the first suit

5

was filed should generally proceed to judgment'" without interference from the later-filed litigation. *Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp.*, 511 F.3d 535, 551 (6th Cir. 2007) (citation omitted). "The first-to-file rule thus 'allows a district court to transfer, stay, or dismiss an action when a similar complaint has already been filed in another federal court.'" *Zimmer Enters., Inc. v. Atlandia Imports, Inc.*, 478 F. Supp. 2d 983, 989 (S.D. Ohio 2007) (quoting *Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 623 (9th Cir. 1991)). "This rule encourages comity among federal courts of equal rank." *Baatz*, 814 F.3d at 789 (internal quotation marks and citation omitted). "It also conserves judicial resources by minimizing duplicative or piecemeal litigation, and protects the parties and the courts from the possibility of conflicting results." *Id.*; *see also Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) ("As between federal district courts, . . . the general principle is to avoid duplicative litigation.").

In the First Circuit, "[u]nder what has become known as the first-to-file rule, where overlap between two suits is 'nearly complete,' the usual practice is for the court where the case was first filed to resolve the issues, and the other court to defer by either staying, transferring, or dismissing the action." *Thakkar*, 389 F. Supp. 3d at 170 (citations omitted). "In addition to determining which suit was filed first, courts will examine the similarity of the parties involved and the similarity of the issues in deciding whether the first-to-file rule should apply." *Id.* at 170-71 (citation omitted).

## ARGUMENT

### I.   TRANSFER IS WARRANTED UNDER THE FIRST-TO-FILE RULE

Under the first-to-file rule, courts determine "which suit was filed first," the "similarity of the parties involved," and the "similarity of the issues" in determining whether to transfer later filed cases to the court where the first-filed case is being heard. *Thakkar*, 389 F. Supp. 3d at 170-71 (citation omitted).

### A.  The leading case was filed first in the District of Columbia.

The *LWVM* Case was filed on April 2, 2026. No. 26-cv-11549 (D. Mass. Apr. 2, 2026), Doc. No. 1. The *California* Case was filed on April 3, 2026. 26-cv-11581 (D. Mass. Apr. 3, 2026),

6

Doc. No. 1. The lead Consolidated Case, *DSCC v. Trump*, No. 26-cv-1114 (D.D.C. Apr. 1, 2026) was filed on April 1, 2026, in the United States District Court for the District of Columbia. No. 26-cv-1114 (D.D.C. Apr. 1, 2026), Doc. No. 1. So, the *DSCC* Case was filed first.

The *DSCC* Case is thus the lead case in the D.D.C. Consolidated Cases. No. 26-cv-1132 (D.D.C. Apr. 9, 2026), Doc. No. 27. Consequently, the United States District Court for the District of Columbia is now considering all three D.D.C. Consolidated Cases together and on the same briefing schedule. *Id.*

### B.  The parties involved are similar.

Defendants in the *LWVM* Case and *DSCC* Case overlap almost completely. In the *LWVM* Case, defendants are President Trump, United States Postal Service, United States Postal Service Board of Governors, Department of Homeland Security, Social Security Administration, U.S. Citizenship and Immigration Services, and various department and agency heads and officials in their official capacities. No. 26-cv-11549 (D. Mass. Apr. 2, 2026), Doc. No. 1. ¶¶ 19-55. President Trump and all agency defendants named in the *LWVM* Case are also sued in the *DSCC* Case, except for the United States Postal Service Board of Governors. Case. No. 26-cv-1114 (D.D.C. Apr. 1, 2026), Doc. No. 1.

Defendants in *California* and *DSCC* are also nearly identical. In *California*, defendants are President Trump, the United States Department of Justice, United States Department of Homeland Security, United States Social Security Administration, United States Postal Service, and various department and agency heads in their official capacities. Doc. No. 1. President Trump and all agency defendants in *California* are also sued in *DSCC*. No. 26-cv-1114, Doc. No. 1.

While some officials sued in their *official* capacity in the *California* Case are not specifically sued in the D.D.C. Consolidated Cases (e.g., Doug Tulino, in his official capacity as Deputy Postmaster General), these are distinctions without a difference, as agency officials act through their agencies, and are unable to carry out instructions contradictory to a court order which enjoins their agency. *Cf.* 5 U.S.C. § 703 (providing that actions for judicial review "may be brought against the United States, the agency by its official title, or the appropriate officer"

interchangeably). That the United States Postal Service Board of Governors is not named as a defendant in the *DSCC* Case is also immaterial, (1) because they are named as defendants in the *LULAC* Case and *NAACP* Case, and (2) because not being named as defendants in the *DSCC* Case does not impact any of the relief Plaintiffs seek. Moreover, while additional defendants are named in the *DSCC* Case (and in D.D.C. Consolidated Cases in general), this is again a distinction without difference, as it does not in any way curtail the relief available to Plaintiffs in the *California* Case.

To be sure, Defendants acknowledge that *Plaintiffs* in the D. Mass. Cases and D.D.C. Consolidated Cases do not overlap. Overlap of plaintiffs, however, is not necessary to satisfy the first-to-file test. To the contrary, "[p]arties may be sufficiently similar even 'where only one of several *defendants* in the second filed action is the same as the first filed action[.]'" *Thakkar*, 389 F. Supp. 3d at 173 (citations omitted) (emphasis added). *Thakkar* cited with approval the holding that "first-to-file rule can still be 'satisfied if some [of] the *parties* in one matter are also in the other matter, regardless of whether there are additional unmatched *parties* in one of both matters.'" *Id.* (citing *Intersearch Worldwide, Ltd. v. Intersearch Grp., Inc.*, 544 F. Supp. 2d 949, 959 n.6 (E.D. Cal. 2011) (emphasis added)).

Certainly, in comparing the D. Mass. Cases with either the *DSCC* Case only or with D.D.C. Consolidated Cases generally, "some [of] the parties in one matter are also in the other matter." *Id.* President Trump and all but one agency Defendant named in the D. Mass. Cases are represented in the *DSCC* Case, not just "only one of several defendants." *Thakkar*, 389 F. Supp. 3d at 173 (citations omitted). The parties are thus sufficiently similar to apply the first-to-file rule here.

### C. The issues involved are similar.

The D. Mass. Cases and the *DSCC* Case (and D.D.C. Consolidated Cases generally) concern the constitutionality and validity of Executive Order 14,399. All five cases seek to ultimately enjoin enforcement of the EO under nearly identical legal arguments, with overlapping arguments invoking, inter alia, separation of powers, *ultra vires*, and constitutional claims. *Compare* No. 26-cv-11549 (D. Mass. Apr. 2, 2026), Doc. No. 1 ¶¶ 120-205 *and* No. 26-cv-11581

(D. Mass. Apr. 3, 2026), Doc. No. 1 ¶¶ 116-127, 146-182 *with* No. 26-cv-1114 (D.D.C. Apr. 1, 2026), Doc. No. 1 ¶¶ 106-172.

Specifically, *LWVM* purports to challenge the EO in its entirety, while the *California* Case challenges sections 2, 3, and 5, specifically. No. 26-cv-11549 (D. Mass. Apr. 2, 2026), Doc. No. 1 ¶¶ 120-205; No. 26-cv-11581 (D. Mass. Apr. 3, 2026), Doc. No. 1 ¶¶ 116-127, 146-182. The *DSCC* Case challenges sections 2(a), 3(b), 4(a), and 4(c) of the EO. No. 26-cv-1114 (D.D.C. Apr. 1, 2026), Doc. No. 1 ¶¶ 106-172 and at 59-60 (Prayer for Relief). Thus, there is great overlap and similarity in the issues involved in both cases.

Any small difference in the portions of the EO being challenged by the D. Mass. Cases and not by the *DSCC* Case is addressed by either referencing the other D.D.C. Consolidated Cases or examining the EO more closely. The EO consists of seven sections. Exec. Order 14,399, 91 Fed. Reg. 17125 (Mar. 31, 2026). Section 1 is titled "Purpose and Policy." *Id.* at 17125. Section 2 is titled "Establishment and Transmission of State Citizenship Lists and Prioritization of Investigations and Prosecutions Related to Election Fraud" and is composed of subsections (a) and (b). *Id.* at 17125-26. Section 3 is titled "United States Postal Service Rulemaking on Mail-In and Absentee Ballots" and is composed of subsections (a), (b), (c), and (d). *Id.* at 17126-27. Section 4 is titled "Implementation" and is composed of subsections (a), (b), and (c). *Id.* at 17127. Section 5 is titled "Enforcement." *Id.* Section 6 is titled "Severability." *Id.* Section 7 is titled "General Provisions" and is composed of subsections (a), (b), and (c). *Id.* at 17127-28.

At first glance, there appear to be some gaps in the overlap in challenges to sections 2(b), 3(a), 3(c), 3(d), and 5 of the EO (challenged in the *California* Case but not the *DSCC* Case) and in sections 1, 2(b), 3(a), 3(c), 3(d), 4(b), 5, 6, 7(a), 7(b), and 7(c) of the EO (challenged in the *LWVM* Case but not the *DSCC* Case). However, other D.D.C. Consolidated Cases fill in nearly all such gaps, such as through the motion for preliminary injunction in the *NAACP* Case, which challenges sections 2(b), 3(c), 3(d), and 5 of the EO. No. 26-cv-1132 (D.D.C. Apr. 10, 2026), Doc. No. 37 (seeking "to preliminarily enjoin Defendants from implementing Sections 2, 3(b)-(d), 4, and 5" of the EO).

9

That just leaves EO §§ 3(a), 6, and 7. But these are uncontroversial provisions, provisions relating to severability, or general provisions that are present in virtually every executive order. EO § 3(a) states in full: "*United States Postal Service Rulemaking on Mail-In and Absentee Ballots*. (a) The unlawful use of the mail in connection with elections is prohibited by various Federal statutes, including 18 U.S.C. 1341, 18 U.S.C. 1708, 52 U.S.C. 10307, and 52 U.S.C. 20511." Exec. Order 14,399, 91 Fed. Reg. 17125, 17126 (Mar. 31, 2026). Even if plaintiffs in the D. Mass. Cases disagree with the uncontroversial premise of EO § 3(a), that alone is not enough of an issue to merit a separate adjudication in this District. Neither are EO §§ 6 and 7, which merely address the severability of provisions in the EO or address general provisions present in virtually every EO. *See id.* at 17127-28.

At bottom, if Plaintiffs in the D. Mass. Cases believe they are better situated to challenge specific sections of the EO better than plaintiffs in D.D.C. Consolidated Cases, or have better legal arguments, transfer of this case to the District of Columbia does not prejudice their ability to do so. Suffice it to say, the issues involved, while not identical, overlap considerably.

The issues involved are thus sufficiently similar under the first-to-file test.

**D. Principles of efficiency and inter-district comity support transfer.**

Maintaining the D. Mass. Cases in this District would frustrate worthy principles of efficiency and inter-district comity. In terms of efficiency, at a minimum, litigation surrounding the EO will result in duplicative filings in this District and in the District of Columbia. The parties and issues in the D. Mass. Cases and in D.D.C. Consolidated Cases are so similar that they will spawn similar legal arguments. Judicial and party resources will be needlessly squandered by adjudicating in two courts what can be properly handled in one. *Cf. Widakuswara v. Lake*, No. 25-cv-2390, 2025 WL 1020231 at *2-3 (S.D.N.Y. Apr. 4, 2025) (transferring suit from the Southern District of New York to the District of Columbia, where the "existence" of "closely related cases in the D.D.C." and the avoidance of "inconsistent relief" weighed in favor of transfer.)

Prudential concerns are exacerbated by the risk that this Court and the district court in D.C. could issue conflicting or inconsistent orders. The "policy of comity" which, "absent unusual

10

circumstances" "requires federal district courts . . . to exercise care to avoid interference with each other's affairs" would be upset. *EEOC*, 850 F.2d at 971 (citations omitted). "The first-filed rule encourages sound judicial administration and promotes comity among federal courts of equal rank." *Id.* A rift in district court rulings concerning similar parties litigating similar issues creates disharmony in the judicial system and encourages parties to engage in gamesmanship and forum shopping.

For instance, absent enforcement of the first-to-file rule, plaintiffs with a common goal of challenging an Executive Order or other government action would be encouraged to split up into small, non-overlapping groups to file multiple suits in different district courts, in order to unfairly obtain multiple opportunities for relief, with success in one suit bringing success to all plaintiffs. *Cf. Trump v. CASA, Inc.*, 606 U.S. 831, 855 (2025) ("A plaintiff must win just one suit to secure sweeping relief. But to fend off such an injunction, the Government must win everywhere."). These harms can be avoided when the first-to-file rule is adhered to, directing a court hearing a later-filed action to transfer the case to the court hearing the earliest-filed action.

## CONCLUSION

Pursuant to the "first-to-file" rule, this case should be transferred to the United States District Court for the District of Columbia.

Dated: April 16, 2026

Respectfully submitted,

BRETT A. SHUMATE
*Assistant Attorney General*

ERIC J. HAMILTON
*Deputy Assistant Attorney General*

JOSEPH E. BORSON
*Assistant Branch Director*

/s/ *Esam K. Al-Shareffi*
STEPHEN M. PEZZI
FL Bar No. 1041279
 *Senior Trial Counsel*
ESAM K. AL-SHAREFFI
D.C. Bar No. 90010174
 *Trial Attorney*
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20530
Telephone: (202) 598-7367
E-mail: esam.k.al-shareffi@usdoj.gov

*Counsel for Defendants*

12