**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| LEAGUE OF WOMEN VOTERS OF MASSACHUSETTS, *et al.*,<br><br>      *Plaintiffs*,<br><br>   v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*,<br><br>      *Defendants*. | Case No. 1:26-cv-11549-IT |

<u>**MEMORANDUM IN OPPOSITION TO DEFENDANTS' AND PROPOSED
INTERVENOR-DEFENDANTS' MOTIONS TO TRANSFER VENUE**</u>

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................................................ii

INTRODUCTION .............................................................................................................................. 1

BACKGROUND ................................................................................................................................ 2

    I.   The President's Unlawful Executive Order ................................................................. 2

    II.  Plaintiffs File this Action in the District of Massachusetts........................................... 3

    III. The Litigation in the District of Columbia ................................................................. 5

ARGUMENT...................................................................................................................................... 7

    I.   This Court Should Not Apply the First-Filed Rule Here Given the Near-
        Simultaneous Filing of these Cases by Different Plaintiffs and Seeking
        Different Relief. ...................................................................................................... 7

        A.  The First-Filed Rule Does Not Apply When Cases Are Filed Nearly
             Simultaneously..................................................................................................... 7

        B.  This Case Is Not Identical, Nor Even Sufficiently Similar, to the
             Litigation in Washington, D.C............................................................................ 9

    II.  Even if the First-Filed Rule Were Applicable, the Relevant Discretionary
        Factors Weigh Strongly Against Transfer. ................................................................. 12

        A.  Plaintiffs' Choice of Forum is Entitled to Deference and this Court Is
             the More Convenient Forum. .............................................................................. 13

        B.  The Interests of Justice Weigh Against Transfer Given the Time-
             Sensitive and Already Ongoing Motion Practice.............................................. 15

        C.  Defendants' Other Arguments Cannot Justify Transfer. ............................... 16

CONCLUSION................................................................................................................................. 18

## TABLE OF AUTHORITIES

**Cases**

*Anderson v. Century Products Co.*,
943 F. Supp. 137 (D.N.H. 1996) .......................................................................... 14

*Astro-Med, Inc. v. Nihon Kohden America, Inc.*,
591 F.3d 1 (1st Cir. 2009) .................................................................................... 17

*Aurora Corp. of America v. Fellowes, Inc.*,
No. CV07-8306-GHK(AJWX), 2008 WL 709198 (C.D. Cal. Feb. 27, 2008) ........................ 7

*California v. Trump*,
786 F. Supp. 3d 359 (D. Mass. 2025) .................................................................... 17

*California v. Trump*,
No. 26-cv-11581 (D. Mass. Apr. 3, 2026) ................................................. 4, 5, 6, 15

*Cianbro Corp. v. Curran-Lavoie, Inc.*,
814 F.2d 7 (1st Cir. 1987) .................................................................................... 9

*City of San Jose v. Trump*,
497 F. Supp. 3d 680 (N.D. Cal. 2020) .................................................................... 17

*Common Cause v. Trump*,
506 F. Supp. 3d 39 (D.D.C. 2020) ........................................................................ 17

*Davis v. Office Depot, Inc.*,
No. 16-cv-11783-IT, 2016 WL 7007485 (D. Mass. Nov. 28, 2016). ................................ 9, 10

*DSCC v. Trump*,
No. 1:26-cv-1114 (D.D.C. Apr. 1, 2026) ................................................... 5, 6, 15

*EMC Corp. v. Parallel Iron, LLC*,
914 F. Supp. 2d 125 (D. Mass. 2012). .................................................................... 13

*Employers Insurance of Wausau v. Commercial Union Insurance Co.*,
735 F. Supp. 1103 (D. Mass. 1990) ........................................................................ 13

*Endurance Am. Insurance Co. v. John Moriarty & Associates, Inc.*,
No. 1:23-CV-12550-JEK, 2024 WL 3849670 (D. Mass. Aug. 16, 2024) .............................. 8

*Forum Financial Group Liability Co. v. President, Fellows of Harvard College*,
173 F. Supp. 2d 72 (D. Me. 2001) ........................................................................ 10

*Herd v. America Security Insurance Co.*,
No. 06-4284-CV-CNKL, 2008 WL 111289 (W.D. Mo. Jan. 8, 2008) .................................. 16

*Intersearch Worldwide, Ltd. v. Intersearch Group, Inc.*,
  44 F. Supp. 2d 949 (E.D. Cal. 2011).................................................................. 11, 12

*Kleinerman v. Luxtron Corp.*,
  107 F. Supp. 2d 122 (D. Mass. 2000) ................................................................. 13, 14

*K-Swiss Inc. v. Puma AG Rudolf Dassler Sport*,
  No. CV 09-3022-GAF-PLAX, 2009 WL 2049702 (C.D. Cal. July 9, 2009). .......................... 8

*League of United Latin American Citizens v. Executive Office of the President*,
  780 F. Supp. 3d 135 (D.D.C. 2025) ...................................................................... 17

*League of United Latin American Citizens v. Executive Office of the President*,
  No. 1:26-cv-1132 (D.D.C. Apr. 2, 2026)................................................................. 5

*Matter of Extradition of Schweidenback*,
  3 F. Supp. 2d 113 (D. Mass. 1998) ....................................................................... 15

*Micron Technology, Inc. v. Mosaid Technologies, Inc.*,
  518 F.3d 897 (Fed. Cir. 2008)............................................................................. 8, 9

*Mobil Oil Exploration Co. v. FERC*,
  814 F.2d 998 (5th Cir. 1987) .............................................................................. 8

*National Association for the Advancement of Colored People v. Trump*,
  No. 1:26-cv-1151 (D.D.C. Apr. 3, 2026).................................................................. 6

*New York v. Trump*,
  485 F. Supp. 3d 422 (S.D.N.Y. 2020)...................................................................... 17

*Ontel Products, Inc. v. Project Strategies Corp.*,
  899 F. Supp. 1144 (S.D.N.Y. 1995)........................................................................ 8, 9

*OsComp System v. Bakken Express LLC*,
  930 F. Supp. 2d 261 (D. Mass. 2013) ..................................................................... 13

*OV Loop, Inc. v. Mastercard Inc.*,
  No. 1:24-CV-10412-IT, 2024 WL 3834927 (D. Mass. Aug. 14, 2024) ....................... 9, 14, 15

*Pragmatic Software Corp. v. Antrim Design System, Inc.*,
  No. CIV. 02-2595-JRT-FL, 2003 WL 244804 (D. Minn. Jan. 28, 2003).............................. 16

*Ridenti v. Google LLC*,
  530 F. Supp. 3d 164 (D. Mass. 2021) ..................................................................... 11

*Right to Life of Central California v. Bonta*,
  614 F. Supp. 3d 729 (E.D. Cal. 2022)..................................................................... 16

iii

*Scholl v. Mnuchin*,
 483 F. Supp. 3d 822 (N.D. Cal. 2020) ................................................................ 7, 8

*SW Industries, Inc. v. Aetna Cas. & Sur. Co.*,
 653 F. Supp. 631 (D.R.I. 1987)................................................................................ 13

*Thakkar v. United States*,
 389 F. Supp. 3d 160 (D. Mass. 2019) ............................................................. 11, 12

*TPM Holdings, Inc. v. Intra-Gold Industries, Inc.*,
 91 F.3d 1 (1st Cir. 1996)..................................................................................... 10, 11

*Trump v. CASA, Inc.*,
 606 U.S. 831 (2025)............................................................................................. 17, 18

*Trump v. New York*,
 592 U.S. 125 (2020)................................................................................................... 18

*Washington v. Trump*,
 814 F. Supp. 3d 1173 (W.D. Wash. 2026)............................................................. 17

**Statutes**

28 U.S.C. § 1404(a) ........................................................................................... 9, 13, 15

**Other Authorities**

Federal Rules of Civil Procedure 42(a) ......................................................................... 5

**<u>INTRODUCTION</u>**

Defendants and Proposed Intervenor-Defendants seek to transfer venue after this Court has already received a motion for summary judgment and a motion for a preliminary injunction and set a briefing schedule and hearing date for those and other dispositive motions, largely because a different set of plaintiffs brought a lawsuit in a different district less than one day prior. That is not the law. The so-called "first-filed" rule should not apply based on these facts. Even if it did, the Court should exercise its discretion to deny transfer based on unfair prejudice to Plaintiffs given the deference owed to their choice of forum, the time-sensitive nature of this case, and the pending motion for emergency relief.

The first-filed rule that Defendants and Proposed Intervenor-Defendants invoke does not automatically apply whenever different plaintiffs sue the same defendants over an executive order. Precedent from this district and others show that in instances like this one—where the plaintiffs filed within hours of each other—the first-filed rule is inapplicable. That is especially true where, as here, there are *no* common plaintiffs across the two districts, and the different plaintiffs allege different harms.

Even if the first-filed rule did apply—which it does not—it still cannot overcome Plaintiffs' strong presumption in favor of its choice of venue, and the relevant discretionary factors weigh strongly against transfer. This case involves presidential directives that threaten fundamental principles of democracy like separation of powers, and present ongoing harms to election administration and Plaintiffs' voting rights in Massachusetts and elsewhere. This case therefore is time-sensitive and fast-moving, with federal primary elections ongoing and a general election just months away. Plaintiffs face real and imminent harms from any delay in proceedings in this district. This Court should deny Defendants' and Proposed Intervenor-Defendants' motions to transfer and permit swift adjudication of the pending motions before this Court.

1

**BACKGROUND**

## I. The President's Unlawful Executive Order

On March 31, 2026, President Trump issued Executive Order No. 14399, "Ensuring Citizenship Verification and Integrity in Federal Elections" (Executive Order, or Order), which seeks to unilaterally impose changes to mail voting nationwide.

First, the Order directs the Secretary of the Department of Homeland Security to create and transmit to each state a "list of individuals confirmed to be United States citizens who will be above the age of 18" by the next federal election and who reside in that state (State Citizenship Lists). Exec. Order § 2(a), Dkt. No. 75-1.[1] The Order specifies that these State Citizenship Lists must be derived from federal citizenship and naturalization records, Social Security Administration records, SAVE data,[2] and "other relevant Federal databases." *Id.*

The Executive Order then directs the United States Postal Service (USPS) Postmaster General "to initiate a proposed rulemaking . . . within 60 days of the date of [the O]rder" that "shall include, at minimum," several proposed provisions. *Id.* § 3(b). These provisions include that: any state that intends to rely on USPS for mail-in or absentee ballots may provide USPS a list, no fewer than 90 days before an election, of eligible voters to whom the state will send mail ballots, *id.* § 3(b)(ii), the Postmaster General must create a process by which individuals can be "enrolled" on a USPS-maintained list (Main-In and Absentee Participation List), *id.* § 3(b)(iv), and that USPS may not transmit a mail ballot to any voter who is not on the Mail-In and Absentee Participation

---

[1] References to "Dkt. No." herein refer to filings in *League of Women Voters of Massachusetts v. Trump*, No. 1:26-cv-11549-IT (D. Mass. 2026).

[2] Systematic Alien Verification for Entitlements (SAVE) is a program operated by U.S. Citizenship and Immigration Services that provides citizenship information. As documented in Plaintiffs' complaint and motion for a preliminary injunction, it frequently contains inaccurate information and mislabels U.S. citizens as noncitizens. *See* Mem. in Support of Pls.' Mot. for Prelim. Inj. (Pls.' PI Br.) at 8–9, Dkt. No. 74; Compl. ¶¶ 91, 99, 101, Dkt. No. 1.

List, *id.* § 3(b)(iii). The Order requires that the final rule promulgated by USPS "shall be issued no later than 120 days from the date of [the O]rder." *Id.* § 3(d).

The Executive Order also directs the Attorney General and agency heads to "take all lawful steps to deter and address noncompliance with Federal law, including withholding Federal funds from noncompliant States and localities where such withholding is authorized by law." *Id.* § 5.

## II. Plaintiffs File this Action in the District of Massachusetts

On the morning of April 2, 2026—less than two full days after the President issued the Executive Order—Plaintiffs League of Women Voters of Massachusetts, League of Women Voters Lotte E. Scharfman Memorial Education Fund (together, LWVMA), League of Women Voters of the United States, League of Women Voters Education Fund (together, LWV), Association of Americans Resident Overseas, U.S. Vote Foundation, OCA-Asian Pacific American Advocates (OCA), and Delta Sigma Theta Sorority, Inc. (Delta Sigma Theta) (collectively, the LWVMA Plaintiffs), brought suit in this Court. Compl., Dkt. No. 1. LWVMA is incorporated in Massachusetts. *Id.* ¶ 19. LWVMA is comprised of approximately 3,000 members, many of whom are Massachusetts voters and vote by mail, and its core mission is to empower Massachusetts voters and strengthen democracy in the Commonwealth. *Id.* ¶¶ 20–21, 24; Decl. of Celia Canavan ¶¶ 6–7, 24, Dkt. 75-2. LWVMA volunteers and members provide education and resources to Massachusetts voters about how to vote by mail, and the organization maintains a Massachusetts-specific page of VOTE411.org, which provides voters information to participate in elections, including information and education about how to vote by mail in Massachusetts. Compl. ¶ 23; Canavan Decl. ¶¶ 7, 10, 13–15, 21, 51–52. Notably, Delta Sigma Theta relies on VOTE411.org to conduct robust voter education and encourage democratic participation in Massachusetts related to mail voting, including through providing "critical support to Black communities and members in Massachusetts." Decl. of Dorcas Washington ¶¶ 11, 16, 22–23, 52,

3

55–56, Dkt. No. 75-6. In addition to LWVMA, Plaintiffs OCA, Delta Sigma Theta, and LWV all have members in Massachusetts who rely on voting by mail. Compl. ¶¶ 25, 35, 37; Decl. of Thu Nguyen ¶¶ 11, 14, Dkt. No. 75-7; Washington Decl. ¶¶ 14, 33, 52; Decl. of Celina Stewart ¶ 3, Dkt. No. 75-3; *see* Canavan Decl. ¶ 6 (all LWVMA members are also members of LWV).

Plaintiffs allege that the Executive Order threatens immediate, concrete, and irreparable harm to Plaintiffs and their individual members by burdening those members' right to vote—and potentially disenfranchising them—and by burdening Plaintiffs' core missions. Compl. ¶ 74; *see also* Pls.' PI Br. at 22–23. Many of these harms are concentrated specifically in Massachusetts. In particular, the Order threatens LWVMA's core mission of ensuring maximum participation in the electoral process given the organization's past reliance on the straightforward vote-by-mail process provided for under Massachusetts law and promoted by state election officials. Compl. ¶ 110; *see also id.* ¶ 22 (noting that no excuse is required for Massachusetts voters to vote by mail and that the Secretary of the Commonwealth sends a postcard application for a mail ballot to all Massachusetts voters forty-five days before each statewide election); Canavan Decl. ¶¶ 16–21. The Order will also force LWVMA to update the Massachusetts page of VOTE411.org that it maintains with the national League and provide extensive education to Massachusetts voters about the new process, taking resources away from its other core activities within the state. Compl. ¶¶ 111–12; Canavan Decl. ¶¶ 37–39.

One day after the LWVMA Plaintiffs filed this action, a group of states including Massachusetts (the State Plaintiffs) also filed suit seeking to enjoin the Executive Order in the District of Massachusetts. *See California v. Trump*, No. 26-cv-11581, Dkt. 1 (D. Mass. Apr. 3, 2026).

4

Proceedings before this Court are well underway. On April 22, 2026, this Court consolidated the LWVMA Plaintiffs' and the State Plaintiffs' cases for hearing on motions under Fed. R. Civ. P. 42(a), and adopted a coordinated briefing schedule in which the State Plaintiffs would file a motion for summary judgment on April 23, 2026 and the LWVMA Plaintiffs would file a motion for a preliminary injunction on the same day. Order, Dkt. No. 57. Under this Court's order, the Defendants will file a joint response to both sets of Plaintiffs' motions. *Id*. This Court's order further sets out a briefing schedule—including on Defendants' cross-motions to dismiss and for summary judgment—that will be complete by May 22, 2026. *Id.* This Court also set a hearing on these motions for June 2, 2026. *Id.* Several states have also moved to intervene and transfer this case to the U.S. District Court for the District of Columbia weeks after LWVMA Plaintiffs' complaint was filed. *See* States' Mot. to Intervene, Dkt. No. 44; Intervener States' Mot. to Transfer, Dkt. No. 46.

On April 23, 2026, in compliance with this Court's order, LWVMA Plaintiffs filed a motion for a preliminary injunction, *see* Dkt. No. 73, and the State Plaintiffs filed their motion for summary judgment, *see California*, No. 1:26-cv-11581, ECF No. 97.

## III.  The Litigation in the District of Columbia

Separately, three groups of different plaintiffs filed actions seeking to enjoin parts of the Executive Order in the United States District Court for the District of Columbia. These cases were filed at virtually the same time as LWVMA Plaintiffs' case: One was filed the night before by political organizations associated with the Democratic Party and Democratic elected officials, *see DSCC v. Trump*, No. 1:26-cv-1114 (D.D.C. filed Apr. 1, 2026), while the two others were filed after LWVMA Plaintiffs filed their case, *see League of United Latin Am. Citizens v. Exec. Office of the President*, No. 1:26-cv-1132 (D.D.C. filed Apr. 2, 2026); *NAACP v. Trump*, No. 1:26-cv-

5

1151 (D.D.C. filed Apr. 3, 2026) (together, the D.D.C. Cases). These three D.D.C. Cases were later consolidated on April 9, 2026. *See DSCC*, No. 26-cv-1114, Order, ECF No. 27.

The D.D.C. Cases are not more advanced than this case, but all are also well underway. The three D.D.C. Cases plaintiffs' groups filed their memoranda in support of motions for a preliminary injunction on April 17, 2026, *see DSCC*, No. 26-cv-1114, ECF No. 53–55, less than a week before the LWVMA Plaintiffs filed their motion for a preliminary injunction, *see* Dkt. No. 73, and the State Plaintiffs filed their motion for summary judgment, *see California*, No. 1:26-cv-11581, ECF No. 97, in this case.

There are no common plaintiffs between this case and the D.D.C. Cases. None of the plaintiffs in any of the D.D.C. Cases are states. The plaintiffs in the different cases also identify different harms stemming from the Executive Order. The *DSCC* Cases' plaintiffs, as individuals and organizations involved in partisan politics, identify partisan harms—for example, the Order's purported disenfranchising impact on "Democratic voters" and the harm to the Democratic Party's "electoral prospects," *see DSCC*, No. 26-cv-1114, Compl. ¶¶ 91, 96, 97, ECF No. 1. By contrast, the State Plaintiffs allege specific harms to states that are not covered by the plaintiffs in the D.D.C. Cases. *See California*, No. 1:26-cv-11581, Compl. ¶¶ 133–45, ECF No. 1. And as the State Plaintiffs note, *see id*. ECF No. 86 at 4, different plaintiffs across the cases challenge different parts of the Executive Order. Defendants acknowledge that "there appear to be some gaps in the overlap in challenges" to several parts of the Executive Order between the LWVMA Plaintiffs' case and the lead D.D.C. case. Defs' Mem. of Law in Support of Defs. Mot. to Transfer (Defs.' Br.), Dkt. No. 20 at 9.

## ARGUMENT

### I.  This Court Should Not Apply the First-Filed Rule Here Given the Near-Simultaneous Filing of these Cases by Different Plaintiffs and Seeking Different Relief.

Defendants and Proposed Intervenor-Defendants premise their motions to transfer entirely on the first-filed rule because one of the D.D.C. Cases was filed the night before the LWVMA Plaintiffs filed their Complaint. *See* Defs.' Br.  at 6–10; Mem. in Support of Intervener States' Mot. to Transfer, Dkt. No. 47. These motions must fail, because the first-filed rule is inapplicable here for two main reasons. *First*, courts have consistently declined to apply the first-filed rule where, as here, the cases in the two courts were filed almost simultaneously. *Second*, the D.D.C. Cases and the cases pending before this Court are not identical and indeed have several material differences. The sole justification for the pending motions to transfer is thus invalid.

#### A.  The First-Filed Rule Does Not Apply When Cases Are Filed Nearly Simultaneously.

Defendants contend that the mere fact the *DSCC v. Trump* was filed less than 24 hours before the LWVMA Plaintiffs' case here is dispositive for purposes of the first-filed rule. Defs.' Br. at 6–7. That mechanical application contravenes the rule's underlying rationale and is not warranted here.

Contrary to Defendants' argument, the first-filed rule does not automatically turn on temporal considerations. The first-filed rule is a prudential doctrine designed to conserve judicial resources and avoid interference between courts at meaningfully different stages of the same litigation. *See, e.g.*, *Scholl v. Mnuchin*, 483 F. Supp. 3d 822, 827 (N.D. Cal. 2020). Those concerns diminish when, like here, cases are filed nearly simultaneously, i.e., within days of each other, by independent parties, at the outset of litigation. *Aurora Corp. of Am. v. Fellowes, Inc.*, No. CV07-8306-GHK(AJWX), 2008 WL 709198, at *1 (C.D. Cal. Feb. 27, 2008). Applying the rule under

7

such circumstances serves none of its purposes; it would simply reward whichever party happened to file first by a matter of hours without consideration of other relevant factors.

Because temporal considerations are not dispositive, courts in this district and across the country have consistently declined to apply the first-filed rule in precisely these circumstances. In *Endurance American Insurance Company v. John Moriarty & Associates, Inc.*, for example, a court in this district declined to give the first-filed rule any weight where the competing cases were filed in close temporal proximity, determining that "where the cases are filed nearly simultaneously, the first-to-file rule plays little role in the transfer determination." No. 1:23-CV-12550-JEK, 2024 WL 3849670, at *4 (D. Mass. Aug. 16, 2024) (citing *Micron Tech., Inc. v. Mosaid Techs., Inc.*, 518 F.3d 897, 903–04 (Fed. Cir. 2008)). Likewise in *Scholl*, where the relevant complaints were filed one day apart, a federal court held the rule inapplicable because "the rule's motivation and rationale is diminished" when neither case has expended more effort or made more progress than the other. 483 F. Supp. 3d at 827; *see also Ontel Prods., Inc. v. Project Strategies Corp.*, 899 F. Supp. 1144, 1153 (S.D.N.Y. 1995) ("Even though the instant action was not improper, and therefore can potentially benefit from the first-filed rule, that rule is usually disregarded where the competing suits were filed merely days apart"). Applying the rule to near-simultaneous filings would instead "invoke none of the merits of the rule and would promote a race to the courthouse." *K-Swiss Inc. v. Puma AG Rudolf Dassler Sport*, No. CV 09-3022-GAF-PLAX, 2009 WL 2049702, at *2 (C.D. Cal. July 9, 2009). "Such races-to-the-courthouse distort the true intendment of the statutory scheme" for whether cases should be transferred. *Mobil Oil Exploration Co. v. FERC*, 814 F.2d 998, 1000 (5th Cir. 1987), *opinion clarified*, 814 F.2d 1001 (5th Cir. 1987).

Consistent with the statutory framework and caselaw, where, as here, two actions are filed almost simultaneously, the first-filed rule plays little role. Instead, courts must weigh the real underlying question: the convenience and suitability of the competing forums under 28 U.S.C. § 1404(a). *Micron Tech., Inc.*, 518 F.3d at 904–05. The first-filed rule "will not always yield the most convenient and suitable forum" and cannot substitute for that analysis. *Id*. Temporal consideration, therefore, is but one factor to consider and not controlling. *Ontel Prods., Inc.*, 899 F. Supp. at 1153. Yet Defendants and Proposed Intervenors treat the hours-long gap between the *DSCC* Case and the LWVMA Plaintiffs' Case as dispositive.

This Court should decline to apply the first-filed rule and instead evaluate Defendants' and Proposed Intervenor-Defendants' motions under the 28 U.S.C. § 1404(a) convenience analysis.

**B.  This Case Is Not Identical, Nor Even Sufficiently Similar, to the Litigation in Washington, D.C.**

The first-filed rule also does not apply because the cases pending before this Court and the D.D.C. Cases are not identical. Defendants focus on the similarities between the defendants in the D.D.C. Cases and the defendants here, *see* Defs.' Br. at 7, but that misconstrues the applicable standard. The first-filed rule creates a presumption in favor of the first-filed forum only "where *identical* actions are proceeding concurrently in two federal courts." *OV Loop, Inc. v. Mastercard Inc.*, No. 1:24-CV-10412-IT, 2024 WL 3834927, at *2 (D. Mass. Aug. 14, 2024) (citing *Cianbro Corp. v. Curran-Lavoie, Inc.*, 814 F.2d 7, 11 (1st Cir. 1987) (emphasis added)). The question is not whether the actions share defendants, but whether the actions themselves are identical.

On this point, Defendants concede, as they must: "*Plaintiffs* in the D. Mass. Cases and D.D.C. Consolidated Cases do not overlap." Defs.' Br. at 8. As this Court has explained, "the first-filed rule does not apply where plaintiffs are not the same parties." *Davis v. Office Depot, Inc.*, No. 16-cv-11783-IT, 2016 WL 7007485, at *4 (D. Mass. Nov. 28, 2016). In *Davis*, this Court declined

9

to apply the first-filed presumption because the plaintiffs before it were not parties to the case in the court to which the defendants were seeking to transfer venue. *Id.* The absence of any shared plaintiffs between the cases pending before this Court and the D.D.C. Cases can, and should, end the inquiry on whether the first-filed presumption applies at all. *Id.*; *see also Forum Fin. Grp. Liability Co. v. President, Fellows of Harvard College*, 173 F. Supp. 2d 72, 93 (D. Me. 2001) (denying transfer in part because plaintiffs were not identical).

Where, as here, the overlap between the two suits is less than complete, the first-filed rule does not mechanically apply. Instead, "the judgment is made case by case, … based on such factors as the extent of overlap, the likelihood of conflict, the comparative advantage, and the interest of each forum in resolving the dispute." *TPM Holdings, Inc. v. Intra-Gold Indus., Inc.*, 91 F.3d 1, 4 (1st Cir. 1996). The LWVMA Plaintiffs are civic engagement and voting rights organizations with no presence in the D.D.C. Cases. There is little likelihood of conflict with the D.D.C. Cases' proceedings, which will adjudicate several different claims, and in any event which are both likely to be appealed given the high stakes of these cases. This Court has a strong interest in resolving claims brought by the LWVMA Plaintiffs, which include Massachusetts-based organizations and national organizations with longstanding voter-education work in Massachusetts focused on mail voting, including for the specific communities they serve. *See* Background Section II. And a majority of Plaintiffs have members who live in Massachusetts and rely on vote-by-mail. *See id.*

Defendants also inaccurately contend that the cases are extremely similar because they "concern the constitutionality and validity of [the] Executive Order." Defs.' Br. at 8. Yet later, Defendants admit that the first-filed action does not address eleven sections and subsections of the Order that Plaintiffs challenge in this action. *Id*. at 9. ("At first glance, there appear to be some gaps in the overlap in challenges to… sections 1, 2(b), 3(a), 3(c), 3(d), 4(b), 5, 6, 7(a), 7(b), and

10

7(c) of the [Executive Order] (challenged in the [LWVMA Plaintiffs'] Case but not the *DSCC* Case)").

That concession further illustrates why the first-filed rule is inapplicable to the circumstances here. In assessing whether issues are substantially similar, "courts compare the relief sought in plaintiff's complaint and the relief sought in the [second] action" and "examine whether the plaintiff's case and the [second] action turn on similar determinations of fact and seek to resolve similar legal issues." *Thakkar v. United States*, 389 F. Supp. 3d 160, 170, 173–74 (D. Mass. 2019). Here, as Defendants concede, this case turns on different determinations and issues of law and facts because the *DSCC* Case does not fully overlap with the challenge here. Defs.' Br. at 9. That incomplete overlap is an independent additional reason to find the first-filed rule inapplicable. *See TPM Holdings, Inc.*, 91 F.3d 1 at 4.

Defendants' reliance on *Thakkar* is therefore misplaced. Defs.' Br. at 8. This Court in *Thakkar* found the party requirement satisfied because the earlier-filed suit had already successfully certified a class—and the class definition encompassed the individual plaintiff in *Thakkar*. 389 F. Supp. 3d at 166, 168–69, 173. That reasoning does not apply here, because the LWVMA Plaintiffs are not in any sense part of the D.D.C. Cases. *See also Ridenti v. Google LLC*, 530 F. Supp. 3d 164, 168 (D. Mass. 2021) ("[P]resumption in favor of plaintiff's choice of forum . . . is accorded less weight . . . wherein plaintiff asserts class claims in a second-filed putative class action" that include that plaintiffs in the first).

Defendants' invocation of *Intersearch Worldwide, Ltd. v. Intersearch Group, Inc.* is similarly misplaced. Defs.' Br. at 8 (citing 44 F. Supp. 2d 949 (E.D. Cal. 2011)). *Intersearch* was a patent infringement case in which the only difference between the two actions was the addition of a single defendant in the second-filed suit, a marginal variation in an otherwise identical dispute

11

between the same core parties over the same intellectual property. *See id.* at 958–60. The court's observation that exact identity is not required was made against that backdrop of near-total overlap, and the footnote Defendants cite was not part of the court's central holding. *Id*. at 959 n.6. In short, *Intersearch* does not establish that defendant overlap alone satisfies the party inquiry, or that the total absence of any shared plaintiff is immaterial. Extending *Intersearch*'s footnote to cover a situation where, as here, there is no plaintiff overlap at all would read the party-identity requirement out of the rule entirely. Indeed, in each of the cases that Defendants cite to support their contention that only similar parties (not identical ones) are required for the application of the first filed rule, there was some unity of identity as to both plaintiffs and defendants. These cases make clear that the similarity being discussed is not as to some amorphous categorization of the type of plaintiffs, but in actual commonality of identity on both sides of the case.

Ultimately, Defendants' argument reduces to one point: Because the same government agencies are defendants in both sets of cases, the party requirement is met. Defs.' Br. at 8. Under Defendants' logic, the first case filed anywhere challenging any executive order would automatically trigger the first-filed rule as to every subsequent challenge, regardless of who brought it or what claims they assert. That would eliminate plaintiffs' choice of forum in all cases brought against the government, an outcome wholly at odds with the First Circuit's requirement of identical, or nearly identical, actions.

## II. Even if the First-Filed Rule Were Applicable, the Relevant Discretionary Factors Weigh Strongly Against Transfer.

Even if this Court determined that the first-filed rule applied, "fairness and equitable concerns could bar the application of the rule, as can demonstrations of prejudice." *Thakkar*, 389 F. Supp. 3d at 170 (internal quotation marks and alterations omitted). "[T]he first-to-file rule is not to be applied in a mechanical way" and "[e]xceptions to the rule are not rare." *EMC Corp. v.*

12

*Parallel Iron, LLC*, 914 F. Supp. 2d 125, 127 (D. Mass. 2012). Several of the relevant discretionary factors that courts consider weigh strongly against transfer here. *See Employers Ins. of Wausau v. Commercial Union Ins. Co.*, 735 F. Supp. 1103, 1104 (D. Mass. 1990) ("To prevail on a motion to transfer, defendants must overcome the presumption in favor of plaintiff's choice of forum," including "the convenience of the parties, the witnesses, and 'the interests of justice.'").

### A. Plaintiffs' Choice of Forum is Entitled to Deference and this Court Is the More Convenient Forum.

If this Court were to determine that the first-filed rule applies, the Court should nonetheless reject the request to transfer under its discretionary authority and give the presumption in favor of the Plaintiffs' choice of forum and considerations of prejudice and convenience. *See SW Indus., Inc. v. Aetna Cas. & Sur. Co.*, 653 F. Supp. 631, 637 (D.R.I. 1987) ("[T]he operation of the first-filed rule can be defeated by a showing that the balance of convenience favors the venue of the later-filed action."). Alternatively, if the Court declines to apply the first-filed rule and instead evaluates the pending motions under the 28 U.S.C. § 1404(a) convenience analysis as described above, the transfer motions fail for the same reasons.

Plaintiffs' choice of forum is entitled to a "strong presumption," which Defendants and Proposed Intervenor-Defendnats cannot overcome. The presumption is "particularly strong" where, as here, both sets of Plaintiffs chose their home forum. *OsComp Sys. v. Bakken Express LLC*, 930 F. Supp. 2d 261, 273–74 (D. Mass. 2013) (citing *Kleinerman v. Luxtron Corp.*, 107 F. Supp. 2d 122, 125 (D. Mass. 2000)). Choosing their home forum "more likely represents" plaintiffs' "considerations of convenience," and thus, the "hurdle" defendants are "required to clear to warrant transfer" is "elevat[ed]." *Id.* (quoting *Kleinerman*, 107 F. Supp. 2d at 125).

Here, Plaintiffs chose their home forum: Plaintiff LWVMA comprises the two branches of the Massachusetts affiliate of the League of Women Voters. Compl. ¶ 19. As noted *supra*, these

13

organizations are incorporated in Massachusetts, have volunteers and thousands of members within the Commonwealth, and conduct their core activities in service of Massachusetts voters. *See* Background Section II. Indeed, a majority of Plaintiffs in this action have members in Massachusetts who rely on mail voting and conduct substantial voter-education on mail voting in Massachusetts. *See id*. As in *OV Loop, Inc. v. Mastercard Inc.*, the LWVMA Plaintiffs assert that the challenged action hurts individuals throughout the country as well as in Massachusetts. *See* 2024 WL 3834927, at \*3 (highlighting that Mastercard engaged in an illegal scheme directed at persons nationwide, including Massachusetts, in addition to Massachusetts serving as OV Loop's principal place of business). Defendants and Proposed Intervenor-Defendants make no effort to clear the strong presumption in favor of Plaintiffs' choice of forum. Their pending motions should be denied for this reason alone.

Defendants and Proposed Intervenor-Defendants cannot show that Plaintiffs' choice of forum is "substantially more inconvenient" than their preferred forum. *Kleinerman*, 107 F. Supp. 2d at 125 (citing *Anderson v. Century Products Co.*, 943 F. Supp. 137, 148 (D.N.H. 1996)). Defendants advance no argument for why the convenience of the parties favor a change of venue, *see generally* Defs.' Br., and any such argument would fail because at most, convenience favors neither party. In *OV Loop, Inc.*, this Court concluded that plaintiff's Massachusetts headquarters made its home forum the more convenient one, while witnesses were evenly dispersed between the two competing forums or elsewhere. *OV Loop, Inc.*, 2024 WL 3834927, at \*3. The Court accordingly rejected Mastercard's contention that Massachusetts was more inconvenient. *Id.*

The same result follows here. LWVMA is headquartered in Massachusetts, making this District the more convenient forum for the LWVMA Plaintiffs. Compl. ¶ 19. Witnesses would be dispersed between Massachusetts and elsewhere, because the Executive Order harms voters across

14

the country, and indeed, across the globe. *E.g.*, *id*. ¶¶ 16, 77. Moreover, preliminary-injunction briefing is already underway, and the Court has set a hearing date shortly after the close of briefing. Convenience therefore favors retaining this case in the District of Massachusetts.

Accordingly, even if the Court concludes that the first-filed rule applies, the moving parties fail to overcome the strong presumption in favor of Plaintiffs' choice of venue, and convenience does not favor transfer. And, if 28 U.S.C. § 1404(a) applies, Defendants and Proposed Intervenor-Defendants have not carried their burden to show that transfer is warranted. *See OV Loop, Inc.*, 2024 WL 3834927, at *2.

### B. The Interests of Justice Weigh Against Transfer Given the Time-Sensitive and Already Ongoing Motion Practice.

The "interests of justice" weigh against transfer because of the fast-moving motion practice and the prospect of irreparable harm presented by delay. *See generally Matter of Extradition of Schweidenback*, 3 F. Supp. 2d 113, 118 (D. Mass. 1998) (holding that it is not "in the interests of justice . . . to transfer the case" because "a transfer would merely result in a delay" of the proceedings). As noted *supra*, the three plaintiff groups in the D.D.C. Cases each filed motions for preliminary injunctions on April 17, 2026. *See DSCC*, No. 1:26-cv-1114, ECF Nos. 53–55. As this Court ordered, *see* Order, Dkt. No. 57, the LWVMA Plaintiffs here filed a motion for a preliminary injunction on April 23, 2026, *see* Dkt. No. 73, and the State Plaintiffs filed a motion for summary judgment on the same day, *see California*, No. 1:26-cv-11581, ECF No. 97. This Court has further set out a full briefing schedule on those and other motions, in which briefing concludes on May 22, 2026, and has set the hearing on those motions for June 2, 2026. Order, Dkt. No. 57.

In other words, both sets of cases are time-sensitive, fast-moving, and involve parties alleging irreparable harm. In these circumstances—especially where the parties have already filed motions for preliminary injunction or summary judgment—transfer is disfavored. *See, e.g.*, *Right*

15

*to Life of Central Cal. v. Bonta*, 614 F. Supp. 3d 729, 733 (E.D. Cal. 2022) ("Transferring this action, with plaintiff's pending motion for a preliminary injunction, will not conserve any judicial resources"); *Herd v. Am. Security Ins. Co.*, No. 06-4284-CV-CNKL, 2008 WL 111289, at *2 (W.D. Mo. Jan. 8, 2008) (denying motion to transfer in part "[b]ecause summary judgment motions have been filed," and therefore "transfer would cause considerable delay and prejudice."); *Pragmatic Software Corp. v. Antrim Design Sys., Inc.*, No. CIV. 02-2595-JRT-FL, 2003 WL 244804, at * 6 (D. Minn. Jan. 28, 2003) ("The Court is especially mindful that plaintiff's request for injunctive relief is time-sensitive, and transfer would bring about a delay that could result in prejudice and potential irreparable harm to plaintiff.").

Such is the case here, where briefing is already underway in both cases and this Court has set a timely hearing to resolve two different sets of merits briefing, including the State Plaintiffs' dispositive motions. Transfer would undoubtedly create delay—it would take time to transfer the case mechanically, for the new court to review the parties' previous filings, and for the new court to order a new briefing schedule, which could potentially give Defendants more time to respond to Plaintiffs' motions. Transfer would also separately prejudice both sets of Plaintiffs because they have filed their motions for preliminary injunction and summary judgment with an eye toward First Circuit law—leaving the new court the opportunity either to (i) accept the brief that is less geared toward D.C. Circuit law, and thus potentially less persuasive in that district, or (ii) to order a new round briefing, which would create further delay. Transfer would thus cause significant harm to Plaintiffs.

### C. Defendants' Other Arguments Cannot Justify Transfer.

Finally, Defendants' arguments that transfer somehow weighs in favor of efficiency and inter-district comity, *see* Defs.' Br. at 10–11, fall flat. Defendants claim that "[j]udicial and party resources will be needlessly squandered by adjudicating in two courts what can properly be

16

handled in one," *id.* at 10, when in fact the opposite is true; as noted *supra* Argument, Section II.B, it would be inefficient and cause needless delay to disrupt briefing schedules already underway in both this and the D.D.C. Cases to attempt to consolidate the cases at this juncture.

Defendants suggest, without citation to any legal or factual authority, that permitting different plaintiffs to file cases in different courts "encourages parties to engage in gamesmanship and forum shopping." Defs.' Br. at 11. Yet there is absolutely no evidence of that in this case. Indeed, cases of great public importance, including litigation seeking to enjoin presidential executive orders, frequently proceed in multiple federal courts. This includes, for example, challenges to President Trump's executive order purporting to end birthright citizenship, *see Trump v. CASA, Inc.*, 606 U.S. 831, 838 (2025) (noting "three different District Courts" issued preliminary injunctions enjoining the order); challenges to President Trump's executive order purporting to require the Election Assistance Commission (EAC) to add a documentary proof of citizenship requirement on the federal voter registration form, *see Washington v. Trump*, 814 F. Supp. 3d 1173 (W.D. Wash. 2026); *League of United Latin Am. Citizens v. Exec. Office of the President*, 780 F. Supp. 3d 135 (D.D.C. 2025); *California v. Trump*, 786 F. Supp. 3d 359 (D. Mass. 2025); and challenges to President Trump's executive order in his first term purporting to remove undocumented immigrants from the 2021 apportionment base, *see Common Cause v. Trump*, 506 F. Supp. 3d 39 (D.D.C. 2020); *New York v. Trump*, 485 F. Supp. 3d 422 (S.D.N.Y. 2020); *City of San Jose v. Trump*, 497 F. Supp. 3d 680 (N.D. Cal. 2020). Indeed, a court in this district denied a motion to transfer one of the cases challenging the EAC executive order to the District of Columbia—noting, in part, the fact that there were different plaintiffs and the fact that "there is a 'strong presumption in favor of the plaintiff's choice of forum.'" *California*, 786 F. Supp. 3d, ECF No. 79 (quoting *Astro-Med, Inc. v. Nihon Kohden Am., Inc.*, 591 F.3d 1, 13 (1st Cir. 2009)).

17

Even if transfer served any interest in comity or judicial efficiency here—which it does not—these considerations do not justify preferring the District of Columbia to this Court. There is no dispute that venue is proper in this Court, and the D.D.C. Cases are no more advanced than the ones that Plaintiffs bring here. And as with several of the cases discussed above, any conflicting or inconsistent rulings can easily be resolved on appeal. *See CASA, Inc.*, 606 U.S. 831; *Trump v. New York*, 592 U.S. 125 (2020).

## CONCLUSION

For the foregoing reasons, this Court should deny Defendants' and Proposed Intervenor-Defendants' motions to transfer venue.

Dated: April 27, 2026

Jessie J. Rossman (BBO #670685)
Suzanne Schlossberg (BBO #703914)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF MASSACHUSETTS,
INC.
One Center Plaza, Suite 850
Boston, MA 02108
(617) 482-3170
jrossman@aclum.org
sschlossberg@aclum.org

Eliza Sweren-Becker*
Wendy Weiser*
Andrew B. Garber*
BRENNAN CENTER FOR JUSTICE AT
NYU SCHOOL OF LAW
120 Broadway, Suite 1750
New York, NY 10271
(646) 292-8310
sweren-beckere@brennan.law.nyu.edu
weiserw@brennan.law.nyu.edu
garbera@brennan.law.nyu.edu

Justin Lam*

Respectfully submitted,

*/s/ Sophia Lin Lakin*
Sophia Lin Lakin*
Theresa J. Lee*
Davin Rosborough*
Ethan Herenstein*
Jonathan Topaz*
Ming Cheung*
William Hughes*
Clayton Pierce*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2500
slakin@aclu.org
tlee@aclu.org
drosborough@aclu.org
eherenstein@aclu.org
jtopaz@aclu.org
mcheung@aclu.org
whughes@aclu.org
cpierce@aclu.org

Sarah Brannon*
Adriel I. Cepeda Derieux*

18

BRENNAN CENTER FOR JUSTICE AT
NYU SCHOOL OF LAW
777 6th Street NW, Suite 1100
Washington, DC 20001
(202) 249-7190
lamju@brennan.law.nyu.edu

Niyati Shah*
Noah Baron*
Ejaz Baluch, Jr.*
ASIAN AMERICANS ADVANCING
JUSTICE-AAJC
1620 L Street NW, Suite 1050
Washington, DC 20036
(202) 296-2300
nshah@advancingjustice-aajc.org
nbaron@advancingjustice-aajc.org
ebaluch@advancingjustice-aajc.org
Miranda Galindo*
Latino Justice PRLDEF
475 Riverside Drive, Suite 1901
New York, NY 10115
(212) 392-4752
mgalindo@latinojustice.org

AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
915 15th Street NW
Washington, DC 20001
(202) 457-0800
sbrannon@aclu.org
acepedaderieux@aclu.org

Leah C. Aden*
Brenda Wright*
John S. Cusick*
NAACP LEGAL DEFENSE &
EDUCATIONAL FUND, INC.
40 Rector Street, 5th Floor
New York, NY 10006
(212) 965-2200
laden@naacpldf.org
bwright@naacpldf.org
jcusick@naacpldf.org

I. Sara Rohani*
NAACP LEGAL DEFENSE &
EDUCATIONAL FUND, INC.
700 14th Street NW, Suite 600
Washington, DC 20005
(202) 682-1300
srohani@naacpldf.org

*Admitted pro hac vice

Counsel for Plaintiffs League of Women
Voters of Massachusetts, League of Women
Voters Lotte E. Scharfman Memorial
Education Fund, League of Women Voters of
the United States, League of Women Voters
Education Fund, Association of Americans
Resident Overseas, U.S. Vote Foundation,
OCA-Asian Pacific American Advocates, and
Delta Sigma Theta Sorority, Inc.

19

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on April 27, 2026, a true copy of the above document was filed via the

Court's CM/ECF system and that a copy will be sent automatically to all counsel of record.

April 27, 2026                                              /s/ *Sophia Lin Lakin*
                                                            Sophia Lin Lakin

20