**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| LEAGUE OF WOMEN VOTERS OF MASSACHUSETTS, *et al.*, | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) No. 26-cv-11549-IT |
| DONALD J. TRUMP, *et al.*, | ) ) ) |
| Defendants. | ) ) |
| STATE OF CALIFORNIA, *et al.*, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) No. 26-cv-11581-IT |
| DONALD J. TRUMP, *et al.*, | ) ) ) |
| Defendants. | ) |

**BRIEF OF *AMICUS CURIAE* THE SOCIETY FOR THE RULE OF LAW IN SUPPORT OF PLAINTIFFS' MOTIONS FOR PRELIMINARY INJUNCTION AND SUMMARY JUDGMENT**

**LEAVE TO FILE GRANTED ON APRIL 27, 2026**

Inga S. Bernstein
Zalkind Duncan & Bernstein LLP
2 Oliver Street, Suite 200
Boston, MA 02109
(617) 742-6020
ibernstein@zalkindlaw.com

Richard D. Bernstein (DC Bar No. 416427)*
1875 K Street NW, Suite 100
Washington, DC 20006
(301) 775-2064
rbernsteinlaw@gmail.com

*Counsel for Amicus The Society For The
Rule of Law*


*\*Admitted Pro Hac Vice*

**TABLE OF CONTENTS**

TABLE OF CONTENTS………………………………………………………………….. i

TABLE OF AUTHORITIES……………………………………………………………. ii

INTEREST OF AMICUS CURIAE……………………………………………...………… 1

INTRODUCTION AND SUMMARY OF ARGUMENT……………………………… 1

ARGUMENT………………………………………………………………………………. 2

I.      EO 14399 Requires USPS To Provide And Administer Federal Voter Lists………… 2

II.     In 1894 And Again In 2006, Congress Removed Prior Limited Authority For Federal Officials To Provide And Administer Voter Lists…………………………… 3

III.    EO 14399 Violates Federal Statutes That Direct That States, Not Any Federal Agency, Provide And Administer All Voter List…………………………………………...……… 5

IV.     EO 14399 Violates 39 U.S.C. § 401, Which Precludes The USPS From Issuing Regulations Under Which It Will Provide Or Administer Voter Lists……...……… 8

        A.      Federalism Principles And The Major Questions Doctrine Apply………… 8

                1.      Federalism Principles……………………………………………… 8

                2.      The Major Questions Doctrine………………………………….. 9

        B.      39 U.S.C. § 401(2) And Other Title 39 Provisions Preclude The USPS From Providing Or Administering Voter Lists…………..………………….. 12

CONCLUSION…………………………………………………………………….. 15

**TABLE OF AUTHORITIES**

Page(s)

Cases

*Arizona v. Inter Tribal Council of Arizona, Inc.*,
  570 U.S. 1 (2013)............................................................................................ 3, 5, 8
*Biden v. Nebraska*,
  600 U.S. 477 (2023)........................................................................................ 10, 11
*Bond v. United States*,
  572 U.S. 844 (2014)............................................................................................. 8
*Bush v. Gore*
  531 U.S. 98 (2000) .............................................................................................. 3
*Ex parte Seibold*,
  100 U.S. 371 (1880).............................................................................................. 5
*Gonzales v. Oregon,*
  546 U.S. 243 (2006).............................................................................................. 9
*Husted v. A. Philip Randolph Institute*,
  584 U.S. 756 (2018).............................................................................................. 2
*Learning Resources, Inc. v. Trump,*
  146 S. Ct. 628 (2026)................................................................................ 9, 10, 14
*Moore v. Harper*,
  600 U.S. 1 (2023)................................................................................................. 3
*National Federation of Independent Business v. OSHA,*
  595 U.S. 109 (2022)............................................................................................. 15
*Shelby County v. Holder,*
  570 U.S. 529 (2013)............................................................................................. 8
*United States v. Classic,*
  313 U.S. 299 (1941)............................................................................................. 11
*United States v. Gradwell*
  243 U.S. 476 (1917)............................................................................................. 13
*West Virginia v. EPA*,
  597 U.S. 697 (2022)............................................................................9-11, 13-14

Statutes

16 Stat. 433 (1871)……………………………………………………………….. 3, 4
28 Stat. 36 (1894)………………………………………………………………….. 4
56 Stat. 753 (1942)………………………………………………………………… 15
79 Stat. 437 (1965)………………………………………………………………… 4
100 Stat. 924 (1986) ………………………………………………………………..6
100 Stat. 928 (1986) ………………………………………………………………..7
116 Stat. 1666 (2002)………………………………………………………………. 2
120 Stat. 577 (2006)...……………………………………………………………4-5, 13
120 Stat. 3198 (2006) ……………………………………………………………13
2 U.S.C. §§ 1-9, 381-96 ....................................................................................... 10
3 U.S.C. §§ 1-22 ................................................................................................... 10

18 U.S.C. §§ 241, 611, 1015 .................................................................................................. 14
18 U.S.C. §§ 592-611 ............................................................................................................ 10
39 U.S.C. § 401 .............................................................................................................. 1, 8, 12
39 U.S.C. § 401(2) ......................................................................................................... 8, 12-14
39 U.S.C. § 404(e)(2) ............................................................................................................ 15
39 U.S.C. §§ 3001-18 ............................................................................................................ 14
39 U.S.C. §§ 3001(a), 3003(a), 3014(a)(2) .......................................................................... 14
39 U.S.C. §3406 .......................................................................................................... 7, 8, 15
39 U.S.C. §3629 .............................................................................................................. 5, 6, 8
52 U.S.C. § 10302(a) .............................................................................................................. 8
52 U.S.C. § 10305(d) .............................................................................................................. 8
52 U.S.C. § 10307 .................................................................................................................... 7
52 U.S.C. § 10308(d) .............................................................................................................. 7
52 U.S.C. §§ 10502(c)-(e) ...................................................................................................... 6
52 U.S.C. § 20301 .................................................................................................................... 7
52 U.S.C. §§ 20302-06 ............................................................................................................ 6
52 U.S.C. §§ 20303-07 ............................................................................................................ 5
52 U.S.C. §§ 20506-08 ............................................................................................................ 6
52 U.S.C. §§ 20506(a)(1), 20507(a) ...................................................................................... 5
52 U.S.C. § 20507(a)(4), (c)(1) .............................................................................................. 5
52 U.S.C. § 20507(d) .............................................................................................................. 2
52 U.S.C. § 20508(a)(1)-(3) .................................................................................................... 5
52 U.S.C. § 20510(a) .............................................................................................................. 7
52 U.S.C. § 20511 ............................................................................................................ 7, 14
52 U.S.C. § 20984(a)(1)(B)(ii)………………………………………………………… 2
52 U.S.C. § 21082 .................................................................................................................. 11
52 U.S.C. § 21083(a)(1)(A) .................................................................................................... 6
52 U.S.C. § 21085 .................................................................................................................... 6
Act of Sept. 16, 1942, ch. 561, § 9, 56 Stat. 753 (1942) ...................................................... 15

Other Authorities

EO 14399 ................................................................................................. 1-2, 5, 7-8, 10-15
H.R. 22 (2025) ....................................................................................................................... 10
H.R. 7296 (2026) .................................................................................................................. 10
H.R. 7300 (2026) .................................................................................................................. 10
Merriam-Webster Dictionary…………………………………………………………….. 2
National Conference of State Legislatures, Challenges to Voter Eligibility, Table 2: Challenge
Processes………………………………………………………………………………12
*The Power of Observation: The Role of Federal Observer Under the Voting Rights Act,*
13 Mich. J.  Race & L.  227 (2007)………………………………………………….........4

**INTEREST OF *AMICUS CURIAE***

*Amicus* The Society for the Rule of Law and Democracy, Inc., doing business as The Society for the Rule of Law  ("SRL") is a national non-profit, non-partisan membership organization of conservative, libertarian, and center-right lawyers, and others, who are dedicated to defending the legal principles of the rule of law, separation of powers, federalism, and democracy through government by the people.[1]  SRL has an interest in seeing that Executive Order ("EO") 14399 does not violate these principles by commanding the USPS to provide and administer voter lists in violation of federal statutes.

**INTRODUCTION AND SUMMARY OF ARGUMENT**

This *amicus* brief focuses on one illegality in EO 14399.  Section 3(b) of EO 14399 orders the USPS to violate a number of federal statutes by providing and administering voter lists.  Part I of this brief shows that the lists of "enrolled" voters that Section 3(b) requires the USPS to provide and administer are voter lists.  Part II shows that in 1894 and 2006, Congress repealed prior limited statutory authority given to federal officials to provide and administer voter lists in specified situations.  Part III shows that contrary to EO 14399, the National Voter Registration Act of 1993 ("NVRA") and the Help America Vote Act of 2002 ("HAVA") direct that state officials—not federal agencies—shall provide and administer voter lists.  Part IV shows that EO 14399 commands the USPS to violate 39 U.S.C. § 401, which actually precludes the USPS from issuing regulations under which it will provide or administer voter lists.  Among other things, the assertion in EO 14399 that Section 401 gives the USPS the authority to do so

---

[1] *Amicus* states that no counsel for any party authored this brief in whole or in part, and that no entity, aside from *amicus* and its counsel, made any monetary contribution toward the preparation or submission of this brief.  The views of SRL do not necessarily represent the views of all individual members.

1

contradicts both federalism principles and the major questions doctrine.

## ARGUMENT

### I.    EO 14399 Requires USPS To Provide And Administer Federal Voter Lists.

EO 14399 requires two things from the USPS. First, Section 3(b)(iv) states that the "USPS shall provide each State with a list of individuals (Mail-In and Absentee Participation List) who are enrolled with the USPS . . . for mail-in and absentee ballots provided by such state …." Second, Section 3(b)(iii) mandates that "the USPS shall not transmit mail-in or absentee ballots from any individual unless those individuals have been enrolled on a State-specific [Mail-In and Absentee Ballot Participation List]" with the USPS.

As the word "enrolled" suggests, each proposed USPS Mail-In and Absentee Participation List to be provided to each state would be a voter registration list. Especially in the context of a voter list, the words "enrolled" and "registered" are strong synonyms. *Enrolled*, Merriam-Webster, www.merriam-webster.com/dictionary/enrolled (last visited April 10, 2026); *Registered*, Merriam-Webster, https://www.merriam-webster.com/dictionary/registered (last visited April 10, 2026). The NVRA and HAVA describe voter registration lists as "voter *rolls*." 52 U.S.C. §§ 20507(d) (emphasis added), 20984 (a)(1)(B)(ii) (emphasis added), codifying 116 Stat. 1666, 1689 (2002). The Supreme Court has also described voter lists as "voter rolls." *Husted v. A. Philip Randolph Institute*, 584 U.S. 756, 781 (2018); *see id.* at 779 ("voting rolls").

Under EO 14399, the only difference from a traditional registration list or voter roll is that here the USPS list is applied to only one kind of voting—mail-in or absentee voting. But that distinction makes no difference. As the remainder of this brief shows, it is illegal for EO 14399 to direct the USPS to provide or administer voter lists because Congress has directed states, and not federal officials, to perform that function for voting in any form.

II.    **In 1894 And Again In 2006, Congress Removed Prior Limited Authority For Federal Officials To Provide And Administer Voter Lists.**

The Constitution's Elections and Electors Clauses assign to state legislatures the authority to make a complete code of rules for federal elections.  Under the Elections Clause for congressional elections, Congress may supersede or alter a state's election rules, except that Congress has no "power to regulate voter qualifications."  *Arizona v. Inter Tribal Council of Ariz. Inc.* (*ITCA*), 570 U.S. 1, 16-17 & n. 8 (2013).  The state legislative rules empowered by the Elections and Electors Clauses "includ[e] regulations relating to . . .  registration, supervision of voting, . . . counting the votes, and duties of inspectors and canvassers."  *Moore v. Harper*, 600 U.S. 1, 29 (2023) (cleaned up).  Moreover, those state rules specify *who*—that is, which officials—compile a registration list, supervise voters, count votes, and inspect ballots for compliance with various requirements, including the voter's presence on a voter list.  Indeed, among the violations of the Electors Clause identified by the concurrence in *Bush v. Gore* were that the Florida Supreme Court had usurped for itself the exercise of authority regarding supervising voters, counting of votes, and deciding who won, when Florida statutes had assigned those authorities to Florida's Secretary of State.  531 U.S. 98, 113-14, 116-18 (2000).

It is likewise illegal for the federal executive branch to displace or even supplement state powers over voting unless Congress by statute gives the executive branch such authority.  In 1871, in response to the unique problems posed by Reconstruction after the Civil War, Congress enacted the Second Enforcement Act.  For cities and towns with populations exceeding 20,000, that Act empowered federal judges—not the President—to appoint "supervisors of election" in House elections.  16 Stat. 433, 434-35 (1871).  Among the duties of those supervisors was to provide a "list of persons who may register and vote," to "verify" and decide who may be on such lists, and to "scrutinize, count, and canvass, each and every ballot."  *Id.* at 433-35, 438.  In

3

addition, the federal supervisors were to "inspect and scrutinize" the voter registration lists compiled by local officials, sign each page of every copy, and attest to the accurate correlation between the voter lists and actual votes. *Id.* at 434-35. Federal special deputy marshals were also "to aid and assist the [federal] supervisors of election in the verification of any list of persons made under the provisions of this act." *Id.* at 436. Both the federal supervisors and federal deputy marshals were also given authority "to prevent fraudulent registration." *Id.* However, in 1894, Congress repealed *all* of these statutory provisions. 28 Stat. 36, 36-37 (1894).

In 1965, in response to many decades of odious racial voter discrimination, Congress passed the Voting Rights Act (VRA). Sections 6 and 7 of the original VRA authorized, in certain certified jurisdictions, the federal Civil Service Commission (CSC) to appoint examiners to decide whether particular persons were eligible to vote and, for those eligible, to ensure that they "shall be promptly placed on a list of eligible voters" and "transmit" that list to state officials, who were required to include persons on the examiners' list "on the official voting list." 79 Stat. 437, 440 (1965). The certifications were based on prior denials in those jurisdictions of the right to vote based on race or color. *Id.* at 437, 440. Section 9(a) of the original VRA set up a process for a CSC hearing officer to decide promptly challenges to an examiner's decisions, with appeal to a federal court of appeals. *Id.* at 441. And Section 9(b) gave the CSC authority to "prescribe[] . . . regulations" concerning the "eligibility lists" and removals therefrom. *Id.* Courts were also available for challenges to the certification of a jurisdiction and to the examiners' making and administering of voter lists. *Id.* at 438, 444. *See* J. Tucker, *The Power of Observation: The Role of Federal Observer Under the Voting Rights Act,* 13 Mich. J. Race & L. 227, 236-37 (2007). After 1983, no new voters were added to the voter rolls via the examiner provisions. *Id.* at 238. In 2006, Congress *repealed* Sections 6, 7, and 9 of the original VRA.

120 Stat. 577, 580 (2006).  Consequently, the VRA no longer gives any authority for any federal official to provide or administer voter lists.

### III.    EO 14399 Violates Federal Statutes That Direct That States, Not Any Federal Agency, Provide And Administer All Voter Lists.

EO 14399 ignores the history in Part II, *supra*.  EO 14399 instead cites the NVRA and HAVA.  But the pertinent federal statutes direct that states, and not any federal agency, will provide and administer all voter lists.

The NVRA requires states to follow certain uniform registration rules.  *See* 52 U.S.C. §§ 20303-07.  The NVRA charges *state* agencies—not federal agencies—with "the registration of voters in elections for Federal office" and "the administration of voter registration for elections for federal office."  52 U.S.C. §§ 20506(a)(1), 20507(a).  52 U.S.C. § 20507(a)(4), (c)(1) authorizes states, in meeting their obligations to make a "reasonable effort" to remove voters who changed residence from voter lists, to use "change-of-address information supplied by the Postal Service."  In contrast, the NVRA effectively precludes any federal agency from issuing regulations concerning voter lists.  52 U.S.C. § 20508(a)(1)-(3) limits the federal authority to issue regulations under the NVRA to one agency, the Federal Election Commission, and two subjects – "a mail voter registration application form" and reports to Congress every two years assessing the impact of the NVRA and making recommendations that *Congress* might enact.  The NVRA also enacted 39 U.S.C. § 3629, which requires the USPS to make available nonprofit rates to state and local registration officials for the mailings required or authorized by the NVRA.

When Congress exercises its power to enact federal elections legislation such as the NVRA, the federal power extends only "'so far as it is exercised, and no farther.'"  *ITCA*, 570 U.S. at 9 (2013) (quoting *Ex parte Seibold*, 100 U.S. 371, 392 (1880)).  EO 14399 does not

mention 52 U.S.C. §§ 20506-08 or 39 U.S.C. 3629, or that their grant of authority to federal agencies is narrow and has careful limits.

Although HAVA imposed some registration requirements on the States, HAVA directed that the "single, . . . official  . . .  statewide voter registration list" for each state be "defined, maintained, and administered at the State level."  52 U.S.C. § 21083(a)(1)(A).  This "computerized list shall serve as *the single system* for storing and managing *the official list* of registered voters throughout the State" and "shall serve as *the official voter registration list* for the conduct of all elections for Federal office in the State."  *Id.* § 21083(a)(1)(A)(i), (viii)(emphasis added).  HAVA adds that the "specific choices of methods of complying with the requirements of [HAVA] shall be left to the discretion of the State."  *Id.* § 21085.  HAVA effectively precludes any federal agency from providing or administering voter lists.

When Congress has legislated concerning mail-in ballots, it has never created an exception that gives authority to any federal agency to provide or administer any mail-in voter list.  In the VRA Amendments of 1970, Congress created a floor requiring states to accept absentee ballots in certain circumstances in presidential elections.  52 U.S.C. §§ 10502(c)-(e).  Of note, Congress barred any state from including a registration requirement that barred absentee voting.  *Id.* § 10502(f).  Congress also expressly preserved the right of states to "adopt[] less restrictive voting practices than those" in the floor set by Section 10502.  *Id.* § 10502(g).

Congress returned to absentee voting in the Uniformed and Overseas Citizens Absentee Voting Act ("UOCAVA").  100 Stat. 924 (1986).  As amended, UOCAVA has provisions that make it easier for military and overseas voters to register and vote.  *See, e.g.*, 52 U.S.C. §§ 20302-06.  UOCAVA requires the naming of a presidential designee, who has been the Secretary of Defense, and imposes a number of duties on that designee, including to assist registration by

6

prescribing an official post card form for UOCAVA voters, to assist their ability to vote, and to facilitate collection and delivery of their mail-in ballots.  52 U.S.C. § 20301(b).  As to other federal personnel, the head of each agency must, when requested by the presidential designee, "distribute balloting materials and otherwise cooperate in carrying out" UOCAVA.  *Id.* at § 20301(c)(1).

UOCAVA also contains a provision that addresses the USPS specifically.  Section 201(a) of UOCAVA, 100 Stat. 928 (1986), enacted 39 U.S.C. §3406, which mandates that the mail-in votes of UOCAVA voters "shall be carried expeditiously and free of postage."  That's it.  Thus, UOCAVA contains no authority for any federal agency, including the USPS, to provide or administer voting lists.

As with voter lists, nothing in the NVRA, HAVA, the VRA, UOCAVA, or any other current federal election statute grants executive branch officials any power unilaterally to block state officials from counting potential votes in a federal election.  Even when Congress has enacted criminal penalties to deter those who engage in certain violations of federal election law, Congress has not given agencies authority to enact regulations that (a) construct a prophylactic federal administrative system to prevent suspected violations or (b) unilaterally block states from counting votes that federal agency officials believe are illegal.  For example, Section 3(a) of EO 14399 notes that there are criminal penalties for violating 52 U.S.C. § 10307 and 52 U.S.C. § 20511.  But EO 14399 ignores that the only other remedies that Congress authorized an agency to pursue to prevent those violations are for the Attorney General to bring a civil action in federal court for "preventive relief," 52 U.S.C. § 10308(d), or "declaratory or injunctive relief," 52 U.S.C. § 20510(a).  Congress did not authorize any agency to engage unilaterally in preventive actions against potential violations in a federal election without first obtaining court

authorization.

The VRA also gives the Attorney General authority to ask a federal court to appoint "Federal observers." 52 U.S.C. § 10302(a).  Such federal observers, however, may only "*observ[e]* whether persons who are entitled to vote are being permitted to vote" and "*observ[e]* whether votes cast by persons entitled to vote are being properly tabulated," 52 U.S.C. § 10305(d).  They may not make their own unilateral determinations whether persons are entitled to vote or unilaterally prevent state officials from having the opportunity to count any vote.

IV.  **EO 14399 Violates 39 U.S.C. § 401, Which Precludes The USPS From Issuing Regulations Under Which It Will Provide Or Administer Voter Lists.**

A.  **Federalism Principles And The Major Questions Doctrine Apply.**

1.  **Federalism Principles**

Unlike 39 U.S.C. §§ 3406 and 3629, 39 U.S.C. § 401 codifies legislation enacted under the Postal Clause, see *infra* at 13, *not* the Elections Clause.  39 U.S.C. § 401 does not mention elections, much less voting lists or counting votes.  Federalism and Tenth Amendment principles apply to "congressional" and other federal elections.  *Shelby County v. Holder,* 570 U.S. 529, 543 (2013).  Accordingly, 39 U.S.C. § 401 is interpreted under the standard presumption that, absent a clear statement, a federal statute does not change the usual allocation of authority between the states and the federal government.  *See Bond v. United States*, 572 U.S. 844, 857-60 & n. 2 (2014).[2]  It is certainly the usual allocation that states, not federal agencies, provide and administer voting lists.  *See supra*, Part III.  When Congress has modified that usual allocation, as it did in the repealed provisions of the 1871 Second Enforcement Act and the original VRA,

---

[2] There is an exception to this presumption for "Elections Clause legislation," that is, for statutes enacted "under the Elections Clause."  *ITCA,* 570 U.S. at 13-15 & n.6.  But 39 U.S.C. § 401(2) is enacted under the Postal Clause.

Congress has done so in the clearest and most unmistakable terms.  *See supra*, Part II.

### 2.  The Major Questions Doctrine

Independently, under the major questions doctrine, federal agencies lack the power to issue regulations that make major policy decisions without "clear congressional authorization." *West Virginia v. EPA*, 597 U.S. 697, 723-24 (2022).  The heart of the major questions doctrine is that courts "presume that Congress intends to make major policy decisions itself, not leave these decisions to agencies." *Id.* at 723 (quotations omitted).  This reflects "both separation of powers principles and a practical understanding of legislative intent." *Id.* at 723-24.  "[A] reasonable interpreter would not expect Congress to pawn . . . a big-time policy call . . . off to another branch." *Learning Resources, Inc. v. Trump,* 146 S. Ct. 628, 641 (2026) (plurality opinion) ("*Learning Resources* Plurality") (cleaned up).  The decision as to what is a major question also reflects "constitutional structure and common sense." *Id.* at 639.[3]

The major questions doctrine applies to executive branch regulations of an election issue, especially the one here.  Federal elections control who exercises federal legislative and federal executive power.  To compare an election issue to *Learning Resources,* Congress has the power to issue tariffs, but federal elections decide who exercises that power and every other legislative and executive power, and therefore how *all* those powers are exercised.  Indeed, James Madison explained in *Federalist* No. 51 that "[a] dependence on the people" through elections "is, no doubt, the primary control on the government."

The Elections Clause unmistakably vests the power to decide the rules and policies for

---

[3] The major questions doctrine is *not* limited to economic issues. *West Virginia,* 597 U.S. at 722, cited *Gonzales v. Oregon,* 546 U.S. 243 (2006), as a formative case in the major questions doctrine. *Gonzales* involved assisted suicide.  Although assisted suicide is a profound issue, it is not an economic issue.

9

elections in legislatures – first and foremost state legislatures, subject to alteration by Congress. Congress has not been shy about exercising this power. Not only is there the voluminous Title 52 on federal elections – covering requirements for states to provide and administer voter lists and many other topics. *See* Part III, *supra.* There are also extensive provisions for federal elections in Titles 2, 3 and 18. *See, e.g.,* 2 U.S.C. §§ 1-9, 381-96; 3 U.S.C. §§ 1-22; 18 U.S.C. §§ 592-611.

Moreover, Congress has considered expanding federal power concerning the making and enforcing of voter lists. *See, e.g.*, H.R. 22, 119th Cong. (2025); H.R. 7296, 119th Cong. (2026), H.R. 7300, 119th Cong. (2026). That Congress has so far not adopted these bills provides further reason to apply the major questions doctrine. *See West Virginia,* 597 U.S. at 731-32; *Biden v. Nebraska*, 600 U.S. 477, 503 & n. 8 (2023).

If the courts ever permitted the shift of the power to make election rules to the federal executive branch, the power would never be retrieved by Congress. As Justice Gorsuch recently explained, all Presidents have a "desire for more power." *Learning Resources,* 146 S. Ct. at 655 (Gorsuch, J., concurring). Giving power over election rules to legislatures gives opportunity for "deliberation [to] temper[] impulse, and compromise hammers disagreements into workable solutions" that "tend to endure." *Id.* at 672. In contrast, EO 14399 asserts that the President by himself can direct the USPS to provide and administer voter lists. Giving power to "one man"– any President –to make the rules for elections "is no recipe for a republic." *Id.* at 655.

At the heart of election regulation is providing and administering voter lists. That process determines who votes. That is why Congress has twice enacted – and repealed – mechanisms for federal officials to provide and administer voter lists in limited circumstances in some jurisdictions and subject to judicial supervision. *See* Part II, *supra.* In contrast, Congress

10

in the NVRA and HAVA has placed the providing and administering of voter lists with state officials, and not federal agencies. *See supra*, at 5-6.

It further supports application of the major questions doctrine where an issue presents a policy choice and "[t]he basic and consequential trade-offs involved in such a choice are ones that Congress would likely have intended for itself." *West Virginia,* 597 U.S. at 730. Whether the USPS should provide or administer voter lists involves numerous policy choices of the kind that Congress usually makes. Congress has recognized that voter lists contain errors, and Congress has required state processes to recognize and remedy such errors. *See* 52 U.S.C. § 21082 (requiring that voters missing from voter lists have the opportunity to cast provisional ballots). Such errors, when uncorrected, deprive eligible voters of their long-established constitutional rights to vote for members of Congress, *see United States v. Classic*, 313 U.S. 299, 314-18 (1941), and their rights to cast popular votes in presidential elections in all 50 states and D.C. But EO 14399 has no provisions requiring notice to a voter that he or she is not on a USPS voter list, an administrative opportunity to challenge an omission, or judicial supervision. This failure falls far short of much more detailed and careful voter list provisions in the 1871 Second Enforcement Act and the original VRA that *Congress nonetheless repealed. See* Part II, *supra.*

The USPS has no expertise or history in voter list issues. *See West Virginia,* 597 U.S. at 730 (relying on an agency's lack of expertise); *Biden*, 600 U.S. at 518 (Barrett, J., concurring) ("Another telltale sign that an agency may have transgressed its statutory authority is when it regulates outside its wheelhouse."). Having the USPS check envelopes against voting lists also would slow down the delivery of mail-in votes, thereby causing some valid votes to be delivered after mail-in ballot receipt deadlines and not counted. This slowdown would be even longer if USPS implemented some process for voters to challenge their omission from the USPS voter

11

lists or the mistaken application of those lists.  In contrast, state voter list laws do not interfere with the counting of valid mail-in ballots because they allow registration challenges to be resolved well before election day, or after the timely delivery of mail-in ballots, or both.  *See* National Conference of State Legislatures, *Challenges to Voter Eligibility, Table 2: Challenge Processes* (last updated Feb. 19, 2026), https://www.ncsl.org/elections-and-campaigns/challenges-to-voter-eligibility.

Add to the policy choices the uncompensated costs of the new tasks for the USPS – much less the costs of doing these tasks competently, including recognizing and correcting errors.  Like everyone else, Congress is well aware of the multi-decade funding problems of the USPS.

But the most fundamental policy choice is whether to depart from our federalist election structure.  That structure, designed by the Elections and Electors Clauses, fosters both the reality and appearance of election integrity by decentralizing election rules and their administration.  No state's officials can affect results in more than one state.  *Assuming* EO 14399 is valid, however, the USPS, controlled by a President (as EO 14399 asserts that the USPS is), could affect results in federal elections *in all 50 states*.

Accordingly, under the major questions doctrine, unless 39 U.S.C. § 401 clearly authorizes the USPS to provide and administer voter lists, it is illegal for EO 14399 to direct the USPS to do so.

### B.  39 U.S.C. § 401(2) And Other Title 39 Provisions Preclude The USPS From Providing Or Administering Voter Lists.

Under 39 U.S.C. § 401(2), the USPS may not adopt regulations unless they are "not inconsistent with this title" and are "necessary in the execution of its functions under this title [or] such other functions as may be assigned to the Postal Service under any provisions of law outside of this title."  This brief will not repeat the showings in the plaintiffs' complaints of the

12

many reasons why 39 U.S.C. § 401(2) precludes the USPS from providing and administering voter lists, as EO 14399 illegally purports to require.  Instead, as an additional argument, this brief shows that based on the statutory history in Parts II and III, *supra*, it is inconceivable that Congress intended 39 U.S.C. § 401(2), a postal statute, to depart from the NVRA and HAVA provisions that only states provide or administer voter lists.

The Supreme Court has relied on "the history" of repeal of federal statutes expressly governing a topic within federal elections as reason to interpret a different federal statute as not authorizing significant regulation of the same elections topic.  *United States v. Gradwell*, 243 U.S. 476, 479-85 (1917).  Indeed, *Gradwell* relied on the exact same 1894 repealing statute, *see id.* at 483-84, that is discussed *supra*, at 4.

What *Gradwell* rejected is what EO 14399 attempts to do with 39 U.S.C. § 401(2).  That postal statute was substantially revised in 2006 by the 109th Congress in Section 504 of the Postal Accountability and Enhancement Act.  120 Stat. 3198, 3235 (2006).  Section 504 added the narrowing limitation "not inconsistent with this title" to 39 U.S.C. § 401(2).  *Id.*  A few months earlier, the same Congress had repealed the detailed provisions in the original VRA that allowed federal officials to provide and administer, one voter at a time, partial voter lists subject to administrative and judicial review.  120 Stat. 577, 580 (2006); *supra* at 4.  It is inconceivable that the same Congress that repealed those narrow VRA provisions would contemporaneously implicitly give the USPS in a postal statute the much broader authority to provide and administer voting lists to be applied for every jurisdiction in the country, and without any statutory provisions for administrative and judicial review to correct errors in time for votes to be counted.

In addition, 39 U.S.C. § 401(2) is the kind of "ancillary provision" and "gap filler" that is not sufficient to satisfy a clear statement or clear authorization rule.  *West Virginia*, 597 U.S. at

724; *see also id*. at 723 ("modest words, vague terms, or subtle devices" do not suffice); *Learning Resources* Plurality, 146 S. Ct. at 642 ("delegations of core congressional powers" do not "lurk[] in ambiguous statutory text") (cleaned up).  To the contrary, similar to tariffs, the history in Part II, *supra,* shows that when Congress has delegated its power to federalize providing or administering voter lists, Congress has done so in the most explicit terms, and made the delegation subject to express limits, including judicial supervision.  *See Learning Resources* Plurality, 146 S. Ct. at 639 ("When Congress has delegated its tariff powers, it has done so in explicit terms, and subject to strict limits.").

EO 14399 also contradicts the plain terms of 39 U.S.C. § 401(2) because EO 14399 directs the USPS to issue regulations "inconsistent" with various sections of Title 39.  One inconsistency is with 39 U.S.C. §§ 3001-18, the Title 39 sections that make certain items "nonmailable."  These Title 39 sections specify items deposited in violation of certain sections of criminal law in other Titles by expressly cross-referencing in 39 U.S.C. §§ 3001(a), 3003(a), and 3014(a)(2) those specific criminal law sections from other Titles.  Under the principle of *expressio unius est exclusio alterius*, violations of criminal-law sections of other Titles that are *not cross-referenced* in these Title 39 sections are excluded as a basis for the USPS to block the delivery of mail.  Omitted from the nonmailable sections of 39 U.S.C. §§ 3001-18 is any reference to the four criminal-law sections from Titles 18 and 52 that Section 1 of EO 14399 cites as the basis for "prohibit[ing] non-citizens from registering to vote or voting."  These four omitted criminal-law sections are 18 U.S.C. §§ 241, 611, 1015, and 52 U.S.C. § 20511.  Their omission from 39 U.S.C. §§ 3001-18 confirms that EO 14399 may not direct the USPS to refuse to deliver mail-in ballots of suspected non-citizens.

The history in Parts II and III, *supra*, shows another inconsistency.  The providing and

14

administering of voter lists is a distinctly "nonpostal service" and thus barred by 39 U.S.C. § 404(e)(2).  Providing and administering voter lists is historically undertaken by trained election officials, usually state and sometimes (but only when expressly authorized by Congress) federal.

Providing and administering voter lists is also inconsistent with 39 U.S.C. § 3406, which requires that mail-in votes by military and overseas voters "be carried expeditiously."  EO 14399 contradicts this because there would be a slowdown to check ballot envelopes against USPS mail-in voter lists for every state.  This additional inconsistency also contradicts the *expressio unius* principle.  In 39 U.S.C. § 3406, Congress expressed when it wanted voter mail to be treated differently from other mail.  That excludes EO 14399's assertion that the USPS has broad power to treat mail-in ballots much more restrictively than other mail.

Independently, the history described in Parts II and III, *supra*, shows that it is illegal for the USPS to provide or administer voter lists, as neither is a function under Title 39 or a function assigned to the USPS under provisions of another Title.  To the contrary, HAVA and the NVRA direct that state officials provide and administer voter lists, not the USPS or any federal agency.

Federal statutes have regulated voter lists since at least 1871, *supra* at 3-4, and voting by mail since at least 1942, Act of Sept. 16, 1942, ch. 561, § 9, 56 Stat. 753, 756 (1942).  The elephant of any USPS authority to provide and administer voter lists would not have been hidden for decades in the mousehole of  39 U.S.C. § 401(2).  *See National Federation of Independent Business v. OSHA,* 595 U.S. 109, 119 (2022) (*per curiam*); *id.* at 125 (Gorsuch, J., concurring).

## CONCLUSION

The Court should grant plaintiffs' motions for preliminary injunction and summary judgment.

15

Respectfully submitted,

/s/ Inga S. Bernstein
Inga S. Bernstein
Zalkind Duncan + Bernstein
2 Oliver St #200
Boston, MA 02109
(617) 742-6020
ibernstein@zalkindlaw.com

Richard D. Bernstein (DC Bar No. 416427)*
1875 K Street NW, Suite 100
Washington, DC 20006
(301) 775-2064
rbernsteinlaw@gmail.com

*Counsel for Amicus The Society For The Rule of Law*

*Admitted Pro Hac Vice*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was this day served on all counsel via the court's electronic service system.

/s/ Inga S. Bernstein
Inga S. Bernstein

Date: April 27, 2026

16