**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

STATE OF CALIFORNIA, *et al.*,

    *Plaintiffs*,

        v.

DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*,

    *Defendants*.

Case No. 1:26-cv-11581-IT

LEAGUE OF WOMEN VOTERS OF MASSACHUSETTS, *et al.*,

    *Plaintiffs*,

        v.

DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*,

    *Defendants*.

Case No. 1:26-cv-11549-IT

**REPLY IN SUPPORT OF INTERVENER STATES' MOTION FOR INTERVENTION**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES................................................................................................ iii

INTRODUCTION ............................................................................................................... 1

ARGUMENT ....................................................................................................................... 2

    I.    Intervener States are entitled to intervention as of right under Rule 24(a). .................... 2

        A.    Intervener States' motion to intervene is timely........................................................ 2

        B.    Intervener States have cognizable interests in this case............................................ 3

        C.    Disposition of this action may impair the Intervener States' ability to protect their interests. .................................................................................................. 3

        D.    The existing parties do not adequately represent Intervener States' interests. ......... 4

    II.    Alternatively, the Court should grant permissive intervention under Rule 24(b). ........... 7

CONCLUSION..................................................................................................................... 8

## TABLE OF AUTHORITIES

**Cases**                                                                    Page(s)

*Berger v. N.C. State Conf. of the NAACP*,
    597 U.S. 179 (2022)................................................................................................. 5

*Cotter v. Mass. Ass'n of Minority L. Enf't Officers*,
    219 F.3d 31 (1st Cir. 2000) .................................................................................... 7

*Dep't of Com. v. New York*,
    588 U.S. 752 (2019)................................................................................................. 3

*Conservation L. Found. of New. Eng., Inc.  v. Mosbacher*,
    966 F.2d 39 (1st Cir. 1992) .................................................................................... 6

*Ex parte Siebold*,
    100 U.S. 371 (1879)................................................................................................. 6

*Franklin v. Massachusetts*,
    505 U.S. 788 (1992)................................................................................................. 4

*Fund For Animals, Inc. v. Norton*,
    322 F.3d 728 (D.C. Cir. 2003).................................................................................. 5

*In re Fin. Oversight & Mgmt. Bd. for P.R.*,
    919 F.3d 638 (1st Cir. 2019) .................................................................................... 4

*Jacobson v. Detzner*,
    No. 4:18-CV-262-MW/CAS, 2018 WL 10509488 (N.D. Fla. July 1, 2018)............................... 8

*Nat. Res. Def. Council v. Costle*,
    561 F.2d 904 (D.C. Cir. 1977).................................................................................. 6

*Pub. Serv. Co. of N.H. v. Patch*,
    136 F.3d 197 (1st Cir. 1998) .................................................................................... 7

*Purcell v. Gonzalez*,
    549 U.S. 1 (2006)..................................................................................................... 3

*State v. Dir., U.S. Fish & Wildlife Serv.*,
    262 F.3d 13 (1st Cir. 2001) .................................................................................... 5

*Trbovich v. United Mine Workers of Am.*,
    404 U.S. 528 (1972)............................................................................................ 1, 4, 5

*W. Watersheds Project v. Interior Bd. of Land Appeals*,
    No. 1:19-CV-95-TS-PMW, 2019 WL 5191244 (D. Utah Oct. 15, 2019) ................................. 6

**Rules**

Fed. R. Civ. P. 24(a) ................................................................................................................ 2

Fed. R. Civ. P. 24(b) .............................................................................................................. 7, 8

**INTRODUCTION**

In Plaintiff States' own words, this case is about the "constitutional authority" of States "to administer state and federal elections." Pl. States' First Am. Compl. ¶ 1. It therefore makes perfect sense to grant Intervener States—who collectively represent tens of millions of voters—a seat at the table via intervention.

Resisting intervention as of right, Plaintiff States and the federal defendants focus their arguments on the belief that Intervener States' interests are adequately represented by the federal government. That is wrong. The federal government, which often competes with Intervener States for authority over elections, does not adequately represent Intervener States' distinct and unique interests in this case. Although Intervener States and the federal government share the same ultimate interest in seeing the EO upheld, the fact that Intervener States have different interests, which the federal government does not share, is dispositive. *See Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538–39 (1972). And even if the federal government could adequately represent *other* litigants in defending federal policies, the fact that the federal government and Intervener States compete for constitutional authority over elections means it is highly unlikely they will take "precisely the same approach to the conduct of the litigation." *Id.* at 539.

Plaintiff States also oppose intervention as of right by arguing they seek to enjoin the EO only as to their States. Doc. 113 (Pl. States Opp'n Br.) at 9–10. But their Complaint contains no such limitation. Rather, it seeks a "declaration that the Challenged Provisions of the EO are unconstitutional and void," as well as an order "[p]reliminarily and permanently enjoin[ing] all Defendants, except President Trump, from implementing or enforcing the Challenged Provisions of the EO." Pl. States' First Am. Compl. at 45. Likewise, Plaintiff League of Women Voters of Massachusetts (LWVMA) seeks preliminary injunctive relief against the entire EO and Plaintiff

1

States seek nationwide declaratory relief against the EO in their summary judgment brief. LWVMA Compl. at 54; Doc. 73, Case 1:26-cv-11549-IT (LWVMA PI Mot.).  If the Court grants either order, Intervener States' interests in the EO—which no party disputes are valid—would undoubtedly be impaired.

Lastly, Plaintiff LWVMA does not truly oppose intervention—but only opposes Intervener States' motion to transfer this case.  Those questions are, of course, completely different.  Because this Court has already denied the motion to transfer, Doc. 126, LWVMA's brief seemingly concedes that Intervener States should be allowed to intervene, Doc. 74, Case 1:26-cv-11549-IT (LWVMA Opp'n Br.) at 1 (stating they only oppose motion to intervene insofar as Intervener States support transfer).

The Court should grant intervention as of right.  At a minimum, the Court should grant permissive intervention—which no party meaningfully contests.

## ARGUMENT

### I.    Intervener States are entitled to intervention as of right under Rule 24(a).

A movant is entitled to intervene as of right if the movant (1) files a "timely motion," (2) "claims an interest" in the litigation, (3) "may as a practical matter" be "impair[ed] or impede[d]" by the disposition of the suit, and (4) is not "adequately represent[ed]" by the parties in the case.  Fed. R. Civ. P. 24(a).  Intervener States meet all four requirements.  *See* Doc. 74 (Intervener Br.) at 9–17.

### A.  Intervener States' motion to intervene is timely.

No party disputes that Intervener States' motion is timely.  *See* Pl. States Opp'n Br.; LWVMA Opp'n Br.; Doc. 109 (U.S. Resp. Br.).  Nor could they.  *See* Intervener Br. at 10.

2

**B. Intervener States have cognizable interests in this case.**

No party contests that Intervener States' have a cognizable interest in the State Citizenship Lists, strengthened security for mail ballots in their own elections, and in ensuring the integrity of their own elections. *See* Pl. States Opp'n Br.; U.S. Resp. Br.; LWVMA Opp'n Br. Again, nor could they. *See Dep't of Com. v. New York*, 588 U.S. 752, 766–67 (2019); *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006) (per curiam); Intervener Br. at 10–13.

**C. Disposition of this action may impair the Intervener States' ability to protect their interests.**

Plaintiff States contest that Intervener States lack an interest here because Plaintiff States "seek injunctive relief solely for themselves." Pl. States Opp'n Br. at 9.

But this is simply wrong. Both Plaintiff States' and the LWVMA's Complaints ask for the Court to preliminarily and permanently enjoin the EO—full stop. *See* Pl. States' First Am. Compl. at 45 (prayer for relief); LWVMA Compl. at 54 (same). They also both ask for broad declaratory relief against the entire EO. *See* Pl. States' First Am. Compl. at 45 ("Issue a judicial declaration that the Challenged Provisions of the EO are unconstitutional and void . . . ."); LWVMA Compl. at 54 ("Declare that the Executive Order is unlawful . . . .").

Likewise, the LWVMA's motion for preliminary injunctive relief asks the Court for nationwide relief against the EO. LWVMA PI Mot. at 2; *see also* LWVMA Compl. at 54 (making clear that LWVMA wants nationwide relief). That remedy would clearly impair Intervener States' undisputed interests in the EO. Intervener Br. at 13–14.

In making this argument, Plaintiff States can point only to *their* summary judgment brief for the proposition that they not seeking "nationwide injunctive relief." Pl. States Opp'n Br. at 9. But Plaintiff States' summary judgment brief also asks for "declaratory relief," Doc. 106 (Pl. States PI Br.) at 30; as outlined in Plaintiff States' complaint, that is nationwide relief that would prevent

the federal government from implementing any part of the EO—including the parts that directly benefit Intervener States, *see Franklin v. Massachusetts*, 505 U.S. 788, 803 (1992); *In re Fin. Oversight & Mgmt. Bd. for P.R.*, 919 F.3d 638, 648 (1st Cir. 2019).  It is thus obvious that Plaintiff States' lawsuit—if it prevails—would impair Intervener States' uncontested interests in the EO. Intervener Br. at 13–14.[1]

### D.  The existing parties do not adequately represent Intervener States' interests.

Plaintiff States and federal defendants argue that Intervener States are adequately represented by the federal government.  *See* Pl. States Opp'n Br. at 5–9; U.S. Resp. Br. at 1. However, that argument is foreclosed by *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528 (1972).  There, The Supreme Court allowed a union member to intervene as a plaintiff in a suit brought by the Secretary of Labor to void a union election.  *Id.* at 529–30.  As relevant here, both the union member and the federal government had the *exact same litigation object*—and yet the Supreme Court found that the federal government did not adequately represent the union member. *Id.* at 537–39.  As the Supreme Court explained, would-be interveners need only "show[] that representation of [their] interest[s] '*may be*' inadequate."  *Id.* at 538 n.10 (emphasis added).  This burden is "minimal."  *Id.*  In *Trbovich* itself, even though the federal government and the union member had the same object in the suit, they did not have the same *interests* because the federal government's obligation to protect the public interest "transcend[ed] the narrower interest of the

---

[1] Even if the Court were inclined to grant only Plaintiff States' request for limited injunctive relief—the only plausible scenario where Intervener States' interests might not be impaired—it is hard to understand *how* the Court would do so.  For example, Intervener States do not understand how the Court could limit injunctive relief against Section 3 of the EO.  Either the U.S. Postal Service can initiate rulemaking proceedings, as outlined in the EO, or it cannot.  There is no middle ground where somehow Plaintiff States could be shielded from any harms traceable to Section 3 but Intervener States could still benefit from it.

complaining union member." *Trbovich*, 404 U.S. at 538–39.  That could result in the two parties not taking "the same approach to the conduct of the litigation." *Id.* at 539.

So too here.  The federal government does not share the unique and narrower interests of Intervener States in obtaining election integrity resources.  And Intervener States do not share the federal government's broader obligation to protect the *federal* public interest.  The federal government's interest thus "transcends the narrower interest" of Intervener States.  *Id.* at 539.  And because the federal government and Intervener States often compete—under the U.S. Constitution's Elections Clause—for authority over federal elections, they are *highly unlikely* to take "the same approach to the conduct of the litigation." *Id.  Trbovich* thus requires intervention as of right.

Resisting *Trbovich*, Plaintiff States and federal Defendants rely on the rebuttable presumption "that the government will adequately defend its actions."  Pl. States Opp'n Br. at 5 (quoting *State v. Dir., U.S. Fish & Wildlife Serv.*, 262 F.3d 13, 19 (1st Cir. 2001)).[2]  Although this "presumption" may exist in First Circuit caselaw, it "means no more in this context than calling for an adequate explanation as to why what is assumed—here, adequate representation—is not so." *U.S. Fish & Wildlife Serv.*, 262 F.3d at 19.  The First Circuit has cautioned against the "danger in a mechanistic application" of the presumption, *id.*, and this Court should resist Plaintiff States' entreaty to do so here.  Notably, Plaintiff States cite to no cases from the First Circuit holding that the federal government can adequately represent States in a suit, nor are Intervener States aware of any.  This silence is deafening. *See Fund For Animals, Inc. v. Norton*, 322 F.3d 728, 736–37

---

[2] This presumption is wrong, *see Trbovich*, 404 U.S. at 538–39, and may no longer be good law, *see Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179, 197 (2022) (reserving the question of "whether a presumption of adequate representation might sometimes be appropriate when a private litigant seeks to defend a law alongside the government or in any other circumstance").

(D.C. Cir. 2003) (suggesting one governmental litigant does not adequately represent a different governmental litigant's interest).

Nonetheless, even if a presumption of adequate representation applies here, Intervener States would overcome it. "[T]he public interest the federal government is obligated to represent may differ from the state government's interests." *See W. Watersheds Project v. Interior Bd. of Land Appeals*, No. 1:19-CV-95-TS-PMW, 2019 WL 5191244, at *3 (D. Utah Oct. 15, 2019). "[G]eneral agreement" between the federal government and the Intervener States that the EO is "'lawful does not necessarily ensure agreement in all particular respects.'" *Conservation L. Found. of New. Eng., Inc. v. Mosbacher*, 966 F.2d 39, 44 (1st Cir. 1992) (quoting *Nat. Res. Def. Council v. Costle*, 561 F.2d 904, 912 (D.C. Cir. 1977)). The federal government and Intervener States "may well have honest disagreements . . . on legal and factual matters." *Costle*, 561 F.2d at 912. That is certainly true here. Intervener States are largely focused on defending Sections 2 and 3 of the EO—because they provide valuable resources to the States, *see* Intervener Br. at 14–15— whereas Defendants are obligated to defend the entire EO, *see* U.S. Resp. Br. at 1. And even in defending Sections 2 and 3, Intervener States and the federal government likely disagree over the division of authority between the States and the federal government in federal elections. *See* Intervener Br. at 16. In a case about the division of authority between the federal government and the States over elections, the federal government does not adequately represent Intervener States. *Cf. Ex parte Siebold*, 100 U.S. 371, 384–85 (1879) ("The peculiarity of the case consists in the concurrent authority of the two sovereignties, State and National, over the same subject-matter.").

Lastly, Plaintiff States suggest the federal government adequately represents Intervener States because both parties filed similar motions to transfer. Pl. States Opp'n Br. at 6. But that preliminary procedural question has no meaningful overlap with the merits questions in this case,

6

so it cannot show a "legal lockstep." *See Pub. Serv. Co. of N.H. v. Patch*, 136 F.3d 197, 208 (1st Cir. 1998) ("legal lockstep" used in relation to defending against "plaintiffs' federal statutory and constitutional challenges"). More to the point, because intervention must be decided at the onset of the case, Intervener States need only show "enough likelihood of conflict or divergence between [themselves] and the named [federal] defendants to overcome the final adequate-representation proviso." *Cotter v. Mass. Ass'n of Minority L. Enf't Officers*, 219 F.3d 31, 36 (1st Cir. 2000). Given the fact that Intervener States and the federal government compete for constitutional authority over elections, Intervener States have certainly shown "enough likelihood of conflict or divergence" as to merits questions in this case. *Id.*

For all these reasons, the Court should grant intervention as of right.

## II.    Alternatively, the Court should grant permissive intervention under Rule 24(b).

Even if the Court disagrees on intervention as of right, the Court should still grant permissive intervention under Rule 24(b). The Court may grant permissive intervention "[o]n timely motion" when the movant "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b). Tellingly, the other parties barely contest permissive intervention—because there is no good reason to deny it. *See* U.S. Resp. Br. at 1 (no opposition); Pl. States Opp'n Br. at 10 (repeating adequacy of representation); LWVMA Opp'n Br. at 2 (cursory mention of prejudice).

Intervener States clearly meet the requirements of Rule 24(b). No one contests timeliness or that Intervener States have a "defense that shares with the main action a common question of law or fact." *Id.* Instead, State Plaintiffs rely on their adequacy of representation argument. *See* Pl. States' Opp'n Br. at 10. These arguments fail for the reasons provided above. *See supra* at 7–10. In any event, Rule 24(b) does not require the would-be intervener to show inadequate

representation, and holding otherwise would effectively read permissive intervention and Rule 24(b) out of the Federal Rules of Civil Procedure.

Finally, permissive intervention would prejudice no party. The only thing LWVMA Plaintiffs can point to is that they have filed a motion and there is a briefing schedule. LWVMA Opp'n Br. at 1. But permissive intervention will cause no delays, because Intervener States have committed to abide by all existing deadlines (including filing a proposed opposition to preliminary injunction on the same date as the federal defendants). Intervener States thus consent to the State Plaintiffs' request that the Court require them "to comply with the schedule that the Court previously ordered." Pl. States Opp'n Br. at 10.

Ultimately, allowing Intervener States to join fully now is easier and less prejudicial to all parties than forcing Intervener States to take an interlocutory appeal. If Intervener States are wrongly kept out of the case, and then allowed to intervene later, *that* could cause delays. *See Jacobson v. Detzner*, No. 4:18-CV-262-MW/CAS, 2018 WL 10509488, at *1 (N.D. Fla. July 1, 2018) ("[D]enying Proposed Intervenors' motion opens the door to delaying the adjudication of this case's merits for months—if not longer"). Permissive intervention avoids any such risk.

## CONCLUSION

The Court should grant intervention as of right. At a minimum, the Court should grant permissive intervention

8

Date: April 28, 2026

Respectfully submitted,

**STEVE MARSHALL**
ALABAMA ATTORNEY GENERAL

*/s/ A. Barrett Bowdre*
A. Barrett Bowdre*
  *Solicitor General*
STATE OF ALABAMA
OFFICE OF THE ATTORNEY GENERAL
501 Washington Avenue
Montgomery, Alabama 36104
Telephone: (334) 353-8892
Fax: (334) 353-8400
Barrett.Bowdre@AlabamaAG.gov

**CATHERINE L. HANAWAY**
MISSOURI ATTORNEY GENERAL

*/s/ Louis J. Capozzi III*
Louis J. Capozzi III, DC Bar No. 90018764*
  *Solicitor General*
J. Michael Patton*
  *Deputy Solicitor General*
Benjamin S. Gilberg*
  *Deputy Solicitor General*
Missouri Attorney General's Office
815 Olive Street, Suite 200
St. Louis, MO 63101
Tel. (573) 645-9662
Fax (573) 751-0774
Louis.Capozzi@ago.mo.gov
Michael.Patton@ago.mo.gov
Benjamin.Gilberg@ago.mo.gov

**JAMES UTHMEIER**
FLORIDA ATTORNEY GENERAL

*/s/ David M.S. Dewhirst*
David M.S. Dewhirst*
  *Solicitor General*
Jason J. Muehlhoff*
  *Chief Deputy Solicitor General*
Office of the Attorney General
PL-01, The Capitol
Tallahassee, FL 32399-1050
(850) 414-3300
david.dewhirst@myfloridalegal.com
jason.muehlhoff@myfloridalegal.com

**THEODORE E. ROKITA**
INDIANA ATTORNEY GENERAL

/s/ *James A. Barta*
James. A Barta, DC Bar No. 1032613*
  *Solicitor General*
Office of the Indiana Attorney General
302 W. Washington Street
IGC South, Fifth Floor
Indianapolis, IN 46204-2770
Phone: (317) 232-0709
Fax: (317) 232-7979
James.Barta@atg.in.gov

9

**KRIS W. KOBACH**
KANSAS ATTORNEY GENERAL

*/s/ James R. Rodriguez*
James R. Rodriguez*
*Assistant Attorney General*
Kansas Office of the Attorney General
Topeka, Kansas 66612
Phone: (785) 368-8197
jay.rodriguez@ag.ks.gov


**AUSTIN KNUDSEN**
MONTANA ATTORNEY GENERAL

*/s/ Christian B. Corrigan*
Christian B. Corrigan*
 *Solicitor General*
Montana Department of Justice
215 N. Sanders Helena, MT 59601
(406) 444-2707 (o)
Christian.Corrigan@mt.gov


**GENTER DRUMMOND**
OKLAHOMA ATTORNEY GENERAL

*/s/ Garry M. Gaskins, II*
Garry M. Gaskins, II*
 *Solicitor General*
Office of the Attorney General of Oklahoma
313 NE Twenty-First St.
Oklahoma City, OK 73105
(405) 521-3921
garry.gaskins@oag.ok.gov

**ELIZABETH B. MURRILL**
LOUISIANA ATTORNEY GENERAL

*/s/ J. Benjamin Aguiñaga*
J. Benjamin Aguiñaga*
 *Solicitor General*
Louisiana Department of Justice
1885 N. Third St.
Baton Rouge, LA 70802
(225) 506-3746
AguinagaB@ag.louisiana.gov


**MICHAEL T. HILGERS**
NEBRASKA ATTORNEY GENERAL

/s/ *Cody S. Barnett*
Cody S. Barnett*
 *Solicitor General*
Nebraska Department of Justice
1445 K Street, Room 2115
Lincoln, Nebraska 68508
Tel.: (402) 471-2683
Fax: (402) 471-3297
cody.barnett@nebraska.gov


**ALAN WILSON**
SOUTH CAROLINA ATTORNEY GENERAL

*/s/ Joseph D. Spate*
Joseph D. Spate*
 *Deputy Solicitor General*
1000 Assembly Street
Columbia, South Carolina 29201
Tel. (803) 734-3371
Fax (803) 734-3677
josephspate@scag.gov

10

**MARTY J. JACKLEY**
SOUTH DAKOTA ATTORNEY GENERAL

/s/ *Grant Flynn*
Grant Flynn*
  *Assistant Attorney General*
South Dakota Office of the Attorney General
1302 East SD Highway 1889, Suite 1
Pierre, SD 57501-8501
Telephone: (605) 773-3215
Email: grant.flynn@state.sd.us


/s/ *Ian D. Prior*
Ian D. Prior (Bar No. 655704)
America First Legal Foundation
611 Pennsylvania Ave S.E. No. 231
Washington, D.C. 20003
(410) 205-9681
ian.prior@aflegal.org


*\* Pro hac vice forthcoming*

**KEN PAXTON**
TEXAS ATTORNEY GENERAL

s/ *David Bryant*
David Bryant*
  *Senior Special Counsel*
Office of the Attorney General of Texas
Special Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Tel.: (512) 463-2100
david.bryant@oag.texas.gov

11

**CERTIFICATE OF SERVICE**

I certify that on April 28, 2026, the above was filed electronically through the Court's electronic filing system to be served electronically on counsel for the parties.

/s/ *Louis J. Capozzi III*