UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| LEAGUE OF WOMEN VOTERS OF MASSACHUSETTS, et al., | * * * | |
| Plaintiffs, | * * | |
| v. | * * | Civil Action No. 1:26-cv-11549-IT |
| DONALD J. TRUMP, in his official capacity as President of the United States, et al., | * * * * | |
| Defendants. | * * | |
| STATE OF CALIFORNIA, et al., | * * * | |
| Plaintiffs, | * * | |
| v. | * * | Civil Action No. 1:26-cv-11581-IT |
| DONALD J. TRUMP, in his official capacity as President of the United States, et al., | * * * | |
| Defendants. | * * | |

**BRIEF OF WISCONSIN DEMOCRACY CAMPAIGN, INC., EXPO OF WISCONSIN, INC., JALEYCE ORAEDU, JASMINE ORAEDU, AND AHARON SHELEF AS *AMICI CURIAE* IN SUPPORT OF PLAINTIFFS' MOTIONS FOR PRELIMINARY INJUNCTION AND SUMMARY JUDGMENT**

1

**TABLE OF CONTENTS**

TABLE OF CONTENTS.................................................................................................i

TABLE OF AUTHORITIES .........................................................................................ii

INTEREST OF *AMICI CURIAE*.................................................................................. 1

INTRODUCTION ....................................................................................................... 3

BACKGROUND ......................................................................................................... 4

ARGUMENT ............................................................................................................ 12

I.      EO 14399 threatens to unlawfully disenfranchise Wisconsin voters. ............ 12

        a.      Verifying voter citizenship with inaccurate federal data will
                disenfranchise eligible Wisconsin voters.............................................. 12

        b.      Burdening USPS with election duties outside its expertise and
                without additional resources will further delay mailed absentee
                ballots and increase the risk of disenfranchising Wisconsin voters..... 14

II.     EO 14399's conflicts with Wisconsin election laws and practices will
        cause confusion and undermine voter confidence and participation. ............. 16

        a.      EO 14399 conflicts with Wisconsin's and federal elections records
                requirements. ...................................................................................... 16

        b.      EO 14399 may prohibit certain Wisconsinites from voting by mail. ... 17

        c.      EO 14399 may interfere with Wisconsin's in-person absentee
                voting and increase election day challenges to absentee ballots.......... 18

III.    EO 14399 threatens the privacy of all Wisconsinites.................................... 19

CONCLUSION......................................................................................................... 20

# TABLE OF AUTHORITIES

**Cases**

*Brown v. Wis. Elections Comm'n,*
2025 WI 5, 414 Wis. 2d 601, 16 N.W.3d 619 ....................................................... 6

*Carey v. Wis. Elections Comm'n,*
624 F.Supp.3d 1020 (W.D. Wis. 2022) ................................................................ 11

*Jefferson v. Dane Cnty.,*
2020 WI 90, 394 Wis. 2d 602, 951 N.W.2d 556 ................................................... 6

*Luedtke v. Yunker,*
No. 25CV1277, Order (Waukesha Cnty. Cir. Ct. Feb. 13, 2026) ......................... 11

*Priorities USA v. Wis. Elections Comm'n,*
2024 WI 32, 412 Wis. 2d 594, 8 N.W.3d 429 ............................................... 4, 6, 11

*Rise, Inc. v. Wis. Elections Comm'n,*
2024 WI App 48, 413 Wis. 2d 366, 11 N.W.3d 241 ............................................... 6

*Sewell v. Racine Unified Sch. Dist. Bd. of Canvassers,*
2022 WI 18, 401 Wis. 2d 58, 972 N.W.2d 155 ..................................................... 6

*State ex rel McGrael v. Phelps,*
144 Wis. 1, 128 N.W. 1041 (Wis. 1910) .............................................................. 18

*State ex rel. Zignego v. Wis. Elections Comm'n,*
2021 WI 32, 396 Wis. 2d 391, 957 N.W.2d 208 .......................................... 4, 6, 13

*Teigen v. Wis. Elections Comm'n,*
2022 WI 64, 403 Wis. 2d 607, 976 N.W.2d 519 ................................................... 6

**Statutes and Constitutional Provisions**

52 U.S.C. § 20503 ................................................................................................ 8

52 U.S.C. § 20701 .............................................................................................. 17

U.S. Const. art. I, § 4, cl. 1 ................................................................................. 17

Wis. Const. art. I, § 1 ......................................................................................... 18

Wis. Const. art. III ............................................................................................. 18

Wis. Stat. chs. 5-10 ........................................................................................... 6

Wis. Stat. § 5.02 ......................................................................................... 11, 12

Wis. Stat. § 5.05 ............................................................................................... 5

Wis. Stat. § 5.66 ............................................................................................. 16

Wis. Stat. ch. 6 ................................................................................................. 4

Wis. Stat. § 6.02 ......................................................................................... 7, 17

Wis. Stat. § 6.03 ............................................................................................... 7

Wis. Stat. § 6.20 ............................................................................................... 6

Wis. Stat. § 6.22 ............................................................................................. 10

Wis. Stat. § 6.24 ............................................................................................. 10

Wis. Stat. § 6.28 ............................................................................................... 8

Wis. Stat. § 6.29 ............................................................................................... 8

Wis. Stat. § 6.34 ............................................................................................. 10

Wis. Stat. § 6.36 ............................................................................................. 13

Wis. Stat. § 6.55 ............................................................................................... 8

Wis. Stat. § 6.85 ............................................................................................... 6

Wis. Stat. § 6.855 ....................................................................................... 10, 18

Wis. Stat. § 6.86 ........................................................................................... 6, 9

Wis. Stat. § 6.865 ........................................................................................... 10

Wis. Stat. § 6.87 ........................................................................................ *passim*

Wis. Stat. § 6.88 ............................................................................................. 18

Wis. Stat. § 7.10 ............................................................................................... 5

Wis. Stat. §§ 7.15-7.22 ..................................................................................... 4

Wis. Stat. § 7.20 ............................................................................................... 5

Wis. Stat. § 7.21 ...................................................................................................... 5

Wis. Stat. §§ 7.21-7.22 ........................................................................................... 5

Wis. Stat. § 7.23 ............................................................................................... 16, 17

Wis. Stat. §§ 7.51-7.53 ........................................................................................... 4

Wis. Stat. § 7.52 .................................................................................................... 11

Wis. Stat. § 7.60 ...................................................................................................... 5

Wis. Stat. § 9.01 ...................................................................................................... 4

Wis. Stat. ch. 11 ...................................................................................................... 6

Wis. Stat. ch. 12 ...................................................................................................... 6

Wis. Stat. § 15.61 .................................................................................................... 5

Wis. Stat. § 19.62 .................................................................................................. 19

Wis. Stat. § 19.69 .................................................................................................. 20

**Other Authorities**

Executive Order 14399 ................................................................................... *passim*

Make Elections Great Again Act, H.R. 7300, 119th Congress (2025-2026) .............. 12

*Military and Overseas Voters*, WIS. ELECTIONS COMM'N ........................................... 10

SAVE Act, H.R. 22, 119th Congress (2025-2026) ...................................................... 12

SAVE America Act, H.R. 7296, 119th Congress (2025-2026) ................................... 12

Wis. Admin. Code § EL 9.02 .................................................................................... 19

Wis. Admin. Code chs. ETH-1 to ETH-26 .................................................................. 6

Wis. Admin. Code, chs. EL-2 to EL-20 ...................................................................... 6

## INTEREST OF *AMICI CURIAE*[1]

Wisconsin Democracy Campaign, Inc. (WDC) is a nonpartisan Wisconsin nonstock corporation recognized as tax exempt under Section 501(c)(3) of the Internal Revenue Code (IRC). WDC functions as a watchdog, advocating for and educating about government transparency and accountability to create a just democracy. WDC engages in many activities designed to encourage Wisconsinites to vote, including voter registration and get-out-the-vote campaigns. WDC advocates for secure, broadly accessible voting rules and litigates to protect Wisconsinites' voting rights.

EXPO of Wisconsin, Inc. (EXPO) is a nonpartisan Wisconsin nonstock corporation recognized as tax exempt under Section 501(c)(3) of the IRC. EXPO supports people impacted by the criminal legal system and encourages civic engagement across Wisconsin. EXPO conducts voter education, registration, and advocacy efforts, including focused efforts to educate individuals with past or current involvement in the criminal legal system about their voting rights, enabling them to exercise those rights where eligible under Wisconsin law. Because eligibility to vote in Wisconsin depends on the status of an individual's sentence, EXPO works with populations for whom voting eligibility is complicated and often misunderstood and advocates for the rights of Wisconsin voters in related litigation. Executive Order (EO) 14399 threatens to exacerbate confusion and create additional barriers to

---

[1] No party's counsel authored this brief in whole or in part; no party's counsel contributed money intended to fund preparing or submitting this brief; and no person—other than *amici* or their counsel—contributed money to fund preparing or submitting this brief.

1

voting, especially for voters who may already face heightened scrutiny and administrative obstacles.

Individual *amici* Jaleyce Oraedu, Jasmine Oraedu, and Aharon Shelef are current or prospective Wisconsin voters who will rely on absentee voting in Wisconsin's November 2026 general election while attending college outside the state. Ms. Jaleyce Oraedu and Ms. Jasmine Oraedu are students at the University of Minnesota–Twin Cities in Minneapolis, Minnesota, and are residents of Germantown, Wisconsin. They are not yet registered to vote in Wisconsin but will be eligible, and intend to, register to vote and to vote for the first time in the August 2026 partisan primary and November 2026 general election. Mr. Shelef is a student at Yale University in New Haven, Connecticut, and a resident of Madison, Wisconsin. He is a registered Wisconsin voter who previously voted absentee by mail in the April 2026 spring election and who attempted to vote by absentee ballot in the February 2026 primary but did not receive his ballot.

Because they reside out of state for school, the individual *amici* will vote absentee in the future. As less experienced voters, they are particularly vulnerable to confusion and barriers arising from changes to election procedures. Mr. Shelef's recent experience demonstrates the real challenge that voters may face in receiving and returning their ballots in time to be counted. EO 14399's requirements, including those affecting absentee ballot transmission, voter verification, and coordination with federal systems, complicate the absentee voting process and increase the risk that ballots will be delayed or not counted. These risks are especially acute for student

2

voters residing outside Wisconsin, who depend on the consistent, efficient, and reliable functioning of absentee voting systems to exercise their constitutional right to vote.

Together, the organizational and individual *amici* have a strong interest in ensuring that they and other eligible Wisconsin voters are able to exercise their constitutional right to vote through Wisconsin's existing election administration system; that elections in Wisconsin continue to be administered in ways that are accessible, reliable, and consistent with *amici*'s rights under existing state constitutional, statutory, and administrative law; and that eligible voters— particularly those who rely on absentee voting or who face additional barriers to participation—are not disenfranchised by the implementation of EO 14399.

## INTRODUCTION

As the Plaintiffs in the consolidated cases demonstrate in their memoranda in support of their motions for preliminary injunction and summary judgment, neither the federal executive branch broadly, nor the Office of the President or any federal agency specifically, has the authority to unilaterally seize control of and dictate the regulation of elections. Doc. No. 74 at 18-28 (26-cv-11549-IT); Doc. No. 106 at 19-31 (26-CV-11581-IT). Yet, EO 14399 seeks to do just that, with particularly alarming potential consequences for Wisconsin's unique election administration system and Wisconsin voters. *Amici* submit this brief in support of the Plaintiffs' preliminary injunction and summary judgment motions to highlight for the Court several ways in which EO 14399 would affect Wisconsin's electoral process and harm Wisconsin voters. Namely, EO 14399:

(1)  establishes procedures that threaten unlawful voter disenfranchisement;

(2)  conflicts with Wisconsin election laws and practices, creating procedural confusion and compromising voter confidence; and

(3) imperils voter privacy.

For these reasons, on top of those advanced by the Plaintiffs, *amici* urge the Court to grant the Plaintiffs' motions for a preliminary injunction and/or summary judgment.

## BACKGROUND

Wisconsin has a uniquely decentralized election system. *State ex rel. Zignego v. Wis. Elections Comm'n*, 2021 WI 32, ¶13, 396 Wis. 2d 391, 957 N.W.2d 208.[2] Unlike many states, rather than place responsibility for overseeing and administering elections in a single official, such as a Secretary of State, Wisconsin administers elections using a multi-tiered system. *See Priorities USA v. Wis. Elections Comm'n*, 2024 WI 32, ¶27, 412 Wis. 2d 594, 608, 8 N.W.3d 429, 436; *Zignego*, 2021 WI 32, ¶13, 396 Wis. 2d at 400, 957 N.W.2d at 212. Conducting elections in Wisconsin occurs primarily at the local level, where approximately 1,850 municipal clerks verify voter registrations, accept requests for absentee ballots, send and receive absentee ballots, select and establish polling places, review and count ballots, complete the local canvass, and conduct any recount that candidates request. *See* Wis. Stat. ch. 6, subchs. II, IV; §§ 7.15-7.22, 7.51-7.53, 9.01.

---

[2] *See Wisconsin,* MIT ELECTION DATA + SCIENCE LAB, https://electionlab.mit .edu/landscapes/wisconsin ("Wisconsin is notable for having perhaps the most decentralized system of election administration in the nation.") (last visited April 22, 2026).

Wisconsin's 72 county clerks also play a role. They print ballots and absentee ballot return envelopes, which they distribute to municipal clerks, and conduct a county-wide canvass for votes within their jurisdiction. *Id*. §§ 7.10, 7.60.[3]

Finally, the Wisconsin Elections Commission ("WEC" or "the Commission"), provides statewide election oversight. WEC is a six-member, bipartisan body established by statute in 2015. WEC comprises three Republican and three Democratic appointees,[4] with a nonpartisan Administrator, nominated by the Commission and subject to Senate confirmation, who runs the Commission on a day-to-day basis and serves as Wisconsin's "chief election officer." Wis. Stat. §§ 5.05(3d), (3g), (4) ("All employees of the commission shall be nonpartisan."), 15.61. WEC administers Wisconsin's election code. Wis. Stat. § 5.05(1) (intro), (2w). WEC trains and supports the municipal and county clerks who conduct elections throughout the state, *see, e.g.*, *id*. § 5.05(5t)-(7), and also develops and maintains online tools to inform Wisconsin voters about election eligibility requirements, the registration process, polling locations, and how to request absentee ballots. *Id*. § 5.05(12)-(13). WEC's primary voter-facing tool is MyVote, an online portal through which voters

---

[3] Because of the size of its population, one Wisconsin municipality—the City of Milwaukee—and one Wisconsin county—Milwaukee County—are statutorily required to have their elections conducted by special commissions, the Milwaukee Election Commission and the Milwaukee County Election Commission, respectively. Wis. Stat. § 7.20. The Milwaukee Election Commission generally fulfills the duties under state law for the City of Milwaukee that are fulfilled by municipal clerks in other cities. *Id*. §§ 7.21-7.22. Likewise, the Milwaukee County Election Commission generally fulfills the duties under state law for Milwaukee County that are fulfilled by county clerks in other counties. *Id*. § 7.21.

[4] WEC membership can be expanded to include representatives from other political parties if any were to qualify for ballot status under Wisconsin law and receive at least 10% of the vote in a gubernatorial election. Wis. Stat. § 15.61(1)(a)6.

can, among other things, request that absentee ballots be mailed to them. Although WEC operates MyVote, a voter's absentee ballot request is routed to their local clerk, who reviews their request and sends out their ballot. *See id*. § 6.86.

To administer this complex election administration system, the Wisconsin Legislature has—over many years—enacted a comprehensive set of statutes that (along with regulations promulgated by WEC and its predecessor agencies) provide the framework for Wisconsin's elections. *See generally* Wis. Stat. chs. 5-10, 12; Wis. Admin. Code, chs. EL-2 to EL-20.[5] Wisconsin allows for no-excuse absentee voting, including both in-person absentee voting in the days leading up to an election and absentee voting by mail. Wis. Stat. §§ 6.20, 6.85, 6.86(1)(a). The statutes and regulations governing absentee voting by mail are summarized briefly below.

Wisconsin courts have also, over a period of many years, interpreted and applied Wisconsin's election statutes, in the context of our state's constitution and the federal constitution. This body of law is substantial and growing.[6]

---

[5] Wisconsin's campaign finance rules are codified in Wis. Stat. ch. 11 and Wis. Admin. Code chs. ETH-1 to ETH-26, which are administered by the Wisconsin Ethics Commission, a separate six-member, bipartisan body established by statute in 2015.

[6] *See, e.g.*, *Brown v. Wis. Elections Comm'n*, 2025 WI 5, 414 Wis. 2d 601, 16 N.W.3d 619 (limiting standing to appeal a WEC administrative decision to parties aggrieved by the decision); *Priorities USA*, 2024 WI 32, 412 Wis. 2d 594, 8 NW.3d 429 (allowing use of drop boxes to return absentee ballots); *Teigen v. Wis. Elections Comm'n*, 2022 WI 64, 403 Wis. 2d 607, 976 N.W.2d 519 (barring use of drop boxes and ballot return assistance for absentee ballots); *Sewell v. Racine Unified Sch. Dist. Bd. of Canvassers*, 2022 WI 18, 401 Wis. 2d 58, 972 N.W.2d 155 (electors do not have independent right to have ballots opened and re-examined); *Zignego*, 2021 WI 32, 396 Wis. 2d 391, 957 N.W.2d 208 (requiring municipal clerks and local boards of elections commissioners, not WEC, to change the voter registration of electors who move out of the applicable jurisdiction); *Jefferson v. Dane Cnty.*, 2020 WI 90, 394 Wis. 2d 602, 951 N.W.2d 556 (photo identification required to obtain absentee ballot during declared health emergency unless voter's own age, physical illness or infirmity renders the voter indefinitely confined); *Rise, Inc. v. Wis. Elections Comm'n*, 2024 WI App 48, 413 Wis. 2d 366, 11 N.W.3d 241 (requiring municipal clerks to count absentee ballots with

Collectively, Wisconsin's enacted statutes governing absentee voting and the court decisions interpreting and applying those laws (and the implicated state constitutional provisions) encourage voter participation by ensuring that absentee voting by mail is convenient and secure. In recent years, the number of absentee ballots returned by mail by Wisconsin's approximately 3.6 million registered voters[7] has risen from 565,591 in 2018[8] to more than 1.5 million in 2024.[9]

### *Eligibility to Vote in Wisconsin*

To vote in Wisconsin, a person must be a United States citizen who is at least 18 years old by election day, and have resided in the city, village, or town in which the person wishes to vote for at least 28 days before election day. Wis. Stat. § 6.02. If convicted of a felony, the person must have fully completed the applicable sentence, including any probation, parole, or extended supervision. *Id*. § 6.03(1)(b).

### *Registering to Vote*

Wisconsin permits eligible electors to register to vote in person at the municipal or county clerk's office, by US mail delivered to the municipal clerk's office,

---

immaterial omissions from the ballot return envelope).

[7] According to WEC, Wisconsin had 3,601,785 active registered voters as of February 1, 2026. *February 1, 2026 Voter Registration Statistics*, WIS. ELECTIONS COMM'N, Feb. 2, 2026, https://elections.wi.gov/resources/statistics/february-1-2026-voter-registration-statistics.

[8] Lawrence Andrea, *Absentee voting numbers in Wisconsin soar over the 2018 midterms*, MILWAUKEE J. SENTINEL, Nov. 8, 2022, available at https://www.jsonline.com/story/news/politics/elections/2022/11/08/absentee-voting-numbers-in-wisconsin-soar-over-the-2018-midterms/69627990007/.

[9] Rich Kremer, *More than 1.5M Wisconsin absentee ballots cast in presidential election*, WIS. PUBLIC RADIO, Nov. 4, 2024, updated Jan. 14, 2025, available at https://www.wpr.org/news/more-than-one-million-absentee-ballots-cast-wisconsin-presidential-election-2024-nov-4.

or online by the third Wednesday preceding an election (up to 20 days before the election). *Id.* § 6.28. Beyond that date, eligible electors may register in person at the applicable municipal clerk's office by 5:00 p.m. or the close of business, whichever is later, on the Friday before election day. *Id.* § 6.29. And eligible electors may register and vote in person at the polling location on election day. *Id.* § 6.55. Because Wisconsin permits same-day voter registration at the polls, and has done so since before 1994, Wisconsin is exempt from provisions of the National Voter Registration Act. 52 U.S.C. § 20503(b)(2).

### *Requesting an Absentee Ballot*

Wisconsin provides qualified voters with a range of options to request to vote absentee; most frequently, this is accomplished by mail, in person at the municipal clerk's office, by electronic mail, or through MyVote. Wis. Stat. § 6.86.[10]

A qualified Wisconsin voter may request an absentee ballot for one election or to automatically receive absentee ballots "for every election that is held within the same calendar year in which the application is filed." Wis. Stat. § 6.86(2m)(a). This means a voter may submit one request that absentee ballots for up to four elections (spring primary, spring election, partisan primary, general election) in a calendar year be automatically sent to them. If a voter moves during the year that they made such a request, they must notify their municipal clerk of the move. *Id.* The notified

---

[10] *See also*, *Vote Absentee by Mail*, MYVOTE WISCONSIN, available at https://archive.ph/fiux0 (last visited April 22, 2026).

clerk "shall forward" the elector's request for an absentee ballot to the voter's new municipal clerk, and "that municipal clerk shall honor the request." *Id.* § 6.86(2m)(b).

A Wisconsin voter who is indefinitely confined because of age, physical illness, permanent disability or other infirmity may request "that an absentee ballot be sent to the elector automatically for every election." *Id.* § 6.86(2)(a). When such a voter does not return their absentee ballot for an election, the municipal clerk stops mailing ballots to that voter until and unless another request is made. *Id.* § 6.86(2)(b).

Requests for absentee ballots made by mail must generally be received no later than 5:00 p.m. on the Thursday (the fifth day) before election day. *Id.* § 6.86(1)(b). Requests made in person must be made no earlier than 14 days before the election and no later than the Sunday before the election. *Id.*

In response to a proper absentee ballot request, the municipal clerk shall initial an absentee ballot, *Id.* § 6.87(1), "verify that the name or proof of identification" matches that found on the absentee ballot request form, and place the absentee ballot in an unsealed envelope, *Id.* § 6.87(2). On one side of the envelope, a certificate must be printed for the voter and the voter's witness to fill out. *Id.* Through that certificate, the voter certifies, under state penalties for false statements, that they are qualified to vote absentee, and further certify that they marked their ballot in the presence of a witness. *Id.* The same certification provides space for the witness to certify, under state penalties for false statements, that they (the witness) are a United States citizen and that the relevant absentee ballot was properly executed, as described on the certificate. *Id.* The ballot and certificate envelope are then mailed by the

9

municipal clerk to the voter's residence or may be delivered "personally" to the voter at the clerk's office or at an alternate site that has, in accordance with Wis. Stat. § 6.855, been designated well in advance of the election. *Id.* § 6.87(3).

Military and overseas voters have additional options for voting absentee. They are permitted not only to request absentee ballots by email or fax, but also to receive absentee ballots from the municipal clerk by email or fax or, if eligible, by direct download from MyVote.[11] Wis. Stat. § 6.22(1)(b). They are also permitted to request an absentee ballot using a federal absentee ballot request form. Wis. Stat. §§ 6.24(4)(b), 6.865. Requests for overseas voters must be submitted and received by the clerk by 5:00 p.m. on the Thursday (fifth day) before the election. *Id.* § 6.86(1)(b). Requests for military voters must generally be submitted and received by the clerk by 5:00 p.m. on the Friday before election day, *id.* §§ 6.22(4)(b), 6.86(1)(c), except that for elections involving a federal office, active military voters may request an absentee ballot up until 5:00 p.m. on election day. *Id.* §§ 6.34(1), 6.86(1)(b).

### *Marking an Absentee Ballot*

Upon receipt of their absentee ballot (contained in the certificate envelope) the voter marks the ballot in the presence of a witness and places the ballot in the certificate envelope. The voter must then seal, sign, date, and put their residential

---

[11] *See also, Military and Overseas Voters*, WIS. ELECTIONS COMM'N at https://myvote.wi.gov/Military-Overseas-Voters (last visited April 22, 2026).

address on the envelope. The witness must also sign, date, and put their printed name and residential address on the envelope. *Id.* § 6.87(4).

### *Returning an Absentee Ballot*

Wisconsin does not currently allow electronic return of absentee ballots. Rather, they must be returned by mail or delivered in person to the municipal clerk. *Id.* § 6.87(4)(b)1. State law has been interpreted to allow an elector to also return their absentee ballot to their polling location on election day. *See Luedtke v. Yunker*, No. 25CV1277, Order (Waukesha Cnty. Cir. Ct. Feb. 13, 2026) (dismissing challenge to WEC guidance permitting return of absentee ballots to polling place on election day) (attached as Ex. 1). Municipal clerks may, but are not required to, provide secure drop boxes for absentee voters to return their completed ballots. *Priorities USA*, 2024 WI 32, ¶34, 412 Wis. 2d at 611, 8 N.W.2d at 437. In general, each voter must personally return an absentee ballot; only voters with disabilities may use assistance to return their ballots. *Carey v. Wis. Elections Comm'n,* 624 F. Supp. 3d 1020, 1033 (W.D. Wis. 2022). In all circumstances, absentee ballots must be delivered to the polling place or, in municipalities that use a central-count procedure to canvass absentee ballots, to the municipal clerk by 8:00 p.m. on election day. Wis. Stat. §§ 6.87(6), 7.52(1)(a).

### *Wisconsin Elections Schedule*

Wisconsin holds as many as four regularly scheduled elections in a calendar year. Nonpartisan elections occur every year in a spring election held during the first week of April, with the primary for that election occurring in February. *Id.* § 5.02(21),

(22). Partisan elections are held in November of even-numbered years, with the partisan primary occurring during the second week of August. *Id*. § 5.02(5), (12s). Wisconsin already has held two elections in 2026: the spring election for nonpartisan offices was held on April 7, following the primary for the spring election on February 17. The general election, which includes elections for partisan state and federal offices (such as congressional elections), will be held on November 3, 2026, following the partisan primary on August 11, 2026.

## ARGUMENT

### I.    EO 14399 threatens to unlawfully disenfranchise Wisconsin voters.

To date, Congress has considered and declined to enact several bills that would impose documentary proof of citizenship requirements for voter registration and participation in federal elections and would restrict the use of mail-in absentee votes. *See* SAVE Act, H.R. 22, 119th Congress (2025-2026); SAVE America Act, H.R. 7296, 119th Congress (2025-2026); Make Elections Great Again Act, H.R. 7300, 119th Congress (2025-2026). EO 14399 is an attempted executive end-run around Congress, threatening to disenfranchise Wisconsin voters in at least two ways.

### a. Verifying voter citizenship with inaccurate federal data will disenfranchise eligible Wisconsin voters.

The order contains several provisions requiring the Department of Homeland Security and the Social Security Administration to compile lists of eligible voters and to investigate and prosecute state and local officials who participate in printing, producing, shipping, or distributing ballots to ineligible voters. EO 14399, § 2. This is plainly a threat against state and local election officials designed to coerce compliance

12

with the federal government's current desire that states use the federal SAVE System to verify voter citizenship and vet the accuracy of state voter registration lists.

But Wisconsin already has appropriate mechanisms in place to continuously verify the accuracy of its voter registration list. The task is a shared responsibility, shouldered primarily by municipal clerks with support from WEC. *See Zignego*, 2021 WI 32, ¶13, 396 Wis. 2d at 399, 957 N.W.2d at 212. By law, Wisconsin is enrolled in the Electronic Registration Information Center (ERIC), Wis. Stat. § 6.36(1)(ae), a nonprofit, nonpartisan membership organization created by and comprised of state election officials. Currently, 26 states and the District of Columbia participate in ERIC.[12] At least every 60 days, members securely submit certain voter registration, motor vehicle licensing, and identification data to ERIC. In turn, ERIC's technical staff compares the data received from all states to create list maintenance reports that identify voters who appear to have moved to other states or within the same state, who have duplicate registrations within the same state, and who have died. Wisconsin and other member states use these reports to keep their voter registration lists up to date.[13]

The SAVE System was not designed to verify the accuracy of voter registration lists and has significant limitations that threaten to disenfranchise eligible voters.[14]

---

[12] *What is ERIC?*, ELECTRONIC REGISTRATION INFORMATION CENTER, https://ericst ates.org/about/ (last visited Apr. 22, 2026).

[13] *How ERIC Works*, ELECTRONIC REGISTRATION INFORMATION CENTER, https://ericstates.org/how-does-it-work/ (last visited Apr. 22, 2026).

[14] *See also* https://fairelectionscenter.org/wp-content/uploads/2025/07/Examining-Changes-to-USCISs-SAVE-System.pdf (last visited April 24, 2026).

Doc. No. 74 at 12, 15-16 & nn. 5, 9, 10 (No. 26-cv-11549-IT); Doc. No. 106 at 21 (No. 26-cv-11581-IT); Doc No. 105 at 9-10, ¶¶15-18 (No. 26-cv-11581-IT). Its use most threatens naturalized citizens. In Wisconsin, there are over 140,000 naturalized citizens, of whom nearly 21,000 were naturalized between 2016 and 2020.[15] In a state where the results of presidential elections are often decided by fewer than 30,000 votes, the consequence of unlawfully disenfranchising voters can be significant.[16]

### b. Burdening USPS with election duties outside its expertise and without additional resources will further delay mailed absentee ballots and increase the risk of disenfranchising Wisconsin voters.

EO 14399 puts significant responsibility to take a proactive role in mail-in voting on the USPS, an agency with no role in elections other than to deliver mailed ballots. Within 60 days of the date of the order (by May 30, 2026), the Postmaster General must initiate proposed rulemaking, with final rules issued no later than 120 days after the order's issuance (by July 29, 2026). EO 14399, § 3. Although the EO identifies a number of express requirements that the rules must contain, it provides no details about how USPS is to implement them, leaving it to USPS to fill the logical gaps with rules yet to be developed on an extremely compressed timeline.[17]

---

[15] *New American Voters in Wisconsin: Building the Electoral Power of Naturalized Citizens*, NATIONAL PARTNERSHIPS FOR NEW AMERICANS, 5 (Sept. 2022) available at https://partnershipfornewamericans.org/wp-content/uploads/2022/09/WI-NAV-State-Report-Final-2.pdf#:~:text=There%20are%20more%20than%20140.

[16] Donald Trump won Wisconsin in the 2016 presidential election by 22,748 votes and the 2024 presidential election by 29,397 votes; Joe Biden won Wisconsin in the 2020 presidential election by 20,682 votes. This not a new development in Wisconsin; Al Gore won Wisconsin in the 2000 presidential election by 5,708 votes. *Wisconsin vote in presidential elections since 1848*, WISCONSIN BLUE BOOK 2025-2026, 495, available at https://legis.wisconsin.gov/lrb/media/10uewg3p/2025200-elections-and-political-parties.pdf.

[17] Nor does the order clarify how states in the midst of election cycles when USPS completes its rulemaking are to implement the new rules. Wisconsin's 2026 partisan primary will be

14

The duties imposed on USPS are problematic. Notably, the agency is underfunded and overburdened and implementing EO 14399 in light of this would significantly affect Wisconsin voters.[18] USPS already delivers absentee ballots postmarked before election day after election day. In Wisconsin, absentee ballots received after election day are not counted. Wis. Stat. § 6.87(6). Just last month, 269 Milwaukee County absentee ballots cast in Wisconsin's spring election were received after election day and not counted.[19]  Wisconsin has only two major USPS sorting facilities, located in Milwaukee and Green Bay. Most mail in Wisconsin, even when sent from one address to another in the same municipality, is sent to Milwaukee or Green Bay, sorted, and then transmitted back to the local post office before delivery. A smaller portion of Wisconsin mail is sent to the Twin Cities in Minnesota for sorting and then returned to Wisconsin for delivery.[20] All of this takes time and resources.

---

held on August 11, 2026—a mere 13 days after the July 29 rulemaking deadline. Absentee ballots will have been distributed, and in-person absentee voting will have commenced, before USPS rulemaking is complete. Will the rules go into effect immediately? Or will they apply only to elections not already underway? EO 14399 does not answer these questions.

[18] Hansi Lo Wang, *The Postal Service may be out of cash in 2027 without Congress' help, postmaster says*, NATIONAL PUBLIC RADIO, Mar. 17, 2026, available at https://www.npr.org/2026/03/17/nx-s1-5750419/usps-running-out-of-money-postal-service-david-steiner; Richelle Wilson, *Wisconsin village faces mail delivery delays amid financial crisis for US Postal Service*, WIS. PUBLIC RADIO, Apr. 16, 2026, available at https://www.wpr.org/news/wisconsin-village-brown-deer-usps-postal-service-crisis.

[19]Mariana La Roche, *Milwaukee Election Commission reports late delivery of absentee ballots*, WISN 12, Apr. 9, 2026, available at https://www.wisn.com/article/milwaukee-election-commission-reports-late-delivery-of-absentee-ballots/70977867.

[20] *61 Regions with RPDCs*, RESEARCH HUB, available at https://www.randymajors.org/customgmap?x=-89.4641473&y=44.2557563&cx=-98.2092645&cy=37.5562624&zoom=5&mapbuilder=true&areatype=zips&sheetid=1pN41Qgq4thAjpFnqX7j74TNSVE1bcQDbABvb8Lx0LIs&markertype=sheet&markers=1eW0lrO6425MJDEvu4-LrKOGWjp5jSa6831aiSx0wRro&title=61+Regions+with+RPDCs&hidelegend=hide (last visited Apr. 24, 2026).

15

The order provides no funding to USPS to fulfill the initial mandate nor to comply with its ongoing obligations. This unfunded additional work is likely to only further delay the delivery of mailed ballots, disenfranchising every Wisconsin voter whose ballot is delivered after election day.

The order also ignores entirely that Wisconsin law:

- Makes county and municipal clerks responsible for printing and distributing ballots, Wis. Stat. § 5.66(1);

- Specifies the format for absentee ballot return envelopes, requiring that one side of the envelope include statutorily prescribed certifications for the absentee voter and witness, *id.* § 6.87(2); and

- Permits clerks to return incorrectly completed absentee ballots to voters for correction, *id.* § 6.87(9).

EO 14399 provides no guidance for whether or how USPS is to take state-specific rules into account. In short, the order threatens significant confusion and logistical hurdles that will disrupt, rather than protect, Wisconsin's elections.

## II.   EO 14399's conflicts with Wisconsin election laws and practices will cause confusion and undermine voter confidence and participation.

EO 14399's sweeping language makes no effort to accommodate Wisconsin's unique voting rules, with particularly significant consequences for Wisconsin voters.

### a. EO 14399 conflicts with Wisconsin's and federal elections records requirements.

Under Wisconsin law, poll lists, ballots, absentee ballot applications, registration forms, and other records and papers "requisite to voting at any federal election, other than registration cards, may be destroyed after 22 months." Wis. Stat. § 7.23(1)(e)-(g). EO 14399 declares that "States and localities should preserve, for a *5-year period*, all records and materials—excluding ballots cast—evidencing voter

16

participation in any Federal election (e.g. ballot envelopes, regardless of carrier)." EO 14399, § 5 (emphasis added). Yet it provides states and local governments with no practical support or guidance to navigate these direct conflicts (let alone, any funding to do so). At bottom, it appears EO 14399 is designed to conflict with—and perhaps supersede—these state and federal laws, a facially unlawful proposition. *See* U.S. Const. art. I, § 4, cl. 1.

Moreover, five years of document retention—nearly triple the window created by the Congress and state legislatures (*see* 52 U.S.C. § 20701; Wis. Stat. § 7.23(1)(e)-(g))—would do little more than burden elections officials and risk the finality of elections. The longer the retention period, the more time for challenges to election results. The more challenges, meritorious or not, the more public confidence in the election process and results will be eroded.

**b.  EO 14399 may prohibit certain Wisconsinites from voting by mail.**

Qualified Wisconsinites have the right to vote in Wisconsin upon 28 days of residency. Wis. Stat. § 6.02. And Wisconsin permits residents to register to vote and to obtain absentee ballots until a few days before the election. *See* Background, *supra*. But the order prohibits USPS from transmitting ballots for individuals not enrolled on the USPS mail-in and absentee participation list, which must be prepared, finalized, and transmitted at least 60 days before election day. A person who moves to Wisconsin fewer than 60 days but more than 28 days before election day presumably would not appear on the USPS list, even if they are otherwise eligible to vote under state law, including by mail-in absentee ballot. The order could therefore

17

foreclose eligible voters from voting by mail, thwarting their right to vote, and at the very least, creating an equal protection problem under the Wisconsin Constitution which prescribes equal protection and recognizes and protects the fundamental right to vote. Wis. Const. art. I, § 1; Wis. Const. art. III; *State ex rel McGrael v. Phelps*, 144 Wis. 1, 14-15, 128 N.W. 1041, 1046 (Wis. 1910) (the right to vote is "guaranteed by the declaration of rights and by sec. 1, art. III, of the [Wisconsin] [C]onstitution.")

### c. EO 14399 may interfere with Wisconsin's in-person absentee voting and increase election day challenges to absentee ballots.

Wisconsin's absentee voters may return their ballots in several ways, including through the mail and "in-person absentee voting." *See* Wis. Stat. §§ 6.855, 6.87. Whether returned by mail or cast in-person, Wisconsin currently provides its absentee voters with the same ballots, envelopes, and certifications. EO 14399's form and its return-procedure requirements purport to apply only to ballots returned via US mail in federal elections. Wisconsin could choose a different ballot format for absentee ballots cast in person, rather than by mail, or for absentee ballots cast in nonfederal elections. But using one ballot form for absentee ballots delivered by mail and another for in-person absentee voting may invite unnecessary challenges to absentee ballots cast in person, exacerbating suspicion about election integrity. This will force Wisconsin to either adopt the order's form and return requirements for all elections or risk potential voter confusion, complaints, and litigation.

Even without such a format change, the order could cause chaos in Wisconsin's absentee voting program. Wisconsin formally processes and counts all absentee ballots on election day. *Id.* § 6.88(1). Once the ballots have been returned and are

18

sorted for counting, they are not segregated by the method of their transmittal. Once the ballots are intermixed, there is often no way to tell how any particular ballot was returned to the clerk's office. And, were the order's provisions to take effect, this itself could lead to confusion, as some election observers may seek to challenge absentee ballots from voters who are not registered with USPS for voting purposes, though often it will not be apparent from the returned absentee ballot whether that voter returned their absentee ballot through the mail. This is likely despite the fact that state law prescribes only seven legitimate bases for challenging a voter, none of which contemplates the provisions of EO 14399, *see* Wis. Admin. Code § EL 9.02(d), and, as clearly articulated by the Plaintiffs' counsel, an executive order does not supersede properly enacted state law. Doc. No. 74 at 18-28 (26-cv-11549-IT); Doc. No. 106 at 19-31 (26-CV-11581-IT).

## III.    EO 14399 threatens the privacy of all Wisconsinites.

Wisconsin law protects the privacy of personally identifiable information, including with respect to matching programs. As defined, a matching program is "the computerized comparison of information in one records series to information in another records series for use by an authority or a federal agency to establish or verify an individual's eligibility for any right, privilege or benefit or to recoup payments or delinquent debts under programs of an authority or federal agency." Wis. Stat. § 19.62(3). The state may not "use or allow the use of personally identifiable information maintained by the state authority in a match under a matching program, or provide personally identifiable information for use in a match under a matching

19

program unless the authority has" put the following things in writing and submitted the written materials to the state Public Records Board:

- The "purpose and legal authority for the matching program"; and
- The "justification for the program and the anticipated results, including an estimate of any savings."

Wis. Stat. § 19.69(1)-(2).

Here, EO 14399 encourages states to provide USPS with lists of voters who will vote by mail. At the same time, USPS must create its own list of individuals who have enrolled with USPS as intended mail-in voters and must not transmit ballots from any individual who is not on the list. EO 14399, § 3. Likewise, the order requires the federal creation of state citizenship lists, the sharing of those lists with state election officials, and the creation of a procedure pursuant to which states may suggest updates and amendments to the state citizenship lists. EO 14399, § 2. This mutual sharing of personally identifiable voter information is arguably a matching program under Wisconsin law, for which the necessary written materials have not been prepared or filed with the Public Records Board. Any person who violates Wisconsin's matching program requirements may be subject to penalties, including discharge or suspension without pay for individuals employed by Wisconsin governmental entities or financial forfeitures for anyone else.

## CONCLUSION

*Amici* respectfully urge the Court to grant the Plaintiffs' motions for a preliminary injunction and/or summary judgment and prevent Executive Order 14399 from being implemented in Wisconsin.

Dated: May 5, 2026          Respectfully submitted,

By: <u>*Electronically signed by Douglas M. Poland*</u>
    Douglas M. Poland (Wis. State Bar No. 1055189)*
    Jeffrey A. Mandell (Wis. State Bar No. 1100406)*
    Rachel E. Snyder (Wis. State Bar No. 1090427)*
    LAW FORWARD, INC.
    222 W. Washington Ave., Ste. 680
    Madison, Wisconsin 53703
    dpoland@lawforward.org
    jmandell@lawforward.org
    rsnyder@lawforward.org
    608.283.9822

    *Motions for admission *pro hac vice* pending

    *Attorneys for amici curiae Wisconsin Democracy Campaign, Inc., EXPO of Wisconsin, Inc., Jaleyce Oraedu, Jasmine Oraedu, and Aharon Shelef*

21