# EXHIBIT 18

**OFFICE OF MANAGEMENT AND BUDGET**

**CIRCULAR NO. A-108**

**TO THE HEADS OF EXECUTIVE DEPARTMENTS AND AGENCIES**

**SUBJECT:** Federal Agency Responsibilities for Review, Reporting, and Publication under the Privacy Act

1. Purpose
2. Authorities
3. Applicability
4. Background
5. Definitions
6. Publishing System of Records Notices
7. Reporting Systems of Records to OMB and Congress
8. Publishing Matching Notices
9. Reporting Matching Programs to OMB and Congress
10. Privacy Act Implementation Rules
11. Privacy Act Exemption Rules
12. Privacy Act Reviews
13. Annual FISMA Privacy Review and Report
14. Annual Matching Activity Review and Report
15. Agency Website Posting
16. Government-wide Responsibilities
17. Effectiveness
18. Inquiries

Appendix I – Summary of Key Requirements
Appendix II – Office of the Federal Register SORN Template – Full Notice
Appendix III – Office of the Federal Register SORN Template – Notice of Revision
Appendix IV – Office of the Federal Register Notice of Rescindment Template
Appendix V – Office of the Federal Register Matching Notice Template – Full Notice
Appendix VI – Office of the Federal Register Matching Notice Template – Notice of Revision

## 1. Purpose

This Office of Management and Budget (OMB) Circular describes agency responsibilities for implementing the review, reporting, and publication requirements of the Privacy Act of 1974 ("the Privacy Act"),[1] and related OMB policies.  This Circular supplements and clarifies existing OMB guidance, including OMB Circular No. A-130, *Managing Information as a Strategic Resource*,[2] *Privacy Act Implementation: Guidelines and Responsibilities*,[3] *Implementation of the Privacy Act of 1974: Supplementary Guidance*,[4] and *Final Guidance Interpreting the Provisions of Public Law 100-503, the Computer Matching and Privacy Protection Act of 1988*.[5]  All OMB guidance is available on the OMB website.[6]

This Circular establishes general requirements.  Agencies shall coordinate with OMB when implementing these general requirements and shall consult other OMB guidance documents and OMB's Office of Information and Regulatory Affairs (OIRA) for the most up-to-date information.

## 2. Authorities

OMB issues this Circular pursuant to the following authorities:

a.  Privacy Act of 1974;[7]

b.  Paperwork Reduction Act of 1995;[8] and

c.  Federal Information Security Modernization Act of 2014.[9]

## 3. Applicability

This Circular applies to all agencies and records subject to the Privacy Act.[10]

---

[1] 5 U.S.C. § 552a.

[2] OMB Circular No. A-130, Managing Information as a Strategic Resource (July 28, 2016), *available at* https://www.whitehouse.gov/sites/default/files/omb/assets/OMB/circulars/a130/a130revised.pdf.  The reissuance of Circular A-108 replaces the reporting and publication requirements in Appendix I of the 2000 version of Circular A-130.  *See id.* at n.115.

[3] Privacy Act Implementation: Guidelines and Responsibilities, 40 Fed. Reg. 28,948 (July 9, 1975), *available at* http://www.whitehouse.gov/sites/default/files/omb/assets/omb/inforeg/implementation_guidelines.pdf.

[4] Implementation of the Privacy Act of 1974: Supplementary Guidance, 40 Fed. Reg. 56,741 (Dec. 4, 1975), *available at* https://www.whitehouse.gov/sites/default/files/omb/assets/omb/inforeg/implementation1974.pdf.

[5] Final Guidance Interpreting the Provisions of Public Law 100-503, the Computer Matching and Privacy Protection Act of 1988, 54 Fed. Reg. 25,818 (June 19, 1989), *available at* https://www.whitehouse.gov/sites/default/files/omb/inforeg/final_guidance_pl100-503.pdf.

[6] OMB's privacy guidance is available at https://www.whitehouse.gov/omb/inforeg_infopoltech.

[7] 5 U.S.C. § 552a.

[8] 44 U.S.C. §§ 3501-3521.

[9] *Id.* §§ 3551-3558.

[10] *See* 5 U.S.C. § 552a(a)(1), (4).

## 4.  Background

The Privacy Act of 1974, which has been in effect since September 27, 1975, sets forth a series of requirements governing Federal agency practices with respect to certain information about individuals.  Although the Privacy Act places principal responsibility for compliance on agencies, the statute requires the Director of OMB to develop guidelines and provide continuing assistance to and oversight of implementation by agencies.[11]

On July 1, 1975, OMB issued OMB Circular No. A-108, *Responsibilities for the Maintenance of Records About Individuals by Federal Agencies*, along with *Privacy Act Implementation: Guidelines and Responsibilities* ("Privacy Act Guidelines").[12]  Circular A-108 provided guidance on agencies' responsibilities under the Privacy Act, while the Privacy Act Guidelines provided more detailed implementation guidance for the statute.  On September 30, 1975, OMB issued a supplement to Circular A-108 providing expanded guidance on the reporting requirements of the Privacy Act.[13]  This additional guidance on reporting requirements, which was subsequently updated,[14] superseded the preliminary guidance on reporting requirements contained in the Privacy Act Guidelines.

On December 12, 1985, OMB issued OMB Circular No. A-130, *Management of Federal Information Resources*.[15]  Circular A-130 established policies for the management of Federal information resources, including procedural and analytic guidelines for implementing specific aspects of the policies.  Circular A-130 rescinded Circular A-108 and replaced it with an Appendix I, *Federal Agency Responsibilities for Maintaining Records About Individuals*.  Appendix I to Circular A-130 reissued the pertinent guidance in the rescinded Circular A-108 and provided further explanation of the requirements in the Privacy Act.  OMB has revised Circular A-130 several times since its inception, including by incorporation of the requirements of the Computer Matching and Privacy Protection Act of 1988.[16]

With the reissuance of Circular A-108, OMB is revising and relocating the guidance that since 1985 had been included in Appendix I to Circular A-130.  The reissued Circular A-108, *Federal Agency Responsibilities for Review, Reporting, and Publication under the Privacy Act*, replaces the November 28, 2000 version of Appendix I to Circular A-130 and supplements OMB's Privacy Act Guidelines, which remain in effect.  OMB has also revised and reissued Circular A-

---

[11] *See id.* § 552a(v).

[12] Privacy Act Implementation: Guidelines and Responsibilities, 40 Fed. Reg. 28,948 (July 9, 1975), *available at* http://www.whitehouse.gov/sites/default/files/omb/assets/omb/inforeg/implementation_guidelines.pdf.

[13] OMB Circular No. A-108, Transmittal Memorandum No. 1, *Responsibilities for the maintenance of records about individuals by Federal agencies* (Sept. 30, 1975).

[14] *See, e.g.,* OMB Circular No. A-108, Transmittal Memorandum No. 3, *Privacy Act implementation and revised guidance on new systems report* (May 17, 1976).

[15] OMB Circular A-130, *Management of Federal Information Resources*, 50 Fed. Reg. 52,730 (Dec. 24, 1985).

[16] *See* OMB Circular A-130, *Management of Federal Information Resources*, 58 Fed. Reg. 36,068 (July 2, 1993).

130, *Managing Information as a Strategic Resource*, which provides guidance on the management of agencies' privacy programs.[17]

## 5. Definitions

For the purpose of this Circular:

a.  The terms "agency," "individual," "maintain," "matching program," "non-Federal agency," "recipient agency," "record," "routine use," "source agency," and "system of records," are defined in the Privacy Act.[18]

b.  *Data Integrity Board*.  The term "Data Integrity Board" means the board of senior officials designated by the head of an agency that is responsible for, among other things, reviewing the agency's proposals to conduct or participate in a matching program and conducting an annual review of all matching programs in which the agency has participated.[19]  At a minimum, the Data Integrity Board includes the Inspector General of the agency, if any, and the senior official designated by the head of the agency as responsible for implementation of the Privacy Act[20] (*i.e.*, the Senior Agency Official for Privacy).

c.  *Matching agreement*.  The term "matching agreement" means a written agreement between a recipient agency and a source agency (or a non-Federal agency) that is required by the Privacy Act for parties engaging in a matching program.[21]

d.  *Matching notice*.  The term "matching notice" means the notice published by an agency in the *Federal Register* upon the establishment, re-establishment, or modification of a matching program that describes the existence and character of the matching program.[22]  A matching notice identifies the agencies involved, the purpose(s) of the matching program, the authority for conducting the matching program, the records and individuals involved, and additional details about the matching program.

e.  *Senior Agency Official for Privacy*.  The term "Senior Agency Official for Privacy" means the senior official, designated by the head of each agency, who has agency-wide responsibility for privacy, including implementation of privacy protections; compliance with Federal laws, regulations, and policies relating to privacy; management of privacy risks at the agency; and a central policy-making role in the agency's development and evaluation of legislative, regulatory, and other policy proposals.

---

[17] OMB Circular No. A-130, Managing Information as a Strategic Resource (July 28, 2016), *available at* https://www.whitehouse.gov/sites/default/files/omb/assets/OMB/circulars/a130/a130revised.pdf.
[18] *See* 5 U.S.C. § 552a(a)(1)-(5), (7)-(11).
[19] *See id.* § 552a(u).
[20] *See id.* § 552a(u)(2).
[21] *See id.* § 552a(o).
[22] *See id.* § 552a(e)(12).

f.  ***System of records notice***.  The term "system of records notice" (SORN) means the notice(s) published by an agency in the *Federal Register* upon the establishment and/or modification of a system of records describing the existence and character of the system.[23]  A SORN identifies the system of records, the purpose(s) of the system, the authority for maintenance of the records, the categories of records maintained in the system, the categories of individuals about whom records are maintained, the routine uses to which the records are subject, and additional details about the system as described in this Circular.  As explained in this Circular, a SORN may be comprised of a single *Federal Register* notice addressing all of the required elements that describe the current system of records, or it may be comprised of multiple *Federal Register* notices that together address all of the required elements.

## 6.  Publishing System of Records Notices

a.  ***General***.  The Privacy Act requires agencies to publish a SORN in the *Federal Register* describing the existence and character of a new or modified system of records.[24]  A SORN is comprised of the *Federal Register* notice(s) that identifies the system of records, the purpose(s) of the system, the authority for maintenance of the records, the categories of records maintained in the system, the categories of individuals about whom records are maintained, the routine uses to which the records are subject, and additional details about the system.  The requirement for agencies to publish a SORN allows the Federal Government to accomplish one of the basic objectives of the Privacy Act – fostering agency accountability through public notice.

b.  ***When to Publish a System of Records Notice***.  Agencies are required to publish a SORN in the *Federal Register* when establishing a new system of records and must also publish notice in the *Federal Register* when making significant changes to an existing system of records.  As a general matter, significant changes are those that are substantive in nature and therefore warrant a revision of the SORN in order to provide notice to the public of the character of the modified system of records.  The following are examples of significant changes:

    (1) A substantial increase in the number, type, or category of individuals about whom records are maintained in the system.  For example, a system covering physicians that is being expanded to include other types of health care providers (e.g., nurses or technicians) would require a revised SORN.  Increases attributable to normal growth in a single category of individuals generally would not require a revised SORN.

    (2) A change that expands the types or categories of records maintained in the system.  For example, a benefit system that originally included only earned income information that is being expanded to include unearned income information would require a revised SORN.

    (3) A change that modifies the scope of the system.  For example, the combining of two or more existing systems of records.

---

[23] *See id.* § 552a(e)(4).
[24] *See id.*

(4) A change that modifies the purpose(s) for which the information in the system of records is maintained.

(5) A change in the agency's authority to maintain the system of records or maintain, collect, use, or disseminate the records in the system.

(6) A change that modifies the way in which the system operates or its location(s) in such a manner as to modify the process by which individuals can exercise their rights under the statute (*e.g.*, to seek access to or amendment of a record).

(7) A change to equipment configuration (either hardware or software), storage protocol, type of media, or agency procedures that expands the availability of, and thereby creates substantially greater access to, the information in the system. For example, a change in the access controls that substantially increases the accessibility of the information within the agency.

(8) A new routine use or significant change to an existing routine use that has the effect of expanding the availability of the information in the system.[25]

(9) The promulgation of a rule to exempt a system of records from certain provisions of the Privacy Act.[26]

This is not an exhaustive list of significant changes that would require a revised SORN. Other changes to a system of records would require a revised SORN if the changes are substantive in nature and therefore warrant additional notice. If an agency has questions about whether particular changes to a system of records are significant, the agency shall contact OIRA for assistance.

c. ***What to Publish in a System of Records Notice***. Each notice of a new or modified system of records shall be drafted using the Office of the Federal Register SORN templates, which are provided in the appendices to this Circular. When an agency establishes a new system of records, the SORN is comprised of a single *Federal Register* notice that includes all of the required elements that are identified in Appendix II to this Circular, *Office of the Federal Register SORN Template – Full Notice*. When an agency modifies an existing system of records, the agency may choose to publish a *Federal Register* notice that includes all of the required elements identified in Appendix II, or a notice that includes the elements that are identified in Appendix III to this Circular, *Office of the Federal Register SORN Template – Notice of Revision*, as well as any other elements that are being revised.

---

[25] *See* Privacy Act Implementation: Guidelines and Responsibilities, 40 Fed. Reg. 28,948, 28,963 (July 9, 1975), *available at* http://www.whitehouse.gov/sites/default/files/omb/assets/omb/inforeg/implementation_guidelines.pdf.

[26] A Privacy Act exemption rule that is part of a report of a new or significantly modified system of records may also be reviewed by OMB under applicable regulatory review procedures (see section 11 of this Circular for information about Privacy Act exemption rules).

d. ***Who Publishes a System of Records Notice***.  The agency responsible for maintaining a system of records (including by providing for the operation of a system of records by a contractor on behalf of the agency) publishes the SORN.[27]  Publication shall occur at the agency level, rather than the sub-agency, component, or program level.  If a system of records will be maintained by a sub-agency or component of an agency, the broader agency shall publish the SORN and specify the sub-agency or component of the agency that will maintain the system of records.  For example, the Department of the Treasury publishes SORNs covering systems of records maintained by the Internal Revenue Service.

e. ***Timing of a System of Records Notice***.[28]  A new or revised SORN is effective upon publication in the *Federal Register*, with the exception of any new[29] or significantly modified routine uses.  As soon as a SORN is published in the *Federal Register* the agency may begin to operate the system of records – the agency may collect, maintain, and use records in the system, and the agency may disclose records pursuant to any of the conditions of disclosure in subsection (b) of the Privacy Act other than a new or significantly modified routine use.  Any new or significantly modified routine uses require a minimum of 30 days after publication in the *Federal Register* before the routine uses are effective and may be used as the basis for disclosure of a record in the system.[30]

Agencies shall publish notice of any new or significantly modified routine use sufficiently in advance of the proposed effective date of the routine use to permit time for the public to comment and for the agency to review those comments.  In no circumstance may an agency use a new or significantly modified routine use as the basis for a disclosure fewer than 30 days following *Federal Register* publication.[31]

If an agency receives public comments on a published SORN, the agency shall review the comments to determine whether any changes to the SORN are necessary.  If the agency determines that significant changes to the SORN are necessary, the agency shall publish a revised SORN.  If the agency determines that significant changes to the routine uses or additional routine uses are necessary, the agency shall provide an additional 30-day public comment and review period.

f. ***Rescindment of a System of Records Notice***.  When an agency stops maintaining a previously established system of records, the agency shall publish a notice of rescindment in the *Federal Register*.  Each notice of rescindment shall be drafted using the *Office of the Federal Register Notice of Rescindment Template*, which is provided in Appendix IV to this Circular.  The notice of rescindment shall identify the system of records, explain why the SORN is being rescinded, and provide an account of what will happen to the records that

---

[27] The exception to this requirement is in the case of a SORN for a government-wide system of records.  For a government-wide system of records, the agency with government-wide responsibility shall publish the SORN (see section 6(i) of this Circular for information about government-wide systems of records).

[28] Agencies may not publish a SORN in the *Federal Register* until they have provided advance notice of the proposal to OMB and Congress pursuant to the reporting instructions in section 7 of this Circular.

[29] New routines uses include any routine uses that the agency is newly applying to the specific system, including routine uses that may already have been established for other systems of records.

[30] *See* 5 U.S.C. § 552a(e)(11).

[31] *See id.*

7

were previously maintained in the system.  If the records in the system of records will be combined with another system of records or maintained as part of a new system of records, the notice of rescindment shall direct members of the public to the SORN for the system that will include the relevant records.

There are many reasons why agencies may need to rescind a SORN.  For example, the Privacy Act provides that an agency may only collect or maintain in its records information about individuals that is relevant and necessary to accomplish a purpose that is required by statute or executive order.[32]  If a system of records is comprised of records that no longer meet that standard, the Privacy Act may require that the agency stop maintaining the system and expunge the records in accordance with the requirements in the SORN and the applicable records retention or disposition schedule approved by the National Archives and Records Administration.

g.  ***Format and Style of a System of Records Notice***.  Agencies shall draft SORNs in plain language with an appropriate level of detail to ensure that the public is properly informed about the character of the system of records.[33]  Agencies shall follow the publication format in the Office of the Federal Register SORN templates, which are provided in the appendices to this Circular.  In addition, agencies shall consult the Office of the Federal Register's *Document Drafting Handbook* for general guidance on drafting *Federal Register* notices.[34]

h.  ***Scope of a System of Records***.  The Privacy Act requires agencies to publish a separate SORN for each system of records.  Before developing a SORN, agencies shall carefully consider the proper scope of the system of records.  Agencies have discretion in determining what constitutes a system of records for purposes of preparing a notice.[35]  However, agencies shall consider the following general factors when determining whether a group of records will be treated as a single system or multiple systems for the purposes of the Privacy Act:

    (1) The agency's ability to comply with the requirements of the Privacy Act and facilitate the exercise of the rights of individuals.[36]

    (2) The informative value of the notice.  Agencies shall consider whether a single SORN or multiple SORNs would provide the most informative notice to the public about the existence and character of the system(s).[37]

---

[32] *See id.* § 552a(e)(1).

[33] *See* Privacy Act Implementation: Guidelines and Responsibilities, 40 Fed. Reg. 28,948, 28,962 (July 9, 1975), *available at* http://www.whitehouse.gov/sites/default/files/omb/assets/omb/inforeg/implementation_guidelines.pdf.

[34] Document Drafting Handbook, Office of the Federal Register, National Archives and Records Administration, *available at* http://www.archives.gov/federal-register/write/handbook/.

[35] *See* Privacy Act Implementation: Guidelines and Responsibilities, 40 Fed. Reg. 28,948, 28,952, 28,962-63 (July 9, 1975), *available at* http://www.whitehouse.gov/sites/default/files/omb/assets/omb/inforeg/implementation_guidelines.pdf.

[36] *See id*.

[37] *See id*. at 28,962-63.

(3) The agency's ability to be responsive to individual access requests. Agencies shall consider whether a single SORN or multiple SORNs would provide the best notice to individuals regarding how and where they may request access to their records maintained in the system(s) and would allow the agency to most effectively respond to such requests.[38]

(4) The purpose(s) and use(s) of the records.[39] If different groups of records are used for distinct purposes, it may be appropriate to treat those different groups of records as separate systems. Although different groups of records may serve a general common purpose, agencies shall also consider whether different routine uses or security requirements apply to the different groups, or whether the groups are regularly accessed by different employees of the agency.

(5) The cost and convenience to the agency, but only to the extent consistent with the above considerations regarding compliance and individual rights.[40]

Considerable latitude is left to agencies in defining the scope or grouping of records that constitute a system of records. An agency may choose to consider the entire group of records for a particular program as a single system, or the agency may consider it appropriate to segment a group of records (*e.g.,* by function or geographic unit) and treat each segment as a system of records to provide better notice to the public.[41] When an agency chooses to segment a group of records into separate systems of records, the agency shall nevertheless ensure that the SORN for each segment clearly describes any linkages that exist between the different systems of records based on the retrieval of the records. For example, if records described in different SORNs are in fact linked together through a central indexing or retrieval capability such that an employee or contractor retrieving records described in one SORN would necessarily also retrieve and gain access to records described in another SORN, the agency shall explain this linkage in the "Policies and Practices for Retrieval of Records" section of both SORNs.

i. ***Government-Wide System of Records***. A government-wide system of records is a system of records where one agency has regulatory authority over records in the custody of multiple agencies, and the agency with regulatory authority publishes a SORN that applies to all of the records regardless of their custodial location. The application of a government-wide SORN ensures that privacy practices with respect to the records are carried out uniformly across the Federal Government in accordance with the rules of the responsible agency. For a government-wide system of records, all agencies – not just the agency with government-wide responsibilities – are responsible for complying with the terms of the SORN and the applicable requirements in the Privacy Act, including the access and amendment provisions that apply to records under an agency's control.

---

[38] *See id.*
[39] *See id.*
[40] *See id.* at 28,952.
[41] *See id.*

9

As a general matter, a government-wide system of records is appropriate when one agency has government-wide responsibilities that involve administrative or personnel records maintained by other agencies. For example, the Office of Personnel Management has published a number of government-wide SORNs relating to the operation of the Federal Government's personnel programs. Agencies shall coordinate with OIRA whenever they are considering the need for a new government-wide system of records.

All government-wide systems of records necessarily affect multiple agencies that will have custody of the records in the system. Accordingly, one step of OMB's review of a new or modified government-wide system of records will involve an interagency review process that allows other affected agencies to review the proposal and provide comments. Once the agency with regulatory authority has published a government-wide SORN, no other agency shall publish a SORN that duplicates the existing government-wide SORN, unless such publication has been approved by OMB.

j.  ***System of Records Operated by a Contractor***.[42]  When an agency provides by contract for the operation by or on behalf of the agency of a system of records to accomplish an agency function, the agency shall cause the requirements of the Privacy Act to be applied to the system, limited only by the agency's authority to do so.[43]  In such cases, the system operated by the contractor is, in effect, deemed to be maintained by the agency.[44]  The agency shall publish a SORN for the system, establish an appropriate routine use to permit disclosure of records to the contractor for the purpose of operating the system, and, to the extent consistent with the agency's authority, incorporate enforceable clauses in the contract and statement of work to ensure that the contractor complies with all applicable requirements of the statute and OMB policies.

Agencies shall design their procurement practices to ensure that all contracts that involve the creation, collection, use, processing, storage, maintenance, dissemination, disclosure, or disposal of information that identifies and is about individuals are reviewed and approved by the Senior Agency Official for Privacy before award to help evaluate whether a system of records will be established and, if so, to include appropriate clauses in the contract.[45]  The Senior Agency Official for Privacy shall have access to a complete and accurate list of all of the agency's contracts involving information that identifies and is about individuals, and shall establish a process to ensure that the language of each contract is sufficient and that the applicable requirements in the Privacy Act and OMB policies are enforceable on the contractor and its employees consistent with the agency's authority.

---

[42] In cases where an agency acts as a service provider for one or multiple agencies, all agencies involved must ensure compliance with applicable Privacy Act requirements.

[43] *See* 5 U.S.C. § 552a(m).

[44] *See* Privacy Act Implementation: Guidelines and Responsibilities, 40 Fed. Reg. 28,948, 28,976 (July 9, 1975), *available at* http://www.whitehouse.gov/sites/default/files/omb/assets/omb/inforeg/implementation_guidelines.pdf.

[45] *See id.*

10

k. ***Routine Uses***.  A routine use is a particular kind of disclosure of a record outside of the agency maintaining the system of records.[46]  To qualify as a routine use, the disclosure must be for a purpose that is compatible with the purpose for which the information was originally collected.[47]  The routine use provision of the Privacy Act functions as one of the exceptions to the statute's general prohibition against the disclosure of a record without the written consent of the individual to whom the record pertains.[48]

The Privacy Act requires agencies to describe each routine use of the records contained in the system of records, including the categories of users of the records and the purpose of the use.[49]  Agencies may only establish routine uses for a system by explicitly publishing the routine uses in the relevant SORN.[50]  Agencies are strongly encouraged to publish all routine uses applicable to a system of records in a single *Federal Register* notice for that system.  However, some agencies choose to publish a separate notice of routine uses that are applicable to many systems of records at the agency, and then incorporate them by reference into the notices for specific systems to which they apply.  When incorporating such routine uses by reference, agencies shall ensure that the routine use section of the SORN clearly indicates which of the separately published routine uses apply to the system of records and includes the *Federal Register* citation where they have been published.

Routine uses shall be narrowly tailored to address a specific and appropriate use of the records.  Agencies shall describe each routine use with sufficient clarity and specificity to ensure that members of the public who are unfamiliar with the system or the agency's program can understand the uses to which the records are subject.[51]  Overly broad or ambiguous language would undermine the purpose of the routine use notice requirement and shall be avoided.  A routine use that only applies to certain records in a system of records should indicate its limited scope.

Before establishing a routine use, an agency must determine that it has the necessary authority to make disclosures under the routine use and that the routine use is appropriate.  As explained in OMB's Privacy Act Guidelines, a routine use may be appropriate when the use of the record is necessary for the efficient conduct of government, and when the use is both *related to* and *compatible with* the original purpose for which the information was collected (*e.g.,* the development of a sampling frame for an evaluation study or other statistical purposes).[52]  Moreover, the concept of compatibility comprises both *functionally equivalent* uses of the information as well as other uses of the information that are *necessary and proper* (*e.g.*, a disclosure to the National Archives and Records Administration to

---

[46] *See* Implementation of the Privacy Act of 1974: Supplementary guidance, 40 Fed. Reg. 56,741, 56,742 (Dec. 4, 1975), *available at* https://www.whitehouse.gov/sites/default/files/omb/assets/omb/inforeg/implementation1974.pdf.

[47] *See* 5 U.S.C. § 552a(a)(7).

[48] *See id.* § 552a(b)(3).

[49] *See id.* § 552a(e)(4)(D).

[50] *See id.*

[51] *See* Privacy Act Implementation: Guidelines and Responsibilities, 40 Fed. Reg. 28,948, 28,963 (July 9, 1975), *available at* http://www.whitehouse.gov/sites/default/files/omb/assets/omb/inforeg/implementation_guidelines.pdf.

[52] *See id.* at 28,953-54.

11

conduct records management activities pursuant to specific statutory authority).[53]

Agencies shall publish notice of any new or significantly modified routine uses sufficiently in advance of the proposed effective date of the routine uses to permit time for the public to comment and for the agency to review those comments.[54]  In all cases, the Privacy Act requires agencies to publish any new or modified routine use at least 30 days before the effective date of the routine use.[55]  An agency shall not disclose any records pursuant to a new or modified routine use until after the 30-day comment period has ended and the agency has considered any comments from the public and determined that no further modifications are necessary.

If an agency determines that an existing routine use is no longer necessary or appropriate, the agency shall immediately discontinue all disclosures under the routine use and shall publish a revised SORN in the *Federal Register* rescinding the routine use.  Moreover, if an agency determines that the routine uses in a SORN do not accurately and completely describe all routine use disclosures to which the records in the system are subject, the agency shall discontinue any disclosures that are not accurately and completely described and revise the routine uses in the SORN to accurately and completely describe those disclosures.

l.  ***Information Collections and Privacy Act Statements***.  If an agency will be collecting information as part of a new or modified system of records, the agency may need to comply with additional requirements, including those in the Paperwork Reduction Act,[56] the E-Government Act of 2002,[57] and related OMB guidance.  Agencies (and their contractors) shall meet all applicable requirements before they begin collecting the information.  For guidance on whether and how these statutes and OMB policies apply to a collection activity, agencies shall consult OMB guidance and contact OIRA.

Moreover, if an agency asks individuals to supply information that will become part of a system of records, the agency is required to provide a Privacy Act statement on the form used to collect the information or on a separate form that can be retained by the individual.[58]  The agency shall provide a Privacy Act statement in such circumstances regardless of whether the information will be collected on a paper or electronic form, on a website, on a mobile application, over the telephone,[59] or through some other medium.  This requirement ensures that the individual is provided with sufficient information about the request for information

---

[53] *See* Guidance on the Privacy Act Implications of "Call Detail" Programs to Manage Employees' Use of the Government's Telecommunications Systems, 52 Fed. Reg. 12,990, 12,993 (Apr. 20, 1987), *available at* https://www.whitehouse.gov/sites/default/files/omb/assets/omb/inforeg/guidance_privacy_act.pdf.

[54] *See* Privacy Act Implementation: Guidelines and Responsibilities, 40 Fed. Reg. 28,948, 28,966 (July 9, 1975), *available at* http://www.whitehouse.gov/sites/default/files/omb/assets/omb/inforeg/implementation_guidelines.pdf.

[55] *See* 5 U.S.C. § 552a(e)(11).

[56] 44 U.S.C. §§ 3501-3521.

[57] 44 U.S.C. § 3501 note.

[58] *See* 5 U.S.C. § 552a(e)(3).

[59] When information is collected over the telephone, the agency shall orally provide the required information and provide a means by which the individual can receive the information in writing.

to make an informed decision on whether or not to respond.[60]

The Privacy Act statement shall include a plain-language description of:

(1) the authority (whether granted by statute or executive order) that authorizes the solicitation of the information and whether disclosure of such information is mandatory or voluntary;

(2) the principal purpose(s) for which the information is intended to be used;

(3) the published routine uses to which the information is subject;[61]

(4) the effects on the individual, if any, of not providing all or any part of the requested information; and

(5) an appropriate citation (and, if practicable, a link) to the relevant SORN(s).

## 7. Reporting Systems of Records to OMB and Congress

a. *General*.  The Privacy Act requires each agency that proposes to establish or significantly modify a system of records to provide adequate advance notice of any such proposal to OMB, the Committee on Oversight and Government Reform of the House of Representatives, and the Committee on Homeland Security and Governmental Affairs of the Senate.[62]  This advance notice is separate from the public comment period for new or modified routine uses required by subsection (e)(11) of the Privacy Act and discussed in section 6 of this Circular.  Agencies provide advance notice to OMB and the committees of jurisdiction in Congress in order to permit an evaluation of the probable or potential effect of such a proposal on the privacy or other rights of individuals.[63]

b. *Advance Notice of a New or Modified System of Records*.  Agencies shall report to OMB and Congress any proposal to establish or significantly modify a system of records at least 30 days prior to the submission of the notice to the *Federal Register* for publication.  OMB will have 30 days to review the proposal and provide any comments to the agency.  The 30-day review period is separate from – and may not run concurrently with – the publication period in the *Federal Register*.  Only significant changes to a system of records that require a

---

[60] *See* Privacy Act Implementation: Guidelines and Responsibilities, 40 Fed. Reg. 28,948, 28,961 (July 9, 1975), *available at* http://www.whitehouse.gov/sites/default/files/omb/assets/omb/inforeg/implementation_guidelines.pdf.

[61] When describing the routine uses in the Privacy Act statement, agencies shall tailor the scope and content of the description in order to provide the most effective notice to the public.  Agencies generally need not restate the full text of the published routine uses or provide a lengthy list of routine uses to which the information is subject.  Rather, agencies may provide a plain-language summary of the routine uses and provide a link to the website where the full list of routine uses is available.  *See* Privacy Act Implementation: Guidelines and Responsibilities, 40 Fed. Reg. 28,948, 28,961-62 (July 9, 1975), *available at* http://www.whitehouse.gov/sites/default/files/omb/assets/omb/inforeg/implementation_guidelines.pdf.

[62] *See* 5 U.S.C. § 552a(r).

[63] *See id.*

revision to the SORN, as described in section 6 of this Circular, need to be reported to OMB and Congress; changes that are not significant do not need to be reported.

Advance notice to OMB and Congress is required by subsection (r) of the Privacy Act.  The purpose of the advance notice to OMB and Congress is to permit an evaluation of the potential effect of the proposal on the privacy and other rights of individuals.[64]  Although the review period will generally require no more than 30 days, OMB has the discretion to extend the 30-day review period based on the specific circumstances of the proposal.  If an agency has questions about the timing of the review, the agency shall consult with OIRA.

In circumstances where it is not feasible for the agency to wait until the 30-day review period for OMB and Congress has expired to publish the notice in the *Federal Register*, the agency may submit a formal written request from the Senior Agency Official for Privacy to OIRA for an expedited advance review period (see section 7(d) of this Circular for information about expedited review requests).

*Illustration of Standard Review Process for Systems of Records[65]*

| Agency Action | Explanation | Timing |
|---|---|---|
| The agency submits report to OMB and Congress at least 30 days before publication of the notice in the *Federal Register*. | OMB and Congress have the opportunity to evaluate the probable or potential effect of such a proposal on the privacy or other rights of individuals. | Day 1 |
| After incorporating any comments from OMB – and unless OMB provides instructions to the contrary – the agency may publish the notice in the *Federal Register* and solicit comments from the public. | Notices published in the *Federal Register* after review by OMB and Congress are effective upon publication, with the exception of any new or modified routine uses.  New or modified routine uses require a minimum of 30 days after publication in the *Federal Register* before they can become effective. | Day 31 |
| The 30-day public comment period closes and the agency reviews and considers any comments received.  If no changes to the notice are necessary, the notice remains effective and any new or modified routine uses become effective. | If the agency receives public comments, the agency shall review the comments to determine whether any changes to the notice are necessary.  If the agency determines that significant changes are necessary, the agency will need to begin the review process again. | Day 61 |

---

[64] *See* Privacy Act Implementation: Guidelines and Responsibilities, 40 Fed. Reg. 28,948, 28,977 (July 9, 1975), *available at* http://www.whitehouse.gov/sites/default/files/omb/assets/omb/inforeg/implementation_guidelines.pdf.

[65] OMB is providing this table to illustrate the steps of the standard review process.  The actual timing of the process will depend on the specific circumstances of the proposal, the agency's internal review and clearance procedures, the review process for any Privacy Act exemption rules, and the logistics of *Federal Register* publication.

c. ***Instructions for Reporting a New or Modified System of Records***.  Agencies are required to report to OMB and Congress any proposal to establish or significantly modify a system of records.  Agencies shall report proposals to the committees of jurisdiction in Congress by messenger or by mailing the reports to the addresses provided below.  Agencies shall report proposals to OMB using OMB's specific web-based portal, as described below.  Agencies shall not mail or messenger paper versions of the report to OMB.  Submission of the report to OMB will officially start the 30-day advance review period.

  (1) *House of Representatives*.  Agencies shall submit reports to the chair of the House Committee on Oversight and Government Reform, 2157 Rayburn House Office Building, Washington, DC 20515.

  (2) *Senate*.  Agencies shall submit reports to the chair of the Senate Committee on Homeland Security and Governmental Affairs, 340 Dirksen Senate Office Building, Washington, DC 20510.

  (3) *OMB*.  Agencies shall submit reports to OMB using the web-based portal jointly developed by OIRA and the General Services Administration's (GSA) Regulatory Information Service Center (RISC).  This web-based portal, the RISC/OIRA Consolidated Information System (ROCIS), was developed to facilitate the submission and review of regulations and other agency materials.[66]  For detailed instructions on how to use ROCIS to submit reports to OMB, agencies shall consult the user manuals available on the ROCIS website or register for the training classes conducted by RISC at GSA headquarters.[67]

d. ***Request for Expedited Review of a New or Modified System of Records***.  Although agencies are required to provide adequate advance notice of any proposal to establish or significantly modify a system of records, there may be circumstances where it is not feasible for the agency to wait until the 30-day review period has expired to publish a notice in the *Federal Register*.  In such cases, the agency may submit a formal written request from the Senior Agency Official for Privacy to OIRA for an expedited OMB review period.  The request shall be included in the transmittal letter that the agency submits to OIRA in ROCIS.  The request shall demonstrate the agency's specific and compelling need for the expedited review, indicate why the agency cannot meet the established review period, and explain the consequences if the request is not granted.

When OIRA grants an agency's request for expedited review, the agency will be allowed to publish the notice in the *Federal Register* after the expedited OMB review period.  When OIRA does not grant an agency's request for expedited review, the normal OMB review process will proceed.  Agencies shall note that OMB may not waive the explicit requirement

---

[66] *See* RISC/OIRA Consolidated Information System (ROCIS), *available at* https://www.rocis.gov/.
[67] All ROCIS user manuals and training information are available on the ROCIS website at https://www.rocis.gov/rocis/login.do.

15

in the Privacy Act for a 30-day *Federal Register* public notice before the adoption of a new or modified routine use,[68] nor may OMB waive the adequate advance notice that is required to Congress.[69]

e. ***Content of the Report of a New or Modified System of Records***.  The report of a new or significantly modified system of records includes a transmittal letter, a narrative statement, a draft *Federal Register* notice, any Privacy Act exemption rules, and any supplementary documents.

    (1) *Transmittal Letter*.  The transmittal letter serves as a brief cover letter accompanying the report.  The transmittal letter shall:

        (A)    Be signed by the Senior Agency Official for Privacy.

        (B)    Contain the name, email address, and telephone number of the individual who can best answer questions about the proposed system of records.

        (C)    Contain the agency's assurance that the proposed system of records fully complies with the Privacy Act and OMB policies.

        (D)    Contain the agency's assurance that the proposed system of records does not duplicate any existing agency or government-wide systems of records.

    (2) *Narrative Statement*.  The narrative statement provides a brief overview of the proposed system of records making reference to the other materials in the report without simply restating information provided in those materials.  The narrative statement shall:

        (A)    Describe the purpose(s) for which the agency is establishing or modifying the system of records and explain how the scope of the system is commensurate with the purpose(s) of the system.

        (B)    Identify the specific authority (statute or executive order) under which the system of records will be maintained.  The agency shall avoid citing authority that is overly general; rather, the agency shall cite the specific programmatic authority for collecting, maintaining, using, and disseminating the information.

        (C)    An evaluation of the probable or potential effect of the proposal on the privacy of individuals whose information will be maintained in the system of records.[70]  If the agency has conducted one or more privacy impact assessment(s) with respect to information technology that will be used to

---

[68] *See* 5 U.S.C. § 552a(e)(11).

[69] *See id.* § 552a(r).

[70] 5 U.S.C. § 552a(r) provides that agencies report a proposal to OMB and Congress in order to permit an evaluation of the probable or potential effect of such proposal on the privacy or other rights of individuals.

16

collect, maintain, or disseminate the information in the system of records, the privacy impact assessment(s) will likely provide the information necessary to meet this requirement, and may be submitted in lieu of drafting a separate evaluation.

(D)     Explain how each new or modified routine use satisfies the compatibility requirement of the Privacy Act.[71]

(E)     Identify any information collections approved by OMB or submitted to OMB for approval that will be used to collect information that will be maintained in the system of records, and provide the relevant names, OMB control numbers, and expiration dates.  If the request for OMB approval of an information collection is pending, the agency may simply state the name of the collection and the date it was submitted to OMB for review.

(3) *Federal Register Notice*.  The draft new or revised notice in the format prescribed by the Office of the Federal Register SORN templates, which are provided in the appendices to this Circular.

(4) *Exemption Rule*.  Any new Privacy Act exemption rules or changes to published exemption rules in *Federal Register* format that the agency proposes to issue that will apply to records in the new or significantly modified system of records.

(5) *Supplementary Documents*.  The supplementary documents include:

(A)     For significantly modified systems, the agency shall include a list of the substantive changes to the previously published version of the notice and/or a version of the previously published notice that has been marked up to show the changes that are being proposed.

(B)     The agency shall include any other supplementary documents requested by OMB.

f.   ***Reporting General Changes to Multiple Systems of Records***.  When an agency makes a general change to agency programs or information technology that applies in a similar way to multiple systems of records (*e.g.*, enabling remote access to systems, moving systems from a conventional data center to a cloud-based storage environment, adding a routine use to all systems of records), the agency may submit a single, consolidated report to OMB and Congress describing the changes.  However, the agency shall ensure that any changes are properly reflected in all published SORNs.

---

[71] *See* 5 U.S.C. § 552a(a)(7).

## 8.  Publishing Matching Notices

a.  *General*.  The Privacy Act requires recipient agencies (or source agencies in a matching program where a non-Federal agency is the recipient agency) to publish a notice in the *Federal Register* upon the establishment, re-establishment,[72] or modification of a matching program.[73]  A matching notice identifies the agencies involved, the purpose(s) of the matching program, the authority for conducting the matching program, the records and individuals involved, and additional details about the matching program.  The requirement for agencies to publish a matching notice allows the Federal Government to foster transparency and accountability with respect to agencies' matching programs.

b.  *When to Publish a Matching Notice*.  Agencies are required to publish a matching notice in the *Federal Register* at least 30 days prior to the establishment, re-establishment, or significant modification of the matching program.[74]  Notice is not required for the one-year renewal of a matching program by the agency's Data Integrity Board.[75]  If the agency is re-establishing a matching program and continuing the program past the expiration of the current matching agreement (including any one-year renewal approved by the Data Integrity Board), the agency shall publish a notice of the re-establishment at least 30 days prior to the expiration of the existing matching agreement.

Agencies are only required to publish a revised matching notice when they are making significant changes to the matching program.  As a general matter, significant changes are those that are substantive in nature and therefore warrant a revision of the matching notice in order to provide notice to the public of the modified matching program.  The following are examples of significant changes:

(1)  A change that modifies the purpose(s) of the matching program.

(2)  A change in the agency's authority to conduct the matching program.

(3)  A change that expands the types or categories of records that are used in the matching program, or a significant increase in the number of records that are being matched.

(4)  A change that expands the categories of individuals whose records are used in the matching program.

---

[72] The *re-establishment* of a matching program occurs when an agency re-establishes a matching program upon the expiration of a matching agreement.  The re-establishment of a matching program requires the publication of a matching notice in the *Federal Register* and needs to be reported to OMB and Congress (see section 9 of this Circular for information about reporting matching programs).  In contrast, the *renewal* of a matching program occurs when an agency's Data Integrity Board renews a matching agreement for one additional year pursuant to 5 U.S.C. § 552a(o)(2)(D).   The renewal of a matching program does not require the publication of a matching notice and does not need to be reported to OMB or Congress.

[73] *See* 5 U.S.C. § 552a(e)(12).

[74] *See id.*

[75] *See id.* § 552a(o)(2)(D).

(5) A change to the source and/or recipient agencies that are involved in the matching program.

This is not an exhaustive list of significant changes that would require a revised matching notice.  Other changes to a matching program would require a revised notice if the changes are substantive in nature and therefore warrant additional notice.  If an agency has questions about whether particular changes to a matching program are significant, the agency shall contact OIRA for assistance.

c.  ***What to Publish in a Matching Notice***.  Each matching notice shall be drafted using the Office of the Federal Register matching notice templates, which are provided in the appendices to this Circular.  When an agency establishes or re-establishes a matching program, the matching notice is comprised of a single *Federal Register* notice that includes all of the required elements that are identified in Appendix V to this Circular, *Office of the Federal Register Matching Notice Template – Full Notice*.  When an agency modifies an existing matching program, the agency may choose to publish a *Federal Register* notice that includes all of the required elements identified in Appendix V, or a notice that includes the elements that are identified in Appendix VI to this Circular, *Office of the Federal Register Matching Notice Template – Notice of Revision*, as well as any other elements that are being revised.

d.  ***Who Publishes a Matching Notice***.  The recipient agency (or source agency in a matching program where a non-Federal agency is the recipient agency) is responsible for meeting the publication requirements associated with a matching program.  However, where a recipient agency is not the actual beneficiary of the matching program, it may, to the extent legally permissible, negotiate with the actual beneficiary agency for reimbursement of the costs incurred in publishing the matching notice.  Publication shall occur at the agency level, rather than the sub-agency, component, or program level.  If a matching program will be conducted by a sub-agency or component of an agency, the broader agency shall publish the matching notice and specify the sub-agency or component that will conduct the program.

e.  ***Timing of a Matching Notice***.[76]  A new or revised matching notice is not effective until at least 30 days after its publication in the *Federal Register*.  If an agency receives public comments on a published matching notice, the agency shall review the comments to determine whether any changes to the matching notice are necessary.  If the agency determines that significant changes to the matching notice are necessary, the agency shall publish a revised matching notice and provide an additional 30-day public comment and review period.

f.  ***Format and Style of a Matching Notice***.  Agencies shall draft matching notices in plain language with an appropriate level of detail to ensure that the public is properly informed about the matching program.  Agencies shall follow the publication format in the Office of the Federal Register matching notice templates, which are provided in the appendices to this

---

[76] Agencies may not publish a matching notice in the *Federal Register* until they have provided advance notice of the proposal to OMB and Congress pursuant to the reporting instructions in section 9 of this Circular.

19

Circular.  In addition, agencies shall consult the Office of the Federal Register's *Document Drafting Handbook* for general guidance on drafting *Federal Register* notices.[77]

## 9.  Reporting Matching Programs to OMB and Congress

a.  *General*.  The Privacy Act requires each agency that proposes to establish, re-establish, or significantly modify a matching program to provide adequate advance notice of any such proposal to OMB, the Committee on Oversight and Government Reform of the House of Representatives, and the Committee on Homeland Security and Governmental Affairs of the Senate.[78]  This advance notice is separate from the public comment period for matching notices required by subsection (e)(12) of the Privacy Act and discussed in section 8 of this Circular.  Agencies provide advance notice to OMB and the committees of jurisdiction in Congress in order to permit an evaluation of the probable or potential effect of such a proposal on the privacy or other rights of individuals.[79]

b.  *Advance Notice of a New or Modified Matching Program*.  Agencies shall report to OMB and Congress any proposal to establish, re-establish, or significantly modify a matching program at least 30 days prior to the submission of the notice to the *Federal Register* for publication.  If the agency is re-establishing a matching program and continuing the program past the expiration of the current matching agreement (including any one-year renewal approved by the Data Integrity Board), the agency shall report the proposal to re-establish the matching program at least 60 days prior to the expiration of the existing matching agreement.

OMB will have 30 days to review the proposal to establish, re-establish, or significantly modify a matching program and provide any comments to the agency.  This 30-day review period is separate from – and may not run concurrently with – the publication period in the *Federal Register*.  Only significant changes to a matching program that require a revision to the matching notice, as described in section 8 of this Circular, need to be reported to OMB and Congress; changes that are not significant do not need to be reported.

Advance notice to OMB and Congress is required by subsection (r) of the Privacy Act.  The purpose of the advance notice to OMB and Congress is to permit an evaluation of the potential effect of the proposal on the privacy and other rights of individuals.[80]  Although the review period will generally require no more than 30 days, OMB has the discretion to extend the 30-day review period based on the specific circumstances of the proposal.  If an agency has questions about the timing of the review, the agency shall consult with OIRA.

---

[77] Document Drafting Handbook, Office of the Federal Register, National Archives and Records Administration, *available at* http://www.archives.gov/federal-register/write/handbook/.

[78] *See* 5 U.S.C. § 552a(r).

[79] *See id.*

[80] *See* Privacy Act Implementation: Guidelines and Responsibilities, 40 Fed. Reg. 28,948, 28,977 (July 9, 1975), *available at* http://www.whitehouse.gov/sites/default/files/omb/assets/omb/inforeg/implementation_guidelines.pdf.

20

*Illustration of Standard Review Process for Matching Programs*[81]

| Agency Action | Explanation | Timing |
|---|---|---|
| The agency submits report to OMB and Congress at least 30 days before publication of the notice in the *Federal Register*, and at least 60 days before the expiration of the matching agreement in the case of a re-established matching program. | OMB and Congress have the opportunity to evaluate the probable or potential effect of such a proposal on the privacy or other rights of individuals. | Day 1 |
| After incorporating any comments from OMB – and unless OMB provides instructions to the contrary – the agency may publish the notice in the *Federal Register* and solicit comments from the public. | Matching notices published in the *Federal Register* are not effective until a minimum of 30 days after publication. | Day 31 |
| The 30-day public comment period closes and the agency reviews and considers any comments received. If no changes to the notice are necessary, the notice is effective. | If the agency receives public comments, the agency shall review the comments to determine whether any changes to the notice are necessary. If the agency determines that significant changes are necessary, the agency will need to begin the review process again. | Day 61 |

c. ***Instructions for Reporting a New or Modified Matching Program***. Agencies are required to report to OMB and Congress any proposal to establish, re-establish, or significantly modify a matching program. Agencies shall report proposals to the committees of jurisdiction in Congress by messenger or by mailing the reports to the addresses provided below. Agencies shall report proposals to OMB using OMB's specific web-based portal, as described below. Agencies shall not mail or messenger paper versions of the report to OMB. Submission of the report to OMB will officially start the 30-day advance review period.

(1) *House of Representatives*. Agencies shall submit reports to the chair of the House Committee on Oversight and Government Reform, 2157 Rayburn House Office Building, Washington, DC 20515.

---

[81] OMB is providing this table to illustrate the steps of the standard review process. The actual timing of the process will depend on the specific circumstances of the proposal, the agency's internal review and clearance procedures, and the logistics of *Federal Register* publication.

21

(2) *Senate*.  Agencies shall submit reports to the chair of the Senate Committee on Homeland Security and Governmental Affairs, 340 Dirksen Senate Office Building, Washington, DC 20510.

(3) *OMB*.  Agencies shall submit reports to OMB using the web-based portal jointly developed by OIRA and RISC.  This web-based portal, called ROCIS, was developed to facilitate the submission and review of regulations and other agency materials.[82]  For detailed instructions on how to use ROCIS to submit reports to OMB, agencies shall consult the user manuals available on the ROCIS website or register for the training classes conducted by RISC at GSA headquarters.[83]

d. ***Request for Expedited Review of a New or Modified Matching Program***.  Although agencies are required to provide adequate advance notice of any proposal to establish, re-establish, or significantly modify a matching program, there may be circumstances where it is not feasible for the agency to wait until the 30-day review period has expired to publish a notice in the *Federal Register*.  In such cases, the agency may submit a formal written request from the Senior Agency Official for Privacy to OIRA for an expedited OMB review period.  The request shall be included in the transmittal letter that the agency submits to OIRA in ROCIS.  The request shall demonstrate the agency's specific and compelling need for the expedited review, indicate why the agency cannot meet the established review period, and explain the consequences if the request is not granted.

When OIRA grants an agency's request for expedited review, the agency will be allowed to publish the notice in the *Federal Register* after the expedited OMB review period.  When OIRA does not grant an agency's request for expedited review, the normal OMB review process will proceed.  Agencies shall note that OMB may not waive the explicit requirement in the Privacy Act for a 30-day *Federal Register* public notice before conducting a new or significantly modified matching program,[84] nor may OMB waive the adequate advance notice that is required to Congress.[85]

e. ***Content of the Report of a New or Modified Matching Program***.  The report of an established, re-established, or significantly modified matching program includes a transmittal letter, a narrative statement, a draft *Federal Register* notice, a matching agreement, and any supplementary documents.

(1) *Transmittal Letter*.  The transmittal letter serves as a brief cover letter accompanying the report.  The transmittal letter shall:

(A)    Be signed by the Senior Agency Official for Privacy or the chairman of the Data Integrity Board.

---

[82] *See* RISC/OIRA Consolidated Information System (ROCIS), *available at* https://www.rocis.gov/.
[83] All ROCIS user manuals and training information are available on the ROCIS website at https://www.rocis.gov/rocis/login.do.
[84] *See* 5 U.S.C. § 552a(e)(12).
[85] *See id.* § 552a(r).

(B)     Contain the name, email address, and telephone number of the individual who can best answer questions about the proposed matching program.

(C)     Contain the agency's assurance that the proposed matching program was approved by the agency's Data Integrity Board and fully complies with the Privacy Act and OMB policies.

(2) *Narrative Statement*.  The narrative statement provides a brief overview of the proposed matching program making reference to the other materials in the report without simply restating information provided in those materials.  The narrative statement shall:

(A)     Describe the purpose(s) for which the agency is establishing, re-establishing, or significantly modifying the matching program.

(B)     Identify the specific authority (statute or executive order) under which the agency is conducting the matching program.  The agency shall avoid citing authority that is overly general; rather, the agency shall cite the specific programmatic authority for conducting the matching program.

(C)     Describe the administrative, technical, and physical safeguards in place to protect against unauthorized access to records used in the matching program.

(D)     Provide the agency's specific evaluation of the potential impact on the privacy of individuals whose records will be used in the matching program.

(E)     Indicate whether a cost-benefit analysis was performed for the matching program, describe the results of the cost-benefit analysis, and explain the basis on which the agency is justifying the matching program.

(3) *Federal Register Notice*.  The draft new or revised matching notice in the format prescribed by the Office of the Federal Register matching notice templates, which are provided in the appendices to this Circular.

(4) *Matching Agreement*.  The full matching agreement that was approved by the agency's Data Integrity Board.

(5) *Supplementary Documents*.  The supplementary documents include:

(A)     For significantly modified matching programs, the agency shall include a list of the substantive changes to the previously published version of the matching notice and/or a version of the previously published matching notice that has been marked up to show the changes that are being proposed.

(B)     The agency shall include any other supplementary documents requested by OMB.

23

## 10.  Privacy Act Implementation Rules

Each agency that maintains a system of records shall promulgate rules, in accordance with the rulemaking procedures in 5 U.S.C. § 553, to implement the requirements of the Privacy Act.[86] Privacy Act implementation rules shall provide the public with sufficient information to understand how an agency is complying with the law, and provide sufficient information for individuals to exercise their rights under the law.[87]  In particular, agencies' Privacy Act implementation rules shall:

a.  establish procedures whereby an individual can be notified in response to his or her request if any system of records named by the individual contains a record pertaining to him or her;[88]

b.  define reasonable times, places, and requirements for authenticating the identity of an individual who requests his or her record or information pertaining to him or her before the agency makes the record or information available to the individual (more rigorous authentication procedures may be required for more sensitive records);[89]

c.  establish procedures whereby an individual can be notified at his or her request how the individual can gain access to any record pertaining to him or her in the system, including special procedures, if deemed necessary, for the disclosure to an individual of medical records, including psychological records, pertaining to him or her;[90]

d.  establish procedures for reviewing a request from an individual concerning the amendment of any record or information pertaining to him or her, for making a determination on the request, for an appeal within the agency of an initial adverse agency determination, and for whatever additional means may be necessary for each individual to be able to exercise fully his or her rights under the Privacy Act;[91] and

e.  establish fees to be charged, if any, to any individual for making copies of his or her record, excluding the cost of any search for and review of the record.[92]

Agencies shall submit proposed and final Privacy Act implementation rules to OMB if those rules are subject to OMB review under Executive Order 12866, *Regulatory Planning and*

---

[86] *See id.* § 552a(f).

[87] *See* Privacy Act Implementation: Guidelines and Responsibilities, 40 Fed. Reg. 28,948, 28,966 (July 9, 1975), *available at* http://www.whitehouse.gov/sites/default/files/omb/assets/omb/inforeg/implementation_guidelines.pdf.

[88] *See* 5 U.S.C. § 552a(f)(1).

[89] *See id.* § 552a(f)(2).

[90] *See id.* § 552a(f)(3).

[91] *See id.* § 552a(f)(4).

[92] *See id.* § 552a(f)(5).

*Review*,[93] Executive Order 13563, *Improving Regulation and Regulatory Review*,[94] or other regulatory review procedures.

## 11. Privacy Act Exemption Rules

The Privacy Act includes two sets of provisions that allow agencies to claim exemptions from certain requirements in the statute.[95]  These provisions allow agencies in certain circumstances to promulgate rules, in accordance with 5 U.S.C. § 553, to exempt a system of records from select provisions of the Privacy Act.  Agencies that wish to promulgate a rule to exempt a system of records shall follow all applicable rulemaking procedures.  Generally, these procedures will require agencies to publish in the *Federal Register* a proposed rule soliciting comments from the public, followed by a final rule.  At a minimum, agencies' Privacy Act exemption rules shall include:

a. The specific name(s) of any system(s) that will be exempt pursuant to the rule (the name(s) shall be the same as the name(s) given in the relevant SORN(s));[96]

b. The specific provisions of the Privacy Act from which the system(s) of records is to be exempted and the reasons for the exemption (a separate reason need not be stated for each provision from which a system is being exempted, where a single explanation will serve to explain the entire exemption);[97] and

c. An explanation for why the exemption is both necessary and appropriate.[98]

In addition to promulgating a rule, agencies wishing to claim an exemption for a system of records shall also identify the applicable exemption(s) in the relevant SORN.  Whenever agencies publish a rule to claim a new or revised exemption for a system of records, the agency shall also revise the SORN pursuant to the publication requirements described in section 6 of this Circular, and report the proposal to OMB and Congress pursuant to the reporting requirements described in section 7 of this Circular.

When agencies wish to promulgate a Privacy Act exemption rule, agencies shall submit the draft rule to OMB along with the new or revised SORN(s) associated with the systems that the agency wishes to exempt (see section 7 of this Circular for information about reporting a new or modified system of records).  In most cases a separate submission of the rule to OMB will not be required and OMB will review the proposed exemption rule along with the SORN.  However, in

---

[93] Exec. Order No. 12,866, 58 Fed. Reg. 51,735 (1993), *available at* http://www.reginfo.gov/public/jsp/Utilities/EO_12866.pdf.

[94] Exec. Order No. 13,563, 76 Fed. Reg. 3,821 (2011), *available at* http://www.reginfo.gov/public/jsp/Utilities/EO_13563.pdf.

[95] *See* 5 U.S.C. § 552a(j) and (k).

[96] *See* Privacy Act Implementation: Guidelines and Responsibilities, 40 Fed. Reg. 28,948, 28,971-72 (July 9, 1975), *available at* http://www.whitehouse.gov/sites/default/files/omb/assets/omb/inforeg/implementation_guidelines.pdf.

[97] *See id.*

[98] *See id.* at 28,971.

some exceptional cases exemption rules may also be subject to OMB's regulatory review procedures under Executive Order 12866, *Regulatory Planning and Review*,[99] and Executive Order 13563, *Improving Regulation and Regulatory Review*.[100]  In such cases, OIRA will notify the agency as soon as possible regarding the appropriate review process.

It is important for agencies to recognize that Privacy Act exemptions are permissive.  Even in circumstances where an agency is authorized to promulgate an exemption, the agency shall only do so if the exemption is necessary and consistent with established policies.[101]  Moreover, while the Privacy Act allows agencies to promulgate exemptions that apply at the system level, agencies shall exempt only those records in a system of records for which the exemption is necessary and appropriate.[102]  In cases where it is necessary to maintain exempt and non-exempt records in a single system of records, agencies shall only exempt the records for which the exemption is necessary and appropriate.[103]

Agencies may not exempt any system of records from any provision of the Privacy Act until all of the applicable reporting and publication requirements have been met.

## 12.  Privacy Act Reviews

OMB Circular A-130[104] outlines privacy requirements that apply to the information system development life cycle.  Because all information in systems of records is part of one or more information systems,[105] many of the requirements in Circular A-130 apply to systems of records.  For example, agencies are required to select, implement, and assess privacy controls[106] and develop privacy plans[107] for information systems.  In addition, agencies are required to establish and maintain an agency-wide privacy continuous monitoring (PCM) program,[108] based on a

---

[99] Exec. Order No. 12,866, 58 Fed. Reg. 51,735 (1993), *available at* http://www.reginfo.gov/public/jsp/Utilities/EO_12866.pdf.

[100] Exec. Order No. 13,563, 76 Fed. Reg. 3,821 (2011), *available at* http://www.reginfo.gov/public/jsp/Utilities/EO_13563.pdf.

[101] *See* Privacy Act Implementation: Guidelines and Responsibilities, 40 Fed. Reg. 28,948, 28,972 (July 9, 1975), *available at* http://www.whitehouse.gov/sites/default/files/omb/assets/omb/inforeg/implementation_guidelines.pdf.

[102] *See id.* at 28,971.

[103] *See id.*

[104] OMB Circular No. A-130, Managing Information as a Strategic Resource (July 28, 2016), *available at* https://www.whitehouse.gov/sites/default/files/omb/assets/OMB/circulars/a130/a130revised.pdf.

[105] The term "information system" means a discrete set of information resources organized for the collection, processing, maintenance, use, sharing, dissemination, or disposition of information.  44 U.S.C. § 3502(8).  The term "information resources" means information and related resources, such as personnel, equipment, funds, and information technology.  44 U.S.C. § 3502(6).

[106] A privacy control is an administrative, technical, or physical safeguard employed within an agency to ensure compliance with applicable privacy requirements and manage privacy risks.

[107] A privacy plan is a formal document that details the privacy controls selected for an information system or environment of operation that are in place or planned for meeting applicable privacy requirements and managing privacy risks, details how the controls have been implemented, and describes the methodologies and metrics that will be used to assess the controls.

[108] A PCM program is an agency-wide program that maintains ongoing awareness of threats and vulnerabilities that may pose privacy risks; monitors changes to information systems and environments of operation that create, collect, use, process, store, maintain, disseminate, disclose, or dispose of personally identifiable information; and conducts

26

written PCM strategy.[109]  The requirement to establish and maintain a PCM program has replaced the prior OMB requirement for agencies to conduct annual Privacy Act reviews.

During the development of an information system, agencies shall select, implement, and assess privacy controls that allow the agency to ensure continued compliance with all applicable requirements in the Privacy Act and related OMB guidance.  Furthermore, agencies shall monitor and assess privacy controls selected for an information system on an ongoing basis. This includes assessing the effectiveness of the privacy controls, documenting changes to the information system, analyzing the privacy impact associated with the changes, and reporting the state of the information system to appropriate agency officials.  The type, rigor, and frequency of control assessments shall be sufficient to account for risks that change over time based on changes in the threat environment, agency missions and business functions, personnel, technology, or environments of operation.

Agencies shall design their privacy control selection process to include privacy controls that allow the agency to ensure compliance with applicable requirements in the Privacy Act and related OMB guidance.  At a minimum, the controls selected for an information system that contains information in a system of records shall address the following elements:

a.  *Minimization*. Agencies shall ensure that no system of records includes information about an individual that is not relevant and necessary to accomplish a purpose required by statute or executive order.

b.  *Systems of Records Notices*. Agencies shall ensure that all SORNs remain accurate, up-to-date, and appropriately scoped (see section 6(h) of this Circular for information about the scope of a system of records); that all SORNs are published in the *Federal Register*; that all SORNs include the information required by this Circular; and that all significant changes to SORNs have been reported to OMB and Congress (see section 7 of this Circular for information about reporting a modified system of records).

c.  *Routine Uses*. Agencies shall ensure that all routine uses remain appropriate and that the recipient's use of the records continues to be compatible with the purpose for which the information was collected (see section 6(k) of this Circular for information about routine uses).

d.  *Privacy Act Exemptions*. Agencies shall ensure that each exemption claimed for a system of records pursuant to 5 U.S.C. § 552a(j) and (k) remains appropriate and necessary (see section 11 of this Circular for information about Privacy Act exemptions).

---

privacy control assessments to verify the continued effectiveness of all privacy controls selected and implemented at an agency across the agency risk management tiers to ensure continued compliance with applicable privacy requirements and manage privacy risks.

[109] A PCM strategy is a formal document that catalogs the available privacy controls implemented at an agency across the agency risk management tiers and ensures that the controls are effectively monitored on an ongoing basis by assigning an agency-defined assessment frequency to each control that is sufficient to ensure compliance with applicable privacy requirements and to manage privacy risks.

e.  *Contracts*. Agencies shall ensure that the language of each contract that involves the creation, collection, use, processing, storage, maintenance, dissemination, disclosure, or disposal of information that identifies and is about individuals, is sufficient and that the applicable requirements in the Privacy Act and OMB policies are enforceable on the contractor and its employees (see section 6(j) of this Circular for information about systems of records operated by contractors).

f.  *Privacy Training*.  Agencies shall ensure that the agency's training practices are sufficient and that agency personnel understand the requirements of the Privacy Act, OMB guidance, the agency's implementing regulations and policies, and any job-specific requirements.

## 13.  Annual FISMA Privacy Review and Report

The Privacy Act originally required the President to submit a biennial report to Congress describing the administration of the statute.  However, this requirement was subsequently repealed.[110]  In place of the biennial Privacy Act report, OMB now reports to Congress on agencies' compliance with privacy requirements through the annual Federal Information Security Modernization Act of 2014 (FISMA) report to Congress.[111]  Each year, OMB issues guidance instructing each Senior Agency Official for Privacy to review the administration of the agency's privacy program and report compliance data to OMB.  OMB uses the reports from agencies to develop its annual FISMA report to Congress.

## 14.  Annual Matching Activity Review and Report

At the end of each calendar year, the Data Integrity Board of each agency that has participated in a matching program during the year shall conduct a review of that year's matching programs and submit a report to the head of the agency and to OMB.[112]  The report for the preceding calendar year shall be submitted to OMB at privacy-oira@omb.eop.gov by June 1 and posted on the agency's website at www.[agency].gov/privacy (see section 15 of this Circular for information about agency website posting requirements).

The Data Integrity Board's annual matching activity report shall include the following elements:

a.  Current information about the composition of the Data Integrity Board, including:

   (1) a list of the names and positions of the members of the Data Integrity Board;

   (2) the name and contact information of the Data Integrity Board's secretary; and

   (3) any changes in membership or structure of the Data Integrity Board that occurred during the year.

---

[110] *See* 31 U.S.C. § 1113 note.
[111] *See* 44 U.S.C. §§ 3551-3558.
[112] *See* 5 U.S.C. § 552a(u)(3)(D).

b.  A list of each matching program in which the agency participated during the year.  For each matching program, the report shall include:

    (1) a brief description of the matching program, including the names of all participating Federal and non-Federal agencies;

    (2) links to the matching notice and matching agreement posted on the agency's website at www.[agency].gov/privacy;

    (3) an account of whether the agency has fully adhered to the terms of the matching agreement;

    (4) an account of whether all disclosures of agency records for use in the matching program continue to be justified; and

    (5) an indication of whether a cost-benefit analysis was performed, the results of the cost-benefit analysis, and an explanation of why the agency proceeded with any matching program for which the results of the cost-benefit analysis did not demonstrate that the program is likely to be cost effective.

c.  For each matching program for which the Data Integrity Board waived the requirement for a cost-benefit analysis, the reasons for the waiver.

d.  A description of any matching agreement that the Data Integrity Board disapproved and the reasons for the disapproval.

e.  A description of any violations of matching agreements that have been alleged or identified, and a discussion of any action taken in response.

The Data Integrity Board's annual matching activity report may also include a review of any agency matching activities that are not matching programs.[113]

## 15. Agency Website Posting

Agencies shall maintain a central resource page dedicated to their privacy program on their principal website at www.[agency].gov/privacy.  At a minimum, agencies shall include the following materials related to the Privacy Act on their central privacy program page:

a.  *System of records notices*.  Agencies shall list and provide links to complete, up-to-date versions of all agency SORNs.  This requires agencies to provide the following:

    (1) A list of all of the agency's systems of records;

---

[113] *See id.* § 552a(u)(3)(H).

(2) Citations and links to all *Federal Register* notices that comprise the SORN for each system of records; and

(3) For any SORNs that are comprised of multiple *Federal Register* notices, an unofficial consolidated version of the SORN that describes the current system of records and allows members of the public to view the SORN in its entirety in a single location.

The requirement for agencies to provide links to complete, up-to-date versions of SORNs on the agency's privacy program page does not replace the Privacy Act's statutory requirement for agencies to publish SORNs in the *Federal Register*. Notice in the *Federal Register* of the establishment or modification of a system of records will continue to serve as the agency's official notice (see section 6 of this Circular for information about publishing SORNs).

b.  *Matching notices and agreements*.  Agencies shall list and provide links to up-to-date matching notices and agreements[114] for all active matching programs in which the agency participates (see section 8 of this Circular for information about publishing matching notices).

c.  *Exemptions to the Privacy Act*.  Agencies shall provide citations and links to the final rules published in the *Federal Register* that promulgate each Privacy Act exemption claimed for their systems of records (see section 11 of this Circular for information about Privacy Act exemption rules).

d.  *Privacy Act implementation rules*.  Agencies shall list and provide links to all Privacy Act implementation rules promulgated pursuant to 5 U.S.C. § 552a(f) (see section 10 of this Circular for information about Privacy Act implementation rules).

e.  *Instructions for submitting a Privacy Act request*.  Agencies shall provide instructions in clear and plain language for individuals who wish to request access to or amendment of their records pursuant to 5 U.S.C. § 552a(d).

This is not an exhaustive list of the materials that agencies are required to include on their central privacy program page.  Agencies shall refer to other OMB guidance documents to understand all website posting requirements.

## 16. Government-wide Responsibilities

a.  *General*.  The Privacy Act places principal responsibility for compliance with its provisions on Federal agencies.  The head of each agency shall designate a Senior Agency Official for Privacy who has agency-wide responsibility for privacy, including implementation of privacy protections; compliance with Federal laws, regulations, and policies relating to privacy; management of privacy risks at the agency; and a central policy-making role in the agency's

---

[114] 5 U.S.C. § 552a(o)(2)(A)(ii) provides that a copy of each matching agreement "shall . . . be available upon request to the public."

30

development and evaluation of legislative, regulatory, and other policy proposals.  The head of each agency shall also ensure that the Senior Agency Official for Privacy has the necessary resources to carry out his or her responsibilities.  At the discretion of the Senior Agency Official for Privacy and consistent with applicable law, other qualified agency personnel may perform particular functions that are assigned to the Senior Agency Official for Privacy in this Circular.

b.  *Office of Management and Budget*. The Director of OMB will:

   (1) Issue guidelines and directives to the agencies to implement the Privacy Act.

   (2) Oversee the agencies' implementation of the Privacy Act.

   (3) Assist the agencies, at their request, in implementing their Privacy Act programs.

   (4) Review agencies' proposals pursuant to 5 U.S.C. § 552a(r).

c.  *Department of Commerce*. The Secretary of Commerce shall, consistent with guidelines issued by OMB, develop and issue standards and guidelines for ensuring the security of information protected by the Privacy Act in Federal information systems.

d.  *Federal Acquisition Regulations Council*. The Federal Acquisition Regulations Council shall, consistent with guidelines issued by OMB, ensure that instructions are issued on what agencies must do in order to comply with the requirements of 5 U.S.C. § 552a(m) when contracting for the operation of a system of records to accomplish an agency purpose.

e.  *Office of Personnel Management*. The Director of the Office of Personnel Management shall, consistent with guidelines issued by OMB:

   (1) Develop and maintain government-wide standards and procedures for civilian personnel information processing and recordkeeping directives to ensure compliance with the Privacy Act.

   (2) Develop and conduct Privacy Act training programs.  The assignment of this responsibility to the Office of Personnel Management does not affect the responsibility of individual agency heads for developing and conducting training programs tailored to the specific needs of their own personnel.

f.  *National Archives and Records Administration*. The Archivist of the United States shall, consistent with guidelines issued by OMB:

   (1) Issue instructions on the format of the agency notices and rules required to be published under the Privacy Act.

(2) Compile and post on the *Federal Register* website a list of published agency SORNs that are in effect and a list of the Privacy Act implementation rules promulgated under 5 U.S.C. § 552a(f).

(3) Issue procedures governing the transfer of records to Federal Records Centers for storage, processing, and servicing, pursuant to 44 U.S.C. § 3103.  For purposes of the Privacy Act, such records are considered to be maintained by the agency that deposited them.  The Archivist may only disclose deposited records according to the access rules established by the agency that deposited them.

(4) Review and approve agencies' proposed record retention schedules associated with each new system of records.

## 17.  Effectiveness

This Circular is effective upon issuance.  However, agencies need not immediately revise or republish their system of records notices, matching notices/agreements, or Privacy Act statements or regulations to comport with the requirements of this Circular.  Rather, agencies may make such revisions on an ongoing basis as they establish or modify any systems of records, matching programs, information collections, or Privacy Act regulations.

This Circular is not intended to, and does not, create any right or benefit, substantive or procedural, enforceable at law or in equity by any party against the United States, its departments, agencies, or entities, its officers, employees, or agents, or any other person.

## 18.  Inquiries

All inquiries regarding this Circular should be addressed to the Office of Information and Regulatory Affairs, Office of Management and Budget, Washington, D.C. 20503. Telephone: (202) 395-3785.  Email: privacy-oira@omb.eop.gov.

32

## Appendix I – Summary of Key Requirements

The following tables provide a general summary of the reporting, publication, review, and agency website posting requirements discussed in this Circular.  The tables only include the specific requirements referenced in this Circular; they do not provide a complete list of the requirements in these areas.  For more detailed explanations of these requirements, agencies shall consult the Privacy Act, the corresponding sections of this Circular, and additional OMB guidance.

### *Federal Register* Publication Requirements

| Publication | Description | Timing | Citation(s) |
|---|---|---|---|
| System of Records Notices | Agencies shall publish a notice in the *Federal Register* describing the existence and character of a new or significantly modified system of records.  Agencies shall also publish a notice of rescindment when the agency stops maintaining a system of records. | A new or revised SORN is effective upon publication in the *Federal Register*, with the exception of any new or modified routine uses, which require a minimum of 30 days after publication in the *Federal Register* before they can become effective. | 5 U.S.C. § 552a(e)(4); section 6 of this Circular. |
| Matching Notices | Agencies shall publish a notice in the *Federal Register* describing an established, re-established, or significantly modified matching program. | A new or revised matching notice is not effective until at least 30 days after its publication in the *Federal Register*. | 5 U.S.C. § 552a(e)(12); section 8 of this Circular. |
| Privacy Act Implementation Rules | Agencies shall promulgate rules to implement the provisions of the Privacy Act. | Agencies must publish a final rule before the rule is effective. | 5 U.S.C. § 552a(f); section 10 of this Circular. |
| Privacy Act Exemption Rules | In certain circumstances, agencies may promulgate a rule to exempt a system of records from certain requirements of the Privacy Act. | Agencies must publish a final rule before the exemption is effective. | 5 U.S.C. § 552a(j)-(k); section 11 of this Circular. |

### Reporting Requirements

| Report | Description | Timing | Recipient(s) | Citation(s) |
|---|---|---|---|---|
| Privacy Act Implementation and Exemption Rules | Agencies shall submit Privacy Act rules to OMB under applicable regulatory review procedures and as part of a | Agencies shall provide proposed and/or final rules before publication and consult OMB | OMB (via ROCIS system). | 5 U.S.C. § 552a(f), (j)-(k); Executive Orders 12866 and 13563; sections 10 and 11 of this Circular. |

|  | proposal to establish or significantly modify a system of records. | regarding applicable review procedures. |  |  |
|---|---|---|---|---|
| Report of New or Significantly Modified System of Records | Agencies shall report any proposal to establish or significantly modify a system of records. | Agencies shall submit reports at least 30 days prior to submission of the notice to the *Federal Register*. | OMB (via ROCIS system) and Congress (via mail). | 5 U.S.C. § 552a(r); section 7 of this Circular. |
| Report of New or Significantly Modified Matching Program | Agencies shall report any proposal to establish, re-establish, or significantly modify a matching program. | Agencies shall submit reports at least 30 days prior to submission of the notice to the *Federal Register*. | OMB (via ROCIS system) and Congress (via mail). | 5 U.S.C. § 552a(r); section 9 of this Circular. |
| Annual Matching Activity Report | Agencies' Data Integrity Boards shall submit a report describing any matching programs that occurred during the calendar year. | Agencies shall submit the annual report for the preceding calendar year to OMB by June 1. | OMB (via email to privacy-oira@omb.eop.gov) and the head of the agency. | 5 U.S.C. § 552a(u)(3)(D); section 14 of this Circular. |
| Annual FISMA Privacy Report | The Senior Agency Official for Privacy shall report privacy compliance information to OMB as part of the annual FISMA reporting process. | Agencies shall refer to OMB's annual FISMA guidance for reporting instructions. | OMB (see OMB's annual FISMA guidance for reporting instructions). | 44 U.S.C. §§ 3551-3558; section 13 of this Circular. |

## Agency Website Posting Requirements

| Posting | Description | Location | Citation(s) |
|---|---|---|---|
| Compilation of agencies' system of records notices and Privacy Act implementation rules | The Office of the Federal Register shall post a compilation of agencies' system of records notices and Privacy Act implementation rules. | The website of the *Federal Register*. | 5 U.S.C. § 552a(f). |
| System of Records Notices | Agencies shall list and provide links to complete, up-to-date versions of all agency SORNs. | www.[agency].gov/privacy | 5 U.S.C. § 552a(e)(4); section 15 of this Circular. |
| Matching Notices and Agreements | Agencies shall list and provide links to up-to-date matching notices and agreements for all active matching programs. | www.[agency].gov/privacy | 5 U.S.C. § 552a(o), (r); section 15 of this Circular. |
| Privacy Act Exemptions | Agencies shall provide citations and links to all | www.[agency].gov/privacy | 5 U.S.C. § 552a(j)-(k); section 15 of this Circular. |

| | Privacy Act exemption rules. | | |
|---|---|---|---|
| Privacy Act Implementation Rules | Agencies shall list and provide links to all Privacy Act implementation rules. | www.[agency].gov/privacy | 5 U.S.C. § 552a(f); section 15 of this Circular. |
| Instructions for Submitting a Privacy Act Request | Agencies shall provide instructions for individuals who wish to submit an access or amendment request. | www.[agency].gov/privacy | 5 U.S.C. § 552a(d); section 15 of this Circular. |

## Agency Review Requirements

| Review | Description | Timing | Reviewer | Citation(s) |
|---|---|---|---|---|
| Minimization – Continuous Monitoring | Agencies shall ensure that no system of records includes information about an individual that is not relevant and necessary to accomplish a purpose required by statute or executive order. | Agencies shall perform assessments of privacy controls with a frequency sufficient to ensure compliance and manage risks. | Senior Agency Official for Privacy | 5 U.S.C. § 552a(e)(1); section 12 of this Circular. |
| System of Records Notices – Continuous Monitoring | Agencies shall ensure that all SORNs remain accurate, up-to-date, and appropriately scoped; that all SORNs are published in the *Federal Register*; that all SORNs include the information required by this Circular; and that all significant changes to SORNs have been reported to OMB and Congress. | Agencies shall perform assessments of privacy controls with a frequency sufficient to ensure compliance and manage risks. | Senior Agency Official for Privacy | 5 U.S.C. § 552a(e)(4); section 12 of this Circular. |
| Routine Uses – Continuous Monitoring | Agencies shall ensure that all routine uses remain appropriate and that the recipient's use of the records continues to be compatible with the purpose for which the information was collected. | Agencies shall perform assessments of privacy controls with a frequency sufficient to ensure compliance and manage risks. | Senior Agency Official for Privacy | 5 U.S.C. § 552a(a)(7); section 12 of this Circular. |
| Privacy Act Exemptions – Continuous Monitoring | Agencies shall ensure that each exemption claimed for a system of records pursuant to 5 U.S.C. § 552a(j) and (k) remains appropriate and necessary. | Agencies shall perform assessments of privacy controls with a frequency sufficient to ensure compliance and manage risks. | Senior Agency Official for Privacy | 5 U.S.C. § 552a(j)-(k); section 12 of this Circular. |
| Contracts – Continuous Monitoring | Agencies shall ensure that the language of each contract that involves the creation, collection, use, processing, storage, maintenance, dissemination, disclosure, or disposal of information that | Agencies shall perform assessments of privacy controls with a frequency sufficient to ensure compliance and manage risks. | Senior Agency Official for Privacy | 5 U.S.C. § 552a(m); section 12 of this Circular. |

35

| | identifies and is about individuals, is sufficient and that the applicable requirements in the Privacy Act and OMB policies are enforceable on the contractor and its employees. | | | |
|---|---|---|---|---|
| Privacy Training – Continuous Monitoring | Agencies shall ensure that the agency's training practices are sufficient and that agency personnel understand the requirements of the Privacy Act, OMB guidance, the agency's implementing regulations and policies, and any job-specific requirements. | Agencies shall perform assessments of privacy controls with a frequency sufficient to ensure compliance and manage risks. | Senior Agency Official for Privacy | 5 U.S.C. § 552a(e)(9); section 12 of this Circular. |
| FISMA Review – Annual | The Senior Agency Official for Privacy shall review the administration of the agency's privacy program as part of the annual FISMA reporting process. | Agencies shall refer to OMB's annual FISMA guidance for review instructions. | Senior Agency Official for Privacy | 44 U.S.C. §§ 3551-3558; section 13 of this Circular. |
| Review of Matching Programs – Annual | Agencies' Data Integrity Boards shall review all matching programs in which the agency has participated during the calendar year. | Agencies' Data Integrity Boards shall conduct the review at the end of the calendar year and report to OMB by June 1. | Agency's Data Integrity Board | 5 U.S.C. § 552a(u)(3)(B)-(C); section 14 of this Circular. |
| Review of Other Matching Activities – Annual | Agencies' Data Integrity Boards may also review any agency matching activities that are not matching programs. | Agencies' Data Integrity Boards shall conduct any review at the end of the calendar year and report to OMB by June 1. | Agency's Data Integrity Board | 5 U.S.C. § 552a(u)(3)(H); section 14 of this Circular. |

36

## Appendix II
## Office of the Federal Register SORN Template – Full Notice

Agencies shall publish all system of records notices (SORNs) in the *Federal Register* using the appropriate format provided in the appendices to this Circular.  Agencies shall use the language and section headings provided in the template and replace the language in brackets with the appropriate agency language.

Appendix II provides the Office of the Federal Register SORN template for full notices that include all of the elements that are required to be in a SORN.  Agencies shall use this template when publishing a new SORN or choosing to publish a revised SORN in its entirety.

**[Name of agency]**

**Privacy Act of 1974; System of Records**

**AGENCY:**  [Name of agency and, if applicable, agency component].

**ACTION:**  Notice of a [New/Modified] System of Records.

**SUMMARY:**  [A plain-language description of the system].

**DATES:**  [The deadline to submit comments on the proposal and the date on which any routine uses will be effective].

**ADDRESSES:**  [Instructions for submitting comments on the proposal, including an email address or a website where comments can be submitted electronically].

**FOR FURTHER INFORMATION CONTACT:**  [Instructions for submitting general questions about the system].

**SUPPLEMENTARY INFORMATION:**  [Background information about the proposal, including a description of any changes being made to the system and the purpose(s) of the changes].

**SYSTEM NAME AND NUMBER:**  [A name for the system that is unambiguous and clearly identifies the purpose or character of the system, and the number of the system].

**SECURITY CLASSIFICATION:**  [An indication of whether any information in the system is classified].

**SYSTEM LOCATION:**  [The address of the agency and/or component responsible for the system, as well as the address of any third-party service provider].

37

**SYSTEM MANAGER(S):** [The title, business address, and contact information of the agency official who is responsible for the system].

**AUTHORITY FOR MAINTENANCE OF THE SYSTEM:** [The specific authority that authorizes the maintenance of the records in the system].

**PURPOSE(S) OF THE SYSTEM:** [A description of the agency's purpose(s) for maintaining the system].

**CATEGORIES OF INDIVIDUALS COVERED BY THE SYSTEM:** [The categories of individuals on whom records are maintained in the system].

**CATEGORIES OF RECORDS IN THE SYSTEM:** [The categories of records maintained in the system and, if practicable and useful for public notice, specific data elements].

**RECORD SOURCE CATEGORIES:** [The categories of sources of records in the system].

**ROUTINE USES OF RECORDS MAINTAINED IN THE SYSTEM, INCLUDING CATEGORIES OF USERS AND PURPOSES OF SUCH USES:** [Each routine use of the records contained in the system, including the categories of users and the purpose of such use].

**POLICIES AND PRACTICES FOR STORAGE OF RECORDS:** [The policies and practices of the agency regarding the storage of records].

**POLICIES AND PRACTICES FOR RETRIEVAL OF RECORDS:** [The policies and practices of the agency regarding retrieval of records].

**POLICIES AND PRACTICES FOR RETENTION AND DISPOSAL OF RECORDS:** [The policies and practices of the agency regarding retention and disposal of records].

**ADMINISTRATIVE, TECHNICAL, AND PHYSICAL SAFEGUARDS:** [A description of the administrative, technical, and physical safeguards to which the system is subject].

**RECORD ACCESS PROCEDURES:** [The agency procedures whereby an individual can be notified at his or her request how he or she can gain access to any record pertaining to him or her in the system].

**CONTESTING RECORD PROCEDURES:** [The agency procedures whereby an individual can be notified at his or her request how he or she can contest the content of any record pertaining to him or her in the system].

**NOTIFICATION PROCEDURES:** [The agency procedures whereby an individual can be notified at his or her request if the system contains a record pertaining to him or her].

**EXEMPTIONS PROMULGATED FOR THE SYSTEM:** [Any Privacy Act exemptions promulgated for the system].

**HISTORY:** [Citation(s) to the last full *Federal Register* notice that includes all of the elements that are required to be in a SORN, as well as any subsequent notices of revision].

# Appendix III
# Office of the Federal Register SORN Template – Notice of Revision

Agencies shall publish all system of records notices (SORNs) in the *Federal Register* using the format provided in the appendices to this Circular.  Agencies shall use the language and section headings provided in the template and replace the language in brackets with the appropriate agency language.

Appendix III provides the Office of the Federal Register SORN template for revised notices that describe a modified system of records when the agency chooses not to publish the revised SORN in its entirety.  The elements provided in the template are required to appear in any notice of a modified system of records.  Elements omitted from the template shall be included in a notice of a modified system of records if there are revisions to those elements.

---

**[Name of agency]**

**Privacy Act of 1974; System of Records**

**AGENCY:**  [Name of agency and, if applicable, agency component].

**ACTION:**  Notice of a Modified System of Records.

---

**SUMMARY:**  [A plain-language description of the system].

**DATES:**  [The deadline to submit comments on the proposal and the date on which any routine uses will be effective].

**ADDRESSES:**  [Instructions for submitting comments on the proposal, including an email address or a website where comments can be submitted electronically].

**FOR FURTHER INFORMATION CONTACT:**  [Instructions for submitting general questions about the system].

**SUPPLEMENTARY INFORMATION:**  [Background information about the proposal, including a description of the changes being made to the system and the purpose(s) of the changes].

**SYSTEM NAME AND NUMBER:**  [A name for the system that is unambiguous and clearly identifies the purpose or character of the system, and the number of the system].

**SECURITY CLASSIFICATION:**  [An indication of whether any information in the system is classified].

40

**SYSTEM LOCATION:**  [The address of the agency and/or component responsible for the system, as well as the address of any third-party service provider].

**SYSTEM MANAGER(S):**  [The title, business address, and contact information of the agency official who is responsible for the system].

**…**

[Agencies shall review the other elements in the full SORN template in Appendix II to this Circular and include elements for which revisions are necessary.  For example, if an agency is modifying the categories of records in the system, the agency shall include that element in the notice of revision.]

**…**

**HISTORY:** [Citation(s) to the last full *Federal Register* notice that includes all of the elements that are required to be in a SORN, as well as any subsequent notices of revision].

## Appendix IV
## Office of the Federal Register Notice of Rescindment Template

Agencies are required to publish a notice of rescindment in the *Federal Register* whenever they stop maintaining a previously established system of records.  Agencies shall publish all notices of rescindment using the format provided in Appendix IV to this Circular.  Agencies shall use the language and section headings provided in the template and replace the language in brackets with the appropriate agency language.

**[Name of agency]**

**Privacy Act of 1974; System of Records**

**AGENCY:**  [Name of agency and, if applicable, agency component].

**ACTION:**  Rescindment of a System of Records Notice.

**SUMMARY:**  [A plain-language description of the system that is being discontinued].

**DATES:**  [The date on which the agency stopped or will stop maintaining the system of records].

**ADDRESSES:**  [Instructions for submitting comments on the notice, including an email address or a website where comments can be submitted electronically].

**FOR FURTHER INFORMATION CONTACT:**  [Instructions for submitting general questions about the discontinued system].

**SUPPLEMENTARY INFORMATION:**  [Background information about the proposal, including an account of what will happen to the records that were previously maintained in the system and references to any other SORN that will pertain to the records].

**SYSTEM NAME AND NUMBER:**  [The name and number of the system that is being discontinued].

**HISTORY:** [Citation(s) to the last full *Federal Register* notice that includes all of the elements that are required to be in a SORN, as well as any subsequent notices of revision].

## Appendix V
## Office of the Federal Register Matching Notice Template – Full Notice

Agencies shall publish all matching notices in the *Federal Register* using the format provided in the appendices to this Circular.  Agencies shall use the language and section headings provided in the template and replace the language in brackets with the appropriate agency language.

Appendix V provides the Office of the Federal Register matching notice template for full notices that include all of the elements that are required to be in a matching notice.  Agencies shall use this template when publishing a notice of the establishment or re-establishment of a matching program, or when publishing a revised matching notice in its entirety.

---

**[Name of agency]**

**Privacy Act of 1974; Matching Program**

**AGENCY:**  [Name of agency and, if applicable, agency component].

**ACTION:**  Notice of a [New/Modified] Matching Program.

---

**SUMMARY:**  [A plain-language description of the matching program].

**DATES:**  [The deadline to submit comments on the proposal, as well as the beginning and ending dates of the matching program].

**ADDRESSES:**  [Instructions for submitting comments on the matching program, including an email address or a website where comments can be submitted electronically].

**FOR FURTHER INFORMATION CONTACT:**  [Instructions for submitting general questions about the matching program].

**SUPPLEMENTARY INFORMATION:**  [Background information about the proposal].

**PARTICIPATING AGENCIES:**  [The name of the participating agency or agencies, including any non-Federal agencies].

**AUTHORITY FOR CONDUCTING THE MATCHING PROGRAM:**  [The specific authority for conducting the matching program].

**PURPOSE(S):**  [A plain-language description of the agency's purpose(s) for conducting the matching program].

**CATEGORIES OF INDIVIDUALS:**  [The categories of individuals whose information is involved in the matching program].

43

**CATEGORIES OF RECORDS:**  [The categories of records involved in the matching program and the specific data elements that are matched].

**SYSTEM(S) OF RECORDS:**  [The names of all relevant systems of records and a citation of the system of records notices].

**Appendix VI**
**Office of the Federal Register Matching Notice Template – Notice of Revision**

Agencies shall publish all matching notices in the *Federal Register* using the format provided in the appendices to this Circular.  Agencies shall use the language and section headings provided in the template and replace the language in brackets with the appropriate agency language.

Appendix VI provides the Office of the Federal Register matching notice template for revised notices that describe a modified matching program when the agency chooses not to publish the revised notice in its entirety.  The elements provided in the template are required to appear in any notice of a modified matching program.  Elements omitted from the template shall be included in a notice of a modified matching program if there are revisions to those elements.

---

**[Name of agency]**

**Privacy Act of 1974; Matching Program**

**AGENCY:**  [Name of agency and, if applicable, agency component].

**ACTION:**  Notice of a Modified Matching Program.

---

**SUMMARY:**  [A plain-language description of the matching program].

**DATES:**  [The deadline to submit comments on the proposal, as well as the beginning and ending dates of the matching program].

**ADDRESSES:**  [Instructions for submitting comments on the proposal, including an email address or a website where comments can be submitted electronically].

**FOR FURTHER INFORMATION CONTACT:**  [Instructions for submitting general questions about the matching program].

**SUPPLEMENTARY INFORMATION:**  [Background information about the proposal].

**PARTICIPATING AGENCIES:**  [The name of the participating agency or agencies, including any non-Federal agencies].

**…**

[Agencies shall review the other elements in the full matching notice template in Appendix V to this Circular and include elements for which revisions are necessary.  For example, if an agency is modifying the categories of records involved in the matching program, the agency shall include that element in the notice of revision.]

45