**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| LEAGUE OF WOMEN VOTERS OF MASSACHUSETTS, *et al.*,<br><br>    *Plaintiffs*,<br>    v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*,<br><br>    *Defendants*. | Case No. 1:26-cv-11549-IT |

**PLAINTIFFS' SURREPLY IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS AND IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**
**(Leave to file granted on June 12, 2026)**

The pair of Notices filed by Defendants on June 5, Dkt. No. 154, and June 8, Dkt. No. 157, confirm that this case, generally, and Plaintiffs' motion for a preliminary injunction, specifically, are ripe for review. These latest factual developments serve as further evidence that Executive Order 14,399 (Executive Order or Order) is a mandatory directive, and the harms thus run from the Order itself. *Any* implementation of Section 3 of the Order is unlawful and currently harming Plaintiffs. *See League of United Latin Am. Citizens v. Exec. Off. of the President*, 780 F. Supp. 3d 135, 183–200 (D.D.C. 2025) (*LULAC I*).

## ARGUMENT

### I.      Defendants' New Disclosures Confirm That This Case Is Ripe.

The Notices confirm that Plaintiffs have ripe claims and that the harms they presently suffer run from the Executive Order itself. They demonstrate that agency implementation of the Order's directives is underway, including continued DHS-USPS coordination on data-sharing arrangements contemplated by the Order. *See* June 8 Notice, Dkt. No. 157. And they further make clear that agency action follows directly from the Order. *Id*. (describing implementation conforming to timeline set by the Order and rescinding prior decisions because the Order "does not direct that approach"). Nothing in either Notice alters the fact that the Order requires non-transmission of mail ballots and that the USPS is carrying out that directive.

The Notices are entirely consistent with: (1) the government's statements prior to the signing of the Executive Order indicating it imposes mandatory actions, Dkt. No. 75-15; (2) the text of the Order itself, Dkt. No. 75-1 (using mandatory language including "hereby ordered," "hereby directed," and "shall include, at a minimum"); (3) the statements of USPS officials following the Order's signing, Dkt. No. 75-8; and (4) the White House's own description of what the Order does, Dkt. No. 140-2 (White House fact sheet indicating the Order "directs the Secretary of Homeland Security . . . to compile and transmit . . . a State Citizenship List," "directs the

Postmaster General to initiate rulemaking," and "requires the USPS to transmit ballots only to" certain individuals). Just as those earlier statements made clear, the Notices likewise leave no doubt that the Order contains mandatory directives that the component agencies are presently carrying out.

The Notices confirm, contrary to Defendants' Reply, Dkt. No. 147 at 1, that USPS intends to implement the Order's ballot gatekeeping mandate fully, reinforcing that Plaintiffs' claims emerge from the issuance of the Order, not any implementation decisions, making their claims ripe for review. *See Jensen v. R.I. Cannabis Control Comm'n*, 160 F.4th 18, 24–25 (1st Cir. 2025) (holding that lack of "final rules and regulations implementing these challenged provisions did not mean that the eventual promulgation was an uncertain or contingent event, and it did not render the case not ripe"). As the Order directs, USPS has promulgated a proposed rule whereby it will not transmit ballots to voters who do not appear on a list. *See* Ballot Mail for Federal Elections, 91 Fed. Reg. 32915-01 (June 2, 2026). The Notices make clear that agencies are preparing for USPS to issue a final rule that retains this gatekeeping function. *See* June 5 Notice, Dkt. No. 154 at 2 ("DHS contemplates working with the United States Postal Service (USPS) to integrate USPS datasets from Mail-In and Absentee Ballot Participation Lists, once available."); June 8 Notice, Dkt. No. 157 at 2 ("Secretary [Mullin] authorized DHS to continue preliminary conversations with USPS concerning potential data-sharing arrangements.").

And the Notices further undermine Defendants' attempt, Dkt. No. 147 at 11, to analogize this case to *Trump v. New York*, 592 U.S. 125 (2020). Unlike in *Trump* where the policy may not have, at the time, "prove[d] feasible to implement in any manner whatsoever, let alone in a manner substantially likely to harm any of the plaintiffs," *id*. at 132, the Notices reinforce Plaintiffs' ongoing harms and establish that Defendants are well on their way to fully implementing the Order.

And the Notices show that Defendants are doing so on the timeline directed by the Order. *See* June 8 Notice, Dkt. No. 157 at 2 (reporting that they will operationalize the required citizenship lists by June 30, 2026). This is all apiece with Plaintiffs' contention that the agencies are taking the Order just as the President intended it (and as Plaintiffs have argued in this Court)—as mandatory. *See also id*. (indicating USCIS will not pursue prior plan because the Order "does not direct that approach").

Thus, the Notices are more evidence of what the record already shows: USPS is carrying out the President's commands—which he has no authority to order—in violation of USPS's own statutory obligations, as prescribed by Congress, in a manner that is already injuring Plaintiffs. *See LULAC I*, 780 F. Supp. 3d at 183–200. "When as here a government seeks to justify its regulatory actions by, on the one hand, touting the consequences . . . while, on the other, maintaining that those same regulations are unreviewable because there are no consequences, courts can appropriately be skeptical." *Diamond Alt. Energy, LLC v. Env't Prot. Agency*, 606 U.S. 100, 122 (2025).

## II.    Defendants' New Disclosures Only Confirm Plaintiffs' Likelihood of Success on the Merits of the Preliminary Injunction.

The Notices not only confirm that Plaintiffs' claims are justiciable but also provide yet more evidence that Plaintiffs are likely to succeed on the merits of Counts I and II, for which they seek preliminary relief. From USPS's notice of proposed rulemaking to the latest Notice, agencies are complying with the President's unconstitutional and ultra vires commands. There is no lawful way for the Order to be carried out as the President lacks lawful authority to dictate election administration requirements or to direct USPS to act contrary to congressional direction. Injunctive relief is necessary to stop this unlawful seizure of power.

As to Count I, the Notices reinforce how the Order violates the separation of powers

because the President has no authority over elections or the mail, inherent or delegated. *See Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 585 (1952). They confirm that the federal government intends to manage citizenship verification for voting lists, June 5 Notice, Dkt. No. 154 at 1–2; June 8 Notice, Dkt. No. 157 at 2, even though dictating "voter qualifications . . . forms no part of the power to be conferred upon the national government." *Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 17 (2013) (citation modified). Both Notices also make clear that there is indeed a relationship between the DHS lists and the USPS lists. These disclosures refute Defendants' attempts to disentangle Section 2 (directing DHS to compile lists of confirmed citizens) from Section 3 (forbidding USPS from delivering ballots from unapproved voters). *See* June 2 Tr. at 40:4–9, Dkt. No. 155 (counsel for Defendants representing "there is not a connection between the citizenship lists generated by the Department of Homeland Security and the mail-in and absentee ballot list generated by the states for purposes of the postal service section"). It also drives home how the President attempts to dictate election rules by commandeering USPS, despite the President's lack of any constitutional or statutory authority over either elections or the postal service.

The Order itself and the President have made clear that the Order requires USPS not to transmit certain ballots. Dkt. No. 75-1; Dkt. No. 140-2. In litigation, Defendants have tried to run away from the express dictates of the Order, but the Notices contradict their repeated attempts to obscure whether USPS will withhold delivery of certain mail ballots. *See, e.g.*, Defs.' Opening Br., Dkt. No. 128 at 36; Reply, Dkt. No. 145 at 4. Withholding delivery would be ultra vires: USPS must offer "a basic and fundamental service" without "undue or unreasonable discrimination among users." 39 U.S.C. § 101(a); *id*. § 403(c). Congress has set forth a comprehensive list of nonmailable material, without any grant of authority to USPS to expand it. *See id*. § 3001. The

4

Executive Order and proposed rule would require USPS to violate these statutes by refusing to transmit certain mail not on the lists of nonmailable material, *i.e.*, ballots for voters that do not appear on certain lists. Congress even requires that USPS deliver mail targeted by a fraud investigation unless it is "clearly shown" to be the subject of proceedings, *see id*. § 3007(a)(3), meaning that USPS's attempt to gatekeep mail and DHS's involvement to investigate "anomalies" are well outside USPS's statutory authority. The plans for USPS reflected in the Notices show how the Order thrusts USPS into the position of election administrator, a nonpostal role Congress never conferred upon USPS. *See* 39 U.S.C. §§ 3703–3704. As in their Opening Brief, Dkt. No. 128, at 17, Defendants' invocation of alleged "voter fraud" or criminal investigations is a red herring: Plaintiffs challenge the mandate to USPS to engage in rulemaking to restrict ballot transmission, not hypothetical criminal enforcement. *See* Pls.' Reply, Dkt. No. 139 at 17.

## CONCLUSION

For these reasons, as well as those made in Plaintiffs' preliminary injunction briefing and at the June 2 hearing, Plaintiffs respectfully request that this Court deny Defendants' motions to dismiss and grant Plaintiffs' motion for a preliminary injunction.

Dated: June 12, 2026                                  Respectfully submitted,

<div style="display:flex; justify-content:space-between;">

*/s/ Sophia Lin Lakin*

Jessie J. Rossman (BBO #670685)          Sophia Lin Lakin*
Suzanne Schlossberg (BBO #703914)        Theresa J. Lee*
AMERICAN CIVIL LIBERTIES UNION           Davin Rosborough*
FOUNDATION OF MASSACHUSETTS,             Ethan Herenstein*
INC.                                     Jonathan Topaz*
One Center Plaza, Suite 850              Ming Cheung*
Boston, MA 02108                         William Hughes*
(617) 482-3170                           Clayton Pierce*
jrossman@aclum.org                       AMERICAN CIVIL LIBERTIES UNION
sschlossberg@aclum.org                   FOUNDATION
                                         125 Broad Street, 18th Floor
Eliza Sweren-Becker*                     New York, NY 10004
Wendy Weiser*                            (212) 549-2500

</div>

Andrew B. Garber*
BRENNAN CENTER FOR JUSTICE AT
NYU SCHOOL OF LAW
120 Broadway, Suite 1750
New York, NY 10271
(646) 292-8310
sweren-beckere@brennan.law.nyu.edu
weiserw@brennan.law.nyu.edu
garbera@brennan.law.nyu.edu

Justin Lam*
BRENNAN CENTER FOR JUSTICE AT
NYU SCHOOL OF LAW
777 6th Street NW, Suite 1100
Washington, DC 20001
(202) 249-7190
lamju@brennan.law.nyu.edu

Niyati Shah*
Noah Baron*
Ejaz Baluch, Jr.*
ASIAN AMERICANS ADVANCING
JUSTICE-AAJC
1620 L Street NW, Suite 1050
Washington, DC 20036
(202) 296-2300
nshah@advancingjustice-aajc.org
nbaron@advancingjustice-aajc.org
ebaluch@advancingjustice-aajc.org

Miranda Galindo*
Latino Justice PRLDEF
475 Riverside Drive, Suite 1901
New York, NY 10115
(212) 392-4752
mgalindo@latinojustice.org

slakin@aclu.org
tlee@aclu.org
drosborough@aclu.org
eherenstein@aclu.org
jtopaz@aclu.org
mcheung@aclu.org
whughes@aclu.org
cpierce@aclu.org

Sarah Brannon*
Adriel I. Cepeda Derieux*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
915 15th Street NW
Washington, DC 20001
(202) 457-0800
sbrannon@aclu.org
acepedaderieux@aclu.org

Leah C. Aden*
Brenda Wright*
John S. Cusick*
NAACP LEGAL DEFENSE &
EDUCATIONAL FUND, INC.
40 Rector Street, 5th Floor
New York, NY 10006
(212) 965-2200
laden@naacpldf.org
bwright@naacpldf.org
jcusick@naacpldf.org

I. Sara Rohani*
NAACP LEGAL DEFENSE &
EDUCATIONAL FUND, INC.
700 14th Street NW, Suite 600
Washington, DC 20005
(202) 682-1300
srohani@naacpldf.org

*Admitted pro hac vice

Counsel for Plaintiffs League of Women
Voters of Massachusetts, League of Women
Voters Lotte E. Scharfman Memorial
Education Fund, League of Women Voters of
the United States, League of Women Voters

6

*Education Fund, Association of Americans Resident Overseas, U.S. Vote Foundation, OCA-Asian Pacific American Advocates, and Delta Sigma Theta Sorority, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on June 12, 2026, a true copy of the above document was filed via the

Court's CM/ECF system and that a copy will be sent automatically to all counsel of record.

June 12, 2026                                    /s/ *Sophia Lin Lakin*
                                                Sophia Lin Lakin

8