**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| |
|---|
| LEAGUE OF WOMEN VOTERS OF MAS-SACHUSETTS, *et al.*,<br><br>       Plaintiffs,<br><br>      v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*,<br><br>      Defendants. |

Case No. 1:26-cv-11549-IT

## RESPONSE OF THE UNITED STATES TO PLAINTIFFS' SUR-REPLY

On June 12, 2026, the *League of Women Voters of Massachusetts ("LWVMA")* Plaintiffs filed a sur-reply in opposition to Defendants' motion to dismiss and in support of Plaintiffs' motion for a preliminary-injunction in the above-captioned matter. ECF No. 160. The sur-reply was largely in response to notices filed by the United States on June 5, 2026, ECF No. 154, and June 8, 2026, ECF No. 157, regarding implementation of Executive Order 14,399 by the Department of Homeland Security (DHS). For the most part, Plaintiffs' sur-reply rehashes arguments that the parties have already briefed and argued at length. The United States does not wish to further clutter this Court's docket with arguments that the Court is already familiar with. Even so, a few discrete points from Plaintiffs' sur-reply warrant a brief response from the United States:

**1.** Plaintiffs' motion for leave to file, ECF No. 158, as well as their sur-reply itself, ECF No. 160, seems to have been drafted on the assumption that the taking of some actual steps towards implementation of the Executive Order represents a dramatic or unexpected turn of events that is material to the legal arguments in this case. That premise is mistaken. The United States never argued that the Executive Order would *never* be implemented—only that (1) it had not been im-plemented at the time of the filing of the complaint (or even at the time of the parties' prior briefs

and oral argument); and (2) that the nature of that possible future implementation was—at that time—speculative and uncertain.

As shown by the notices filed by Defendants, implementation is ongoing, and now farther along than it was at earlier stages in this case. Even so, the core premises of Defendants' justiciability arguments in this case are unchanged. It remains the case that no agency has taken any final agency action to implement the Executive Order, and that critical features of that possible future implementation remain speculative and uncertain. And this is a facial challenge to the Executive Order itself, not to possible future actions that may be taken by the United States Postal Service or the Department of Homeland Security. After all, this lawsuit was filed two days after issuance of the Executive Order. Although subsequent or future events might be proper grounds for a motion for leave to file an amended complaint, Plaintiffs have not pursued that option. So Defendants' arguments about the impropriety of Plaintiffs' challenge *to the Executive Order itself* are largely unaffected by these intervening developments.

**2.** At times, Plaintiffs seem to imply that there may be some inconsistency between Defendants' recent notices and a statement made during oral argument that "the high-level answer" was that "there is not a connection between the citizenship lists generated by the Department of Homeland Security and the mail-in and absentee ballot list generated by the states for purposes of the postal service section." June 2, 2026 Hr'g Tr. at 40:5-9, ECF No. 155 (partially quoted in ECF No. 158 at 2, ECF No. 160 at 4). As the full context makes clear—including just a few lines up on the transcript, in language that Plaintiffs do not quote—that "high-level" statement was about the lack of any apparent connection between those lists based on the text of the Executive Order and the Postal Service's proposed rule. *See* June 2, 2026 Hr'g Tr. at 39:17-22 ("I'm very glad you asked this question because I think a lot of people have read the [E]xecutive [O]rder in that way. I don't think that's the way it is going to be implemented, at least based on the proposal from the [P]ostal [S]ervice, which, again, is just a proposal."). And of course, the government's consistent position has been that significant uncertainty remains regarding implementation of this Executive Order, and that Plaintiffs must wait to challenge final agency action—not ongoing and incomplete

policymaking processes that are not yet finalized.  The uncertainty and unpredictability of those processes thus (if anything) *supports* the government's arguments.

To be sure, as the United States explained in its Notice of June 8, the Secretary of Homeland Security has now "authorized DHS to continue preliminary conversations with USPS concerning potential data-sharing arrangements, and should USPS finalize its rulemaking process, [to] consider working to advance potential coordination to the extent feasible and consistent with applicable law and privacy protections."  ECF No. 157 at 2.  As further explained in that Notice, DHS's most recent memorandum of June 8 "rescind[ed] and supersede[d]" the memorandum described in the June 5 Notice, *id.* at 1, and "more accurately reflects the current policy of the Administration with respect to the implementation of EO 14,399," *id.*

But none of those developments change the Executive Order, nor the accuracy of the statements from counsel quoted above.  After all, "[s]uch data-sharing arrangements are not directed by EO 14,399 and would be contingent upon whether USPS issues a final rule; the content of such rule, if any; and any policy and legal determinations as to the desirability and feasibility of any such data-sharing."  *Id.* at 2.  So it remains correct to say that, at least on the face of the Executive Order, that "there is not a connection between the citizenship lists generated by the Department of Homeland Security and the mail-in and absentee ballot list generated by the states for purposes of the postal service section."  June 2, 2026 Hr'g Tr. at 40:5-9.  And the Executive Order is what counsel for the United States is defending in this lawsuit.

Ultimately, if the Postal Service and the Department of Homeland Security decide to engage in some sort of future data-sharing project that is not required by this Executive Order—a possibility that remains non-final and uncertain in material respects—plaintiffs may choose to file another lawsuit, or perhaps even seek leave to amend their complaint in this lawsuit.  But they have not done so, so any such project has nothing to do with the operative complaint that is currently before the Court.

\*　　\*　　\*

For these reasons, and the reasons offered in the prior briefs and at oral argument, the United States's motion to dismiss should be granted, and Plaintiffs' motion for a preliminary injunction should be denied.

Dated: June 16, 2026                    Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ERIC J. HAMILTON
Deputy Assistant Attorney General
Civil Division

JOSEPH E. BORSON
Assistant Branch Director
Federal Programs Branch

/s/ Stephen M. Pezzi
STEPHEN M. PEZZI
 Chief Litigation Counsel (FL Bar 1041279)
ESAM K. AL-SHAREFFI
 Trial Attorney (D.C. Bar 90010174)
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20530
Telephone: (202) 305-8576
E-mail: stephen.pezzi@usdoj.gov