**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| LEAGUE OF WOMEN VOTERS OF MASSACHUSETTS, *et al.*,<br><br>       *Plaintiffs*,<br>   v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*,<br><br>       *Defendants*. | Case No. 1:26-cv-11549-IT |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS'**
**RENEWED MOTION FOR PRELIMINARY INJUNCTION**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................................... ii

INTRODUCTION ..................................................................................................................... 1

BACKGROUND ....................................................................................................................... 2

    I.   State and Congressional Authority Over Mail Voting.................................................. 2

    II.  Congress's Postal Clause Authority and USPS's Independence ................................ 2

    III. The Unlawful Executive Order .................................................................................. 3

ARGUMENT ............................................................................................................................ 4

    I.   Plaintiffs Are Likely to Succeed on Their Separation-of-Powers and Ultra Vires
        Claims. ..................................................................................................................... 4

        A.  Plaintiffs Have Standing. ................................................................................. 5

        B.  Plaintiffs Are Likely to Succeed on the Merits of Count I and Count II. ......... 9

    II.  Plaintiffs Are Suffering Irreparable Harm, Which Will Compound Absent a
        Preliminary Injunction. ............................................................................................ 13

        A.  Irreparable Harm to Plaintiff Organizations .................................................... 13

        B.  Irreparable Harm to Plaintiffs' Members......................................................... 18

    III. The Balance of Equities and the Public Interest Weigh Heavily in Plaintiffs'
        Favor. ..................................................................................................................... 19

CONCLUSION....................................................................................................................... 20

## TABLE OF AUTHORITIES

**Cases**

*American Academy of Pediatrics v. Kennedy*,
823 F. Supp. 3d 141 (D. Mass. 2026) ........................................................................ 15

*American School of Magnetic Healing v. McAnnulty*,
187 U.S. 94 (1902) ...................................................................................................... 11

*Armstrong v. Exceptional Child Center, Inc.*,
575 U.S. 320 (2015) ...................................................................................................... 4

*Association of American Universities. v. National Science Foundation*,
788 F. Supp. 3d 106 (D. Mass. 2025) ........................................................................ 20

*Caicedo v. DeSantis*,
No. 23-CV-2303, 2024 WL 4729160 (M.D. Fla. Nov. 8, 2024) ................................. 7

*California v. Trump*,
786 F. Supp. 3d 359 (D. Mass. 2025) ................................................................. passim

*California v. Trump*,
No. 26-cv-11581, 2026 WL 1826490 (D. Mass. June 25, 2026) ........................... passim

*California v. U.S. Department of Health and Human Services*,
811 F. Supp. 3d 183 (D. Mass. 2025) ................................................................. 19, 20

*Camel Hair & Cashmere Institute of America, Inc. v. Associated Dry Goods Corp.*,
799 F.2d 6 (1st Cir. 1986) ............................................................................................. 8

*Carrington v. Rash*,
380 U.S. 89 (1965) ........................................................................................................ 2

*Chamber of Commerce v. Reich*,
74 F.3d 1322 (D.C. Cir. 1996) ............................................................................. 10, 13

*City of Providence v. Barr*,
954 F.3d 23 (1st Cir. 2020) ........................................................................................ 11

*Colorado v. DeJoy*,
No. 20-cv-2768-WJM-STV, 2020 WL 5513567 (D. Colo. Sept. 14, 2020) ............... 9

*Del Gallo v. Parent*,
557 F.3d 58 (1st Cir. 2009) .......................................................................................... 3

*Democracy North Carolina v. Hirsch*,
No. 1:23CV878, 2025 WL 4033053 (M.D.N.C. July 21, 2025) ................................. 7

*Department of Commerce v. New York*,
  588 U.S. 752 (2019)...................................................................................................... 8

*Equal Employment Opportunity Commission v. Astra U.S.A., Inc.*,
  94 F.3d 738 (1st Cir. 1996)......................................................................................... 17

*Equal Means Equal v. Ferriero*,
  3 F.4th 24 (1st Cir. 2021)............................................................................................. 7

*Ex parte Jackson*,
  96 U.S. 727 (1877)....................................................................................................... 2

*Food and Drug Administration v. Alliance For Hippocratic Medicine*,
  602 U.S. 367 (2024)................................................................................................. 5, 7

*Free Enterprise Fund v. Public Co. Accounting Oversight Board*,
  561 U.S. 477 (2010)..................................................................................................... 4

*Get Loud Arkansas v. Jester*,
  171 F.4th 1058 (8th Cir. 2026) .............................................................................. 13, 15

*Hunt v. Washington State Apple Advertising Commission*,
  432 U.S. 333 (1977)..................................................................................................... 7

*Indiana State Conference of NAACP v. Lawson*,
  326 F. Supp. 3d 646 (S.D. Ind. 2018) .......................................................... 13, 18, 19

*Jean v. Massachusetts State Police*,
  492 F.3d 24 (1st Cir. 2007)......................................................................................... 4

*League of United Latin American Citizens v. Executive Office of the President*,
  780 F. Supp. 3d 135 (D.D.C. 2025) ................................................................... passim

*League of United Latin American Citizens v. Executive Office of the President*,
  808 F. Supp. 3d 29 (D.D.C., 2025) ............................................................................. 7

*League of Women Voters of Missouri v. Ashcroft*,
  336 F. Supp. 3d 998 (W.D. Mo. 2018) ..................................................................... 13

*League of Women Voters of New Hampshire v. Kramer*,
  No. 24-cv-73-SM-TSM, 2025 WL 3260024 (D.N.H. Oct. 17, 2025) .............. 14, 19

*League of Women Voters of New Hampshire. v. Kramer*,
  No. 24-cv-73-SM-TSM, 2025 WL 919897 (D.N.H. Mar. 26, 2025) ........................ 6

*League of Women Voters of North Carolina v. North Carolina*,
  769 F.3d 224 (4th Cir. 2014) ............................................................................... 17, 19

iii

*League of Women Voters of Ohio v. LaRose*,
741 F. Supp. 3d 694 (N.D. Ohio 2024)....................................................................... 7

*League of Women Voters of U.S. v. Newby*,
838 F.3d 1 (D.C. Cir. 2016) ......................................................................... 7, 14, 18

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992).................................................................................................. 8

*Mail Order Association of America v. United States Postal Service*,
986 F.2d 509 (D.C. Cir. 1993) ................................................................................. 3

*Mancuso v. Taft*,
476 F.2d 187 (1st Cir. 1973) .................................................................................. 20

*Massachusetts v. National Institutes of Health*,
770 F. Supp. 3d 277 (D. Mass. 2025) .................................................................... 15

*Massachusetts v. U.S. Health and Human Services*,
923 F.3d 209 (1st Cir. 2019)................................................................................... 5

*National Association of Postal Supervisors v. United States Postal Service*,
26 F.4th 960 (D.C. Cir. 2022)................................................................................ 11

*National Education Association v. U.S. Department of Education*,
779 F. Supp. 3d 149 (D.N.H. 2025)........................................................................ 20

*New Hampshire Youth Movement v. Scanlan*,
No. 24-cv-291-SE, 2026 WL 323171 (D.N.H. Feb. 6, 2026)................................. 19

*New Hampshire Youth Movement v. Scanlan*,
No. 24-cv-291-SE, 2026 WL 1500857 (D.N.H. May 28, 2026) ............................. 6

*New York v. Department of Justice*,
804 F. Supp. 3d 294 (D.R.I. 2025).......................................................................... 15

*New York v. McMahon*,
784 F. Supp. 3d 311 (D. Mass. 2025) ............................................................... 14, 15

*Nuclear Regulatory Commission v. Texas*,
605 U.S. 665 (2025).................................................................................................. 4

*Presidents' Alliance on Higher Education & Immigration v. Noem*,
824 F. Supp. 3d 168 (D. Mass. 2026)....................................................................... 9

*Reynolds v. Sims*,
377 U.S. 533 (1964).................................................................................................. 8

iv

*Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*,
    102 F.3d 12 (1st Cir. 1996)..................................................................... 13, 17

*Shelby County. v. Holder*,
    570 U.S. 529 (2013)................................................................................... 2

*Somerville Public Schools v. McMahon*,
    139 F.4th 63 (1st Cir. 2025)..................................................................... 20

*Tirrell v. Edelblut*,
    747 F. Supp. 3d 310 (D.N.H. 2024)......................................................... 20

*Trump v. Cook*,
    No. 25A312, 2026 WL 1855613 (U.S. June 29, 2026) ........................... 4, 5

*United States Postal Service v. Council of Greenburgh Civic Association,*
    453 U.S. 114 (1981)................................................................................... 2

*United States Postal Service v. Flamingo Industries (USA) Ltd.*,
    540 U.S. 736 (2004)................................................................................... 2

*Virginia Coalition for Immigrant Rights v. Beals*,
    803 F. Supp. 3d 454 (E.D. Va. 2025) ...................................................... 7

*Voice of the Experienced v. Ardoin*,
    813 F. Supp. 3d 600 (M.D. La. 2025)...................................................... 7

*Walters v. Boston City Council*,
    676 F. Supp. 3d 26 (D. Mass. 2023) ........................................................ 19

*Warth v. Seldin*,
    422 U.S. 490 (1975)................................................................................... 8

*Winter v. Natural Resources Defense Council, Inc.*,
    555 U.S. 7 (2008)..................................................................................... 13

*Woonasquatucket River Watershed Council v. U.S. Department of Agriculture*,
    778 F. Supp. 3d 440 (D.R.I. 2025)............................................... 14, 15, 17

*Youngstown Sheet & Tube Co. v. Sawyer*,
    343 U.S. 579 (1952)............................................................................... 9, 10

*Zivotofsky ex rel. Zivotofsky v. Kerry*,
    576 U.S. 1 (2015)..................................................................................... 10

**Statutes**

39 U.S.C. § 101 *et seq.*.............................................................................. 2, 3, 11

39 U.S.C. § 102 ........................................................................................................... 12

39 U.S.C. § 201 ............................................................................................................. 3

39 U.S.C. § 202 ........................................................................................................... 10

39 U.S.C. § 3622 ......................................................................................................... 10

39 U.S.C. § 3703 ......................................................................................................... 12

39 U.S.C. § 401 ............................................................................................................. 3

39 U.S.C. § 403 ........................................................................................................... 11

39 U.S.C. § 3001 ......................................................................................................... 12

**Other Authorities**

Ballot Mail for Federal Elections,
    91 Fed. Reg. 32915 (June 2, 2026) ................................................................. passim

H.R. Rep. No. 91-1104 (1970) ...................................................................................... 3

Privacy Act of 1974, System of Records,
    91 Fed. Reg. 44880 (July 17, 2026) .............................................................................. 8

**Constitutional Provisions**

U.S. Constitution Amendment XIV ............................................................................... 2

U.S. Constitution Amendment XIX ............................................................................... 2

U.S. Constitution Amendment XV ................................................................................ 2

U.S. Constitution Amendment XXIV ............................................................................ 2

U.S. Constitution Amendment XXVI ............................................................................ 2

U.S. Constitution Article I, § 2 ..................................................................................... 9

U.S. Constitution Article I, § 4 .................................................................................. 2, 9

U.S. Constitution Article I, § 8 .................................................................................. 2, 9

**INTRODUCTION**

On March 31, 2026, President Trump made a series of unconstitutional and unlawful commands in his Executive Order No. 14399, "Ensuring Citizenship Verification and Integrity in Federal Elections" (Executive Order, or Order), seeking to use the United States Postal Service (USPS) to seize election administration powers that belong to the states and Congress. The Order directs USPS to refuse to transmit mail ballots unless voters appear on new, mandated lists provided to USPS in advance of elections. As this Court already held, Sections 2 and 3 of the Order are legally void because their mandates are ultra vires and violate the Constitution's separation of powers. For good reason. At bottom, the Order usurps the authority of Congress and the states to regulate elections, and undermines USPS's role as a neutral, nondiscriminatory mail carrier. The Constitution, Congress's comprehensive statutory scheme, reams of caselaw, and longstanding practice all cement one conclusion: No President has the power to commandeer USPS to be the arbiter of who may cast a ballot.

USPS is already complying with the Order's mandates. Last month, it issued a proposed rule tracking the Order's new requirements for delivery of mail ballots and USPS continues to provide public statements confirming that it intends to make itself a gatekeeper of mail ballots by refusing to deliver ballots if voters are not included on a list contemplated nowhere in statute. With every passing week, Plaintiffs are sustaining mounting irreparable harm to their core work of voter engagement and to their members' right to vote, as Plaintiffs serve voters and have members in the 27 states not covered by this Court's injunction in *California v. Trump*.

To protect their and their members' fundamental rights, Plaintiffs seek to preliminarily enjoin Section 3 of the Order, which violates the Constitution's separation of powers (Count I) and commands USPS to take unauthorized and unlawful action (Count II). This Court denied earlier relief to Plaintiffs because another court's injunction prevented Section 3 of the Order from taking

1

effect. Mem. & Order 2, Dkt. No. 167. But this Court stated that Plaintiffs could renew their request if the other injunction were stayed or USPS promulgated a final rule implementing Section 3 of the Order. *Id*. As the former has now occurred, *see* Order, *NAACP v. USPS*, No. 26-5257 (D.C. Cir. July 17, 2026), Plaintiffs ask this Court to prevent the continued harms being visited upon them, their members, and the voters they serve.

## BACKGROUND

### I.      State and Congressional Authority Over Mail Voting

The Framers gave the states responsibility for setting rules for federal elections, delegating "broad powers to determine the conditions under which the right of suffrage may be exercised," including by setting voter qualifications. *Shelby Cnty. v. Holder*, 570 U.S. 529, 543 (2013) (quoting *Carrington v. Rash*, 380 U.S. 89, 91 (1965)). States exercise this power subject to congressional intervention: Congress too may regulate the time, place, and manner of federal elections, *see* U.S. Const. art. I, § 4, cl. 1 (the Elections Clause), and may legislate to enforce voting-related amendments, *see* U.S. Const. amends. XIV, XV, XIX, XXIV, XXVI. As these provisions make clear, only states and Congress—not the President—may regulate federal elections.

### II.      Congress's Postal Clause Authority and USPS's Independence

The Constitution grants Congress—not the President—the power to "establish Post Offices and post Roads," U.S. Const. art. I, § 8, cl. 7, a "broad power" that Congress has exercised to "establish[] a detailed statutory and regulatory scheme to govern this country's vast postal system," *USPS v. Council of Greenburgh Civic Ass'n*, 453 U.S. 114, 122, 126 (1981); *accord Ex parte Jackson*, 96 U.S. 727, 728 (1877). Congress has restructured the Postal Service throughout its history, most recently reconfiguring it through the Postal Reorganization Act of 1970 (PRA), 39 U.S.C. § 101 *et seq. See USPS v. Flamingo Indus. (USA) Ltd.*, 540 U.S. 736, 739 (2004).

The PRA "marked a dramatic break with the past." *Mail Ord. Ass'n of Am. v. USPS*, 986

2

F.2d 509, 512 (D.C. Cir. 1993). It created USPS as "an independent establishment of the executive branch," 39 U.S.C. § 201, which must "be operated as a basic and fundamental service provided to the people," providing services "in all areas and . . . to all communities." *Id*. § 101(a). Congress "recognized that partisan political entanglement was one of the foremost problems facing the [P]ost [O]ffice . . . [and] sought to have 'the Post Office . . . taken out of politics and politics out of the Post Office.'" *Del Gallo v. Parent*, 557 F.3d 58, 63 (1st Cir. 2009) (quoting H.R. Rep. No. 91-1104 (1970)). Congress did so by "establishing institutional buffers between the President . . . on the one hand, and . . . the Postal Service on the other." *Id*. (quoting H.R. Rep. No. 91-1104).

### III.    The Unlawful Executive Order

The Order purports to mandate several actions: Pertinent here, Section 3 directs the Postmaster General "to initiate a proposed rulemaking pursuant to 39 U.S.C. [§] 401 and other applicable authority within 60 days of the date of this order," Order § 3(b), and details requirements that the rule "*shall include*, at minimum." *Id*. (emphasis added). The Order directs that the USPS final rule "shall be issued no later than 120 days from the date of this order." *Id*. § 3(d).

USPS took the Order as the directive that it is and issued a proposed rule explicitly pursuant to the Order. *See* Ballot Mail for Federal Elections, 91 Fed. Reg. 32915 (June 2, 2026) (the Rule). As the Order directs (Order § 3(b)(i)), the Rule provides that each state may give notice of its intent to use USPS to transmit ballots and establishes standards for ballot envelopes. 91 Fed. Reg. at 32917–18. It also requires elections officials to submit lists of voters to whom mail ballots will be sent. *Id*. at 32918 (§ 24.4). Before accepting mail ballots for delivery to voters, USPS "will review" the mailing to "evaluate whether . . . [it] is being sent to individuals who have been enrolled with the Postal Service." *Id*. (§ 24.5.1). Mail ballots sent must be "verified by Postal Service employees." *Id*. (§ 24.5.2).

Under the Rule, if USPS decides that mail ballots sent by election officials do not meet its

verification standards, the ballots "will not be accepted and will be returned to" sender. *Id*. (§ 24.5.3(a)). Mail ballots not accompanied by a certification from the election official sender "will not be accepted and will be returned to" sender. *Id*. (§ 24.5.3(b)). The Rule disclaims responsibility for the burdens that its requirements will have on voters. *See id*. (§ 24.5.3(d)) ("The Postal Service is not responsible for service delays when the Ballot Portal User or authorized ballot mailer does not meet the applicable preparation or entry standards."). On its face, the Rule lets USPS refuse to deliver mail ballots whenever it determines that an election official has not perfectly complied with requirements found nowhere in statute and brought about only by the Order.

## ARGUMENT

Plaintiffs satisfy all four preliminary injunction factors: (1) "likelihood of success on the merits"; (2) "potential for irreparable harm [absent] an injunction"; (3) "issuing the injunction will burden the defendants less than denying an injunction would burden the plaintiffs"; and (4) "the effect . . . on the public interest." *Jean v. Mass. State Police*, 492 F.3d 24, 26–27 (1st Cir. 2007).

## I.    Plaintiffs Are Likely to Succeed on Their Separation-of-Powers and Ultra Vires Claims.

The Supreme Court recently reaffirmed that "plaintiffs may sue 'in equity' without a congressionally-provided cause of action 'to prevent an injurious act by a public officer.'" *Trump v. Cook*, No. 25A312, 2026 WL 1855613, at *11 n.2 (U.S. June 29, 2026) (quoting *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 327 (2015)). This Court has already held that, regardless of whether a cause of action is available under the APA, the State Plaintiffs may bring their claims against the USPS Defendants in equity, although it subjected their claims to the heightened standard described in *Nuclear Regulatory Commission v. Texas* (*NRC*), 605 U.S. 665 (2025). *California v. Trump*, No. 26-cv-11581, 2026 WL 1826490, at *9 (D. Mass. June 25, 2026). *NRC*, however, does not apply to constitutional claims. *See, e.g.*, *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 491 n.2 (2010). And since this Court's ruling in *California*, the

4

Supreme Court in *Cook* reviewed a claim that presidential action violated a federal statute—the Federal Reserve Act—without applying *NRC*. *See* 2026 WL 1855613, at *12–16; *see also id*. at *31 n.6 (Thomas, J., dissenting). This Court should do the same.

### A. Plaintiffs Have Standing.

Plaintiffs have shown both "a certainly impending harm" *and* "substantial risk of harm"—either of which suffices to establish standing for prospective relief. *Massachusetts v. HHS*, 923 F.3d 209, 222 (1st Cir. 2019). Plaintiffs establish both organizational and associational harms.

### 1. Plaintiffs are suffering ongoing organizational harms.

The Executive Order has inflicted ongoing harms on Plaintiffs by "directly affect[ing] and interfer[ing] with" their "core business activities." *FDA v. All. For Hippocratic Med.* (*AHM*), 602 U.S. 367, 395 (2024). Plaintiffs are among the largest, longest-operating nonprofit civic engagement organizations serving U.S. citizens here and abroad. Ex. 1, Suppl. Decl. of Celina Stewart (2d Stewart Decl.) ¶¶ 2–6; Ex. 2, Suppl. Decl. of Celia Canavan (2d Canavan Decl.) ¶¶ 5–8; Ex. 3, Suppl. Decl. of Susan Dzieduszycka-Suinat (2d Dzieduszycka-Suinat Decl.) ¶¶ 5–11; Ex. 4, Suppl. Decl. of Doris Speer (2d Speer Decl.) ¶¶ 7–9; Ex. 5, Suppl. Decl. of Dorcas Washington (2d Washington Decl.) ¶¶ 6–8, 12–13; Ex. 6, Suppl. Decl. of Thu Nguyen (2d Nguyen Decl.) ¶¶ 4, 9–11.[1] Plaintiffs' core business activities include educating voters and facilitating mail voting to maximize democratic participation; many serve as a crucial source of information for specific communities in the voting process. 2d Stewart Decl. ¶¶ 5, 8–10; 2d Dzieduszycka-Suinat Decl. ¶¶ 6–10, 19; 2d Speer Decl. ¶¶ 10–13, 15–17; 2d Nguyen Decl. ¶¶ 9–11, 16–17, 30–32, 37–38; 2d Washington Decl. ¶¶ 17–19, 22, 26, 28–30, 37; 2d Canavan Decl. ¶¶ 7, 10, 13–21. The

---

[1] These exhibits are attached to the concurrently filed Declaration of Sophia Lin Lakin in Support of Plaintiffs' Renewed Motion for Preliminary Injunction.

Order has indisputably disrupted those core business activities.

As explained *infra* Section II, the Order has already caused Plaintiffs to overhaul or suspend their educational materials and programming, undermined their work by creating serious uncertainty about mail voting, and forced them to risk reputational harm or leave their constituencies without necessary guidance. Courts in this Circuit have recognized standing for similar voter-engagement organizations—including other state Leagues—where challenged actions required them to "spen[d] money and devote[] staff time to updating and creating new materials," "update [their] mailers," and left them "unable to explain adequately to voters" how to engage in the democratic process. *N.H. Youth Movement v. Scanlan*, No. 24-cv-291-SE, 2026 WL 1500857, at \*25–27 (D.N.H. May 28, 2026); *see also, e.g.*, *League of Women Voters of N.H. v. Kramer*, No. 24-cv-73-SM-TSM, 2025 WL 919897, at \*9 (D.N.H. Mar. 26, 2025).

The same is true here. 2d Stewart Decl. ¶¶ 13–15, 26, 30 (LWV and state Leagues have spent time and staff resources revising guidance at the expense of other priorities); 2d Washington Decl. ¶¶ 43–46; 2d Dzieduszycka-Suinat Decl. ¶¶ 33, 40; 2d Speer Decl. ¶ 27; 2d Nguyen Decl. ¶¶ 14, 24, 27–29; 2d Canavan Decl. ¶¶ 28–33, 40–41, 50, 70, 72. A court in this District recently recognized the cognizable harm inflicted by a not-yet-implemented executive order that would require plaintiff states to "issue new guidance, conduct trainings, and 'fund and mount public education campaigns to counter confusion and disenfranchisement.'" *California v. Trump*, 786 F. Supp. 3d 359, 379 (D. Mass. 2025) (citation omitted); *see also California*, 2026 WL 1826490 at \*7 (crediting argument that Plaintiff States will have to "respond to federal implementation of the EO in anticipation of the November 2026 general election"). Those and other federal courts' decisions support organizations' standing where election practices impair core voter-engagement

6

activities.[2]

The Executive Order has not just impaired Plaintiffs' core activities but also "caused a resulting diversion of [Plaintiffs'] time and resources" from other key priorities. *AHM*, 602 U.S. at 391; 2d Stewart Decl. ¶¶ 15–16, 21; 2d Washington Decl. ¶¶ 44, 46; 2d Nguyen Decl. ¶¶ 24–29; 2d Canavan Decl. ¶¶ 29, 39–41. These diversions manifest "a symptom of that programmatic injury," further underlying the organizational harm from the Order. *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 9 (D.C. Cir. 2016); *see California*, 2026 WL 1826490, at *8 ("Defendants and Intervenors dispute that [State Plaintiffs'] monetary expenditures qualify as Article III injury" which is "incorrect"); *California*, 786 F. Supp. 3d at 379.

>   2. *Plaintiffs' members face imminent injury.*

LWV, LWVMA, AARO, OCA, and Delta Sigma Theta also meet the requirements for suing on their members' behalf under the three-prong *Hunt* test. *See Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977).

*First*, "at least one" of each organization's members would have "standing to sue in [their] own right." *Equal Means Equal v. Ferriero*, 3 F.4th 24, 29 (1st Cir. 2021). Plaintiffs' members include voters who rely on mail voting because they have disabilities, live in rural places without transportation, or reside out of state for college and other reasons. 2d Stewart Decl. ¶¶ 11, 23–25,

---

[2] *See, e.g.*, *League of United Latin Am. Citizens v. Exec. Off. of President*, 808 F. Supp. 3d 29, 57–58 (D.D.C. 2025) (organizations have standing where they would have to "update educational information that they provide to prospective voters, much of which they have translated into multiple languages" and "invest additional resources in training their staff and volunteers"); *Va. Coal. for Immigrant Rts. v. Beals*, 803 F. Supp. 3d 454, 465 (E.D. Va. 2025) (League of Women Voters of Virginia had standing to challenge program that "made it difficult to provide clear and updated information regarding voter rolls and voter registration"); *Voice of the Experienced v. Ardoin*, 813 F. Supp. 3d 600, 641 (M.D. La. 2025); *Democracy N.C. v. Hirsch*, No. 1:23CV878, 2025 WL 4033053, at *2 (M.D.N.C. July 21, 2025); *League of Women Voters of Ohio v. LaRose*, 741 F. Supp. 3d 694, 707 n.3 (N.D. Ohio 2024); *Caicedo v. DeSantis*, No. 23-CV-2303, 2024 WL 4729160, at *5 (M.D. Fla. Nov. 8, 2024).

27–29, 31–33; 2d Washington Decl. ¶¶ 31–34, 73; 2d Canavan Decl. ¶¶ 24–25, 51–52; 2d Nguyen Decl. ¶¶ 5–6, 12, 16, 30–32, 37–38, 40, 44. As explained *supra*, the Order's implementation threatens to screen out such members' mail ballots. "This likelihood of disenfranchisement is a serious harm because 'the right to vote freely . . . is of the essence of a democratic society, and any restrictions on that right strike at the heart of representative government.'" *California*, 786 F. Supp. 3d at 393 (quoting *Reynolds v. Sims*, 377 U.S. 533, 555 (1964)) (citation modified).

*Second*, protecting their members' and all eligible citizens' right to vote and ability to vote by mail is "germane to the [Plaintiff] organizations' purposes." *See League of United Latin Am. Citizens v. Exec. Off. of the President* (*LULAC*), 780 F. Supp. 3d 135, 191 (D.D.C. 2025); 2d Washington Decl. ¶¶ 17–18, 22; 2d Stewart Decl. ¶¶ 3, 5; 2d Canavan Decl. ¶¶ 7–8, 15; 2d Speer Decl. ¶¶ 10, 16; 2d Nguyen Decl. ¶¶ 9–12, 14.

*Third*, Plaintiffs' claims for injunctive and declaratory relief to vindicate their members' right to vote are within the heartland of cases "generally . . . held particularly suited to group representation." *Camel Hair & Cashmere Inst. of Am., Inc. v. Associated Dry Goods Corp.*, 799 F.2d 6, 12 (1st Cir. 1986); *see Warth v. Seldin*, 422 U.S. 490, 515 (1975).

3.   *Plaintiffs' injuries are traceable to Defendants and redressable by this Court.*

Plaintiffs' organizational and associational injuries are caused by the Order, and their requested relief would redress those injuries. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). Their injuries are grounded in "the predictable effect of Government Action" "on the decisions of third parties." *Dep't of Com. v. New York*, 588 U.S. 752, 768 (2019). At this juncture, the Court need not speculate to determine the "predictable effect" of the Order—Defendants have already begun carrying out its directives. *See* 91 Fed. Reg. 32915; Privacy Act of 1974, System of Records, 91 Fed. Reg. 44880 (July 17, 2026). The Order and Defendants' implementation "predictably prompted the flood of requests for assistance from member[s] . . . and the need for

8

[Plaintiffs] to expend resources in response." *Presidents' All. on Higher Educ. & Immigr. v. Noem*, 824 F. Supp. 3d 168, 189 (D. Mass. 2026). That alone "satisfies the causation and redressability requirements" of standing. *Id*. More still, the Order will predictably impede Plaintiffs' members from voting by mail, "inflicting a cognizable harm that is directly traceable to the Executive Order." *See LULAC*, 780 F. Supp. 3d at 190–92.

**B. Plaintiffs Are Likely to Succeed on the Merits of Count I and Count II.**

This Court has already held that Section 3 of the Order is an ultra vires violation of the constitutional separation of powers, and for good reason. *California*, 2026 WL 1826490, at *17.

*1. Count I (Separation of Powers)*

Section 3 of the Executive Order directs USPS to refuse to transmit certain voters' mail ballots. The President lacks authority to issue such an order.

The President's authority "must stem either from an act of Congress or from the Constitution itself." *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 585 (1952). The Constitution supplies no such authority. It gives Congress and the states—not the President—the power to regulate the mechanics of federal elections, U.S. Const. art. I, § 4; reserves to the states alone the power to determine voter eligibility, U.S. Const. art. I, § 2, cl. 1; and assigns Congress the authority to regulate the mail system, U.S. Const. art. I, § 8, cl. 7. The constitutional design thus leaves no role for presidential control over voting by mail. Under the Elections Clause, "Congress—not the President—is the check on States' authority to regulate federal elections." *LULAC*, 780 F. Supp. 3d at 194; *see also Colorado v. DeJoy*, No. 20-cv-2768-WJM-STV, 2020 WL 5513567, at *2 (D. Colo. Sept. 14, 2020) (explaining that the Constitution does not provide "authority to the Postal Service" to override state election administration).

Nor has Congress delegated to the President authority to determine whose mail ballots may be transmitted. Indeed, Congress could not delegate authority to determine voter qualifications to

9

the President because the Constitution reserves that authority to the states. As this Court recently recognized, "[n]either the Executive Branch nor Congress may interfere with" the States' authority to determine voter eligibility. *California*, 2026 WL 1826490, at *15.[3] And even if Congress could regulate who may vote by mail, it has not delegated any such authority to the President.

Instead, Congress created a detailed statutory framework vesting postal administration in the collective judgment of a multimember Board of Governors, subject to oversight by the Postal Regulatory Commission. *See* 39 U.S.C. §§ 202, 3622. As explained below, Congress likewise mandated that USPS provide universal, neutral, and nondiscriminatory postal service. The Executive Order attempts to displace those congressional prescriptions by directing USPS to change the criteria for nonmailable materials and deny transmission of mail ballots based on unlawful gatekeeping requirements. The President's acts are therefore "incompatible with the expressed or implied will of Congress." *Zivotofsky ex rel. Zivotofsky v. Kerry*, 576 U.S. 1, 10 (2015) (quoting *Youngstown*, 343 U.S. at 637 (Jackson, J., concurring)).

Neither the Constitution nor any statute authorizes any president to direct USPS to take this action, so the Executive Order violates the separation of powers.

### 2.   *Count II (Ultra Vires)*

In addition to lacking constitutional authority, the President lacks the power to order USPS to act outside its statutory authorization or in violation of a statutory mandate. *See Chamber of Comm. v. Reich*, 74 F.3d 1322, 1330 (D.C. Cir. 1996) (noting that executive orders may not "violate[] or *cause[] others to violate*" the law (emphasis added)). Nothing in the PRA, USPS's

---

[3] It is of no moment that USPS's proposed rule allows authorized Ballot Portal Users for each state to submit information on voters to be included on the state-specific lists. *See* 91 Fed. Reg. at 32918 (§ 24.4.2(b)). The proposed rule makes clear that USPS ultimately controls and creates the state-specific Mail-In and Absentee Participation List, *see id*. (§ 24.4.3), and in any event does nothing to change the underlying unconstitutionality of the Order's directives.

governing statute, authorizes the Order. Rather, the PRA prohibits precisely what the Order demands. "USPS lacks authority to promulgate regulations on voting and the EO's directive that USPS do so constitutes ultra vires executive action." *California*, 2026 WL 1826490, at *16. Plaintiffs are likely to succeed on Count II.

"Any action that an agency takes outside the bounds of its statutory authority is ultra vires." *City of Providence v. Barr*, 954 F.3d 23, 31 (1st Cir. 2020). One of the leading cases on ultra vires review has applied this principle explicitly to the Postal Service: USPS's "right to exclude letters, or to refuse to permit their delivery to persons addressed, must depend upon some law of Congress, and if no such law exists, then [it] cannot exclude or refuse to deliver them." *Am. Sch. of Magnetic Healing v. McAnnulty*, 187 U.S. 94, 109 (1902). And "no law enacted by Congress delegates authority to control mail-in voting to USPS." *California*, 2026 WL 1826490, at *15. Yet Section 3 of the Order directs USPS to do just that: screen and reject the mail ballots of voters who do not appear on required lists and are not "enrolled" with USPS. This exceeds USPS's statutory authorization and conflicts with its governing statute in at least three ways.

*First*, the Order directs USPS to discriminate among postal users despite a statutory bar on doing so. The PRA requires USPS to offer a universal service: it must "operate[] as a basic and fundamental service provided to the people." 39 U.S.C. § 101(a). And it must "serve as nearly as practicable the entire population of the United States," and may not "make any undue or unreasonable discrimination among users of the mails." *Id*. § 403(a), (c). These directives are not unenforceable policy goals; they constitute binding, judicially enforceable obligations on USPS. *See Nat'l Ass'n of Postal Supervisors v. USPS*, 26 F.4th 960, 971 (D.C. Cir. 2022). Yet the Order directs USPS to refuse to transmit the ballots of voters who have not enrolled in a state-specific Mail-In and Absentee Participation List. *See* Order § 3(b)(iii); *accord* 91 Fed. Reg. at 32918

11

(§§ 24.2.2(a), 24.5.1). The Order thus directs USPS to violate its obligation to provide universal, nondiscriminatory service in favor of screening ballots and refusing to deliver those that come from certain users.

*Second*, the Order creates a novel category of unmailable material that finds no home in the statute. Through the PRA, Congress has created a detailed, comprehensive list of nonmailable materials, without any provision authorizing USPS to create additional categories. *See* 39 U.S.C. §§ 3001–3018. The congressional lists of nonmailable materials do not include mail ballots or anything similar. USPS has no statutory authority to deem classes of mail outside of the explicit categories authorized by Congress to be nonmailable. Indeed, this statutory framework would make no sense if USPS could sequester any mail—including election mail—at the President's direction. Yet the Order directs that "USPS shall not transmit mail-in or absentee ballots from any individual" who has not been enrolled in a state-specific list. Order § 3(b)(iii); *accord* 91 Fed. Reg. at 32918 (§ 24.5.3(a)). This lies well outside USPS's statutory powers.

And *third*, the Order mandates that USPS impermissibly engage in nonpostal activity by interposing itself into state election administration, reviewing state-provided lists of eligible voters, requiring voters to be enrolled with USPS, generating its own ballot envelope identifiers, and screening ballots against enumerated lists to ensure only those from pre-approved voters are transmitted. *See* Order § 3(b)(ii)–(iv); 91 Fed. Reg. at 32918 (§§ 24.5.1–24.5.2). USPS lacks any authority to stray so far from its core mission to provide postal services—that is, "the delivery of letters, printed matter, or mailable packages." 39 U.S.C. § 102(5). USPS may only provide nonpostal services, like those contemplated by the Order, when they "provide enhanced value to the public" and are revenue neutral, and only after a majority of the Board of Governors votes to approve USPS's action. 39 U.S.C. § 3703(a)(1). None of these criteria is met here: The Order

imposes significant new mandates—that have not been approved by the Board—on USPS while harming the public's interest in fair and open elections.

These specific prohibitions reinforce the broader point: "USPS lacks statutory authorization to promulgate any binding regulations on mail-in voting." *California*, 2026 WL 1826490, at \*15. Because the Order directs USPS both to exceed its statutory authority and to violate express statutory prohibitions, it is ultra vires. *See Reich*, 74 F.3d at 1330.

## II.   Plaintiffs Are Suffering Irreparable Harm, Which Will Compound Absent a Preliminary Injunction.

### A.  Irreparable Harm to Plaintiff Organizations

Where, as here, Plaintiffs suffer "a substantial injury that is not accurately measurable or adequately compensable by money damages, irreparable harm is a natural sequel." *Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*, 102 F.3d 12, 19 (1st Cir. 1996). Plaintiffs are not just "*likely* to suffer irreparable harm in the absence of preliminary relief," *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (emphasis added): they *have already* suffered it, principally by the Order's interference with their education for and facilitation of mail voting across the country.

The factual record and extensive caselaw here amply support irreparable harm: "Courts routinely recognize that organizations suffer irreparable harm when a defendant's conduct causes them to lose opportunities to conduct election-related activities, such as voter registration and education." *League of Women Voters of Mo. v. Ashcroft*, 336 F. Supp. 3d 998, 1005 (W.D. Mo. 2018) (collecting cases); *see also Get Loud Ark. v. Jester*, 171 F.4th 1058, 1067 (8th Cir. 2026), *pet. for reh'g en banc denied*, No. 24-2810, 2026 WL 1459895 (8th Cir. May 22, 2026); *LULAC*, 780 F. Supp. 3d at 200–01; *Ind. State Conf. of NAACP v. Lawson*, 326 F. Supp. 3d 646, 662–63 (S.D. Ind. 2018), *aff'd sub nom. Common Cause Ind. v. Lawson*, 937 F.3d 944 (7th Cir. 2019).

Plaintiffs' first preliminary injunction motion articulated the imminent irreparable harm

13

that the Order promised to inflict on Plaintiffs. Dkt. No. 74. That harm is now occurring, and manifests in at least four distinct ways. It will only compound as Defendants continue to implement the Order and the general midterm election—and related mail voting deadlines—get even closer.

*First*, the Executive Order has upended Plaintiffs' core organizational work of educating voters about and helping them participate in mail voting. *See* 2d Stewart Decl. ¶¶ 12, 15, 19–20; 2d Canavan Decl. ¶¶ 27–32, 37, 40, 45; 2d Dzieduszycka-Suinat Decl. ¶¶ 6–13, 29–33; 2d Speer Decl. ¶¶ 15–18, 25–28, 37; 2d Nguyen Decl. ¶¶ 14–17, 25, 27, 31; 2d Washington Decl. ¶¶ 26, 28–30, 70, 72. Plaintiffs collectively educate voters and facilitate mail voting in all 50 states and many countries overseas—including 27 states not covered by this Court's injunction in *California v. Trump*, 2026 WL 1826490. *See* 2d Stewart Decl. ¶¶ 3, 5, 8–10, 25; 2d Washington Decl. ¶¶ 12, 70, 72; 2d Speer Decl. ¶¶ 9, 39; 2d Dzieduszycka-Suinat Decl. ¶¶ 5–7; 2d Nguyen Decl. ¶¶ 3, 7, 20. The Order and Defendants' actions towards implementing it have undermined Plaintiffs' core missions, causing irreparable harm. Because the Order "unquestionably make[s] it more difficult for the Leagues [and other Plaintiffs] to accomplish their primary mission" of increasing voter participation, this "provide[s] injury for purposes both of standing and irreparable harm." *Newby*, 838 F.3d at 9; *accord New York v. McMahon*, 784 F. Supp. 3d 311, 362 (D. Mass. 2025); *Woonasquatucket River Watershed Council v. USDA*, 778 F. Supp. 3d 440 (D.R.I. 2025).

More specifically, the Order's "interference with voting rights," that has "increase[d] voter confusion and interfere[d]" with Plaintiffs' missions constitutes irreparable harm. *See League of Women Voters of N.H. v. Kramer*, No. 24-cv-73-SM-TSM, 2025 WL 3260024, at *5 (D.N.H. Oct. 17, 2025), *R. & R. adopted*, 2025 WL 3257189 (D.N.H. Nov. 20, 2025); *LULAC*, 780 F. Supp. 3d at 201; *see California*, 786 F. Supp. 3d at 379 (recognizing the harm in costs to counter voter confusion); 2d Stewart Decl. ¶¶ 15–16, 22, 26, 28; 2d Canavan Decl. ¶¶ 28–29, 36, 39; 2d

14

Washington Decl. ¶¶ 43–44, 55, 72; 2d Speer Decl. ¶¶ 25–27, 30, 37, 40; 2d Nguyen Decl. ¶¶ 24–25. The changes Plaintiffs had to make to core programs due to the Order have already required them to reallocate resources, exacerbating that irreparable harm. 2d Washington Decl. ¶¶ 43–46; 2d Stewart Decl. ¶¶ 16, 21, 24, 30; 2d Canavan Decl. ¶¶ 29, 41, 45–46, 50; 2d Nguyen Decl. ¶ 25; *see California*, 786 F. Supp. 3d at 390–92 ("each of these changes" required by the challenged Executive Order "would, in turn, divert . . . resources from other key projects" constituting irreparable harm); *LULAC*, 780 F. Supp. 3d at 200–02; *Get Loud Ark.*, 171 F.4th at 1067; *Am. Acad. of Pediatrics v. Kennedy*, 823 F. Supp. 3d 141, 171–72 (D. Mass. 2026); *Woonasquatucket River Watershed Council*, 778 F. Supp. 3d at 475.

*Second*, the Order has called into question the viability of mail voting as provided for under state laws. Plaintiffs' members and other voters they serve now justifiably fear their mail ballot will be screened and not transmitted under the Order's directives. *See* 2d Stewart Decl. ¶¶ 16, 22, 28, 33; 2d Canavan Decl. ¶¶ 36, 49–50; 2d Dzieduszycka-Suinat Decl. ¶¶ 27–32; 2d Speer Decl. ¶¶ 23–30, 35; 2d Nguyen Decl. ¶¶ 14, 24; 2d Washington Decl. ¶¶ 43, 55, 72. The Order's creation of "uncertainty hindering long term planning and undermining [Plaintiffs'] mission[s]," *McMahon*, 784 F. Supp. 3d at 362, and "the confusion and chaos imposed by an overnight change" in law or policy, constitute irreparable harm. *See New York v. DOJ*, 804 F. Supp. 3d 294, 330 (D.R.I. 2025); *see also LULAC*, 780 F. Supp. 3d at 201 ("any action to implement" the executive order "would increase voter confusion and interfere" with plaintiffs' voter engagement work, causing irreparable harm); *Massachusetts v. NIH*, 770 F. Supp. 3d 277, 322 (D. Mass. 2025) (recognizing "the uncertainty around the ability to sustain" plaintiffs' work contributed to irreparable harm).

*Third*, Plaintiffs' existing programs and tools have already been or will soon be "render[ed] obsolete" by the Executive Order absent relief. *LULAC*, 780 F. Supp. 3d at 189. These include

15

LWV's multilingual VOTE411.org resource, which is crucial to helping voters cast mail ballots according to each state's election rules. 2d Stewart Decl. ¶¶ 8–10, 17–19; 2d Canavan Decl. ¶¶ 28, 39 42–45. For example, League of Women Voters of Ohio has been forced to stop printing most materials related to mail voting, as its staff tracks the Order's implementation. 2d Stewart Decl. ¶ 30. If the Order is fully implemented, it will have to overhaul those materials at a higher cost-per-unit and on a much shorter timeframe than anticipated, impacting other key priorities. *Id*.; *see also* 2d Washington Decl. ¶ 72 (Delta Sigma Theta chapters have printed materials for their trainings in September and October 2026, "which will have to be revised at significant cost if the Order stands"); 2d Dzieduszycka-Suinat Decl. ¶ 33 (U.S. Vote has abandoned social media campaigns promoting mail voting and other education on mail voting this year because of the Order); 2d Nguyen Decl. ¶ 27 (OCA must send multilingual voter guides to chapters by September 1, and the Order's implementation would require overhauling them at high cost). These harms are irreparable. *See California*, 786 F. Supp. 3d at 390–91; *LULAC*, 780 F. Supp. 3d at 201–02.

*Fourth*, the Order has forced Plaintiffs into a catch-22: Either lapse in their mission to educate eligible voters about all options to cast their ballots, including by mail, or provide potentially incorrect information that could result in their disenfranchisement. Plaintiffs have built reputations as trusted, nonpartisan providers of accurate information voters can rely on. 2d Dzieduszycka-Suinat Decl. ¶¶ 12–15; 2d Speer Decl. ¶¶ 7, 37; 2d Washington Decl. ¶¶ 24–25; 2d Stewart Decl. ¶¶ 19; 2d Canavan Decl. ¶¶ 11–12. That trust, essential to their survival, is jeopardized by the Order. 2d Dzieduszycka-Suinat Decl. ¶¶ 14–15, 35 (it is "essential to U.S. Vote's survival" that it provides accurate information because other voter-services organizations license its information); 2d Stewart Decl. ¶¶ 12, 19; 2d Canavan Decl. ¶ 39; 2d Speer Decl. ¶¶ 29, 31, 37, 41; 2d Washington Decl. ¶ 53. "By its very nature injury to goodwill and reputation is not

16

easily measured or fully compensable in damages. Accordingly, this kind of harm is often held to be irreparable." *Ross-Simons of Warwick*, 102 F.3d at 20.

These harms only become more acute as the midterm gets even closer because "once the election occurs, there can be no do-over and no redress." *League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224, 247 (4th Cir. 2014). Plaintiffs' voter engagement work necessarily occurs well *before* the November midterm and preceding mail-voting deadlines. 2d Stewart Decl. ¶¶ 20, 26, 30; 2d Washington Decl. ¶¶ 42–47, 72, 74; 2d Speer Decl. ¶¶ 34–36; 2d Dzieduszycka-Suinat Decl. ¶¶ 33, 37; 2d Canavan Decl. ¶¶ 31, 34, 39; 2d Nguyen Decl. ¶¶ 26–28, 31, 38. In this way, the "critical pauses" in Plaintiffs' work caused by the Order and consequent "delays in [their] work leave no window for a do-over." *Woonasquatucket River Watershed Council*, 778 F. Supp. 3d at 475. Plaintiffs have already lost myriad opportunities to help members and other voters cast their vote by mail, and they continue to lose more every day. "[G]iven the practical nature of an election cycle," *California*, 2026 WL 1826490, at *8, and "[b]ecause this Court can neither postpone an election nor turn back the clock . . . [t]he only way to provide complete relief to the Plaintiff[s] is to award a preliminary injunction." *LULAC*, 780 F. Supp. 3d at 201–02.

Even if Plaintiffs had not provided such a robust showing of harm, they would still be entitled to prevail because "the likelihood of success on the merits is great." *EEOC v. Astra U.S.A., Inc.*, 94 F.3d 738, 743 (1st Cir. 1996). In such circumstances, plaintiffs may "show somewhat less in the way of irreparable harm and still garner preliminary injunctive relief." *Id*. Since this Court has already, in effect, determined Plaintiffs will succeed on the merits, their burden here is lower than it would otherwise be. *See California*, 2026 WL 1826490, at *16.

Defendants' typical counter is that the Order has yet to be implemented. *E.g.*, Defs.' Mem. in Supp. of Mots. to Dismiss & Opp. to Pls.' Mot. for Summ. J. 6, Dkt. No. 128 ("Before any

17

agency has implemented the Executive Order, Plaintiffs face no actual (or imminent) harm—irreparable or otherwise."). That refrain is now belied by Defendants' ongoing implementation of the Order, and their adherence to its directives. *See* 91 Fed. Reg. 32915; Monteith Decl. ¶ 7, *California v. Trump*, No. 1:26-cv-11581-IT (D. Mass. July 1, 2026), Dkt. No. 194-2 ("the Postal Service has been taking steps" to carry out the Executive Order). Even absent those factual developments, however, the "argument that no irreparable harm exists" because the Order "has not yet been implemented is unavailing. The very purpose of a preliminary injunction is to prevent an imminent harm from occurring or to quickly abate an irreparable harm that has already begun." *Ind. State Conf. of NAACP*, 326 F. Supp. 3d at 663. Put simply, "Damocles's sword does not have to actually fall on all [Plaintiffs] before the court will issue an injunction." *Newby*, 838 F.3d at 9.

### B. Irreparable Harm to Plaintiffs' Members

Plaintiffs' collective millions of members span all fifty states, the District of Columbia, several territories, and dozens of foreign countries, and many rely on mail voting. 2d Stewart Decl. ¶¶ 3, 11; 2d Speer Decl. ¶¶ 9, 12; 2d Nguyen Decl. ¶¶ 3–7, 12, 16, 30–32; 2d Canavan Decl. ¶¶ 6, 24–25; 2d Washington Decl. ¶¶ 12–13, 31–34, 71. They include members who need to vote by mail because of physical disabilities, mobility impairments, or other health issues, live in rural areas, serve as poll workers on election day, or are college students away from their resident home. 2d Stewart Decl. ¶¶ 11, 23, 25, 27–29; 2d Speer Decl. ¶¶ 13–15; 2d Nguyen Decl. ¶¶ 12, 32, 34; 2d Canavan Decl. ¶¶ 16, 24–25, 51–52; 2d Washington Decl. ¶¶ 33, 48, 50, 73. Among Plaintiffs' members are those recently naturalized members and individuals born before 1981, who, among others, are being erroneously identified as non-citizens in federal records, s*ee* 2d Nguyen Decl. ¶¶ 37–42; 2d Canavan Decl. ¶¶ 24–25, 46, 51–52; 2d Stewart Decl. ¶¶ 11, 23, including a League member who has already been erroneously identified as a noncitizen by Texas's previous use of the SAVE program. 2d Stewart Decl. ¶ 32. Such members are disproportionately likely to be

18

omitted from lists of mail voters, if, e.g., they naturalize after states send any such list to USPS.

Many members rely on mail voting in one of the 27 states not covered by this Court's injunction in the parallel challenge, *California*, 2026 WL 1826490, at *17. 2d Stewart Decl. ¶¶ 25–32; 2d Washington Decl. ¶¶ 70–73; Nguyen Decl. ¶¶ 6–7, 20–22; Speer Decl. ¶ 39. They therefore face the imminent prospect of USPS screening their mail ballot. This "restriction[] on fundamental voting rights" constitutes "irreparable injury." *Walters v. Boston City Council*, 676 F. Supp. 3d 26, 47 (D. Mass. 2023); *see also League of Women Voters of N.H.*, 2025 WL 3260024, at *5 ("interference with [plaintiffs'] voting rights . . . is not compensable and is therefore irreparable harm"); *League of Women Voters of N.C.*, 769 F.3d at 247 ("Courts routinely deem restrictions on fundamental voting rights irreparable injury") (collecting cases).

It is no answer that Plaintiffs' members have yet to be deprived of their right to vote. "Irreparable harm of wrongful disenfranchisement is imminent after the Defendants begin implementing the law. The fact that it has not yet occurred . . . is of no consequence to the irreparable harm that certainly will occur." *Ind. State Conf. of NAACP*, 326 F. Supp. 3d at 663.

**III.    The Balance of Equities and the Public Interest Weigh Heavily in Plaintiffs' Favor.**

The balance of equities and the public interest also weigh heavily in Plaintiffs' favor. These factors "merge when the Government is the party opposing the preliminary injunction." *California v. HHS*, 811 F. Supp. 3d 183, 213 (D. Mass. 2025) (citation omitted).

Denying an injunction will cause significant harm to both Plaintiffs and the public. *First*, an injunction preserves the ability for nonpartisan voter service organizations to carry out their core missions including helping voters who cannot vote in person access the ballot to ensure robust political participation in upcoming elections. Without an injunction, Plaintiffs will be "unable to assist many . . . voters through . . . voter outreach efforts," *N.H. Youth Movement v. Scanlan*, No. 24-cv-291-SE, 2026 WL 323171, at *8, 10 (D.N.H. Feb. 6, 2026); *see also LULAC*, 780 F. Supp.

19

3d at 189 (harming both Plaintiffs and the public).

*Second*, injunctions that respect separation of powers and federal law serve the public interest. "[T]here is generally no public interest in the perpetuation of unlawful agency action." *Somerville Pub. Schs. v. McMahon*, 139 F.4th 63, 76 (1st Cir. 2025) (quoting *Newby*, 838 F.3d at 12); *see also Ass'n of Am. Univs. v. Nat'l Sci. Found.*, 788 F. Supp. 3d 106, 142 (D. Mass. 2025).

*Third*, "the public interest is served by protecting 'the fundamental political right to vote.'" *League of Women Voters of N.H.*, 2025 WL 3260024, at *5 (citation omitted); *see also Mancuso v. Taft*, 476 F.2d 187, 193 (1st Cir. 1973) (recognizing "the public interest in an unhampered, unconditioned vote"). Without an injunction, USPS will refuse to transmit certain voters' mail ballots. This will have a significant disenfranchising effect.

Granting a preliminary injunction, however, poses little to no hardship for Defendants or the public. *First*, "[i]t is well established that the Government 'cannot suffer harm from an injunction that merely ends an unlawful practice.'" *Ass'n of Am. Univs.*, 788 F. Supp. 3d at 142 (citation omitted). Preserving the longstanding status quo does not harm the government. *See, e.g.*, *Nat'l Educ. Ass'n v. U.S. Dep't of Educ.*, 779 F. Supp. 3d 149, 200–01 (D.N.H. 2025); *Tirrell v. Edelblut*, 747 F. Supp. 3d 310, 318–19 (D.N.H. 2024); *HHS*, 811 F. Supp. 3d at 213. And while courts must consider that "the public and the government have a significant interest in the implementation of duly enacted statutes," *HHS*, 811 F. Supp. 3d. at 213, that consideration is inapplicable here, as there is no duly enacted statute and the government action is unmoored from constitutional or congressional authorization. *See supra* Argument § I.B.

## CONCLUSION

The Order unlawfully directs USPS to abandon its role as a neutral mail carrier and take an active role in election administration. Because these commands cause immediate, ongoing, and irreparable harm to Plaintiffs, their members, and voters they serve, preliminary relief is necessary.

Dated: July 20, 2026

Respectfully submitted,

Jessie J. Rossman (BBO #670685)
Suzanne Schlossberg (BBO #703914)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF MASSACHUSETTS,
INC.
One Center Plaza, Suite 850
Boston, MA 02108
(617) 482-3170
jrossman@aclum.org
sschlossberg@aclum.org

Eliza Sweren-Becker*
Wendy Weiser*
Andrew B. Garber*
BRENNAN CENTER FOR JUSTICE AT
NYU SCHOOL OF LAW
120 Broadway, Suite 1750
New York, NY 10271
(646) 292-8310
sweren-beckere@brennan.law.nyu.edu
weiserw@brennan.law.nyu.edu
garbera@brennan.law.nyu.edu

Justin Lam*
BRENNAN CENTER FOR JUSTICE AT
NYU SCHOOL OF LAW
777 6th Street NW, Suite 1100
Washington, DC 20001
(202) 249-7190
lamju@brennan.law.nyu.edu

Niyati Shah*
Noah Baron*
Ejaz Baluch, Jr.*
ASIAN AMERICANS ADVANCING
JUSTICE-AAJC
1620 L Street NW, Suite 1050
Washington, DC 20036
(202) 296-2300
nshah@advancingjustice-aajc.org
nbaron@advancingjustice-aajc.org
ebaluch@advancingjustice-aajc.org

/s/ Sophia Lin Lakin
Sophia Lin Lakin*
Theresa J. Lee*
Davin Rosborough*
Ethan Herenstein*
Jonathan Topaz*
Ming Cheung*
William Hughes*
Clayton Pierce*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2500
slakin@aclu.org
tlee@aclu.org
drosborough@aclu.org
eherenstein@aclu.org
jtopaz@aclu.org
mcheung@aclu.org
whughes@aclu.org
cpierce@aclu.org

Sarah Brannon*
Adriel I. Cepeda Derieux*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
915 15th Street NW
Washington, DC 20001
(202) 457-0800
sbrannon@aclu.org
acepedaderieux@aclu.org

Leah C. Aden*
Brenda Wright*
John S. Cusick*
NAACP LEGAL DEFENSE &
EDUCATIONAL FUND, INC.
40 Rector Street, 5th Floor
New York, NY 10006
(212) 965-2200
laden@naacpldf.org
bwright@naacpldf.org
jcusick@naacpldf.org

21

Miranda Galindo*
Latino Justice PRLDEF
475 Riverside Drive, Suite 1901
New York, NY 10115
(212) 392-4752
mgalindo@latinojustice.org

I. Sara Rohani*
NAACP LEGAL DEFENSE &
EDUCATIONAL FUND, INC.
700 14th Street NW, Suite 600
Washington, DC 20005
(202) 682-1300
srohani@naacpldf.org


*Admitted pro hac vice

Counsel for Plaintiffs League of Women
Voters of Massachusetts, League of Women
Voters Lotte E. Scharfman Memorial
Education Fund, League of Women Voters of
the United States, League of Women Voters
Education Fund, Association of Americans
Resident Overseas, U.S. Vote Foundation,
OCA-Asian Pacific American Advocates, and
Delta Sigma Theta Sorority, Inc.

22

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 20, 2026, a true copy of the above document was filed via the

Court's CM/ECF system and that a copy will be sent automatically to all counsel of record.

July 20, 2026                                        /s/ *Sophia Lin Lakin*
                                                    Sophia Lin Lakin