**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| LEAGUE OF WOMEN VOTERS OF MASSACHUSETTS, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*, <br><br> *Defendants*, <br><br> STATE OF MISSOURI, STATE OF ALABAMA, STATE OF FLORIDA, STATE OF INDIANA, STATE OF KANSAS, STATE OF LOUISIANA, STATE OF MONTANA, STATE OF NEBRASKA, STATE OF OKLAHOMA, STATE OF SOUTH CAROLINA, and STATE OF SOUTH DAKOTA, <br><br> *Intervener Defendants*. | Case No. 1:26-cv-11549-IT |

## <u>INTERVENER STATES' OPPOSITION TO PLAINTIFFS' RENEWED MOTION FOR PRELIMINARY INJUNCTION</u>

i

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................................... iii

INTRODUCTION ................................................................................................................... 1

BACKGROUND ..................................................................................................................... 1

ARGUMENT .......................................................................................................................... 4

    I.    Intervener States Are Likely to Prevail on the Merits ................................................. 4

        A.  Plaintiffs have not identified any injury to challenge Section 3 .............................. 4

        B.  Plaintiffs' challenges to Section 3 are not ripe ........................................................ 9

        C.  The injunction against directing USPS to engage in rulemaking is
            unconstitutional ..................................................................................................... 11

    II.    Plaintiffs Cannot Show Irreparable Harm From Section 3 ......................................... 13

    III.    The Balance of Equities and Public Interest Weigh Against An Injunction ............. 14

CONCLUSION ..................................................................................................................... 15

CERTIFICATE OF SERVICE .............................................................................................. 19

## TABLE OF AUTHORITIES

**Cases**

*Alaska v. U.S. Dep't of Agric.*,
17 F.4th 1224 (D.C. Cir. 2021)........................................................................................ 5, 6

*Allen v. Wright*,
468 U.S. 737 (1984)............................................................................................................. 4

*Allen-Bradley Loc. No. 1111, United Elec., Radio & Mach. Workers of Am. v. Wis. Emp. Rels. Bd.*,
315 U.S. 740 (1942)........................................................................................................... 14

*Am. Petroleum Inst. v. E.P.A.*,
683 F.3d 382 (D.C. Cir. 2012)........................................................................................... 10

*Bennett v. Spear*,
520 U.S. 154 (1997)............................................................................................................. 5

*Church v. Biden*,
573 F. Supp. 3d 118 (D.D.C. 2021).................................................................................. 10

*City of Fall River, Mass. v. FERC*,
507 F.3d 1 (1st Cir. 2007)................................................................................................... 9

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013)............................................................................................................. 4

*Common Cause v. Trump*,
506 F. Supp. 3d 39 (D.D.C. 2020)............................................................................... 10, 14

*DSCC v. Trump,*
--- F. Supp. 3d ---, 2026 WL 1487833 (D.D.C. May 28, 2026) ..................................... 14

*FDA v. Alliance for Hippocratic Medicine,*
602 U.S. 367 (2024)......................................................................................................... 7, 8

*Finca Santa Elena, Inc. v. U.S. Army Corps of Eng'rs*,
873 F. Supp. 2d 363 (D.D.C. 2012).............................................................................. 10, 11

*Frank Martin Sons, Inc. v. John Deere Const. & Forestry Co.*,
542 F. Supp. 2d 101 (D. Me. 2008) .................................................................................. 13

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*,
561 U.S. 477 (2010)...................................................................................................... 11, 12

*In re Murray Energy Corp.*,
788 F.3d 330 (D.C. Cir. 2015).............................................................................................. 5

*League of Women Voters of New Hampshire, et al. v. Kramer, et al.*
24-cv-73-SM-TSM, 2912025 WL 3260024 (D.N.H. Oct. 17, 2025) ........................................ 8

*League of Women Voters of the U.S. v. Newby,*
838 F.3d 1 (D.C. Cir. 2016) .................................................................................................... 3

*Matos ex rel. Matos v. Clinton Sch. Dist.,*
367 F.3d 68 (1st Cir. 2004) ................................................................................................... 13

*Myers v. United States,*
272 U.S. 52 (1926) .......................................................................................................... 12, 13

*N.H. Indonesian Cmty. Support v. Trump,*
157 F.4th 29 (1st Cir. 2025) ................................................................................................. 13

*Nat'l Park Hospitality Ass'n v. Dep't of the Interior,*
538 U.S. 803 (2003) ............................................................................................................... 9

*New Hampshire Youth Movement v. Scanlan*
24-cv-291-SE, 2026 WL 1500857 (D.N.H. May 28, 2026) ..................................................... 8

*Perez v. Mortg. Bankers Ass'n,*
575 U.S. 92 (2015) ................................................................................................................. 6

*Public Citizen, Inc. v. Nat'l Highway Traffic Safety Admin.,*
489 F.3d 1279 (D.C. Cir. 2007) ............................................................................................ 14

*Reno v. Catholic Soc. Servs., Inc.,*
509 U.S. 43 (1993) ................................................................................................................. 9

*Republican Nat'l Comm. v. Aguilar,*
No. 2:24-CV-00518-CDS-MDC, 2024 WL 4529358 (D. Nev. Oct. 18, 2024) ......................... 7

*Seila Law LLC v. CFPB,*
591 U.S. 197 (2020) ......................................................................................................... 12, 14

*Steel Co. v. Citizens for a Better Env't,*
523 U.S. 83 (1998) ................................................................................................................. 4

*Strong Communities Found. of Arizona Inc. v. Richer,*
No. CV-24-02030-PHX-KML, 2024 WL 4475248 (D. Ariz. Oct. 11, 2024) ........................... 7

*Tex. State LULAC v. Elfant,*
52 F.4th 248 (5th Cir. 2022) ................................................................................................... 5

*Trump v. New York,*
592 U.S. 125 (2020) .......................................................................................................... 4, 15

iv

*Trump v. Slaughter*,
No. 25-332, 2026 WL 1855612 (U.S. June 29, 2026) .............................................................. 12

*U.S. Postal Serv. v. Flamingo Indus. (USA) Ltd.*,
540 U.S. 736 (2004) .................................................................................................................. 12

*United States v. Arthrex, Inc.*,
594 U.S. 1 (2021) ................................................................................................................ 11, 12

*United States v. Chem. Found.*,
272 U.S. 1 (1926) ...................................................................................................................... 10

*W.R. Grace & Co. v. EPA,*
959 F.2d 360 (1st Cir. 1992) ...................................................................................................... 9

## Constitutional Provisions

U.S. Const. art. II, § 1, cl. 1 ............................................................................................................ 11

U.S. Const. art. II, § 3 ..................................................................................................................... 11

## Statutes

5 U.S.C. § 704........................................................................................................................................ 5

18 U.S.C. § 611 ................................................................................................................................ 11

39 U.S.C. § 401 ........................................................................................................................... 1, 10

52 U.S.C. § 20511 ........................................................................................................................... 11

## Regulations

Ballot Mail for Federal Elections,
91 Fed. Reg. 32,915 (June 2, 2026) ........................................................................................ 2, 6

**INTRODUCTION**

This Court should deny Plaintiffs' renewed motion for preliminary injunction because Intervener States are likely to prevail on the merits, Plaintiffs do not face irreparable harm, and the balance of equities and public interest weigh against an injunction. Fundamentally, Plaintiffs' claims are all premature. As this Court correctly stated, "[t]here are clearly many uncertainties as to how the agencies will ultimately implement the EO, including . . . what final rule, if any, will be adopted by the USPS." Doc. 166 at 10. For this reason, Plaintiffs' claims are not ripe. These uncertainties also make Plaintiffs' alleged injuries speculative and insufficient for Article III standing. The best Plaintiffs can presently go off of is USPS's proposed rule, which undermines their predictions of USPS interference at the expense of State autonomy over their mail-in voter rolls. Finally, the balance of equities weighs in favor of giving agencies a chance to lawfully implement presidential policies pending appeal—whereas Plaintiffs are not meaningfully harmed by having to wait for finalized policies.

**BACKGROUND**

I.  **Factual Background**

On March 31, 2026, President Trump issued Executive Order No. 14399, *Ensuring Citizenship Verification and Integrity in Federal Elections*. The EO recognized the President's "duty under Article II of the Constitution of the United States to enforce Federal law, which includes preventing violations of Federal criminal law and maintaining public confidence in election outcomes." EO § 1.

As relevant to Plaintiffs' motion, Section 3 of the EO requires USPS to initiate rulemaking under 39 U.S.C. § 401 and other applicable authority to enhance the security mail-in and absentee ballots. Section 3(b)(i) provides that "Official Election Mail" shall bear tracking barcodes, which

1

are already ubiquitous for other kinds of mail. Section 3(b)(ii) provides that States "may choose" to provide the USPS "a list of voters eligible to vote" absentee. Section 3(b)(iii) then provides that the USPS "shall not transmit" absentee ballots from unidentified individuals. Section 3(b)(iv) requires the USPS to create a process by which each State receives "a list of individuals . . . for mail-in or absentee ballots provided by such State, along with unique ballot envelope identifiers."

The EO also provides that the preparation and transmission of these lists "shall comply with the Privacy Act and all applicable use agreements." EO § 3(b)(iv). Section 3(b)(v) then directs the creation of "procedures enabling each State to routinely supplement and provide suggested modifications or amendments to the State's Mail-In and Absentee Participation List in advance of any Federal election, consistent with applicable State law."

There is no final USPS rule as of the date of this filing. On June 2, 2026, USPS published its notice of proposed rulemaking (NPRM) in response to the EO. Ballot Mail for Federal Elections, 91 Fed. Reg. 32,915 (June 2, 2026). Under this proposal, USPS would not send mail ballots to individuals who are not on lists of eligible voters provided by the States. *Id.* at 32,916. Moreover, "states"—not USPS or any agency of the federal government—"would retain full control over who would (or would not) be able to vote by mail in federal elections within each state, as states would control enrollment with the Postal Service for inclusion on the state's Mail-In and Absentee Participation List." *Id.*

## II.   Procedural History

The President promulgated Executive Order No. 14399 on March 31, 2026, and Plaintiffs challenged the EO almost immediately, filing their original complaint on April 2, 2026. Doc. 1. On April 23, 2026, Plaintiffs filed their first motion for preliminary injunction. Doc 73. On June 18, this Court dismissed without prejudice Plaintiffs' Complaint "as to their claims regarding the

2

EO and its implementation with regard to elections occurring after <u>November 3, 2026</u>" on ripeness grounds, Doc. 166 at 17, explaining that "[t]here are clearly many uncertainties as to how the agencies will ultimately implement the EO, including the source and accuracy of DHS' Confirmed Citizen Lists, and what final rule, if any, will be adopted by the USPS," *id.* at 10. This Court denied Defendants' motions to dismiss "with regard to the November 3, 2026 election, and all earlier elections." *Id.* at 17.

On July 13, 2026, this Court denied Plaintiffs' motion for preliminary injunction but stated that it would allow Plaintiffs to file a renewed motion for a preliminary injunction if the injunction issued by the D.C. District Court in *NAACP v. USPS*, No. 1:20-cv-02295-EGS is stayed pending appeal or if USPS promulgates a final rule implementing Section 3 of the EO. Doc. 167 at 2. On July 17, the D.C. Circuit stayed that injunction pending appeal, explaining that USPS had "made a strong showing" that it was likely to succeed on the merits because, as relevant here, the June 2, 2026 proposed rule "is likely neither constitutionally nor prudentially ripe for review." Order at 1, *NAACP v. USPS*, No. 26-5257 (D.C. Cir., filed July 17, 2026). The D.C. Circuit also held that USPS had "demonstrated irreparable harm on the ground that, absent a stay, the district court's injunction 'will render [them] unable' to 'issue and implement a final rule in advance of the November 2026 general election.'" *Id.* (quoting Appellant Mot. for Stay at 24) (alteration in original). "In this context, 'there can be no do over' once the election occurs." *Id.* (quoting *League of Women Voters of the U.S. v. Newby*, 838 F.3d 1, 9 (D.C. Cir. 2016)). The court then concluded that "any countervailing harm to appellee and the public" did not outweigh the government's likely success on the merits and irreparable injury. *Id.* at 1–2.

Plaintiffs renewed their motion for preliminary injunction on July 20, 2026. Doc. 170. Since that filing, the First Circuit denied a stay of this Court's injunction in *California v. Trump*. No. 26-1774 (1st Cir., filed July 25, 2026). There, this Court enjoined enforcement of the EO within the States serving as plaintiffs in that case. No. 1:26-cv-11581, Doc. 207. A divided panel of the First Circuit denied a stay of that order on July 25.

**ARGUMENT**

### I.    Intervener States Are Likely to Prevail on the Merits

### A.    Plaintiffs have not identified any injury to challenge Section 3.

To establish Article III standing, Plaintiffs must plausibly allege that they suffered a cognizable injury fairly traceable to Defendants, and that the injury is likely to be redressed by a favorable judicial decision. *See Allen v. Wright*, 468 U.S. 737, 751 (1984). Plaintiffs must show an "injury in fact"—a harm suffered by the plaintiff that is "concrete" and "actual or imminent, not 'conjectural' or 'hypothetical.'" *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998) (internal quotation omitted). The threatened injury must be "certainly impending," and an "objectively reasonable likelihood" of future harm is insufficient. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409–10 (2013).

Applying these principles here, Plaintiffs lack standing to challenge Section 3 because Article III requires a sufficiently concrete challenged policy to assess the imminence of a threatened injury. *See Trump v. New York*, 592 U.S. 125, 131–32 (2020). No final rule has issued yet—precluding imminent harm. *Cf. id*. Indeed, Plaintiffs admit that they are uncertain about what a potential USPS rule would provide for, acknowledging that "[t]he Executive Order provides no further explanation as to what this enrollment process will look like, or how USPS should determine which of its users are entitled to mail their ballots." Doc. 1 ¶ 149.

4

As this Court rightly stated, Section 3(b) does not dictate a particular outcome permitting pre-implementation challenges. *See* Doc. 166 at 10 ("There are clearly many uncertainties as to how the agencies will ultimately implement the EO, including . . . what final rule, if any, will be adopted by the USPS."). It rather directs the USPS to *initiate* rulemaking about mail-in and absentee ballots, but the administrative process remains in USPS's hands. *See* EO § 3(b)(iv) (directing "[p]roposed provisions specifying that the USPS shall provide each State with a list of individuals (Mail-In and Absentee Participation List) who are enrolled with the USPS, *pursuant to a process specified in the rulemaking directed by this subsection*" (emphasis added)).

It is black-letter law that litigants cannot challenge proposed rules before finalization. *See* 5 U.S.C. § 704; *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997); *In re Murray Energy Corp.*, 788 F.3d 330, 334 (D.C. Cir. 2015). And for good reasons. With respect to justiciability, a proposed rule can change during the notice-and-comment process—and courts "will not presume that the [agency] is violating the law by going into that process with its mind made up." *Alaska v. U.S. Dep't of Agric.*, 17 F.4th 1224, 1229 n.5 (D.C. Cir. 2021).

Even if Plaintiffs could challenge the non-final rule, their injury theory suffers from rampant speculation that precludes jurisdiction. As the D.C. District Court aptly explained when denying a motion for preliminary injunction to enjoin the EO in a parallel proceeding: "Section 3(b) directs only that the Postal Service initiate and then complete a rulemaking. Any injury therefore depends on a series of contingencies," including "what changes occur through notice and comment, whether a final rule issues, and how that final rule affects voters, States, or Plaintiffs." *DSCC v. Trump,* --- F. Supp. 3d ---, 2026 WL 1487833, at *10 (D.D.C. May 28, 2026). Any alleged injury caused by Section 3(b) therefore rests on too many unfallen dominoes. *See Tex. State LULAC v. Elfant*, 52 F.4th 248, 257 (5th Cir. 2022).

Plaintiffs seemingly urge an exception to Article III's imminent injury rule for executive orders and proposed rules when the Court thinks the final rule will be identical to initial proposals. Doc. 171, LWV Br. at 10 n.3. Plaintiffs offer no authority for that notion—which is foreclosed by *Clapper*. *See id.* And regardless, the shoe does not fit here. Already, the proposed rule is materially different than the one imagined in Plaintiffs' complaint. For example, while Plaintiffs alleged that the Section 2(a) Citizenship Lists "will be used to screen eligible, registered voters from the USPS Mail-In and Absentee Participation List," Doc. 1 ¶ 98, the proposed rule does not mention the Citizenship Lists at all and leaves complete control over the Mail-In and Absentee Participation List with the States, *see* 91 Fed. Reg. at 32,916 ("[S]tates would retain full control over who would (or would not) be able to vote by mail in federal elections within each state, as states would control enrollment with the Postal Service for inclusion on the state's Mail-In and Absentee Participation List."). Indeed, the proposed rule explicitly states that "[t]he Postal Service would not change the information provided by the state when compiling the lists" but would rather merely "provide technical assistance to states and localities regarding the secure submission of this data." *Id.* Plaintiffs' claim that "USPS will refuse to transmit certain voters' mail ballots" is therefore unfounded and contradicted by the plain text of the proposed rule. Doc. 171, LWV Br. at 20. And given the fact that USPS "*must* consider" comments before issuing a final rule, additional important changes are distinctly possible. *See Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 96 (2015) (emphasis added). Rather than indulging knee-jerk, premature lawsuits, federal courts must wait for finalized agency policies that actually impose imminent injuries. *See Alaska*, 17 F.4th at 1229 n.5.

Notwithstanding this fatal speculation, Plaintiffs claim that the EO has "'caused a resulting diversion of [Plaintiffs'] time and resources' from other key priorities" cannot confer standing.

Doc. 171, LWV Br. at 6 (citations omitted) (alteration in original).  That theory of injury is nearly identical to the standing allegations found insufficient by the Supreme Court in *FDA v. Alliance for Hippocratic Medicine* ("*AHM*").  *Compare* 602 U.S. 367, 394 (2024) ("The medical associations say that they have demonstrated something more here.  They claim to have standing not based on their mere disagreement with FDA's policies but based on their incurring costs to oppose FDA's actions.  They say that FDA has 'caused' the associations to conduct their own studies on mifepristone so that the associations can better inform their members and the public about mifepristone's risks.  They contend that FDA has 'forced' the associations to 'expend considerable time, energy, and resources' drafting citizen petitions to FDA, as well as engaging in public advocacy and public education.  And all of that has caused the associations to spend 'considerable resources' to the detriment of other spending priorities.  But . . . [a]n organization cannot manufacture its own standing in that way" (citations omitted)).  Like in *AHM*, where plaintiffs challenged FDA regulations that permitted *others* to prescribe mifepristone but did not implicate the plaintiffs' own practices, so too here:  *Nothing* in the EO prevents Plaintiffs from continuing to educate and mobilize voters.  *Cf. Strong Communities Found. of Arizona Inc. v. Richer*, No. CV-24-02030-PHX-KML, 2024 WL 4475248, at *9 (D. Ariz. Oct. 11, 2024) (plaintiff "must show that a challenged governmental action directly injures the organization's pre-existing core activities and does so *apart* from the plaintiffs' response to that governmental action" (cleaned up) (emphasis in original)); *Republican Nat'l Comm. v. Aguilar*, No. 2:24-CV-00518-CDS-MDC, 2024 WL 4529358, at *7 (D. Nev. Oct. 18, 2024) ("[V]ague allegations of shifting resources," where plaintiff shifted "some resources from one set of pre-existing activities in support of their overall mission to another, new set of such activities," "fail[ed] to provide the court any information regarding what or which resources the organizational plaintiffs have needed to shift."

(cleaned up)).  Plaintiffs' resource-diversion theory is therefore foreclosed by Supreme Court precedent.

Plaintiffs' cited caselaw also does not change anything.  In *N.H. Youth Movement v. Scanlan*, the district court held that organizational plaintiffs' challenge to a New Hampshire law eliminating qualified voter affidavits as means for proving voters' citizenship was justiciable because the law impaired their ability to help people register to vote.  No. 24-cv-291-SE, 2026 WL 1500857, at *25 (D.N.H. May 28, 2026) (cited Doc. 171, LWV Br. at 6).  Unlike in that case, Section 3(b) does not change voter registration requirements.  Under the proposed rule, states determine who may vote by mail just as they did before.  *See* 91 Fed. Reg. at 32916.  If the proposed rule becomes final, voters will not have to undertake any additional or altered requirements to receive a ballot.  *Id.*  Also, *League of Women Voters of N.H. v. Kramer* (cited Doc. 171, LWV Br. at 6) is inapposite because, unlike here, it dealt with injuries that had *already occurred*.  There, the court held that a fake robocall impersonating President Biden just before a primary attempting to "intimidate, threaten, or coerce" New Hampshire voters into not voting in a primary election adversely impacted League of Women's core function of registering voters.  No. 24-cv-73-SM-TSM, 2025 WL 3260024, at *1, *5 (D.N.H. Oct. 17, 2025).  But here, no injury could possibly result from an unfinalized policy. Plaintiffs' attempt to manufacture one by voluntarily diverting resources prior to any determined USPS action should be rejected.  If that were enough, it "would mean that all the organizations in America would have standing to challenge almost every federal policy that they dislike, provided they spend a single dollar opposing those policies."  *AHM*, 602 U.S. at 395.

8

### B. Plaintiffs' challenges to Section 3 are not ripe.

Alternatively, even if this Court finds that Plaintiffs have standing, the Court should reject their challenges to Section 3 as prudentially unripe. *See Nat'l Park Hospitality Ass'n v. Dep't of the Interior*, 538 U.S. 803, 807–08 (2003) (quoting *Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 57 n.18 (1993)) ("Ripeness is a justiciability doctrine" that is "'drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction.'"). "[P]remature review not only can involve judges in deciding issues in a context not sufficiently concrete to allow for focus and intelligent analysis, but it also can involve them in deciding issues unnecessarily, wasting time and effort." *W.R. Grace & Co. v. EPA,* 959 F.2d 360, 366 (1st Cir. 1992) (internal quotation omitted). This principle "prevent[s] the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Nat'l Park Hosp. Ass'n*, 538 U.S. at 807 (internal quotation omitted). To determine whether a claim satisfies prudential ripeness, courts consider: (1) the "fitness of the issues for judicial decision"; and (2) the "hardship to the parties of withholding court consideration." *City of Fall River, Mass. v. FERC*, 507 F.3d 1, 6 (1st Cir. 2007) (internal quotation omitted). Assessing whether an issue is "fit" for adjudication requires courts to consider "whether the issue presented is purely legal, as opposed to factual, and the degree to which any challenged agency action is final." *W.R. Grace & Co.*, 959 F.2d at 364.

Plaintiffs fail to establish the first prong for prudential ripeness because no concrete legal dispute fit for adjudication exists here. At the outset, Section 3 provides a broad outline of what the USPS regulation will include, but the administrative process remains ongoing and the processes for implementing the EO have not yet been published. *See* EO § 3(b)(iv) (directing "[p]roposed provisions specifying that the USPS shall provide each State with a list of individuals

9

(Mail-In and Absentee Participation List) who are enrolled with the USPS, *pursuant to a process specified in the rulemaking directed by this subsection*" (emphasis added)); *id.* § 3(b)(v) (directing unspecified "procedures enabling each State to routinely supplement and provide suggested modifications or amendments to the State's Mail-In and Absentee Participation List"). It would also be imprudent to review an executive order directing rulemaking when Plaintiffs cannot allege what the ultimate rule will provide. *See, e.g.*, Doc. 1 ¶ 149.

In allowing ongoing administrative proceedings to be completed, courts "respect the Executive Branch's interest in 'crystallizing its policy before that policy is subjected to judicial review.'" *Common Cause v. Trump*, 506 F. Supp. 3d 39, 46 (D.D.C. 2020) (quoting *Am. Petroleum Inst. v. E.P.A.*, 683 F.3d 382, 387 (D.C. Cir. 2012)). Where, as here, "the possibility that further [administrative] consideration will actually occur before implementation is not theoretical, but real," "[j]udicial intervention at this time would inappropriately interfere with ongoing action within the Executive Branch." *Id.* at 45. Moreover, the EO's direction that USPS's action be "pursuant to 39 U.S.C. 401 and other applicable authority," in "compl[iance] with the Privacy Act and all applicable use agreements," and "consistent with applicable State law" underscores the intention that said action be conducted lawfully. EO § 3(b)(iv)–(v). The "presumption of regularity," which requires courts to presume that public officers have "properly discharged their official duties" absent evidence to the contrary, supports this reading of Section 3. *United States v. Chem. Found.*, 272 U.S. 1, 14–15 (1926).

Given that USPS has not yet taken any final agency action, Plaintiffs likewise fail to show that "delayed judicial review would cause them 'immediate and significant hardship'" to satisfy the second prong for prudential ripeness. *Church v. Biden*, 573 F. Supp. 3d 118, 136 (D.D.C. 2021) (quoting *Finca Santa Elena, Inc. v. U.S. Army Corps of Eng'rs*, 873 F. Supp. 2d 363, 371

(D.D.C. 2012)). Premature adjudication of USPS's actions in the way Plaintiffs desire "denies the agency an opportunity to . . . apply its expertise" in implementing the EO consistent with its regular rulemaking procedures. *See Finca Santa Elena, Inc.*, 873 F. Supp. 2d at 369 (internal quotation omitted).

Altogether, this Court should not entertain Plaintiffs' premature lawsuit at the expense of foundational justiciability and administrative-law rules.

### C.  The injunction against directing USPS to engage in rulemaking is unconstitutional.

Plaintiffs' challenge to Section 3(b) is likewise unlikely to succeed on the merits because it asks for an impermissible remedy. In enjoining the President from instructing a federal agency to engage in rulemaking, the Court has given Plaintiffs an impermissible remedy that violates Article II of the Constitution.

The Constitution vests the entirety of the executive power in the President. U.S. Const. art. II, § 1, cl. 1. In exercising this power, the President must be able to control and supervise his subordinates to "take Care that the Laws be faithfully executed." U.S. Const. art. II, § 3; *see Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 483 (2010). This includes the laws criminalizing provision of a fraudulent ballot and casting ballots by anyone other than eligible voters. *See* 18 U.S.C. § 611; 52 U.S.C. § 20511. Indeed, "the activities of executive officers may take legislative and judicial forms, but they are exercises of—indeed, under our constitutional structure they *must be* exercises of—the executive Power, for which the President is ultimately responsible." *United States v. Arthrex, Inc.*, 594 U.S. 1, 17 (2021) (internal quotation omitted) (emphasis in original). Thus, the "thousands of officers [who] wield executive power" in the federal government "acquire[] [their] legitimacy and accountability to the public through 'a clear

11

and effective chain of command' down from the President." *Id.* at 11 (quoting *Free Enter. Fund*, 561 U.S. at 498).

Given those constitutional rules, Congress cannot bar the President from supervising USPS. The Constitution protects the President's ability to "discharge his own constitutional duty of seeing that the laws be faithfully executed." *Myers v. United States*, 272 U.S. 52, 135 (1926). Indeed, in *Myers*, the Supreme Court has already held that Congress cannot interfere with the President's ability to supervise the U.S. Postal Service. *See id.* Article II prevents such intrusions—including restrictions on the President's removal of post-office officials. *See id.* Moreover, at the end of this court term, the Supreme Court overruled *Humphrey's Executor*, making clear that neither the Legislative nor Judicial Branches can transform quintessentially executive powers into non-executive functions. *See Trump v. Slaughter*, No. 25-332, 2026 WL 1855612, at *15 (U.S. June 29, 2026) ("When an agency 'executes' a congressional mandate against private parties, it exercises executive power—no ifs, ands, or quasis about it."). If Congress cannot prevent the President from *firing* postal officials, it follows naturally that Congress cannot prohibit the President from giving directives to postal officials.

Nor can Plaintiffs insist USPS must be independent from presidential control by analogizing to "financial institutions like the Second Bank and the Federal Reserve," which "can claim a special historical status" because they "have historically enjoyed some insulation from the President." *Seila Law LLC v. CFPB*, 591 U.S. 197, 222 n.8 (2020). Unlike the Federal Reserve, USPS does not share the same historical lineage of independence. For most of the country's history, the Postmaster General was a member of the President's Cabinet. *See U.S. Postal Serv. v. Flamingo Indus. (USA) Ltd.*, 540 U.S. 736, 740 (2004) (providing historical overview).

12

Article II of the Constitution therefore provides the President with authority to supervise USPS. Neither Congress nor the courts can interfere—including by prohibiting presidential directions to engage in rulemaking. *See Myers*, 272 U.S. at 135

## II. Plaintiffs Cannot Show Irreparable Harm From Section 3

The irreparable harm element is "a necessary threshold showing for awarding preliminary injunctive relief." *Matos ex rel. Matos v. Clinton Sch. Dist.*, 367 F.3d 68, 73 (1st Cir. 2004). "A threat that is either unlikely to materialize or purely theoretical will not do" and precludes injunctive relief. *Id.* (failure to show irreparable harm is sufficient grounds for denying preliminary relief even if the other requirements of the preliminary injunction standard are met). The First Circuit also imposes "an independent obligation to make sure that the plaintiffs have met their requisite burden at this [preliminary injunction] stage of the litigation to show such standing exists." *N.H. Indonesian Cmty. Support v. Trump*, 157 F.4th 29, 34 (1st Cir. 2025). For this reason, failure to show a concrete Article III injury precludes a finding of irreparable harm for purposes of injunctive relief. *See Frank Martin Sons, Inc. v. John Deere Const. & Forestry Co.*, 542 F. Supp. 2d 101, 106 n.5 (D. Me. 2008) ("[S]peculative injury 'does not constitute a showing of irreparable harm.'" (internal quotations omitted)). Plaintiffs' theory of irreparable harm in their PI brief is the same their theory of standing. *See* Doc. 171, LWV Br. at 13–19 (alleging resource diversion and voter confusion and interference). But as explained above and in prior briefing, these injuries are all speculative and are contrary to the language of the proposed rule. Even if the proposed rule said as Plaintiffs claim, there has been no irreparable harm because no final rule has been implemented. For these reasons too, Plaintiffs are not entitled to a preliminary injunction.

### III.    The Balance of Equities and Public Interest Weigh Against An Injunction

Finally, the equitable factors do not favor Plaintiffs.  Indeed, they can point only to speculative injuries based on non-final agency actions.  *See supra* Part I.A.  Read charitably, Plaintiffs' strongest equitable claim to harm is their conjectural assertion of risks to mail-in voting, which is insufficient.  *See Public Citizen, Inc. v. Nat'l Highway Traffic Safety Admin.*, 489 F.3d 1279, 1297–98 (D.C. Cir. 2007) ("'increased risk' is" not by "itself [a] concrete, particularized, and actual injury for standing purposes"—harm must be "actual" or "imminent," not merely "increased" (citation omitted) (emphasis omitted)).

On the other hand, the federal government has a strong interest in getting a chance to implement executive orders lawfully.  *See Common Cause*, 506 F. Supp. 3d at 46.  Presidents frequently articulate policy objectives, but they rely on agencies to use their expertise to implement policy ideas lawfully.  *See Seila Law*, 591 U.S. at 204.  Giving agencies a chance to implement lawfully policies—rather than reflexively barring presidential directives that do not bind the public—reflects the respect due to the executive branch as a coordinate branch of government. *See Common Cause*, 506 F. Supp. 3d at 46.

At the same time, the federal courts also have a strong interest in not being forced to adjudicate rushed, speculative cases like this one.  Federal courts exist to resolve concrete legal disputes based on specific factual circumstances.  *See Allen-Bradley Loc. No. 1111, United Elec., Radio & Mach. Workers of Am. v. Wis. Emp. Rels. Bd.*, 315 U.S. 740, 746 (1942).  But as recognized by this Court and another federal judge, there are still many unknowns about how the EO will be implemented.  *See* Doc. 166 at 10 ("There are clearly many uncertainties as to how the agencies will ultimately implement the EO, including the source and accuracy of DHS' Confirmed Citizen Lists, and what final rule, if any, will be adopted by the USPS."); *DSCC v. Trump,* No. 26-

14

cv-01114 (CJN), 2026 WL 1487833, at *6, *10 (D.D.C. May 28, 2026).  Entertaining challenges to non-final, evolving policies—like Plaintiffs demand—only pulls federal courts away from the foundational principles that constrain and guide judicial power.  *See Trump v. New York*, 592 U.S. at 131–32.

**CONCLUSION**

The Court should deny Plaintiffs' motion for a preliminary injunction.

Date: July 27, 2026

Respectfully submitted,

**STEVE MARSHALL**
ALABAMA ATTORNEY GENERAL

/s/ A. Barrett Bowdre
A. Barrett Bowdre*
 Solicitor General
STATE OF ALABAMA
OFFICE OF THE ATTORNEY GENERAL
501 Washington Avenue
Montgomery, Alabama 36104
Telephone: (334) 353-8892
Fax: (334) 353-8400
Barrett.Bowdre@AlabamaAG.gov


**JAMES UTHMEIER**
FLORIDA ATTORNEY GENERAL

/s/ David M.S. Dewhirst
David M.S. Dewhirst*
 Solicitor General
Jason J. Muehlhoff*
 Chief Deputy Solicitor General
Office of the Attorney General
PL-01, The Capitol
Tallahassee, FL 32399-1050
(850) 414-3300
david.dewhirst@myfloridalegal.com
jason.muehlhoff@myfloridalegal.com


**CATHERINE L. HANAWAY**
MISSOURI ATTORNEY GENERAL

/s/ Louis J. Capozzi III
Louis J. Capozzi III, DC Bar No. 90018764*
 Solicitor General
J. Michael Patton*
 Deputy Solicitor General
Benjamin S. Gilberg*
 Deputy Solicitor General
Missouri Attorney General's Office
815 Olive Street, Suite 200
St. Louis, MO 63101
Tel. (573) 645-9662
Fax (573) 751-0774
Louis.Capozzi@ago.mo.gov
Michael.Patton@ago.mo.gov
Benjamin.Gilberg@ago.mo.gov


**THEODORE E. ROKITA**
INDIANA ATTORNEY GENERAL

/s/ James A. Barta
James. A Barta, DC Bar No. 1032613*
 Solicitor General
Office of the Indiana Attorney General
302 W. Washington Street
IGC South, Fifth Floor
Indianapolis, IN 46204-2770
Phone: (317) 232-0709
Fax: (317) 232-7979
James.Barta@atg.in.gov

16

**KRIS W. KOBACH**
KANSAS ATTORNEY GENERAL

*/s/ James R. Rodriguez*
James R. Rodriguez*
*Assistant Attorney General*
Kansas Office of the Attorney General
Topeka, Kansas 66612
Phone: (785) 368-8197
jay.rodriguez@ag.ks.gov


**AUSTIN KNUDSEN**
MONTANA ATTORNEY GENERAL

*/s/ Christian B. Corrigan*
Christian B. Corrigan*
 *Solicitor General*
Montana Department of Justice
215 N. Sanders Helena, MT 59601
(406) 444-2707 (o)
Christian.Corrigan@mt.gov


**GENTER DRUMMOND**
OKLAHOMA ATTORNEY GENERAL

*/s/ Garry M. Gaskins, II*
Garry M. Gaskins, II*
 *Solicitor General*
Office of the Attorney General of Oklahoma
313 NE Twenty-First St.
Oklahoma City, OK 73105
(405) 521-3921
garry.gaskins@oag.ok.gov

**ELIZABETH B. MURRILL**
LOUISIANA ATTORNEY GENERAL

*/s/ J. Benjamin Aguiñaga*
J. Benjamin Aguiñaga*
 *Solicitor General*
Louisiana Department of Justice
1885 N. Third St.
Baton Rouge, LA 70802
(225) 506-3746
AguinagaB@ag.louisiana.gov


**MICHAEL T. HILGERS**
NEBRASKA ATTORNEY GENERAL

/s/ *Cody S. Barnett*
Cody S. Barnett*
 *Solicitor General*
Nebraska Department of Justice
1445 K Street, Room 2115
Lincoln, Nebraska 68508
Tel.: (402) 471-2683
Fax: (402) 471-3297
cody.barnett@nebraska.gov


**ALAN WILSON**
SOUTH CAROLINA ATTORNEY GENERAL

*/s/ Joseph D. Spate*
Joseph D. Spate*
 *Deputy Solicitor General*
1000 Assembly Street
Columbia, South Carolina 29201
Tel. (803) 734-3371
Fax (803) 734-3677
josephspate@scag.gov

17

**MARTY J. JACKLEY**
SOUTH DAKOTA ATTORNEY GENERAL

/s/ *Grant Flynn*
Grant Flynn*
  *Assistant Attorney General*
South Dakota Office of the Attorney General
1302 East SD Highway 1889,
Suite 1
Pierre, SD 57501-8501
Telephone: (605) 773-3215
Email: grant.flynn@state.sd.us


/s/ *Ian D. Prior*
Ian D. Prior (Bar No. 655704)
America First Legal Foundation
611 Pennsylvania Ave S.E. No. 231
Washington, D.C. 20003
(410) 205-9681
ian.prior@aflegal.org



* *Admitted pro hac vice*

**KEN PAXTON**
TEXAS ATTORNEY GENERAL

s/ *David Bryant*
David Bryant*
  *Senior Special Counsel*
Office of the Attorney General of Texas
Special Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Tel.: (512) 463-2100
david.bryant@oag.texas.gov

18

## CERTIFICATE OF SERVICE

I certify that on July 27, 2026, the above was filed electronically through the Court's electronic filing system to be served electronically on counsel for the parties.

/s/ *Louis J. Capozzi III*