**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| LEAGUE OF WOMEN VOTERS OF MASSACHUSETTS, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*,<br><br>Defendants. | Case No. 1:26-cv-11549-IT |

**FEDERAL DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO ENFORCE PRELIMINARY INJUNCTION**

On Friday, August 21, 2026, the Office of the Federal Register made available for public inspection a Final Rule submitted for publication by Defendant the United States Postal Service. Immediately thereafter, counsel for the United States filed a notice with this Court. ECF No. 188. As explained in that Notice (as well as in the Final Rule itself), "[g]iven injunctions currently in place in *State of California v. Trump*, No. 26-cv-11581 (D. Mass. June 25, 2026), and *League of Women Voters of Massachusetts v. Trump*, No. 26-cv-11549 (D. Mass. Aug. 11, 2026), the Postal Service will not take actions to implement the rule specifically for the 2026 election unless and until the government obtains relief from those injunctions." Final Rule, ECF No. 191-1 at 3. "The final rule will likewise impose no new regulatory obligations with respect to any election to be held on or before November 3, 2026 unless and until the government obtains relief from both of those orders." Defs.' Notice of Aug. 21, 2026, ECF No. 188 at 2.

Because of those significant substantive limitations on the legal effect of the Final Rule—which were included solely to ensure full compliance with this Court's orders—the publication of that document (whether on the internet or formally in the Federal Register) does not violate the injunction in this case, which was limited to "the November 3, 2026 or any earlier federal election." Preliminary-Injunction Order, ECF No. 183, at 27. Plaintiffs' motion should thus be denied. If

Plaintiffs wish to challenge the Final Rule, they can amend their complaint and do so, but an order purporting to "enforce" the preliminary-injunction order in this case would be both unnecessary and improper.

That result is even clearer now that the Supreme Court has granted the government's stay motion in *California*, on jurisdictional grounds that are equally applicable here—as explained in greater detail in Defendants' pending motion to reconsider. ECF No. 196. Now that the Supreme Court has made clear that this Court never had jurisdiction to issue the preliminary-injunction order in the first place, respectfully, this Court should not compound that error by issuing further relief to "enforce" its prior, jurisdictionally defective order. Instead, the Court should grant (1) Defendants' pending motion to reconsider, and then (2) deny Plaintiffs' motion to enforce as moot.

## BACKGROUND

### I. Litigation Background – *League of Women Voters of Massachusetts*

Executive Order 14,399 was issued on March 31, 2026. 91 Fed. Reg. 17,125 (Mar. 31, 2026). Two days later, on April 2, 2026, Plaintiffs filed this suit. Plaintiffs' complaint challenged the Executive Order under six counts. *See* Compl., ECF No. 1, ¶¶ 120-205.

On June 18, 2026, this Court granted in part and denied in part Federal Defendants' motion to dismiss. The Court granted the motion to dismiss without prejudice on prudential ripeness grounds for all claims "with regard to elections occurring after November 3, 2026." *See* ECF No. 166 at 17 (emphasis in original). The same order denied the motion as to the November 3, 2026 and all earlier elections. *Id.*

On April 23, 2026, Plaintiffs filed their first motion for preliminary injunction. ECF No. 73. On July 13, 2026, the Court denied that motion for lack of irreparable harm, as a separate preliminary injunction issued by another court ("D.D.C. Injunction") already enjoined implementation of Section 3 of the Executive Order. *See* ECF No. 167 at 2.

On July 21, 2026, following a stay pending appeal of the D.D.C. Injunction by the D.C. Circuit, Plaintiffs filed a renewed motion for preliminary injunction here. ECF No. 170. On August 11, 2026, this Court granted that motion and enjoined the Postal Service "from implementing,

giving effect to, or enforcing Section 3 of Executive Order No. 14399, with respect to the November 3, 2026 or any earlier federal election, including refusing to transmit mail-in or absentee ballots; or otherwise initiating or completing rulemaking to promulgate the specific regulations outlined in Section 3(b)(i)(v) or (d) of the EO for the November 3, 2026 or any earlier election." *See* ECF No. 183 at 26-27.

## II. Litigation Background - *California*

Meanwhile, Plaintiffs in a related and later-consolidated case, *California v. Trump*, 26-cv-11581 (D. Mass. Apr. 3, 2026) ("*California*") filed suit on similar grounds seeking similar relief. *See California*, ECF Nos. 1 (Compl.), 65 (Amended Compl.).

On June 18, 2026, this Court granted in part and denied in part Federal Defendants' motion to dismiss in *California*. Again, the Court granted the motion without prejudice on prudential ripeness grounds for all claims "with regard to elections occurring after November 3, 2026." *See California*, ECF No. 190 at 17 (emphasis in original). The same order denied the motion as to the November 3, 2026 and all earlier elections. *Id.*

On June 25, 2026, this Court granted the *California* Plaintiffs' motion for summary judgment and denied the Federal Defendants' motion for summary judgment. *See California*, ECF No. 191. As part of that summary-judgment order, the Court enjoined the Postal Service from "implementing, giving effect to, or enforcing Section 3(b)(i)–(v) or (d) of the [Executive Order No. 14399] as to elections mail for elections administered by Plaintiff States and ballot envelopes used by Plaintiff States with respect to the November 3, 2026 or any earlier federal election." *Id.* at 35.

On July 1, 2026, Federal Defendants in *California* filed a notice of appeal and moved for a stay pending appeal. *California*, ECF Nos. 192, 193. On July 7, 2026, this Court denied the motion for a stay. *California*, ECF No. 208. On July 25, 2026, the U.S. Court of Appeals for the First Circuit denied the motion for a stay. *California*, ECF No. 211.

On July 27, 2026, Federal Defendants moved for a stay at the Supreme Court. *See* Appl. for a Stay of the Inj. Issued by the U.S. District Ct. for the District of Massachusetts and Req. for Administrative Stay, *Trump v. California*, No. 26A124 (U.S. July 27, 2026).

Following this Court's August 11, 2026 order granting a preliminary injunction in *League of Women Voters* (*i.e.*, in this case), on August 12, 2026, Federal Defendants in *California* filed a Supplemental Brief with the Supreme Court, explaining that *League of Women Voters* and *California* were closely connected, and argued that "a stay of the permanent injunction in [*California*] should cause the district court or the First Circuit to stay the new preliminary injunction [in *League of Women Voters*] too." *See* Suppl. Br. in Supp. of Appl. for Stay, *Trump v. California*, No. 26A124 (U.S. Aug. 12, 2026), at 2 (emphasis omitted).[1]

Yesterday, on August 24, 2026, the Supreme Court granted the stay motion in *California*. *See Trump v. California*, 600 U.S. ___, 2026 WL 2473573 (U.S. Aug. 24, 2026). The Supreme Court reasoned that "[a]t the time this suit was filed—the time when standing is measured—the District Court had to engage in a string of speculations to find this suit justiciable," and ultimately "made a decision 'dependent on contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Id.* at *7-8 (quoting *Trump v. New York*, 592 U.S. 125, 131 (2020) (per curiam)). The Supreme Court thus reaffirmed that "[f]ederal courts review final rules, not proposed rules—and certainly not antecedent internal directives to propose a rule." *Id.* at *8.

Yesterday evening, after the Supreme Court's opinion in *California*, Federal Defendants moved this Court to immediately reconsider and vacate (or in the alternative, stay) its preliminary injunction in *League of Women Voters* (*i.e.*, this case), because the reasoning in *California* applies equally to this case. *See* ECF No. 196. That motion remains pending as of this filing.

---

[1] Defendants' deadline to file a notice of appeal of the preliminary-injunction order in this case (*i.e.*, in *League of Women Voters*) has not yet run. *See* Fed. R. App. P. 4(a)(1)(B). Defendants have not yet filed a notice of appeal to avoid an outcome in which this Court loses jurisdiction to modify or vacate that order in light of the Supreme Court's order in the *California* matter. As explained in greater detail in Defendants' motion to reconsider, however, in light of the *California* opinion, the Solicitor General of the United States has now authorized an appeal in this case in the event that the Court does not grant relief from the preliminary-injunction order by 5:30 PM on August 25, 2026.

## III. The Final Rule

At approximately 9:00 PM on August 21, 2026, the Office of the Federal Register made available for public inspection, on the Federal Register's website, a final rule that the Postal Service had submitted for publication. *See* USPS, *Ballot Mail for Federal Elections* (Aug. 21, 2026) ("Final Rule").[2] Formal publication of the Final Rule in the Federal Register is scheduled for August 26, 2026.

As a general matter, the Final Rule states that it is "[e]ffective August 21, 2026." Final Rule, ECF No. 191-1 at 2. With respect to the November 2026 elections in particular, however, the Final Rule also states: "Given injunctions currently in place in *State of California v. Trump*, No. 26-cv-11581 (D. Mass. June 25, 2026), and *League of Women Voters of Massachusetts v. Trump*, No. 26-cv-11549 (D. Mass. Aug. 11, 2026), the Postal Service will not take actions to implement the rule specifically for the 2026 election unless and until the government obtains relief from those injunctions." *Id.* at 3.

Within minutes of the Final Rule's availability on the Federal Register's website, Federal Defendants filed a Notice. *See* Defs.' Notice of Aug. 21, 2026, ECF No. 188. The Notice reiterated the language in the Final Rule that, despite the generally stated effective date of August 21, the Postal Service also "will not take any action to implement the rule" for elections on or before November 3, 2026, unless the government obtains relief from both the *California* and *League of Women Voters* court orders. *Id.* at 2. The Notice further emphasized that the "final rule will likewise impose no new regulatory obligations with respect to any election to be held on or before November 3, 2026 unless and until the government obtains relief from both of those orders." *Id.*

On August 22, 2026, Plaintiffs in *League of Women Voters* filed what they captioned as an "Emergency Motion to Enforce Preliminary Injunction and for Expedited Briefing." *See* ECF No. 189. Plaintiffs' motion seeks three specific remedies: "(1) directing that the Final Rule has no

---

[2] https://www.federalregister.gov/public-inspection/2026-17238/ballot-mail-for-federal-elections

force or effect with respect to any election on or before November 3, 2026; (2) directing Defendants to take no implementation or preparatory steps that would change the status quo for any covered election; and (3) directing Defendants to file compliance updates each week." *See* ECF No. 190 at 7.

Defendants now oppose Plaintiffs' motion in *League of Women Voters.* Plaintiffs in *California* have not sought any relief (or made any filings at all) since Defendants' Notice on August 21, 2026. *See California*, ECF No. 212.

## ARGUMENT

The United States takes its obligation to comply with court orders very seriously. But, respectfully, that is exactly why the Final Rule is phrased in the way that it is—to *comply* with this Court's orders, not to violate them. If Plaintiffs believe that the Postal Service's new rule is unlawful and should be enjoined or vacated, the appropriate procedural path is straightforward: Plaintiffs should amend their complaint and challenge the rule directly, allowing the parties to brief its legality on the merits (for the first time in this litigation). If the Court concludes that the rule is unlawful, it can grant any appropriate relief at that time. But regardless of the outcome of that possible future litigation, the publication of a final rule that will currently be implemented only for elections *after* November 3, 2026—and will be implemented for the 2026 elections if and only if the preliminary injunction is stayed or vacated—cannot possibly violate an order that was expressly limited to the November 3, 2026 election. Accordingly, Plaintiffs' motion to enforce the preliminary-injunction order should be denied in full.

In any event, now that the Supreme Court has granted a stay in *California* on grounds that are equally applicable to this case, *see* ECF No. 196, that provides an even more straightforward reason to deny Plaintiffs' motion—because the Court should now *vacate* the preliminary-injunction order in this case, rather than issue a further order enforcing an order that was issued (as *California* now makes clear) in excess of this Court's subject-matter jurisdiction.

**I. Plaintiffs' motion to enforce should be denied as moot, as the preliminary-injunction order it seeks to enforce should be vacated under *California*.**

The Court's preliminary-injunction order in this case should now be vacated or stayed following the Supreme Court's decision in *Trump v. California*, as explained in greater detail in Federal Defendants' pending motion to reconsider. *See* ECF No. 196. The Court's vacatur or stay of its preliminary-injunction order would then necessitate denying Plaintiffs' motion to enforce, *see* ECF No. 189, as moot, as the underlying injunction would no longer be in effect.

The current procedural posture is analogous to *DHS v. D.V.D.*, 145 S. Ct. 2627 (2025) ("*DVD II*"). In *DVD II*, the U.S. District Court for the District of Massachusetts preliminarily enjoined the Department of Homeland Security from removing aliens without following certain procedures to enable the alien to seek relief under the Convention Against Torture. *Id.* at 2629. On May 21, 2025, the District Court determined that the Government had violated that April 18, 2025 injunction with respect to six individuals and issued a remedial order, "directing the Government to follow specified procedures" with respect to those six individuals. *Id.* Following an appeal by the Government, the Supreme Court stayed the April 18 preliminary injunction pending appeal. *Id.* Nevertheless, the District Court "issued a minute order stating that the May 21 remedial order" remained in effect, notwithstanding the Supreme Court's stay of the underlying April 18 injunction. *Id.* After the Government moved for an order clarifying the Supreme Court's stay, the Supreme Court held that the "May 21 remedial order cannot now be used to enforce an injunction that our stay rendered unenforceable." *Id.* (citing *Nken v. Holder*, 556 U.S. 418, 428 (2009)); *see also id.* at 2630 (Kagan, J., concurring) ("I do not see how a district court can compel compliance with an order that this Court has stayed.").

The same logic applies here. Because the Court should *vacate* the preliminary-injunction order in its entirety—as it was issued without subject-matter jurisdiction, as confirmed by *California*—there is no basis for a further order *enforcing* that decision. Instead, the Court should first decide Defendants' pending motion to reconsider, vacate the preliminary-injunction order, and then deny Plaintiffs' motion to enforce as moot. *See DVD II*, 145 S. Ct. at 2629; *see also United*

*States v. Mine Workers*, 330 U.S. 258, 295 (1947) ("The right to remedial relief falls with an injunction which events prove was erroneously issued and *a fortiori* when the injunction or restraining order was beyond the jurisdiction of the court.").

**II. The publication of the Final Rule does not violate the preliminary-injunction order because it explicitly carves out the November 3, 2026 election.**

Even if the Court's preliminary-injunction order could somehow survive the *California* opinion, *but see* ECF No. 196, there is still no basis to grant Plaintiffs' motion to enforce. That is because the Final Rule, by its own terms, will not apply to the November 2026 elections unless and until the government obtains relief from all relevant court orders.

All "claims regarding the EO and its implementation for elections occurring after November 3, 2026" have already been dismissed from this case, in the Court's order granting in part Federal Defendants' motion to dismiss. ECF No. 166 at 3 (emphasis in original). The Court's preliminary-injunction order likewise applies only "with respect to the November 3, 2026 or any earlier federal election." Preliminary-Injunction Order, ECF No. 183, at 27.

The Final Rule respects those limitations, in explicit text that is fatal to Plaintiffs' motion. To avoid the very sort of accusation that Plaintiffs have now advanced, the Final Rule says explicitly that, "[g]iven injunctions currently in place in *State of California v. Trump*, No. 26-cv-11581 (D. Mass. June 25, 2026), and *League of Women Voters of Massachusetts v. Trump*, No. 26-cv-11549 (D. Mass. Aug. 11, 2026), the Postal Service will not take actions to implement the rule specifically for the 2026 election unless and until the government obtains relief from those injunctions." Final Rule, ECF No. 191-1 at 3. And were there any doubt, Federal Defendants' notice makes crystal clear that "[t]he final rule will likewise impose no new regulatory obligations with respect to any election to be held on or before November 3, 2026 unless and until the government obtains relief from both of those orders." Defs.' Notice of Aug. 21, 2026, ECF No. 188.

It is that simple: because the Final Rule (at least currently) applies only to future elections, it does not violate this Court's preliminary-injunction order, which applies only to elections on or before November 3, 2026. Indeed, not only were future elections excluded from the preliminary-

injunction order, *see* ECF No. 183 at 26-27, but all claims relating to future elections have been dismissed, *see* ECF No. 166 at 17. Plaintiffs' motion can and should be denied on that basis alone.

As further support for this common-sense understanding of the plain text of the Court's prior orders and the Final Rule itself, this Court already appeared to acknowledge that this approach was permissible, on the record and in open court, at the most recent preliminary-injunction hearing in this case. As part of a discussion of the Postal Service's options in light of the *California* injunction, the Court stated the following:

> THE COURT: . . . You oftentimes have staggered rules. That's common. So you put out a proposed rulemaking, and then you say we're going to do this. We're going to put a minimum wage in of $10 an hour this year and $14 an hour in three years, whatever. So there was nothing to say -- there was nothing to stop on this proposed rule to say we're putting this into place in January and the issue of what's going into -- ***and, frankly, there's nothing to have stopped you from saying we would put this into place as of this date if it's permitted by the courts.***
>
> MR. AL-SHAREFFI: And, again, the postal service may very well come up with that type of rule. We simply do not know what the postal service's, you know, final rule will be.

Hr'g Tr. (Aug. 7, 2026) at 37:3-17 (emphasis added). In other words, the Court openly contemplated the possibility that, in light of the Court's having limited relief in *California* to the November 3, 2026 elections, the Postal Service could publish a rule for which the legal effect as to the upcoming elections was conditional upon whether and when the rule is "permitted by the courts." *Id.* And that is exactly what the Postal Service has now done—"if it's permitted by the courts" in time, *id.*, the rule will take effect for the November 3, 2026 elections. But because that conditional scenario presupposes the prior stay or reversal of this Court's orders, that conditional scenario cannot (by definition) reflect a violation of those orders. And if it is *not* "permitted by the courts" in time, *id.*—that is, if the government does *not* obtain "timely relief from the injunctions," *see* Final Rule, ECF No. 191-1 at 3—then the Postal Service cannot and will not "put this into place" for the November 3, 2026 elections, Hr'g Tr. at 37:12, and there would likewise be no violation.

In either scenario, the government has complied (and will continue to comply) fully with all outstanding court orders, as long as they remain in effect. That undeniable legal reality is sufficient to deny Plaintiffs' motion to enforce in its entirety.

**III. Plaintiffs' requested relief would have no meaningful effect.**

**a.** Were there any doubt about the lack of any conflict with the preliminary-injunction order, Plaintiffs' requested relief confirms it. That is because, despite captioning their filing as an "emergency" motion, Plaintiffs' requested relief would change *virtually nothing* about the current legal status quo. The proposed order attached to Plaintiffs' motion requests three forms of relief:

1. An order stating "that the Final Rule issued by the United States Postal Service (USPS), titled 'Ballot Mail For Federal Elections,' has no force or effect with respect to any federal election on or before November 3, 2026."
2. An injunction stating that the Postal Service and its leadership "are directed to take no implementation or preparatory steps that would change the status quo for any covered election."
3. An obligation to "file compliance updates with this Court every week."

Proposed Order, ECF No. 189-1. Plaintiffs' memorandum of law repeats these same requests. *See* Pls.' Mem., ECF No. 190 at 7.

Set aside the request for weekly compliance updates (which is about transparency, rather than anyone's legal rights). The first two requests for relief would essentially confirm the current status quo—which all parties already agree upon, and which the Final Rule already provides. Because the Court's order in this case formally remains in effect (at least, as of this filing), it is *already* the case that "the Final Rule issued by the United States Postal Service (USPS), titled 'Ballot Mail For Federal Elections,' has no force or effect with respect to any federal election on or before November 3, 2026." ECF No. 189-1. For the same reasons, under the legal status quo that is currently in effect, the Postal Service is *already* not taking any "implementation or preparatory steps that would change the status quo for any covered election." *Id.* Put another way, if the

Court issued Plaintiffs' proposed order, undersigned counsel would not have to provide any compliance instructions to the Postal Service (contrary to undersigned counsel's usual practice after entry of any adverse court order)—because the Postal Service is *already* operating under the same constraints contemplated by Plaintiffs' motion to enforce.

Of course, if the government obtains timely relief from both the order in *California* (which it has now done) and the order in this case (which it has now requested, *see* ECF No. 196), the status quo could change significantly. But in that hypothetical, there cannot be a violation of any court order, by definition—in that scenario, the orders would no longer be in effect. In other words, the relief Plaintiffs request *now* would accomplish nothing (as one injunction remains in effect) and to the extent they applied *later* (*i.e.*, after this Court's orders were, by hypothesis, no longer in effect) they would be plainly improper. *See supra at* 7-8 (discussing *DVD II*); *see also* Defs.' Mot. to Reconsider or Stay, ECF No. 196 (requesting vacatur of the preliminary-injunction order in this case in light of *California*). The bottom line is that, in *any* scenario, there is no basis to grant Plaintiffs' motion to enforce—either because it is unnecessary (as it is now) or because it would be improper (as it would be if the government obtains relief from this Court's order).

Ultimately, the fact that, currently, Plaintiffs' requested relief would change nothing about "the status quo for any covered election," Proposed Order, ECF No. 189-1, confirms that the government has not violated the preliminary-injunction order. After all, if there were an actual violation, Plaintiffs would presumably request an order that the government must *stop* violating the injunction, or otherwise cure Defendants' non-compliance. But none of their requested relief requires the government to do anything (or refrain from doing) anything at all—only to continue proceeding in the same manner contemplated by the Final Rule itself.

**b.** The Court's order of August 23, 2026 made reference to the possibility of "entry of a Temporary Restraining Order staying publication of the Final Rule." Electronic Order of Aug. 23, 2026. Plaintiffs, however, have neither filed a motion for a temporary restraining order, nor have they requested any relief that would "stay[] publication of the Final Rule," or do anything similar. *Id.* That is reason enough not to enter relief of that sort.

In any event, even if Plaintiffs had requested that relief, it would be improper. Had Plaintiffs challenged the Final Rule directly (or if they do so in the future, via amended complaint), the maximum relief they could theoretically be entitled to would be a "set aside" of the rule which would deprive the rule of any legal force and effect, *cf., e.g.*, John Harrison, *Vacatur of Rules Under the Administrative Procedure Act*, 40 YALE J. REGUL. 119, 119 (2023) ("Vacatur operates on the legal status of a rule, causing the rule to lose binding force.");[3] or (in some circumstances) an injunction either directing or prohibiting some specified action by government officials, *see, e.g.*, *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165-66 (2010) (contrasting the "less drastic remedy" remedy of vacatur with the "drastic and extraordinary remedy" of an injunction).[4] But under no plausible circumstances would the Court have ever needed to order deletion of a document from the Federal Register, or to unpublish something from the internet. There is accordingly no basis for an order to "stay[] publication of the Final Rule," Electronic Order of Aug. 23, 2026, even if Plaintiffs had requested that relief.

Indeed, although virtually every significant rule or regulation is published in the Federal Register through this staggered process, Federal Defendants are not aware of any prior precedent in which a court issued an order preventing formal publication in the Federal Register of a document that had already been released for public inspection. And the rule has *already* been published on the website of the Federal Register.[5]

---

[3] To be precise, the Administrative Procedure Act generally does not "apply to the exercise of the powers of the Postal Service." 39 U.S.C. 410(a).

[4] Defendants do not address in this brief principles of party-specific relief, or other equitable or justiciability limitations that might govern these possible future requests for relief. In general, Defendants reserve their right to oppose entry of any further relief on any appropriate ground—on threshold grounds, on the merits, or with respect to the scope of any applicable relief.

[5] To that end, as Plaintiffs emphasize, as a general matter, the Final Rule is effective on August 21, 2026, the date it was made available for public inspection on the Federal Register's website and the effective date listed in the document. *See Nat'l Council of Agric. Emps. v. Dep't of Lab.*, 143 F.4th 395, 399 (D.C. Cir. 2025) ("A substantive rule is not ordinarily final until the [Office of the Federal Register] makes it available for public inspection. At that juncture the rule is 'duly fixed,' and 'becomes valid against the public at large,'" (citations omitted)). To be clear, that

## IV. Plaintiffs' arguments to the contrary lack merit.

**a.** Plaintiffs repeatedly raise concerns with language in the Final Rule that says that "[d]elaying the effective date would jeopardize implementation of this rule in time for the 2026 general election, which will be held on November 3, 2026." Final Rule, ECF No. 191-1 at 3. But Plaintiffs repeatedly omit the very next sentence, which squarely refutes their interpretation and resolves their concern: "Given injunctions currently in place in *State of California v. Trump*, No. 26-cv-11581 (D. Mass. June 25, 2026), and *League of Women Voters of Massachusetts v. Trump*, No. 26-cv-11549 (D. Mass. Aug. 11, 2026), the Postal Service will not take actions to implement the rule specifically for the 2026 election unless and until the government obtains relief from those injunctions." *Id.* That language decides this motion, by cabining the legal effect of the Final Rule.

In any event, Postal Service's motivation for issuance of the final rule at this time has nothing to do with the question of whether it complies with the preliminary-injunction order—instead, that compliance question turns on the language of the Court's order and legal effect of the Final Rule. In any event, it is no secret that the government *wants* to implement this rule for the

---

effective date is meaningless for anyone focused on the November 3, 2026 elections (unless and until the government obtains timely relief from *both* of this Court's orders), as explained elsewhere in this brief and the Final Rule. But with those (material) caveats, the portions of the Rule relating to future elections are *already* in effect. And the rule has *already* been published on the Federal Register's website. So, on the August 26, 2026 date that this Court's scheduling order references, nothing will change—the Rule will still appear at the same link, on the same government website, but now in three columns of single-spaced type (with a Federal Register citation), rather than double-spaced text.

Further, counsel's understanding is that a court order enjoining publication of a Final Rule in the Federal Register issued close in time to scheduled publication would be extremely difficult to comply with, for both practical reasons and because of the Federal Register's statutory duty to produce "prompt publication of the Federal Register in the manner and at the times required" by statute and regulation. 44 U.S.C. § 1504. Generally, if a final rule must be withdrawn from publication after it has been made available for public inspection, the Federal Register requires notification "**before 12 noon** on the business day before the document's scheduled publication date." *See* OFR, NARA, Document Drafting Handbook (Aug. 2018 ed., rev. June 2025), https://www.archives.gov/files/federal-register/write/handbook/ddh.pdf, at Chapter 5-3, p. 177 (emphasis in original). An order enjoining publication issued past that time could cause significant practical problems for publication of the next day's issue of the Federal Register (including many actions that have nothing to do with this case). Defendants thus oppose that form of relief—which, again, Plaintiffs have not even requested—for that reason as well.

November 3, 2026 election, if possible—similar statements have appeared in prior litigation filings before the First Circuit and the Supreme Court. *See, e.g.,* Appl. for a Stay of the Inj. Issued by the U.S. District Ct. for the District of Massachusetts and Req. for Administrative Stay, *Trump v. California*, No. 26A124 (U.S. July 27, 2026) at 27 ("Absent a stay, the government will be unable to obtain appellate relief from an order that bars implementation of a presidential policy that seeks to ensure voter integrity in the upcoming November 2026 election."). Even so, despite that desire, the Postal Service also recognizes that that outcome is not possible while this Court's order remains in effect. That is why the Defendants sought appellate relief in *California* (based on jurisdictional arguments that apply equally to this case), and that is why the Final Rule makes clear that will not apply to the upcoming elections absent relief. But the fact that Defendants want to obtain relief from this Court's orders is not a violation of those orders.

**b.** Tellingly, most of Plaintiffs' filing ignores the critical language in the Final Rule that makes clear that it will have no effect on the November 2026 elections, absent relief from both of this Court's orders—the key limitation (quoted repeatedly above) appears for the first time (and only in part) on page five of their nine-page filing. *See* Pls.' Mem., ECF No. 190, at 5. And they never once acknowledge the similar statements in Defendants' Notice in this Court, including the definitive statement that "[t]he final rule will likewise impose no new regulatory obligations with respect to any election to be held on or before November 3, 2026 unless and until the government obtains relief from both of those orders." Defs.' Notice of Aug. 21, 2026, ECF No. 188, at 2.

When Plaintiffs eventually do get around to responding to the most important feature of the Final Rule for their argument, their response is that "whether or not USPS refrains from further action to implement the *Rule itself*, an immediately effective Rule nonetheless is an effort to implement Section of 3 of the *Executive Order*, which is what this Court's injunction forbids." ECF No. 190 at 5. That is wordplay, not a legal argument. Defendants fully agree that "this Court's injunction forbids," *id.*, implementation of the Executive Order, at least in certain respects. Preliminary-Injunction Order, ECF No. 183, at 26-27. But what Plaintiffs continue to ignore is that that order only "forbids" implementation of the Executive Order "with respect to the November 3,

2026 or any earlier federal election." *Id.* It is only by ignoring that massive, material limitation on this Court's order—as well as the mirror-image language in the Final Rule—that Plaintiffs can maintain the argument in their motion.

**c.** Eventually, Plaintiffs are left to baselessly implying that the Postal Service is lying, saying that "USPS's assurances" that it will not implement the Rule for the upcoming elections are "belied by the Rule's text." Pls.' Mem., ECF No. 190, at 5-6. But to support that remarkable assertion, Plaintiffs identify only a reference in the Final Rule to the Postal Service's intent to "make additional guidance documents available, including a User Guide . . . and Technical Specifications for the Portal" that would be used to implement the rule. *Id.* at 6 (citation omitted). But if the Postal Service does actually "make additional guidance documents available" any time soon, it will not do so *for use in the November 2026* elections—as both the final rule and the government's notice in this Court have made clear. The possible future issuance of future guidance documents about future elections is entirely consistent with the Court's preliminary injunction—as well as the Postal Service's representations in the Final Rule itself about what it will (and will not) do without obtaining relief.

**d.** Plaintiffs argue next that "Defendants' evident disagreement with the preliminary injunction" does not "excuse their noncompliance." Pls.' Mem., ECF No. 190, at 6. Again, Defendants fully agree that disagreement with a court order is not a basis for noncompliance. Indeed, it is only *because of* that principle that, at least thus far, the Postal Service has *not* implemented its intended policies for ballot mail with respect to the November 2026 elections. If the Postal Service thought it could ignore this Court's orders, the Final Rule would surely look very different. Again, the text of the Final Rule confirms Defendants' *compliance* with the order, not its non-compliance.

**e.** Finally, Plaintiffs assert that issuance of the Final Rule will "sow widespread confusion." *Id.* at 1. This Court's scheduling order of August 23, 2026 likewise made reference to possible "confusion that the publication" of the final rule "will engender." Electronic Order of Aug. 23, 2026. Respectfully, however, the form of "confusion" to which Plaintiffs and the Court are referencing ultimately stems from the fact that Defendants sought (and have now obtained)

appellate relief from the *California* order, making jurisdictional arguments that apply equally to the *League of Women Voters* order. *See* ECF No. 196. That sort of "confusion" is inherent in our hierarchical federal judicial system, in which district-court orders are always potentially subject to reversal on appeal. Indeed, even if this Court were to grant relief to Plaintiffs on this motion (or in some future motion), it is possible that the United States will again seek and obtain time-sensitive appellate review. So there is no basis to hold that sort of "confusion" against the government here. In any event, any such "confusion" will not be eliminated by granting Plaintiffs' motion—such an order, too, would be potentially subject to stay or reversal on appeal.

More importantly, the possible confusion that will or will not result from granting or denying Plaintiffs' motion ultimately has nothing to do with the only question that is currently before the Court: whether or not the government has violated this Court's preliminary-injunction order. Ultimately, even if the Postal Service's actions, its appellate strategy, or both, create some risk of confusion, that says nothing about whether or not the Postal Service violated the preliminary-injunction order by publishing the final rule. So the risk of confusion should have nothing to do with the adjudication of Plaintiffs' motion. And to the extent that Plaintiffs think that the risk of confusion is relevant to the preliminary-injunction factors—as they have argued in earlier stages of this case—that is an argument they can make in the context of some future briefing about some future request for a preliminary injunction. But currently, no such motion is before the Court.

## V. Plaintiffs may amend their complaint to challenge the Final Rule directly.

For the reasons above, the Postal Service has not violated this Court's preliminary-injunction order. Importantly, however, that result does not leave Plaintiffs without a judicial remedy, to the extent they have legal concerns with the Final Rule. To the contrary, Plaintiffs can do what Defendants have always acknowledged that they can do from the very beginning of this litigation: now that the Final Rule has been published, they can simply amend their complaint, and make whatever arguments they want about why they believe it to be unlawful. Indeed, on a meet-and-confer call on the morning of Saturday, August 22, 2026, counsel for Defendants told counsel for Plaintiffs that Defendants would consent to the filing of an amended complaint, to allow Plaintiffs

to challenge the Final Rule directly. Defendants could then (for the first time) defend the Final Rule on the merits, and the Court could then decide whether to order any relief. Plaintiffs' decision to instead focus their efforts (and this Court's time) on a motion to enforce the preliminary injunction—unlike the *California* Plaintiffs, who have filed nothing and are presumably more focused on a future challenge to the Final Rule itself—is only further delaying the ultimate resolution of the legal merits of this case.

## CONCLUSION

For these reasons, Plaintiffs' motion to enforce should be denied. Instead, the Court should order the parties to meet and confer and jointly propose (or separately propose, if they cannot reach agreement) a schedule for further proceedings in this case, including with respect to any amended complaint seeking to challenge the Final Rule.

Dated: August 25, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ERIC J. HAMILTON
Deputy Assistant Attorney General
Civil Division

JOSEPH E. BORSON
Assistant Branch Director
Federal Programs Branch

/s/ Stephen M. Pezzi
STEPHEN M. PEZZI
Chief Litigation Counsel (FL Bar 1041279)
ESAM K. AL-SHAREFFI
Trial Attorney (D.C. Bar 90010174)
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20530
Telephone: (202) 305-8576
E-mail: stephen.pezzi@usdoj.gov

*Counsel for the United States*