**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

LEAGUE OF WOMEN VOTERS OF MASSACHUSETTS, *et al*.,

*Plaintiffs*,

v.

DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*,

*Defendants*.

Case No. 1:26-cv-11549-IT

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

## TABLE OF CONTENTS


INTRODUCTION .......... 1

BACKGROUND .......... 2

I. State and Congressional Authority Over Mail Voting .......... 2

II. Congress's Postal Clause Authority and USPS' Independence .......... 3

III. The Unlawful Executive Order and USPS' Final Rule .......... 3

ARGUMENT .......... 5

I. Plaintiffs Are Likely to Succeed on Their Separation-of-Powers and Ultra Vires Claims. .......... 5

A. The Final Rule Violates the Constitutional Separation of Powers. (Count VII) .......... 6

B. The Final Rule Is Ultra Vires. (Counts VIII and IX) .......... 10

II. Plaintiffs Are Suffering Irreparable Harm. .......... 13

A. Irreparable Harm to Plaintiffs' Members .......... 13

B. Irreparable Harm to Plaintiff Organizations .......... 15

III. The Balance of Equities and the Public Interest Weigh Heavily in Plaintiffs' Favor .......... 19

CONCLUSION .......... 20

# TABLE OF AUTHORITIES

## Cases

*American Academy of Pediatrics v. Kennedy*,
823 F. Supp. 3d 141 (D. Mass. 2026) .......... 17

*American School of Magnetic Healing v. McAnnulty*,
187 U.S. 94 (1902) .......... 10, 12

*Arizona v. Inter Tribal Council of Arizona, Inc.*,
570 U.S. 1 (2013) .......... 7

*Armstrong v. Exceptional Child Center, Inc.*,
575 U.S. 320 (2015) .......... 5

*Association of American Universities v. National Science Foundation*,
788 F. Supp. 3d 106 (D. Mass. 2025) .......... 19

*California v. Trump*,
No. 26-cv-11581, 2026 WL 1826490 (D. Mass. Jun. 25, 2026) .......... 5, 6, 7, 18

*California v. United States Health & Human Services*,
811 F. Supp. 3d 183 (D. Mass. 2025) .......... 19, 20

*Carrington v. Rash*,
380 U.S. 89 (1965) .......... 2

*City of Providence v. Barr*,
954 F.3d 23 (1st Cir. 2020) .......... 7, 10

*Colorado v. DeJoy*,
No. 20-cv-2768, 2020 WL 5513567 (D. Colo. Sept. 14, 2020) .......... 7, 8

*Ex parte Jackson*,
96 U.S. 727 (1877) .......... 7

*Jean v. Massachusetts State Police*,
492 F.3d 24 (1st Cir. 2007) .......... 5

*Largess v. Superior Judicial Court for State of Massachusetts*,
317 F. Supp. 2d 77 (D. Mass.) .......... 5

*League of United Latin American Citizens v. Executive Office of the President*,
780 F. Supp. 3d 135 (D.D.C. 2025) .......... passim

*League of Women Voters of Missouri v. Ashcroft*,
336 F. Supp. 3d 998 (W.D. Mo. 2018) .......... 17

*League of Women Voters of New Hampshire v. Kramer*,
No. 24-cv-73, 2025 WL 3260024 (D.N.H. Oct. 17, 2025) ........................................ 14, 15, 19

*League of Women Voters of North Carolina v. North Carolina*,
769 F.3d 224 (4th Cir. 2014) ........................................................................................ 18

*Loper Bright Enterprises v. Raimondo*,
603 U.S. 369 (2024) ...................................................................................................... 6

*Mail Order Association of America v. United States Postal Service*,
986 F.2d 509 (D.C. Cir. 1993) ..................................................................................... 3

*Mancuso v. Taft*,
476 F.2d 187 (1st Cir. 1973) ........................................................................................ 19

*Mistretta v. United States*,
488 U.S. 361 (1989) ...................................................................................................... 6

*National Education Association v. United States Department of Education*,
779 F. Supp. 3d 149 (D.N.H. 2025) ............................................................................ 20

*New York v. United States*,
505 U.S. 144 (1992) ...................................................................................................... 6

*Shelby County v. Holder*,
570 U.S. 529 (2013) ...................................................................................................... 2

*Somerville Public Schools v. McMahon*,
139 F.4th 63 (1st Cir. 2025) ......................................................................................... 19

*Tirrell v. Edelblut*,
747 F. Supp. 3d 310 (D.N.H. 2024) ............................................................................ 20

*Trump v. California*,
No. 26A124, 2026 WL 2473573 (U.S. Aug. 24, 2026) ................................................. 1, 20

*Trump v. Cook*,
No. 25A312, 2026 WL 1855613 (U.S. June 29, 2026) ................................................ 5, 6

*United States Postal Service v. Council of Greenburgh Civic Associations*,
453 U.S. 114 (1981) ...................................................................................................... 3

*United States Postal Service v. Flamingo Industries (USA) Ltd.*,
540 U.S. 736 (2004) ...................................................................................................... 3

*United States Term Limits, Inc. v. Thornton*,
514 U.S. 779 (1995) ...................................................................................................... 3

*United States v. Hilario*,
218 F.3d 19 (1st Cir. 2000) ........ 6

*Watson v. Republican National Committee*,
146 S. Ct. 2165 (2026) ........ 6, 7

*West Virginia v. Environmental Protection Agency*,
597 U.S. 697 (2022) ........ 13

*Woonasquatucket River Watershed Council v. United States Department of Agriculture*,
778 F. Supp. 3d 440 (D.R.I. 2025) ........ 17, 18

*Youngstown Sheet & Tube Co. v. Sawyer*,
343 U.S. 579 (1952) ........ 6

**Statutes**

18 U.S.C. § 3061 ........ 13

39 U.S.C. § 101 ........ 3

39 U.S.C. § 201 ........ 3

39 U.S.C. § 401 ........ 12

39 U.S.C. § 403 ........ 12

39 U.S.C. § 404 ........ 13

39 U.S.C. § 3001, et seq ........ 11

52 U.S.C. § 20302 ........ 8

52 U.S.C. § 20501 ........ 9

52 U.S.C. § 20511 ........ 9

**Other Authorities**

Executive Order No. 14399, "Ensuring Citizenship Verification and Integrity in Federal Elections" ........ 1

National Conference of State Legislatures, *Voting Outside the Polling Place: Absentee, All-Mail and Other Voting at Home Options* (updated Aug. 1, 2025) ........ 8

The Federalist No. 59 (Alexander Hamilton) (C. Rossiter ed. 1961) ........ 7

**Regulations**

Ballot Mail for Federal Elections, 91 Fed. Reg. 32915 (June 2, 2026) ........................................ 4

Ballot Mail for Federal Elections, 91 Fed. Reg. 54966 (Aug. 26, 2026)............................. passim

Privacy Act of 1974, System of Records, 91 Fed. Reg. 44880 (July 17, 2026) ............................ 4

**Constitutional Provisions**

U.S. Constitution Amendment XIV.................................................................................... 3

U.S. Constitution Amendment XIX.................................................................................... 3

U.S. Constitution Amendment XV ..................................................................................... 3

U.S. Constitution Amendment XXIV ................................................................................. 3

U.S. Constitution Amendment XXVI.................................................................................. 3

U.S. Constitution Article I, § 4 ........................................................................................... 3

U.S. Constitution Article I, § 8 ........................................................................................ 3, 7

U.S. Constitution Article II, § 1 .......................................................................................... 7

U.S. Constitution Article IV, § 4 ......................................................................................... 9

## INTRODUCTION

On March 31, 2026, President Trump issued a series of commands in his Executive Order No. 14399, "Ensuring Citizenship Verification and Integrity in Federal Elections" (Executive Order or Order) that called for unconstitutional and unlawful action. He directed the United States Postal Service (USPS) to assume powers over election administration that the Constitution and federal law commit elsewhere. Among other things, Section 3 of the Order directs USPS to refuse to transmit mail ballots unless the voters who cast them appear on state-specific lists that USPS must generate.

At the time of that ruling, however, USPS had not issued a final rule implementing the Order. The Supreme Court subsequently stayed the injunction in *Trump v. California*, No. 26A124, 2026 WL 2473573 (U.S. Aug. 24, 2026), on the ground that a group of states' challenge to the Order was premature, while making clear that "[i]f the Postal Service's final rule harms the States, they may challenge that rule." *Id.* at *4. Following the Court's stay opinion, this Court today granted Defendants' Motion to Reconsider and vacated the preliminary injunction "without prejudice to Plaintiff Organizations filing a new motion for a preliminary injunction." Mem. & Order at 2, Dkt. No. 204.

That final rule has now been issued. On August 21, 2026, USPS issued Ballot Mail for Federal Elections, 91 Fed. Reg. 54966 (Aug. 26, 2026) (Final Rule or Rule), implementing Section 3 of the Order. It tracks the Order's new requirements for the delivery of mail ballots and confirms that USPS will refuse to deliver eligible voters' ballots based on whether voters appear on a list contemplated nowhere in any statute and on whether state ballot envelopes conform to standards required nowhere in any statute. The Final Rule took effect immediately and is scheduled for formal publication today, August 26. As this Court has recognized, "the issuance of a Final Rule is no longer hypothetical," Mem. & Order at 4, Dkt. No. 201, and Plaintiffs challenge it directly.

For similar reasons to those this Court already applied regarding Section 3 of the Order, the resulting Final Rule is ultra vires and violates the Constitution's separation of powers. At bottom, the Order and the Rule usurp the authority of the states and Congress to regulate elections, and undermine USPS's role as a neutral, nondiscriminatory mail carrier. The Constitution, Congress' comprehensive statutory scheme, reams of caselaw, and longstanding practice all cement one conclusion: neither the President nor USPS can require states to overhaul their mail voting system or to refuse to carry election mail.

The Final Rule makes the controversy concrete and imminent beyond any doubt. With every passing moment, Plaintiffs are sustaining irreparable harm to their core voter engagement work and to their members' right to vote because of the Rule's placement of USPS as an arbiter of mail ballot delivery, which imminently risks disenfranchisement to those members and impairs Plaintiffs' ability to advise and effectively assist voters who may wish to vote by mail in this year's elections. Those harms will only intensify as the November elections approach.

Plaintiffs therefore seek emergency relief against the Final Rule. The Rule violates the Constitution's separation of powers (Count VII) and commands USPS to take unauthorized and unlawful action (Counts VIII and IX). Plaintiffs respectfully request that the Court immediately issue a temporary restraining order to enjoin USPS from implementing or enforcing the Final Rule and then enter a preliminary injunction preserving the status quo through adjudication of the claims.

## BACKGROUND

### I. State and Congressional Authority Over Mail Voting

The Framers gave the states and Congress responsibility for setting rules for federal elections, providing states with "broad powers to determine the conditions under which the right of suffrage may be exercised," including the setting voter qualifications. *Shelby Cnty. v. Holder*, 570 U.S. 529, 543 (2013) (quoting *Carrington v. Rash*, 380 U.S. 89, 91 (1965)). States exercise

this power subject to congressional intervention as to the time, place, and manner of federal elections, *see* U.S. Const. art. I, § 4, cl. 1, and Congress may legislate to enforce voting-related amendments, *see* U.S. Const. amends. XIV, XV, XIX, XXIV, XXVI. The Framers understood the Elections Clause to grant *states* the authority to protect the "integrity and regularity" of the election process in the first instance, *U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779, 835 (1995), and Congress the authority to override state regulations via statute. As these provisions make clear, authority to regulate federal elections rests with the states and Congress—not the President or a federal agency exercising authority Congress never granted it.

## II. Congress's Postal Clause Authority and USPS's Independence

The Constitution grants Congress—not the President—the power to "establish Post Offices and post Roads," U.S. Const. art. I, § 8, cl. 7, a "broad power" that Congress has exercised to "establish[] a detailed statutory and regulatory scheme to govern this country's vast postal system," *USPS v. Council of Greenburgh Civic Ass'ns*, 453 U.S. 114, 122, 126 (1981). Congress has restructured the Postal Service throughout its history, most recently reconfiguring it through the Postal Reorganization Act of 1970 (PRA), 39 U.S.C. § 101 *et seq. See USPS v. Flamingo Indus. (USA) Ltd.*, 540 U.S. 736, 739 (2004). The PRA "marked a dramatic break with the past." *Mail Ord. Ass'n of Am. v. USPS*, 986 F.2d 509, 512 (D.C. Cir. 1993). It created USPS as "an independent establishment of the executive branch," 39 U.S.C. § 201, which must "be operated as a basic and fundamental service provided to the people," providing services "in all areas and . . . to all communities," *id*. § 101(a).

## III. The Unlawful Executive Order and USPS's Final Rule

Section 3 of the Order directs the Postmaster General "to initiate a proposed rulemaking pursuant to 39 U.S.C. [§] 401 and other applicable authority within 60 days of the date of this order," Order § 3(b), and details requirements that the rule "*shall include*, at minimum." *Id.*

(emphasis added). On June 2, 2026, USPS proposed a rule in line with the Order's mandates. *See* Ballot Mail for Federal Elections, 91 Fed. Reg. 32915 (June 2, 2026). On July 17, 2026, USPS issued a System of Records Notice under the Privacy Act of 1974 to accompany its proposed rule. *See* Privacy Act of 1974, System of Records, 91 Fed. Reg. 44880 (July 17, 2026).

On August 21, 2026, USPS issued the Final Rule, Ballot Mail for Federal Elections, amending the Domestic Mail Manual "regarding the transmission of mail-in or absentee ballots for federal elections." 91 Fed. Reg. at 54966. The Final Rule follows the Order's substantive commands and is materially identical to the Proposed Rule. As the Order directs, the Final Rule provides that each state may give notice of its intent to use USPS to transmit ballots and imposes standards for ballot envelopes. *Id.* at 54990–91 (§§ 705.24.3.1–2); Order § 3(b)(i). The Rule also requires the establishment of state-specific "Mail-In and Absentee Participation Lists" administered through the Federal Ballot Mail Portal and requires elections officials to submit lists of voters to whom mail ballots will be sent. 91 Fed. Reg. at 54991 (§§ 705.24.4.1–2); Order §§ 3(b)(ii), (iv). Under the Rule, mail ballots must be "verified by Postal Service employees" prior to acceptance for mailing. 91 Fed. Reg. at 54991 (§§ 705.24.5.1–2); Order § 3(b)(iii). In order to accept mail ballots for delivery to voters, USPS "will review" the mailing to "evaluate whether . . . [it] is being sent to individuals who have been enrolled with the Postal Service," as well as whether the ballot envelopes meet certain design elements specified by USPS; whether the state has provided specific pieces of information concerning each voter specified by USPS; whether the state has shared the required information prior to state absentee ballot mailing deadlines; and whether the relevant state officials have made a certification specified by USPS in a new Federal Mail Ballot Portal. 91 Fed. Reg. at 54991 (§§ 705.24.5.1–2); Order § 3(b)(iii). It will not deliver ballots to voters who are not on this list or for whom the ballot envelopes do not conform with

USPS's specifications. 91 Fed. Reg. at 54991 (§§ 705.24.5.3); Order § 3(b)(iii).

The Rule became effective immediately, on August 21, and was formally published in the Federal Register today, August 26. 91 Fed. Reg. at 54966. The issuance of the Final Rule violated this Court's August 11, 2026, order, which prohibited Defendants from "initiating or completing rulemaking" to implement Section 3 of the Order for the November 3, 2026 or any earlier election. *See* Dkt. No. 201 at 1–2, 5. USPS expressly adopted an immediate effective date so that the Rule could govern the November 3, 2026, general election, explaining that "[d]elaying the effective date would jeopardize implementation of this rule in time for the 2026 general election." 91 Fed. Reg. at 54966. It further stated that, if the government obtains relief from this Court's injunctions, USPS intends to begin implementation "immediately thereafter." *Id*.

## ARGUMENT

Plaintiffs satisfy all four factors in support of a preliminary injunction and temporary restraining order: (1) "likelihood of success on the merits"; (2) "potential for irreparable harm [absent] an injunction"; (3) "issuing an injunction will burden the defendants less than denying an injunction would burden the plaintiffs"; and (4) "the effect . . . on the public interest." *Jean v. Mass. State Police*, 492 F.3d 24, 26–27 (1st Cir. 2007); *see Largess v. Sup. Jud. Ct. for State of Mass.*, 317 F. Supp. 2d 77, 80–81 (D. Mass.), *aff'd*, 373 F.3d 219 (1st Cir. 2004) (noting that preliminary injunction factors also govern temporary restraining order).

### I. Plaintiffs Are Likely to Succeed on Their Separation-of-Powers and Ultra Vires Claims.

As this Court has recognized, Plaintiffs may sue in equity to challenge unlawful government action. *California v. Trump*, No. 26-cv-11581, 2026 WL 1826490, at *9 (D. Mass. Jun. 25, 2026); *see also Trump v. Cook*, 146 S. Ct. 2234, 2251 n.2 (2026) ("[P]laintiffs may sue 'in equity' without a congressionally-provided cause of action 'to prevent an injurious act by a public officer.'" (quoting *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 327 (2015))).

The Court has previously indicated that a plaintiff proceeding in equity must satisfy the heightened standard articulated in *Nuclear Regulatory Commission v. Texas*, 605 U.S. 665 (2025), *see California*, 2026 WL 1826490, at *9, and Plaintiffs' claims satisfy it: as discussed below, USPS has plainly exceeded any authority Congress has conferred on it. Plaintiffs nonetheless maintain that *NRC v. Texas* does not govern their claims, and that they may proceed in equity upon establishing that the challenged government action violates the Constitution or federal law. *See Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 491 n.2 (2010); *Cook*, 146 S. Ct. at 2251 n.2; *see also* Dkt. No. 171 at 4–5.

**A. The Final Rule Violates the Constitutional Separation of Powers. (Count VII)**

"[T]he doctrine of separated powers serves to eliminate arrangements that threaten to permit one branch either to aggrandize its power or to encroach on functions reserved for another branch." *United States v. Hilario*, 218 F.3d 19, 26 (1st Cir. 2000) (citing *Mistretta v. United States*, 488 U.S. 361, 381–82 (1989)). The Executive Branch violates that principle when it aggrandizes its authority at the expense of powers the Constitution assigns to Congress. *See Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 585 (1952). The same is true of administrative agencies, which lack authority to promulgate legislative rules and may act only pursuant to authority delegated to them by Congress. *See Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024). The Constitution likewise protects states from federal intrusion into functions it reserves to them. *See New York v. United States*, 505 U.S. 144, 155–56 (1992). The Final Rule violates these principles and is unconstitutional because it usurps authority over federal elections that the Constitution reserves to Congress and the states, and because it springs from the unconstitutional Order, which supplies no legitimate basis for USPS to act.

The Constitution assigns the authority to regulate federal elections to "State legislatures 'primarily' and to Congress 'ultimately.'" *Watson v. Republican Nat'l Comm.*, 146 S. Ct. 2165,

2170 (2026) (citing The Federalist No. 59 at 362 (Alexander Hamilton) (C. Rossiter ed. 1961)); *see also* U.S. Const. art. I, § 4, cl. 1; *id*. art. II, § 1, cl. 2. Voter qualification rules remain generally with the states. *See Arizona v. Inter Tribal Council of Ariz., Inc*., 570 U.S. 1, 17 (2013). The Elections Clause assigns no role in election regulation to the Executive Branch—neither to the President nor to USPS. *See League of United Latin Am. Citizens v. Exec. Off. of the President*, 780 F. Supp. 3d 135, 194 (D.D.C. 2025) (*LULAC*) ("The Elections Clause provides that Congress—not the President—is the check on States' authority to regulate federal elections"); *Colorado v. DeJoy*, No. 20-cv-2768, 2020 WL 5513567, at *2 (D. Colo. Sept. 14, 2020) (explaining that the Constitution does not provide "authority to the Postal Service" to override state election administration). And, as discussed below, Congress has not delegated any authority to the Executive to regulate mail voting or ballots.

The Constitution separately grants Congress, not the Executive, the power to "establish Post Offices and post Roads." U.S. Const. art. I, § 8, cl. 7. That power "embraces the regulation of the entire postal system of the country." *Ex parte Jackson*, 96 U.S. 727, 732 (1877). USPS therefore may regulate the mail only within the authority Congress has conferred upon it. *City of Providence v. Barr*, 954 F.3d 23, 31 (1st Cir. 2020). But Congress has not authorized USPS to determine which voters may use the federal mail to cast ballots, or which ballots may be transmitted or delivered. Indeed, Congress could not delegate authority to determine voter qualifications to USPS because the Constitution reserves that authority to the states. As this Court recently recognized, "[n]either the Executive Branch nor Congress may interfere with" the states' authority to determine voter qualifications. *California*, 2026 WL 1826490, at *15. Even if Congress could regulate who may vote by mail, it has not delegated such authority to USPS.

The Final Rule intrudes on the constitutional authority of the states and Congress by

making USPS a gatekeeper between the states and their citizens in the transmission of mail ballots. Congress has largely left the regulation of mail ballots in federal elections to the states, and today, all fifty states permit at least some voters to cast ballots by mail.[1] Congress has acted in limited but important areas, such as guarantees for UOCAVA voters. *See* 52 U.S.C. § 20302(a). But neither the President nor USPS have a role in this constitutional or statutory framework. *See LULAC*, 780 F. Supp. 3d at 194–96; *Colorado*, 2020 WL 5513567, at *2.

That the Final Rule allows authorized Ballot Portal Users for each state to submit information on voters to be included on the state-specific lists does not eliminate, or even lessen, the constitutional violation. *See* 91 Fed. Reg. at 54991 (§ 705.24.4.2(b)). Without any authorization, the Rule requires state officials to jump through this additional, burdensome hoop to allow their electorate to vote by mail; if they refuse to do so, USPS will refuse to deliver any mail ballots at all. *See id.* (§ 705.24.4.3). This creates an unconstitutional separation of powers concern, irrespective of states' ability to submit voter information.

As described in greater detail below, there is significant risk that voters will not receive ballots if states do not submit the state-specific lists or make mistakes in those lists, an especially significant risk given how close we are to the election. Pl. States' L.R. 56.1 Statement of Undisputed Material Facts ¶ 52, *California v. Trump*, No. 26-cv-11581 (D. Mass. Apr. 23, 2026), Dkt. No. 105 (detailing the "high risk of errors" in the process). The risk of voter disenfranchisement is equally high because states and counties cannot comply with the ballot envelope design requirements. *Id.* ¶ 62; Mem. & Ord., *id.*, Dkt. No. 191, at 15; Br. Amicus Curiae of Harris Cnty., Tex., at 8, *California*, No. 26A124 (explaining that "[i]t is operationally

[1] *See* Nat'l Conf. of State Legislatures, *Voting Outside the Polling Place: Absentee, All-Mail and Other Voting at Home Options* (updated Aug. 1, 2025), https://www.ncsl.org/elections-and-campaigns/voting-outside-the-polling-place.

impossible for the Executive Order to govern this election" because, in part, the Order's "provisions regulating the format and bar codes on the ballot envelope are unworkable").

Nor is the Final Rule authorized by any of the provisions cited in the Executive Order. The Executive Order invokes the Help America Vote Act of 2002 (HAVA), 52 U.S.C. §§ 20901–21145, the National Voter Registration Act (NVRA), 52 U.S.C. §§ 20501–20511, and the Guarantee Clause, U.S. Const., art. IV, § 4, as supposed bases for its asserted authority to regulate mail voting. *See* Exec. Order pmbl. None of these justifies or authorizes the issuance of the Final Rule. *See* Mem. in Supp. of Mot. for Preliminary Injunction, Dkt. No. 74, at 12–13.

Neither HAVA nor the NVRA addresses mail voting, much less delegates any authority over it to the President or USPS. *See LULAC*, 780 F. Supp. 3d. at 196–200. HAVA sets baseline standards for states' voting systems, voter registration lists, and provisional voting, and makes federal funding available as an incentive for states to implement its standards; it does not grant the President or USPS any power to issue regulations or create new federal election policy. The NVRA establishes baseline voter registration and voter list maintenance requirements for federal elections, implemented by the states, but does not address mail ballots or delegate any authority over them to the President or USPS. *See* 52 U.S.C. §§ 20501–20511. Nor do any of the other invoked authorities contemplate any role at all for USPS regulation of the voting process. By placing limitations on which mail ballots will be delivered as a distinct class of mail, USPS has intruded on the role the Constitution assigns to Congress and the states.

Nor has USPS pointed to any other delegation from Congress permitting it to regulate election administration. USPS admits that Congress can, when it chooses to, legislate issues regarding the transmission of election mail. *See* 91 Fed. Reg. at 54971 (discussing UOCAVA's "separate federal statutory scheme with its own requirements"). But in acknowledging such

congressional action—action expressly within Congress's authority under the Elections Clause, U.S. Const. art. I, § 4—USPS only highlights that it does not occupy the same constitutional role and cannot regulate in this area. And Congress has not passed any statute that even arguably gives USPS the authority to refuse to deliver the ballots that state officials send to voters.

### B. The Final Rule Is Ultra Vires. (Counts VIII and IX)

Plaintiffs are likely to succeed on Counts VIII and IX. The Final Rule is ultra vires because it is both an exercise of authority Congress never conferred upon USPS and runs contrary to limitations Congress expressly imposed on USPS's exercise of its postal powers.

The Final Rule exceeds the authority Congress conferred upon USPS. "Any action that an agency takes outside the bounds of its statutory authority is ultra vires." *City of Providence*, 954 F.3d at 31. And the Supreme Court has applied this principle to USPS: its "right to exclude letters, or to refuse to permit their delivery to persons addressed, must depend upon some law of Congress, and if no such law exists, then [it] cannot exclude or refuse to deliver them." *Am. Sch. of Magnetic Healing v. McAnnulty*, 187 U.S. 94, 109 (1902).

USPS's authority is limited to the powers Congress has given it, and Congress has not authorized USPS to regulate mail-voting administration. The PRA identifies USPS's powers, including authority to promulgate postal regulations, enter contracts, acquire property, and settle claims. Dkt. No. 183 at 2–3. But as this Court recognized, "[t]he PRA does not delegate to the USPS any specific authority regarding treatment of election mail." *Id.* at 4. Nor does any other federal statute confer on USPS authority to determine which voters can receive ballots through the mail or to condition states' use of the postal system on compliance with a federal voter-enrollment and verification regime. *See id.* at 4–5 (discussing Congress's legislation through its Election Clause power); *see also* 91 Fed. Reg. at 54969 (asserting that if states take issue with requirements in the Final Rule then "states do not have to use the U.S. mail to conduct their elections").

USPS has now exceeded its authority by claiming each of those powers. The Final Rule requires states using USPS for mail voting to ensure that voters are "enrolled with the Postal Service for inclusion on the state's Mail-In and Absentee Participation List." 91 Fed. Reg. at 54991 (§ 705.24.4.2(b)). Election officials must provide voter-specific information before acceptance of a mailing by USPS to determine whether it is being sent to individuals enrolled on the relevant participation list. *Id.* (§§ 705.24.4.2(b), 705.24.5.1). And they must conform their ballots to meet the Rule's design specifications. *Id.* at 54990 (§ 705.24.3.1). If a mailing fails that USPS verification, it "will not be accepted and will be returned to the authorized ballot mailer." *Id.* at 54991 (§ 705.24.5.3(a)).

Those requirements thrust USPS into an unauthorized role in election administration. As this Court has explained, USPS's traditional role with respect to election mail has been far more limited: USPS has issued "non-binding" guidance recommending such measures as election-mail logos, tracking technology, and envelope designs compatible with sorting equipment. Dkt. No. 183 at 3. The Final Rule is different in kind. Rather than regulating *its own* processing and delivery of ballot mail as mail, it conditions USPS's acceptance of ballot mail on whether *states* have submitted specific voter information and whether USPS verifies that the intended recipients have been enrolled on a USPS-administered list. The Rule gives USPS a gatekeeping function over states' use of the mail to transmit ballots to their voters—a function Congress never assigned it.

The Final Rule likewise claims authority that Congress never gave USPS to refuse otherwise mailable matter . Congress enacted a detailed statutory scheme identifying material that may be treated as nonmailable. *See* 39 U.S.C. §§ 3001–3018. Yet nothing in that scheme authorizes USPS to refuse ballot mail if the intended recipient does not appear on a USPS-created participation list. The Final Rule nevertheless provides that ballot mail failing its verification

requirements "will not be accepted and will be returned to the authorized ballot mailer." 91 Fed. Reg. at 54991 (§ 705.24.5.3(a)). That is precisely the problem *McAnnulty* identified: USPS's power to exclude or refuse mail "must depend upon some law of Congress." 187 U.S. at 109.

The Final Rule also conflicts with express limitations Congress imposed on USPS's exercise of its postal authority. Congress directed USPS to "serve as nearly as practicable the entire population of the United States." 39 U.S.C. § 403(a). The Final Rule does the opposite. It requires USPS to distinguish among users based on whether the intended recipient appears on a USPS-administered voter list and whether the jurisdiction sending it has complied with USPS's ballot-design standards. Ballots addressed to voters who satisfy USPS's verification regime may be delivered, but ballots that fail that verification "will not be accepted" at all. 91 Fed. Reg. at 54991 (§ 705.24.5.3(a)). The Rule thus conditions access to an essential postal service function on compliance with a voter-verification regime that Congress never authorized USPS to administer. *See* Dkt. No. 183 at 4 ("USPS retains the obligation to provide universal service to all parts of the country.").

None of the sources of statutory authority USPS cites can justify the Rule. *See* 91 Fed. Reg. at 54971–74. USPS first offers catch-all, general grants of authority, such as its ability to enact regulations when "necessary" to carry out its statutorily assigned "functions," only to the extent "not inconsistent with this title," 39 U.S.C. § 401(2), and its powers that are "necessary" or "appropriate" for carrying out its statutorily specified "functions" and "powers," 39 U.S.C. § 401(10). Yet for the reasons stated, the Rule conflicts with Title 39'a express constraints, and no statute gives USPS any election administration function, let alone the power to freely refuse to carry ballot mail. USPS also cites its power to carry out its mail-carrying duties, namely "the collection, handling, transportation, delivery, forwarding, returning, and holding of mail, and for

the disposition of undeliverable mail," 39 U.S.C. § 404(a)(1), and to investigate criminal offenses through certain actions like serving warrants and making arrests, 18 U.S.C. § 3061(b). These powers do not contemplate rejection or refusal of otherwise deliverable mail, or the seemingly unbound discretion that USPS has granted itself to refuse to deliver entire categories of mail or even mail from entire states. In short, USPS has dubiously "claimed to discover in . . . long-extant statute[s] an unheralded power representing a transformative expansion in its regulatory authority," and the Court should reject it. *West Virginia v. EPA*, 597 U.S. 697, 724 (2022) (cleaned up).

Congress did not authorize USPS to condition states' use of the mails for ballot delivery on a USPS-administered voter-enrollment and verification regime. To the contrary, the Final Rule both exercises authority Congress never conferred and runs counter to limitations Congress expressly imposed on USPS's exercise of its postal powers. The Final Rule is ultra vires.

## II. Plaintiffs Are Suffering Irreparable Harm.

### A. Irreparable Harm to Plaintiffs' Members

Plaintiffs' collective millions of members span all fifty states, the District of Columbia, several territories, and dozens of foreign countries, and many rely on mail voting. Ex. 1, Third Decl. of Celina Stewart (3d Stewart Decl.) ¶¶ 3, 11, 36, 39; Ex. 2, Third Decl. of Doris Speer (3d Speer Decl.) ¶¶ 9, 12, 35; Ex. 3, Third Decl. Decl. of Thu Nguyen (3d Nguyen Decl.) ¶¶ 3–7, 13, 17, 35–36, 47, ; Ex. 4, Third Decl. of Celia Canavan (3d Canavan Decl.) ¶¶ 6, 16, 24–25; Ex. 5, Third Decl. of Dorcas Washington (3d Washington Decl.) ¶¶ 12–13, 31–34.[2] They include members who need to vote by mail because of physical disabilities, mobility impairments or other health issues, limited English proficiency, residence in rural areas, service as poll workers on election day, or are college students away from their resident home. 3d Stewart Decl. ¶¶ 11, 36–

[2] All exhibits are attached to the concurrently filed Declaration of Sophia Lin Lakin.

37, 41–43, 45–47; 3d Nguyen Decl. ¶¶ 9, 13, 17–18, 34–36, 41, 47; 3d Canavan Decl. ¶¶ 16, 24–25, 54–55, 58–59; 3d Washington Decl. ¶¶ 33, 48, 50, 71. Due to the Final Rule, members face the imminent prospect of USPS intercepting their mail ballot because they do not appear on state-created lists or their ballot is sent by election officials in a non-conforming envelope.

But the irreparable harm extends beyond just that restriction. Members also face imminent risk of disenfranchisement because of the high risk of jurisdictions using mail ballot envelopes that do not meet the Final Rule's requirements. *See also California*, No. 26A124, Br. Amicus Curiae of the Bipartisan Am. Election Project, at 11 (detailing how the Final Rule would conflict with numerous state laws regulating envelope design). Voters are irreparably harmed when they do not receive the mail ballot that they are entitled to under state law, which functionally amounts to a denial of their right to vote. These "restrictions on fundamental voting rights" constitute "irreparable injury." *Walters v. Boston City Council*, 676 F. Supp. 3d 26, 47 (D. Mass. 2023); *see also League of Women Voters of N.H.*, 2025 WL 3260024, at *5 ("interference with [Plaintiffs'] voting rights . . . is not compensable and is therefore irreparable harm"). Plaintiffs' members have also been deprived of their typical sources of education and assistance in navigating their states' particular requirements for mail-in voting. *See, e.g.*, 3d Nguyen Decl. ¶¶ 16, 27, 29–31, 34; 3d Washington Decl. ¶¶ 45, 48–53, 55, 70–71; 3d Speer Decl. ¶¶ 23–27, 33, 35; 3d Canavan Decl. ¶¶ 28, 36, 44; 3d Stewart Decl. ¶¶ 24, 31–33, 35. The Final Rule compounds this independent irreparable harm to Plaintiffs' members by furthering uncertainty and confusion as to how they can vote in the fast-approaching midterm elections, which are less than 70 days away.

It is no answer that Plaintiffs' members have yet to be disenfranchised. Such irreparable harm "is imminent after the Defendants begin implementing the law. The fact that it has not yet occurred . . . is of no consequence to the irreparable harm that certainly will occur." *Ind. State*

*Conf. of NAACP v. Lawson*, 326 F. Supp. 3d 646, 663 (S.D. Ind. 2018).

**B. Irreparable Harm to Plaintiff Organizations**

The Final Rule irreparably harms Plaintiff organizations in at least three ways, exacerbated each day that the November 2026 general election—and related mail voting deadlines—approach.

*First*, the Rule calls into question the viability of mail voting as authorized under state law. Plaintiffs' members and other voters they serve now justifiably fear their mail ballot will be screened and not transmitted based on the Rule. *See* 3d Stewart Decl. ¶¶ 23–24, 28, 35, 47; 3d Canavan Decl. ¶¶ 34, 36, 41, 57; Ex. 6, Third Decl. of Susan Dzieduszycka-Suinat (3d Dzieduszycka-Suinat Decl.) ¶¶ 27–32, 36; 3d Speer Decl. ¶¶ 23–31, 35; 3d Nguyen Decl. ¶¶ 16, 22–25, 31; 3d Washington Decl. ¶¶ 43, 55. The Rule creates profound uncertainty about the viability of mail ballots and seeds "confusion and chaos imposed by an overnight change" in law or policy, constituting irreparable harm. *See New York v. DOJ*, 804 F. Supp. 3d 294, 330 (D.R.I. 2025); *see also LULAC*, 780 F. Supp. 3d at 201; *Massachusetts v. NIH*, 770 F. Supp. 3d 277, 322 (D. Mass. 2025) (recognizing "the uncertainty around the ability to sustain" Plaintiffs' work contributed to irreparable harm), *aff'd* 164 F.4th 1 (1st Cir. 2026). Specifically, the Order's and Rule's "interference with [Plaintiffs'] voting rights," which has "increase[d] voter confusion and interfere[d]" with Plaintiffs' missions, constitutes irreparable harm. *See League of Women Voters of N.H. v. Kramer*, No. 24-cv-73, 2025 WL 3260024, at *5 (D.N.H. Oct. 17, 2025), *R. & R. adopted*, 2025 WL 3257189 (D.N.H. Nov. 20, 2025); *LULAC*, 780 F. Supp. 3d at 201; *see California*, 786 F. Supp. 3d at 379 (recognizing harm in costs to counter voter confusion); 3d Stewart Decl. ¶¶ 15–19, 24, 27–28, 35, 42; 3d Canavan Decl. ¶¶ 27, 29, 36, 43–44, 57; 3d Washington Decl. ¶¶ 42–45, 55–57, 64–68, 70–72; 3d Speer Decl. ¶¶ 25–27, 30, 37; 3d Nguyen Decl. ¶¶ 24–25.

*Second*, USPS's issuance of the Final Rule "render[s] obsolete" large swaths of Plaintiffs' voter education on mail voting. *LULAC*, 780 F. Supp. 3d at 189. The Final Rule has effectively

made Plaintiffs' core work impossible in many circumstances. Prior to the Order and Final Rule, Plaintiffs were educating millions of voters about mail voting and helping them vote by mail, with state-specific instructions. 3d Stewart Decl. ¶¶ 8–10, 21, 31, 33; 3d Canavan Decl. ¶¶ 13–15, 19; 3d Speer Decl. ¶¶ 15–18, 25–28, 37; 3d Nguyen Decl. ¶¶ 3, 6–7, 17–23, 28, 33–35, 41; 3d Washington Decl. ¶¶ 22, 26–28, 36–37, 70; 3d Dzieduszycka-Suinat Decl. ¶¶ 6–13. Much of their voter education materials on mail voting are now incomplete or futile because the Final Rule entirely upends mail voting procedures long governed by state law. These include: the League's VOTE411.org resource for all 50 states, 3d Stewart Decl. ¶¶ 8–10, 29–30; 3d Canavan Decl. ¶¶ 35, 48; OCA's state-specific voter guides translated in multiple languages, 3d Nguyen Decl. ¶¶ 27–29; Delta Sigma Theta's materials for September and October trainings, 3d Washington Decl. ¶ 70; and U.S. Vote's Voter Journey Map which it must take offline because of the Final Rule, 3d Dzieduszycka-Suinat Decl. ¶ 35. These harms are irreparable. *See California*, 786 F. Supp. 3d at 390–91; *LULAC*, 780 F. Supp. 3d at 201–02.

*Third*, the Final Rule requires that Plaintiffs overhaul any voter education materials capable of being salvaged and any planned facilitation of mail voting that can be continued. Plaintiffs collectively educate voters and help facilitate mail voting in all 50 states and many countries overseas. *See* 3d Stewart Decl. ¶¶ 3–5, 8–10, 31; 3d Washington Decl. ¶¶ 12, 20; 3d Speer Decl. ¶¶ 9, 38; 3d Dzieduszycka-Suinat Decl. ¶¶ 5–9; 3d Nguyen Decl. ¶¶ 3, 7, 20–23. Even if Plaintiffs could be certain as to how the Final Rule will be implemented and followed in each state—which they cannot—issuance of the Final Rule means Plaintiffs now have to overhaul their voter education with mere weeks before mail voting deadlines. *See, e.g.*, 3d Nguyen Decl. ¶¶ 27–29 (OCA must produce and translate voter guides in several languages for local chapters by September 1); 3d Washington Decl. ¶¶ 45–47, 52–53, 72; 3d Dzieduszycka-Suinat Decl. ¶¶ 15, 31,

33 (U.S. Vote will have to overhaul its Civic Data product which is "essential to [its] survival"); 3d Speer Decl. ¶ 25; 3d Canavan Decl. ¶¶ 38–42, 48, 51; 3d Stewart Decl. ¶¶ 19, 21, 33, 38, 40, 44. Because the Rule "unquestionably make[s] it more difficult for the Leagues [and other Plaintiffs] to accomplish their primary mission" of increasing voter participation, this "provide[s] injury for purposes both of standing and irreparable harm." *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 9 (D.C. Cir. 2016).

The Final Rule will require Plaintiffs to reallocate significant resources from other core programs to attempt to overhaul their voter education on mail voting. 3d Dzieduszycka-Suinat Decl. ¶¶ 32–38 (It will cost U.S. Vote $50,000 for necessary revisions to its tools and website); 3d Washington Decl. ¶¶ 44–47, 61; 3d Stewart Decl. ¶¶ 13, 22–23, 26, 30, 34, 37; 3d Canavan Decl. ¶¶ 36–37, 51–53, 57; 3d Nguyen Decl. ¶¶ 26, 29, 34. "[E]ach of these changes" required by the Final Rule "would, in turn, divert . . . resources from other key projects" constituting irreparable harm. *California*, 786 F. Supp. 3d at 390–92; *see also LULAC*, 780 F. Supp. 3d at 200–02; *Get Loud Ark. v. Jester*, 171 F.4th 1058, 1067 (8th Cir. 2026; *Am. Acad. of Pediatrics v. Kennedy*, 823 F. Supp. 3d 141, 171–72 (D. Mass. 2026); *Woonasquatucket River Watershed Council v. USDA*, 778 F. Supp. 3d 440, 475 (D.R.I. 2025), *aff'd in relevant part* No. 25-1428, 2026 WL 2279789 (1st Cir. Aug. 7, 2026).

The undisputed factual record and extensive caselaw amply support irreparable harm: "Courts routinely recognize that organizations suffer irreparable harm when a defendant's conduct causes them to lose opportunities to conduct election-related activities, such as voter registration and education." *League of Women Voters of Mo. v. Ashcroft*, 336 F. Supp. 3d 998, 1005 (W.D. Mo. 2018) (collecting cases); *accord Get Loud Ark.*, 171 F.4th at 1067. Defendants can offer no contrary authority, and cannot dispute the irreparable harm borne out by the factual record.

These harms only become more acute as the midterm elections get even closer because "once the election occurs, there can be no do-over and no redress." *League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224, 247 (4th Cir. 2014). There is now no time remaining for Plaintiffs to carry out much of the voter education required from the Final Rule, and very little time for the crucial work they are able to still carry out. Plaintiffs' voter engagement work necessarily occurs well *before* the November midterm and preceding mail-voting deadlines. 3d Stewart Decl. ¶¶ 19, 33, 40, 44; 3d Washington Decl. ¶¶ 45, 52–53, 72; 3d Speer Decl. ¶¶ 34–36; 3d Dzieduszycka-Suinat Decl. ¶¶ 31, 33; 3d Canavan Decl. ¶¶ 38–42, 48, 51; 3d Nguyen Decl. ¶¶ 27–29. In this way, the "critical pauses" in Plaintiffs' work caused by the Order and consequent "delays in [their] work leave no window for a do-over." *Woonasquatucket River Watershed Council*, 778 F. Supp. 3d at 475. Plaintiffs have already lost myriad opportunities to educate their members and the public about mail voting, and they continue to lose more every day. "[G]iven the practical nature of an election cycle," *California*, 2026 WL 1826490, at *8, and "[b]ecause this Court can neither postpone an election nor turn back the clock . . . [t]he only way to provide complete relief to the Plaintiff[s] is to award a preliminary injunction." *LULAC*, 780 F. Supp. 3d at 201–02. Put simply, Plaintiffs are irreparably harmed not just by the existence of the unlawful Order and Rule, but due to it applying to the November election, which is less than 70 days aways.

Defendants had previously barely contested Plaintiffs' irreparable harm, offering only that the Order had yet to be implemented. *E.g.*, Defs.' Opp. to Pls.' Mots. for Preliminary Injunction and Summ. J., Dkt. No. 128, at 6 ("Before any agency has implemented the Executive Order, Plaintiffs face no actual (or imminent) harm—irreparable or otherwise."). Now, the Final Rule negates any claim that USPS might not issue a rule, or that it might not follow the Order. Defendants have no answer to the extensive irreparable harm Plaintiffs face from the Rule.

## III. The Balance of Equities and the Public Interest Weigh Heavily in Plaintiffs' Favor.

The balance of equities and public interest factors, which "merge when the Government is the party opposing the preliminary injunction" or temporary restraining order, weigh heavily in Plaintiffs' favor. *California v. HHS*, 811 F. Supp. 3d 183, 213 (D. Mass. 2025) (citation omitted).

Denying an injunction will cause significant harm to both Plaintiffs and the public. *First*, "the public interest is served by protecting 'the fundamental political right to vote.'" *League of Women Voters of N.H.*, 2025 WL 3260024, at *5 (citation omitted); *see also Mancuso v. Taft*, 476 F.2d 187, 193 (1st Cir. 1973) (recognizing "public interest in an unhampered, unconditioned vote"). Without an injunction, USPS will refuse to transmit certain voters' mail ballots. This will have a significant disenfranchising effect, preventing certain eligible voters from receiving their ballots, and chill still more from using mail ballots at all due to the confusion caused by the Final Rule.

*Second*, injunctions that respect separation of powers and federal law serve the public interest. "[T]here is generally no public interest in the perpetuation of unlawful agency action." *Somerville Pub. Schs. v. McMahon*, 139 F.4th 63, 76 (1st Cir. 2025) (quoting *Newby*, 838 F.3d at 12); *see also Ass'n of Am. Univs. v. Nat'l Sci. Found.*, 788 F. Supp. 3d 106, 142 (D. Mass. 2025).

*Third*, an injunction preserves the ability for nonpartisan voter service organizations to carry out their core missions, including helping voters who cannot vote in person access the ballot to ensure robust participation in elections. The Final Rule will cause pronounced changes for mail ballots that vary across each state, and organizations will need to devote significant resources to learn these variations and amend and redistribute their educational materials. With less than 70 days before the general election (and even less before mail-in voting begins), organizations may not have sufficient time to make these changes, rendering them "unable to assist many . . . voters through . . . voter outreach efforts," *N.H. Youth Movement v. Scanlan*, 830 F. Supp. 3d 199, 213–14 (D.N.H. 2026); *see also LULAC*, 780 F. Supp. 3d at 189 (harming both Plaintiffs and the public).

On the other side of the ledger, an injunction against the Final Rule poses little to no hardship for Defendants. "It is well established that the Government 'cannot suffer harm from an injunction that merely ends an unlawful practice.'" *Ass'n of Am. Univs.*, 788 F. Supp. 3d at 142 (citation omitted). That is especially so here, where enjoining the Final Rule will avoid changing the rules for mail ballots less than 70 days before the election, preserving the longstanding status quo from such a dramatic change so close to the election. *See, e.g.*, *Nat'l Educ. Ass'n v. U.S. Dep't of Educ.*, 779 F. Supp. 3d 149, 200–01 (D.N.H. 2025); *Tirrell v. Edelblut*, 747 F. Supp. 3d 310, 318–19 (D.N.H. 2024); *HHS*, 811 F. Supp. 3d at 213. Finally, the Supreme Court's analysis of the equities in *California v. Trump*, 2026 WL 2473573, at *5, does not suggest a different outcome. There, the Court analyzed jurisdictional questions alone—not the merits—to the plaintiff states' challenge to the Executive Order, whereas here Plaintiffs are seeking to enjoin the Final Rule itself. *See also* Mot. to Reconsider Preliminary Injunction, Dkt. No. 196, at 4 (inviting Plaintiffs to challenge the Final Rule and "seek any relief that they think they are entitled to"). The public is best served by preventing the implementation of this unlawful rule.

## CONCLUSION

USPS issued the Final Rule without statutory authority and in violation of the separation of powers. The Rule inflicts immediate and irreparable harm to Plaintiffs, their members, and the voters they serve. The Court should enter a temporary restraining order, followed by a preliminary injunction, to preserve the status quo and prevent USPS from implementing this Rule—and depriving voters of their fundamental right to cast a ballot—while this litigation proceeds.

Dated: August 26, 2026

Respectfully submitted,

/s/ Sophia Lin Lakin_
Sophia Lin Lakin*
Theresa J. Lee*
Davin Rosborough*
Ethan Herenstein*
Jonathan Topaz*
Ming Cheung*
William Hughes*
Clayton Pierce*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2500
slakin@aclu.org
tlee@aclu.org
drosborough@aclu.org
eherenstein@aclu.org
jtopaz@aclu.org
mcheung@aclu.org
whughes@aclu.org
cpierce@aclu.org

Sarah Brannon*
Adriel I. Cepeda Derieux*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
915 15th Street NW
Washington, DC 20005
(202) 457-0800
sbrannon@aclu.org
acepedaderieux@aclu.org

Leah C. Aden*
Brenda Wright*
John S. Cusick*
NAACP LEGAL DEFENSE &
EDUCATIONAL FUND, INC.
40 Rector Street, 5th Floor
New York, NY 10006
(212) 965-2200
laden@naacpldf.org
bwright@naacpldf.org
jcusick@naacpldf.org

Jessie J. Rossman (BBO #670685)
Suzanne Schlossberg (BBO #703914)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF MASSACHUSETTS,
INC.
One Center Plaza, Suite 850
Boston, MA 02108
(617) 482-3170
jrossman@aclum.org
sschlossberg@aclum.org

Eliza Sweren-Becker*
Wendy Weiser*
Andrew B. Garber*
BRENNAN CENTER FOR JUSTICE AT
NYU SCHOOL OF LAW
120 Broadway, Suite 1750
New York, NY 10271
(646) 292-8310
sweren-beckere@brennan.law.nyu.edu
weiserw@brennan.law.nyu.edu
garbera@brennan.law.nyu.edu

Justin Lam*
BRENNAN CENTER FOR JUSTICE AT
NYU SCHOOL OF LAW
777 6th Street NW, Suite 1100
Washington, DC 20001
(202) 249-7190
lamju@brennan.law.nyu.edu

Niyati Shah*
Noah Baron*
Ejaz Baluch, Jr.*
ASIAN AMERICANS ADVANCING
JUSTICE-AAJC
1620 L Street NW, Suite 1050
Washington, DC 20036
(202) 296-2300
nshah@advancingjustice-aajc.org
nbaron@advancingjustice-aajc.org
ebaluch@advancingjustice-aajc.org

Miranda Galindo*
Latino Justice PRLDEF
475 Riverside Drive, Suite 1901
New York, NY 10115
(212) 392-4752
mgalindo@latinojustice.org

I. Sara Rohani*
NAACP LEGAL DEFENSE &
EDUCATIONAL FUND, INC.
700 14th Street NW, Suite 600
Washington, DC 20005
(202) 682-1300
srohani@naacpldf.org

**Admitted pro hac vice*

*Counsel for Plaintiffs League of Women Voters of Massachusetts, League of Women Voters Lotte E. Scharfman Memorial Education Fund, League of Women Voters of the United States, League of Women Voters Education Fund, Association of Americans Resident Overseas, U.S. Vote Foundation, OCA-Asian Pacific American Advocates, and Delta Sigma Theta Sorority, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 26, 2026, a true copy of the above document was filed via the Court's CM/ECF system and that a copy will be sent automatically to all counsel of record.

August 26, 2026

/s/ *Sophia Lin Lakin*
Sophia Lin Lakin