**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| LEAGUE OF WOMEN VOTERS OF MASSACHUSETTS, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*,<br><br>*Defendants*,<br><br>STATE OF MISSOURI, STATE OF ALABAMA, STATE OF FLORIDA, STATE OF INDIANA, STATE OF KANSAS, STATE OF LOUISIANA, STATE OF MONTANA, STATE OF NEBRASKA, STATE OF OKLAHOMA, STATE OF SOUTH CAROLINA, and STATE OF SOUTH DAKOTA,<br><br>*Intervener Defendants*. | Case No. 1:26-cv-11549-IT |

**INTERVENER STATES' OPPOSITION TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER**

In moving for a temporary restraining order, Plaintiffs take hyperbole to the extreme and misrepresent USPS's new mailing requirements. USPS's August 26, 2026 Ballot Mail for Federal Elections Rule ("Ballot Mail Rule" or "Rule") is not a federal takeover of elections. States retain complete control on who is eligible under state law to vote by mail. 91 Fed. Reg. 54966, 54969 (Aug. 26, 2026) (to be codified 39 C.F.R. pt. 111). And under the Rule, USPS is not authorized to second-guess the States' submissions. *Id.* Instead, USPS is merely doing for election mail what it has long done for many other types of mail—imposing modest conditions that increase the security of mail-in voting, allow tracking through matching barcodes, and prevent violations of federal law.

In other words, this case is not about whether USPS can decide who votes by mail; it is only about whether USPS can impose modest regulations for States that choose to use federal mail. USPS already recommends certain requirements for election mail—like using an "Official Election Mail" label. *See, e.g.*, Election Mail, USPS (accessed Aug. 27, 2026).[1] The implication of Plaintiffs' arguments is that imposing even those modest rules is invalid, and that federal election mail must be made available on whatever conditions States or private litigants demand. Title 39 rejects this position, as it gives USPS "broad[]" authority "to adopt rules and regulations" governing the mail. *USPS v. Council of Greenburgh Civic Ass'ns*, 453 U.S. 114, 122 (1981).

The Court should reject Plaintiffs' motion for a TRO because they are unlikely to succeed on the merits. *Nat'l Org. For Marriage v. McKee*, 666 F. Supp. 2d 193, 198 (D. Me. 2009). This is so for two independently sufficient reasons.

1. *First*, as a threshold matter, Plaintiffs still lack standing to challenge the Executive Order and the recently finalized Ballot Mail Rule. A plaintiff seeking a temporary restraining order does not suspend Article III's jurisdictional requirements. *See Becker v. Federal Election Comm'n*, 230 F.3d 381, 384 (1st Cir. 2000).

Plaintiffs allege that they have standing to challenge the Mail Ballot Rule because they "will be unable to carry out its core business activities of providing the voter education and assistance on which its members and communities rely." Doc. 205 ¶ 51. They also allege that they "will need to develop and translate new materials explaining the changes to mail voting, revise scripts, retrain volunteers, and educate voters about how to ensure that they can successfully vote by mail under the new requirements." *Id.* ¶ 50.

---

[1] https://about.usps.com/what/government-services/election-mail/.

As was the case when Plaintiffs filed their original complaint, resource diversion is not a cognizable injury. In rejecting a virtually identical theory of standing in a parallel case, Judge Nichols recognized that the Supreme Court rejected resource-diversion standing in *Alliance for Hippocratic Medicine*, holding that plaintiffs "cannot spend [their] way into standing simply by expending money to gather information and advocate against the defendant's action." *DSCC v. Trump*, No. 26-cv-01114, 2026 WL 1487833, at *8 (D.D.C. May 28, 2026), *aff'd*, No. 26-5193, 2026 WL 2168617 (D.C. Cir. July 28, 2026) (quoting *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 394 (2024)). And the Rule does not prohibit Plaintiffs from educating their members or providing information to the public (things they would do anyway), meaning that any "need" for Plaintiffs to educate and assist their members is not caused by the Rule or fairly traceable to it. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 590 (1992) (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)).

State Defendants recognize that the Court previously read *Alliance for Hippocratic Medicine* differently. But the Supreme Court's opinion in *Trump v. California* again rejected resource-diversion standing when addressing the Plaintiff States' lack of standing. 609 U.S.__, 2026 WL 2473573, at *4 (Aug. 24, 2026) (per curiam). There, the Supreme Court rejected Plaintiff States' argument that they were spending money because of the executive order, reaffirming that parties cannot "concretize their injury by expending funds." *Id.* State Defendants therefore encourage the Court to reconsider the validity of resource-diversion standing.

Alternatively, Plaintiffs once again allege disenfranchisement under the theory that States will not agree to or will not be able to comply with the Rule's requirements. *See* Doc. 207 at 20–21. But this is too speculative to confer standing. Neither Plaintiffs nor their members are the object of the Mail Ballot Rule. Rather the Rule requires *States* who wish to allow their citizens to

transmit their ballots by mail to provide their voters' basic information and barcodes to USPS. *See* 91 Fed. Reg. at 54979. The Rule "does not . . . alter the eligibility of any individual to vote under state or federal law." *Id.* at 54992. In other words, to vote by mail, Plaintiffs' members need not do anything different than they had already been required to do before the Rule. And there is no reason to speculate that States will not comply with the Rule and ensure that Plaintiffs and their members will be able to cast mail ballots. After all, "Article III prohibits federal courts from stacking hypothetical on hypothetical to speculate that harm will eventually materialize." *Trump v. California*, 2026 WL 2473573, at *2 (citing *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414–415, n.5 (2013))).

2. *Second*, even if Plaintiffs did have standing, they are unlikely to succeed on the merits because the Ballot Mail Rule does not exceed USPS's statutory authority.

Plaintiffs claim that Congress has not authorized USPS to regulate election mail. Doc. 207 at 16–19. This is wrong. While Plaintiffs repeatedly misrepresent the Rule as regulating who may vote, *see, e.g.*, *id.* at 13, the Rule merely imposes modest conditions on the sending of mail, which USPS is broadly authorized to do under its governing statute. Indeed, USPS has a general power to "to adopt, amend, and repeal such rules and regulations, not inconsistent with this title, as may be necessary in the execution of its functions under this title and such other functions as may be assigned to the Postal Service under any provisions of law outside of this title." 39 U.S.C.A. § 401(2). The statute also broadly gives USPS "all other powers incidental, necessary, or appropriate to the carrying on of its functions or the exercise of its specific powers." § 401(10). The statute recognizes that USPS—rather than federal courts—is most likely to have the expertise to decide how mail should be processed and delivered. *See, e.g.*, *Rockville Reminder Inc. v. USPS*, 480 F.2 4, 7 (2d Cir. 1973) (applying deferential standard of review to USPS regulations under § 401(2)).

The Supreme Court has directly addressed the scope of § 401(2), stating that USPS is "broadly empowered" to adopt rules and regulations designed to accomplish an efficient system of collection, sorting, and delivery of mail nationwide. *Council of Greenburgh Civic Ass'ns*, 453 U.S. at 123. This interpretation of § 401(2) forecloses Plaintiffs' suggestion that the Court must confine USPS's authority to only those regulations that are strictly or literally indispensable. Doc. 207 at 18.

The D.C. Circuit has similarly recognized the breadth of this authority. In *Associated Third Class Mail Users v. U.S. Postal Service*, the court held that the Postal Service is authorized under § 401(2) to promulgate regulations to further the objectives of Title 39, and that a fair reading of the rulemaking authority of 39 U.S.C. § 401(2) extends even to provisions of law that are not literally part of Title 39, so long as their purpose is properly connected to that title. 600 F.2d 824, 826 n.5 (D.C. Cir. 1979).

More specifically, USPS's powers also include the ability "to provide for the collection, handling, transportation, delivery, forwarding, returning, and holding of mail, and for the disposition of undeliverable mail," § 404(a)(1), and "to investigate postal offenses and civil matters relating to the Postal Service," § 404(a)(6). By the same token, Title 39 states that "nonmailable matter which reaches the office of delivery, *or which may be seized or detained for violation of law*, shall be disposed of as the Postal Service shall direct." 39 U.S.C.A. § 3001(b) (emphasis added). Both USPS's general and specific powers show that its delegated regulatory authority includes reasonable measures to prevent fraudulent voting through the mail.

The breadth of Title 39 also recognizes the need for USPS to address a wide variety of postal-related issues and promulgate regulations to resolve them. *See, e.g.*, *U.S. Postal Serv. v. Brennan*, 574 F.2d 712, 716 (2d Cir. 1978) ("Broad rule-making authority must be allowed a

federal agency such as the postal service whose activities are national in scope and are geared to meet varied conditions and circumstances throughout the country.") (citation omitted). For this reason, there is a long history of USPS imposing conditions on sending various types of mail, even those not specifically enumerated in Title 39. *See, e.g.*, *Cremated Remains Packaging Requirements*, 90 Fed. Reg. 9843 (Feb. 19, 2025) (cremated human and animal remains must be transported through specific types of USPS-provided boxes, and must be trackable via barcode); *Restricting the Mailing of Replica or Inert Explosives*, 75 Fed. Reg. 282 (Jan. 5, 2010) (replica explosives must be mailed in certain ways, including in-person presentation to a retail counter and shipment via Registered Mail). That is precisely what USPS is doing here. This is not a case where USPS has invoked general rulemaking power to circumvent specific statutory requirements, a narrow circumstance where courts have found postal regulations to be inconsistent with Title 39. *See, e.g.*, *Aid Ass'n for Lutherans v. U.S. Postal Serv.*, 321 F.3d 1166, 1176 (D.C. Cir. 2003) (affirming injunction against regulation concerning the "type of insurance" offered where statute permits the agency to regulate solely with respect to "coverage provided by [an insurance] policy."); *New York v. Trump*, 490 F. Supp. 3d 225, 241 (D.D.C. 2020) (issuing preliminary injunctions against USPS policies that restricted overtime and eliminated late and extra mail delivery trips without first obtaining statutorily-required PRC review).

Still, Plaintiffs contend that election-related mail must be treated differently because of the Constitution's Elections Clause. *See* Doc. 207 at 12–13. But this is a red herring. The Elections Clause specifically empowers Congress to set rules for federal elections. U.S. Const. art. I, § 4. The Constitution also specifically authorizes Congress to set rules for a federal postal service. U.S. Const. art. I, § 8. As discussed above, Congress delegated broad authority to USPS to place conditions on the sending of mail. Under plain statutory text, that broad authority extends to

election mail—just like any other type of mail. This is plainly consistent with Congress's authority under the Elections and Postal Clauses.

This Court should also reject Plaintiffs' invitation to give an artificially narrow construction to Mail Ballot Rule under the major questions doctrine. *See* Doc. 207 at 19. Plaintiffs' invocation of the major questions doctrine is only plausible because they frame the Rule with high level of generality using hyperbole and misrepresent the Rule as regulating voter eligibility. *Id.* at 13. But USPS merely wants States to provide a list of individuals *they deem* eligible to vote by mail—so that USPS can assign security barcodes to assist in tracking in election mail. 91 Fed. Reg. at 54969 The States surely already keep lists of individuals they deem eligible to vote by mail, as Plaintiff States acknowledged during a prior hearing before this Court. Hearing Tr. 85:6–20 (June 2, 2026). Requiring States to provide an already-existing list of individuals eligible to vote by mail, and using unique barcodes for each voter, is not an "unheralded power representing a transformative expansion of [USPS's] regulatory authority." *West Virginia v. EPA*, 597 U.S. 697, 724 (2022) (internal quotations and citation omitted). It is a simply a new instantiation of authority long exercised by USPS. *See Council of Greenburgh Civic Ass'ns*, 453 U.S. at 123.

Nor are the markers deemed relevant by the Supreme Court in assessing major questions doctrine cases relevant here. The Supreme Court has previously suggested that a rule implicates a major question if it imposes an "economic impact" of around $50 billion. *See Alabama Ass'n of Realtors v. HHS*, 594 U.S. 758, 664 (2021) (per curiam). Plaintiffs' alleged compliance costs are *de minimis* by comparison. Doc. 207 at 22–23. Nor are there outlandish implications to USPS's regulatory theory. *See West Virginia*, 597 U.S. at 722. Whereas the EPA's regulatory theory in *West Virginia* would have given it the power to shut down coal and natural-gas-powered plants

around the country, *see id.* at 722, USPS's theory is merely that it can impose conditions on the sending of mail—a reality anyone who has ever bought a postage stamp understands. And while mail voting—as a general matter—is controversial, *cf. West Virginia*, 597 U.S. at 532, USPS is *not* claiming that it could simply bar States from sending election mail. USPS's regulation is more akin to EPA trying to limit carbon emissions by mandating the use of new technology for smokestacks—something the Supreme Court agreed would not be a major question even though it related to a nationwide debate about climate change. *See West Virginia*, 597 U.S. at 725.

In sum, because Plaintiffs are likely to succeed on the merits, this Court should reject their motion for a temporary restraining order.

Date: August 27, 2026

Respectfully submitted,

**STEVE MARSHALL**
ALABAMA ATTORNEY GENERAL

*/s/ A. Barrett Bowdre*
A. Barrett Bowdre*
*Solicitor General*
STATE OF ALABAMA
OFFICE OF THE ATTORNEY GENERAL
501 Washington Avenue
Montgomery, Alabama 36104
Telephone: (334) 353-8892
Fax: (334) 353-8400
Barrett.Bowdre@AlabamaAG.gov

**CATHERINE L. HANAWAY**
MISSOURI ATTORNEY GENERAL

*/s/ Louis J. Capozzi III*
Louis J. Capozzi III, DC Bar No. 90018764*
*Solicitor General*
J. Michael Patton*
*Deputy Solicitor General*
Benjamin S. Gilberg*
*Deputy Solicitor General*
Missouri Attorney General's Office
815 Olive Street, Suite 200
St. Louis, MO 63101
Tel. (573) 645-9662
Fax (573) 751-0774
Louis.Capozzi@ago.mo.gov
Michael.Patton@ago.mo.gov
Benjamin.Gilberg@ago.mo.gov

**JAMES UTHMEIER**
FLORIDA ATTORNEY GENERAL

*/s/ David M.S. Dewhirst*
David M.S. Dewhirst*
*Solicitor General*
Jason J. Muehlhoff*
*Chief Deputy Solicitor General*
Office of the Attorney General
PL-01, The Capitol
Tallahassee, FL 32399-1050
(850) 414-3300
david.dewhirst@myfloridalegal.com
jason.muehlhoff@myfloridalegal.com

**THEODORE E. ROKITA**
INDIANA ATTORNEY GENERAL

/s/ *James A. Barta*
James. A Barta, DC Bar No. 1032613*
*Solicitor General*
Office of the Indiana Attorney General
302 W. Washington Street
IGC South, Fifth Floor
Indianapolis, IN 46204-2770
Phone: (317) 232-0709
Fax: (317) 232-7979
James.Barta@atg.in.gov

**KRIS W. KOBACH**
KANSAS ATTORNEY GENERAL

*/s/ James R. Rodriguez*
James R. Rodriguez*
*Assistant Attorney General*
Kansas Office of the Attorney General
Topeka, Kansas 66612
Phone: (785) 368-8197
jay.rodriguez@ag.ks.gov

**ELIZABETH B. MURRILL**
LOUISIANA ATTORNEY GENERAL

*/s/ J. Benjamin Aguiñaga*
J. Benjamin Aguiñaga*
*Solicitor General*
Louisiana Department of Justice
1885 N. Third St.
Baton Rouge, LA 70802
(225) 506-3746
AguinagaB@ag.louisiana.gov

**AUSTIN KNUDSEN**
MONTANA ATTORNEY GENERAL

*/s/ Christian B. Corrigan*
Christian B. Corrigan*
*Solicitor General*
Montana Department of Justice
215 N. Sanders Helena, MT 59601
(406) 444-2707 (o)
Christian.Corrigan@mt.gov

**MICHAEL T. HILGERS**
NEBRASKA ATTORNEY GENERAL

/s/ *Cody S. Barnett*
Cody S. Barnett*
*Solicitor General*
Nebraska Department of Justice
1445 K Street, Room 2115
Lincoln, Nebraska 68508
Tel.: (402) 471-2683
Fax: (402) 471-3297
cody.barnett@nebraska.gov

**GENTER DRUMMOND**
OKLAHOMA ATTORNEY GENERAL

*/s/ Garry M. Gaskins, II*
Garry M. Gaskins, II*
*Solicitor General*
Office of the Attorney General of Oklahoma
313 NE Twenty-First St.
Oklahoma City, OK 73105
(405) 521-3921
garry.gaskins@oag.ok.gov

**ALAN WILSON**
SOUTH CAROLINA ATTORNEY GENERAL

*/s/ Joseph D. Spate*
Joseph D. Spate*
*Deputy Solicitor General*
1000 Assembly Street
Columbia, South Carolina 29201
Tel. (803) 734-3371
Fax (803) 734-3677
josephspate@scag.gov

**MARTY J. JACKLEY**
SOUTH DAKOTA ATTORNEY GENERAL

/s/ *Grant Flynn*
Grant Flynn*
*Assistant Attorney General*
South Dakota Office of the Attorney General
1302 East SD Highway 1889,
Suite 1
Pierre, SD 57501-8501
Telephone: (605) 773-3215
Email: grant.flynn@state.sd.us

**KEN PAXTON**
TEXAS ATTORNEY GENERAL

s/ *David Bryant*
David Bryant*
*Senior Special Counsel*
Office of the Attorney General of Texas
Special Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Tel.: (512) 463-2100
david.bryant@oag.texas.gov

/s/ *Ian D. Prior*
Ian D. Prior (Bar No. 655704)
America First Legal Foundation
611 Pennsylvania Ave S.E. No. 231
Washington, D.C. 20003
(410) 205-9681
ian.prior@aflegal.org

* *Admitted pro hac vice*

**CERTIFICATE OF SERVICE**

I certify that on August 27, 2026, the above was filed electronically through the Court's electronic filing system to be served electronically on counsel for the parties.

/s/ *Louis J. Capozzi III*