UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LEAGUE OF WOMEN VOTERS OF MASSACHUSETTS, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States, et al.,<br><br>Defendants,<br><br>and<br><br>STATE OF MISSOURI, et al.,<br><br>Intervenor-Defendants. | Civil Action No. 1:26-cv-11549-IT |
| STATE OF CALIFORNIA, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES POSTAL SERVICE, et al.,<br><br>Defendants. | Civil Action No. 1:26-cv-13917-IT |

MEMORANDUM AND ORDER GRANTING IN PART PLAINTIFFS' MOTIONS FOR A TEMPORARY RESTRAINING ORDER

August 27, 2026

TALWANI, D.J.

Pending before the court are two motions for temporary restraining orders[1] joined for briefing pursuant to Federal Rule of Civil Procedure 42(a)(1).[2] For the reasons stated below, the court GRANTS a temporary restraining order staying the United States Postal Service ("USPS") from implementing certain sections of its final rule, Ballot Mail for Federal Elections, 91 Fed. Reg. 54966 (Aug. 26, 2026) (to be codified at 39 C.F.R. pt. 111) (the "Final Rule").

## I. Background

On March 31, 2026, President Donald J. Trump issued Executive Order No. 14399, Ensuring Citizenship Verification and Integrity in Federal Elections. 91 Fed. Reg. 17125 (2026) (the "EO"). Litigation ensued before a final rule issued.[3] On emergency review, on August 24, 2026, the United States Supreme Court concluded that this court lacked jurisdiction to review challenges to the EO's constitutionality where it was speculative as to whether the USPS would (1) propose a rule; (2) weigh the comments; and (3) issue a final rule consistent with the EO's directives. Trump v. California, 609 U.S. __, 2026 WL 2473573, at *4 (Aug. 24, 2026) (per curiam). The Supreme Court admonished this court that "[f]ederal courts review final rules, not

[1] See Mot. for a TRO, Emergency Stay, and Expedited Prelim. Inj. and Stay, California v. U.S. Postal Serv. ("California II"), No. 1:26-cv-13917 [Doc. No. 3]; Emergency Mot. for a TRO and Prelim. Inj., League of Women Voters of Massachusetts v. Trump ("LWVM"), No. 1:26-cv-11549 [Doc. No. 206].

[2] See Order, LWVM, No. 1:26-cv-11549 [Doc. No. 212]. Where documents have been filed on the dockets of both cases, the court will cite to the docket in LWVM, No. 1:26-cv-11549, as the earlier-filed case.

[3] See LWVM, No. 1:26-cv-11549 (filed April 2, 2026); California v. Trump ("California I"), No. 1:26-cv-11581 (filed April 3, 2026). In the latter case, on July 7, 2026, this court entered final judgment and enjoined rulemaking and implementation of Sections 2 and 3 of the EO as to a group of 23 States and the District of Columbia for elections before and on November 3, 2026. Final Judgment, California I, No. 1:26-cv-11581 [Doc. No. 207]. In LWVM, on August 11, 2026, the court granted a nationwide preliminary injunction, enjoining rulemaking and implementation of Section 3 of the EO. Mem. & Order, LWVM, No. 1:26-cv-11549 [Doc. No. 183].

proposed rules—and certainly not antecedent internal directives to propose a rule." Id. The Supreme Court explicitly noted, however, that the disposition of the government's emergency application "does not mean that any measure taken by the Government to implement the Order will necessarily be lawful[.]" Id. at *5.

Although the Supreme Court expressed concern that this court's injunction "prevent[ed] the Postal Service from so much as initiating a rulemaking that could yield a rule applicable to these States[,]" id. at *4, no such delay occurred, as the USPS had gone ahead and noticed a proposed rule, solicited and reviewed comments, and issued a Final Rule. See 91 Fed. Reg. 54966 (accessible as of Aug. 21, 2026 at https://public-inspection.federalregister.gov/2026-17238.pdf).[4]

For a State to comply with the Final Rule: (1) ballot envelopes and return envelopes must comply with certain ballot envelope design requirements, 91 Fed. Reg. at 54990–91 (DMM 705.24.3.1, 705.24.3.2); (2) State or local election officials must submit their ballot envelope and return envelope designs to the USPS for approval, id.; and (3) after obtaining approval of the ballot envelope and return envelope designs, State or local election officials must input each voter's information into a USPS-run electronic portal, 91 Fed. Reg. at 549991 (DMM 705.24.4.2). The Final Rule provides no timeline for USPS's approval of ballot envelopes and

[4] The Supreme Court gave no indication that it was aware of the Final Rule when the Order was issued. Defendants nonetheless insist, without citation, that "publication of a Final Rule" was "already known to the Supreme Court" at the time of the Court's Order. Defs.' Combined Opp'n to TRO 5, LWVM, No. 1:26-cv-11549 [Doc. No. 214]. Although the government's Supplemental Brief regarding the Final Rule was docketed at the Supreme Court a few hours before the Court's *per curiam* Order was entered on August 24, 2026, see Sec. Suppl. Br. ISO Appl. for Stay, Trump v. California, No. 26A124 (U.S. Aug. 24, 2026), this court cannot assume that the Justices received the brief prior to the issuance of the *per curiam* Order a few hours later. In any event, that Order found a lack of standing based on the events at the time the complaint was filed and did not purport to take into account events that occurred during the months that the litigation was pending. See Trump, 609 U.S. at __, 2026 WL 2473573, at **2, 4.

return ballot envelopes, but precludes election officials from uploading voter information until the USPS approves the ballot envelopes and return ballot envelopes. 91 Fed. Reg. at 54991 (DMM 705.24.4.2(f)). And where a State or local election official does not obtain envelope and return envelope design approval, or does not upload voter information, or does not include unique intelligent mail barcodes on ballot envelopes, the USPS will not mail ballots to voters. 91 Fed. Reg. at 54991 (DMM 705.24.5.1, 705.24.5.2, 705.24.5.3). Accordingly, effective August 26, 2026, for elections including the November 3, 2026 midterms, the USPS conditions States' use of the postal service on the USPS's sign-off on ballot envelopes and return envelopes and on State and local election officials uploading and certifying voter information through the USPS portal. 91 Fed. Reg. at 54985 (the Final Rule "requires . . . that [S]tates that choose to use the U.S. mail as part of their elections adhere to certain standard mailpiece design and data reporting standards when sending Federal Ballot Mail.") (emphasis added).

Plaintiff States[5] promptly challenged the Final Rule in a new action, and Plaintiff Organizations[6] promptly supplemented their complaint to add allegations regarding the Final

---

[5] Plaintiff States are Arizona, California, Colorado, Connecticut, Delaware, District of Columbia, Hawaiʻi, Illinois, Maine, Maryland, Massachusetts, Michigan, Minnesota, Nevada, New Jersey, New Mexico, New York, North Carolina, Oregon, Rhode Island, Vermont, Virginia, Washington, Wisconsin, and Josh Shapiro, in his official capacity as Governor of the Commonwealth of Pennsylvania. Compl., California II, No. 1:26-cv-13917 [Doc. No. 1]. Plaintiff States bring their challenge against USPS, the Postmaster General, the Deputy Postmaster General, the Chair of the USPS Board of Governors, and members of the USPS Board of Governors (collectively, the "USPS Defendants"). Id.

[6] Plaintiff Organizations are the League of Women Voters of Massachusetts, League of Women Voters Lotte E. Scharfman Memorial Education Fund, League of Women Voters of the United States, League of Women Voters Education Fund, Association of Americans Resident Overseas, U.S. Vote Foundation, OCA-Asian Pacific American Advocates, and Delta Sigma Theta Sorority, Inc. In addition to the USPS Defendants sued by Plaintiff States, Plaintiff Organizations sued President Trump, the Department of Homeland Security and its Secretary; U.S. Citizenship and Immigration Services and its Director; and the Social Security Administration and its Commissioner. Compl., LWVM, No. 1:26-cv-11549 [Doc. No. 1]. Plaintiff Organizations'

Rule. In the pending motions, both groups of Plaintiffs seek preliminary injunctive relief and request that the court stay Defendants' implementation of the Final Rule, pursuant to Federal Rule of Civil Procedure 65.

Two weeks before the Final Rule issued, Defendants' counsel represented to the court that:

> when the final rule is implemented, if it affects an individual voter's ability to vote, then they certainly have standing to challenge that final rule. And courts are able to work in an expedited basis. It would only take a very short amount of time for a temporary restraining order or a preliminary injunction to issue[.[7]]

And two days ago, when Defendants asked the court to vacate the preliminary injunction entered in LWVM prior to the Supreme Court's Order, Defendants represented that Plaintiffs were not without a remedy, for where the Rule had now issued, they could "simply amend their complaint" and challenge the Final Rule directly.[8]

Defendants now claim that Plaintiffs are too late "because appellate review in the ordinary course would come too late for the 2026 midterms."[9] But the question is not when appellate review will be completed. The issue before the court is whether Plaintiffs have met the traditional standards for emergency relief.

## II. Temporary Restraining Order

A temporary restraining order "is a provisional remedy imposed to maintain the status quo until a full review of the facts and legal arguments is available." Ginzburg v. Martínez-

---

Emergency Mot. for TRO and Prelim. Inj. [Doc. No. 206] is brought only against the USPS Defendants.

[7] Aug. 7, 2026 Hr'g Tr. 16:14–21, LVWM, No. 1:26-cv-11549 [Doc. No. 181].

[8] Defs.' Opp'n to Mot. to Enforce Judgment 16, LWVM, No. 1:26-cv-11549 [Doc. No. 197].

[9] Defs.' Combined Opp'n to TRO 2, LWVM, No. 1:26-cv-11549 [Doc. No. 214] (quoting Trump, 2026 WL 2473573, at *4).

Dávila, 368 F. Supp. 3d 343, 347 (D.P.R. 2019) (quoting Pro-Choice Network v. Schenck, 67 F.3d 377, 388–89 (2d Cir. 1995)). While temporary, it is an "extraordinary and drastic remedy" and "never awarded as of right." Orkin v. Albert, 557 F. Supp. 3d 252, 256 (D. Mass. 2021) (quoting Peoples Fed. Sav. Bank v. People's United Bank, 672 F.3d 1, 8–9 (1st Cir. 2012)). In evaluating a motion for a temporary restraining order, the court weighs the four following factors:

> (1) the likelihood of success on the merits; (2) the potential for irreparable harm [to the movants] if the injunction is denied; (3) the balance of relevant impositions, i.e., the hardship to the nonmovant if enjoined as contrasted with the hardship to the movant if no injunction issues; and (4) the effect (if any) of the court's ruling on the public interest.

Esso Standard Oil Co. v. Monroig-Zayas, 445 F.3d 13, 17–18 (1st Cir. 2006) (quoting Bl(a)ck Tea Soc'y v. City of Boston, 378 F.3d 8, 11 (1st Cir. 2004)); see also Bourgoin v. Sebelius, 928 F. Supp. 2d 258, 267 (D. Me. 2013) (standard for issuing TRO is "the same as for a preliminary injunction").

*A. Likelihood of Success on the Merits*

Plaintiff States bring a variety of claims, arguing that the Final Rule is unconstitutional, contrary to statute, and ultra vires.[10] Similarly, Plaintiff Organizations argue that the Final Rule violates both the separation of powers doctrine and the USPS's governing statutes.[11]

Defendants argue, *inter alia*, that the USPS issued the Final Rule pursuant to its general authority to adopt regulations "as may be necessary in the execution of [the USPS's]

---

[10] See Compl., California II, No. 1:26-cv-13917 [Doc. No. 1].

[11] See Suppl. Compl., LWVM, No. 1:26-cv-11549 [Doc. No. 205].

functions[.]"[12] Intervenor-Defendants[13] argue that Plaintiff Organizations continue to lack standing and that the Final Rule, lawfully promulgated, "merely imposes modest conditions on the sending of mail[.]"[14]

Now that the USPS has published the Final Rule, Plaintiffs' challenges are ripe. See Trump, 609 U.S. at __, 2026 WL 2473573, at *4 ("Federal courts review final rules[.]"). The Final Rule's mandatory requirements necessitating immediate action of Plaintiff States likely constitute concrete injury-in-fact, caused by the new regulatory scheme and redressable only by injunctive relief. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–562 (1992). Similarly, Plaintiff Organizations are likely to have standing where the late-adopted rule is causing substantial confusion among their members (whom the Plaintiff Organizations are trying to educate about their voting rights). See Hunt v. Wash. State Apple Advert. Comm'n, 432 U.S. 333, 343 (1977). Plaintiff Organizations are also likely to have standing based on the significant risk of their members' disenfranchisement, where the newly imposed Final Rule will prevent citizens from voting by mail unless the USPS timely approves their respective jurisdictions' ballot and return ballot envelopes, and State and local election officials thereafter input each voter's information into a USPS portal in advance of a ballot mailing. See id.

As to the substantive merits, the Constitution charges the States with election administration. U.S. CONST. art. I § 4, cl. 1. While the States' decisions may be pre-empted by

---

[12] Defs.' Combined Opp'n to TRO 7, LWVM, No. 1:26-cv-11549 [Doc. No. 214] (citing 39 U.S.C. § 401).

[13] Intervenor-Defendants in LWVM, No. 1:26-cv-11549, are Alabama, Florida, Indiana, Kansas, Louisiana, Missouri, Montana, Nebraska, Oklahoma, South Carolina, South Dakota, and Texas. See Elec. Order [Doc. No. 106] (allowing permissive intervention pursuant to Federal Rule of Civil Procedure 24(b)).

[14] Intervenor-Defendants' Opp'n to TRO 2–4, LWVM, No. 1:26-cv-11549 [Doc. No. 215].

Congress, see id., the court is unaware of, and no party has proffered, any delegation Congress has made that would permit the USPS to regulate election mail, see FCC v. Consumers' Research, 606 U.S. 656, 672 (2025) ("Legislative power, [the Supreme Court] ha[s] held, belongs to the legislative branch, and to no other."); Learning Res., Inc. v. Trump, 607 U.S. 229, 279 (2026) (Gorsuch., J., concurring) ("[A] clear statement is required to support a claim to an extraordinary delegated power.").

Through the Final Rule, the USPS is refusing to send mail ballots to eligible voters unless States or local election officials submit their mail ballot envelopes and return envelopes and receive advance approval from the USPS without regard to impending deadlines for the November 3, 2026 election. 91 Fed. Reg. at 54990–91 (DMM 705.24.3.1–2). Additionally, the Final Rule requires elections officials to create accounts for a new electronic portal, certify that they have received approval regarding the mail ballot design, and thereafter upload to the USPS portal each voter's information, including name, address, and a unique intelligent mail barcode. Id. (DMM 705.24.4.2(b), (e), (f)). The court finds Plaintiffs likely to succeed on the merits of their claims that (1) the USPS lacked authority to issue the Final Rule; (2) the Final Rule is unconstitutional in imposing these requirements on the States; and (3) the Final Rule is unconstitutional in prohibiting non-compliant State and local officials from using the United States Postal Service to mail ballots.

B. *Irreparable Harm*

Based on the record presently before the court, Plaintiff States face irreparable harm where they are required to comply with a likely unconstitutional regulation for which compliance is practically impossible as to the 2026 midterm elections, now little more than two months away. Most Plaintiff States have already ordered their mail ballots, and some are required by

state law to send them to eligible voters as early as next week.[15] Plaintiff States have neither time nor funds to design new mail ballots, seek approval of the new designs, order production of mail ballots, update their own election management systems, train election officials to use the USPS portal, and upload citizen data to the portal, all before the midterms.[16] Notably, the Final Rule includes no deadline or contemplated turn-around time for USPS approval of submitted mail ballot envelopes. 91 Fed. Reg. at 54990–92. If Plaintiff States are unable to comply with the Final Rule, an outcome that seems unavoidable given the timeframe, they will violate their obligations under the Constitution and State laws to administer elections. Defendants and Intervenor-Defendants offer no reply to Plaintiff States' assertion that compliance for the 2026 midterm elections will be impossible for many of them.

Plaintiff Organizations' members are at risk of irreparable harm where they face significant risk of disenfranchisement and interference with their rights under state laws—where they rely on mail-in voting (due to age, disability, and/or residence), as permitted under their state laws, but live in a jurisdiction where election officials may not be able to comply with the Final Rule in time for the November 3, 2026 election.[17] In light of the State election officials' unrebutted declarations that compliance with the Final Rule at this late date is impossible, the risk of irreparable harm to voters in those jurisdictions is grave.[18]

---

[15] Mem. ISO Mot. for TRO, Emergency Stay, and Expedited Prelim. Inj. 20 n.3, 22 n.12, California II, No. 1:26-cv-13917 [Doc. No. 5] (citing State election officials' declarations).

[16] See id. at 19 n.2 (citing State election officials' declarations).

[17] See Third Stewart Decl. ¶¶ 3, 11, 36, 39, LVWM, No. 1:26-cv-11549 [Doc. No. 208-1].

[18] Mem. ISO Mot. for TRO, Emergency Stay, and Expedited Prelim. Inj. 20 n.3, California II, No. 1:26-cv-13917 [Doc. No. 5] (citing State election officials' declarations).

C. *Balance of the Harms and the Public Interest*

The record continues to lack any evidence regarding fraudulent absentee or mail-in voting. Compare 91 Fed. Reg. at 54984 (describing the Final Rule's "stated purpose" as "to help ensure election integrity, fraud prevention, and facilitation of federal law enforcement"), with id. at 54969 (denying that "the incidence of voter fraud" has any "impact [on] the proposed rule's legal grounding"). In any event, the USPS's interest in correcting an unsubstantiated problem through likely unconstitutional means is dwarfed by the overwhelming risk of pervasive disenfranchisement of citizens who need access to mail ballots in order to vote. The balance of harms and public interest warrants a TRO. Fish v. Kobach, 840 F.3d 710, 752 (10th Cir. 2016) ("[T]here can be no 'do-over' or redress of a denial of the right to vote after an election[.]").

## III. Conclusion and Order

For the foregoing reasons, Plaintiffs' emergency motions[19] for a temporary restraining order are GRANTED pursuant to Federal Rule of Civil Procedure 65(b) as follows.

(1) The court grants an emergency fourteen-day stay of the implementation or enforcement of the following sections of the Final Rule as to elections occurring before or on November 3, 2026. USPS Defendants[20] may take no further preparatory steps or implement in any way for elections occurring before or on November 3, 2026:

[19] Mot. for a TRO, Emergency Stay, and Expedited Prelim. Inj. and Stay, California II, No. 1:26-cv-13917 [Doc. No. 3]; Emergency Mot. for TRO and Prelim. Inj., LVWM, No. 1:26-cv-11549 [Doc. No. 206].

[20] USPS Defendants are the USPS, the Postmaster General, the Deputy Postmaster General, and the members and Chair of the USPS Board of Governors. See Compl., California II, No. 1:26-cv-13917 [Doc. No. 1]; Compl., Suppl. Compl., LWVM, No. 1:26-cv-11549 [Doc. Nos. 1, 205].

a. DMM Section 705.24.3.1, to the extent that the section makes Ballot Mail Envelope Standards mandatory;

b. DMM Section 705.24.3.2, to the extent that the section makes Return Federal Ballot Mail Envelope Standards mandatory;

c. DMM Section 705.24.4.1; to the extent that the section makes Postal Service Federal Ballot Mail Portal registration mandatory;

d. DMM Section 705.24.4.2; to the extent that the section makes voter enrollment in the Postal Service Federal Ballot Mail Portal mandatory

e. DMM Section 705.24.5.1;

f. The first two sentences of DMM Section 705.24.5.2; and

g. DMM Section 705.24.5.3(a), (b), (c).

(2) Defendants' counsel must, within 24 hours after receiving service of this Order: (i) provide written notice of this Order to the USPS Defendants and their employees; (ii) notify all such recipients that they are required to comply with this Order, under penalty of contempt; and (iii) file on the docket a copy of the notice and/or communications referred to in (i)-(ii).

Plaintiffs' motions for preliminary injunctions remain under advisement.

IT IS SO ORDERED.

August 27, 2026

/s/ Indira Talwani
United States District Judge