**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

LEAGUE OF WOMEN VOTERS OF MASSACHUSETTS, *et al.*,

*Plaintiffs*,

v.

DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*,

*Defendants*,

STATE OF MISSOURI, STATE OF ALABAMA, STATE OF FLORIDA, STATE OF INDIANA, STATE OF KANSAS, STATE OF LOUISIANA, STATE OF MONTANA, STATE OF NEBRASKA, STATE OF OKLAHOMA, STATE OF SOUTH CAROLINA, and STATE OF SOUTH DAKOTA,

*Intervener Defendants*.

Case No. 1:26-cv-11549-IT

**MEMORANDUM IN SUPPORT OF INTERVENER STATES' MOTION FOR STAY PENDING APPEAL**

As directed in Fed. R. App. P. 8(a)(1)(C), Intervener States move this Court for a stay of its order granting a temporary restraining order ("TRO") to give the First Circuit time to consider the Intervener States' forthcoming motion for a stay in that court.

**ARGUMENT**

In deciding a motion for a stay pending appeal, this Court considers "four factors: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 434 (2009). Here all of these factors are met.

## I. Intervener States are likely to succeed on the merits.

### A. The Rule is lawful.

With respect, this Court's determination that Plaintiffs are likely to succeed on the merits was incorrect. This Court's merits determination centered on the Elections Clause, *see* Doc. 218 at 7–8, but the federal government's authority to enact the Rule derives from a federal statute consistent with the Elections Clause and the Postal Clause. To wit, USPS has a general power to "to adopt, amend, and repeal such rules and regulations, not inconsistent with this title, as may be necessary in the execution of its functions under this title and such other functions as may be assigned to the Postal Service under any provisions of law outside of this title." 39 U.S.C.A. § 401(2). The statute also broadly gives USPS "all other powers incidental, necessary, or appropriate to the carrying on of its functions or the exercise of its specific powers." § 401(10). The statute recognizes that USPS—rather than federal courts—is most likely to have the expertise to decide how mail should be processed and delivered. *See, e.g.*, *Rockville Reminder Inc. v. USPS*, 480 F.2 4, 7 (2d Cir. 1973) (applying deferential standard of review to USPS regulations under § 401(2)).

The Supreme Court has directly addressed the scope of § 401(2), stating that USPS is "broadly empowered" to adopt rules and regulations designed to accomplish an efficient system of collection, sorting, and delivery of mail nationwide. *U.S. Postal Serv. v. Council of Greenburgh Civic Ass'ns*, 453 U.S. 114, 123 (1981). This interpretation of § 401(2) shows that USPS's authority is not confined to only those regulations that are strictly or literally indispensable. *Contra* Doc. 207 at 18.

The D.C. Circuit has similarly recognized the breadth of this authority. In *Associated Third Class Mail Users v. U.S. Postal Service*, the court held that the Postal Service is authorized under § 401(2) to promulgate regulations to further the objectives of Title 39, and that a fair reading of

the rulemaking authority of 39 U.S.C. § 401(2) extends even to provisions of law that are not literally part of Title 39, so long as their purpose is properly connected to that title. 600 F.2d 824, 826 n.5 (D.C. Cir. 1979).

More specifically, USPS's powers also include the ability "to provide for the collection, handling, transportation, delivery, forwarding, returning, and holding of mail, and for the disposition of undeliverable mail," § 404(a)(1), and "to investigate postal offenses and civil matters relating to the Postal Service," § 404(a)(6). By the same token, Title 39 states that "nonmailable matter which reaches the office of delivery, *or which may be seized or detained for violation of law*, shall be disposed of as the Postal Service shall direct." 39 U.S.C.A. § 3001(b) (emphasis added). Both USPS's general and specific powers show that its delegated regulatory authority includes reasonable measures to prevent fraudulent voting through the mail.

The breadth of Title 39 also recognizes the need for USPS to address a wide variety of postal-related issues and promulgate regulations to resolve them. *See, e.g.*, *U.S. Postal Serv. v. Brennan*, 574 F.2d 712, 716 (2d Cir. 1978) ("Broad rule-making authority must be allowed a federal agency such as the postal service whose activities are national in scope and are geared to meet varied conditions and circumstances throughout the country.") (citation omitted). For this reason, there is a long history of USPS imposing conditions on sending various types of mail, even those not specifically enumerated in Title 39. *See, e.g.*, *Cremated Remains Packaging Requirements*, 90 Fed. Reg. 9843 (Feb. 19, 2025) (cremated human and animal remains must be transported through specific types of USPS-provided boxes, and must be trackable via barcode); *Restricting the Mailing of Replica or Inert Explosives*, 75 Fed. Reg. 282 (Jan. 5, 2010) (replica explosives must be mailed in certain ways, including in-person presentation to a retail counter and shipment via Registered Mail). That is precisely what USPS is doing here. This is not a case

where USPS has invoked general rulemaking power to circumvent specific statutory requirements, a narrow circumstance where courts have found postal regulations to be inconsistent with Title 39. *See, e.g.*, *Aid Ass'n for Lutherans v. U.S. Postal Serv.*, 321 F.3d 1166, 1176 (D.C. Cir. 2003) (affirming injunction against regulation concerning the "type of insurance" offered where statute permits the agency to regulate solely with respect to "coverage provided by [an insurance] policy."); *New York v. Trump*, 490 F. Supp. 3d 225, 241 (D.D.C. 2020) (issuing preliminary injunctions against USPS policies that restricted overtime and eliminated late and extra mail delivery trips without first obtaining statutorily-required PRC review).

**B. This Court's remedy is overbroad.**

This Court's remedy barring implementation or enforcement of the Rule is also overbroad and likely to be narrowed on appeal. The Court's TRO enjoins the USPS Defendants from implementing the Rule nationwide. Thus, it is "broader than necessary to provide complete relief to each plaintiff with standing to sue." *Trump v. CASA, Inc.*, 606 U.S. 831, 861 (2025). This Court has previously recognized that its injunction must be tailored to the parties before the Court, *see* Order at 34, *California v. Trump*, No. 1:26-cv-11581-IT (D. Mass. June 25, 2026), Doc. 191 (enjoining implementation of Executive Order only "in the Plaintiff States"), but here, the Court enjoined the entire Rule nationwide. Thus, the relief reaches parties not before the Court, and even worse, States, like Intervener States, who wish to *voluntarily* use the Rule's improved ballot security provisions in their upcoming elections. *See* Ex. A, Hoskins Decl. ¶ 4–9 (stating that Missouri could implement the Rule's reforms and would like the option to use the Rule for the upcoming 2026 General Election).

At a minimum, the Court should clarify that its injunction does not bar States from voluntarily complying with the Rule.

**C. Plaintiffs' counterarguments are wrong.**

**1. The TRO is effectively a preliminary injunction so Intervener State Defendants can appeal.**

Plaintiffs will likely argue that the Federal and State Defendants cannot appeal a temporary restraining order, but that is wrong under this case's unique circumstances.

"[T]he Courts of Appeals generally lack appellate jurisdiction over appeals from TROs." *Dept. of Educ. v. California*, 604 U.S. 650, 651 (2025) (per curiam). But the Supreme Court has recognized an exception for cases where a TRO "carries many of the hallmarks of a preliminary injunction." *Id.*

That is true here—as the District Court's TRO has the same practical effect as a TRO in this case. *Cf. id.* Elections are time-sensitive affairs. At some point, "[w]hen an election is close at hand, the rules of the road must be clear and settled." *Merrill v. Milligan*, 142 S. Ct. 879, 880–81 (2022) (Kavanaugh, J., concurring in grant of stay). That principle is relevant here because the Rule imposes requirements on States that wish to utilize the federal mails for sending mail ballots to voters. Although the federal government is not barred (like courts) from changing election rules late-in-the-day, *see Allen v. Milligan*, 146 S.Ct. 1377, 1381 (2026), even political actors cannot—as a practical matter—put certain genies back in the bottle as an election gets closer.

Here, the Rule requires States that wish to utilize the federal mail to send mail-in ballots to voters to comply with certain conditions. Soon, States will start sending out ballots. As far as Intervener States are aware, North Carolina is the first State that will send out mail ballots—on September 4. *See* N.C. Gen. Stat. § 163-227.10(a) (requiring absentee ballots to be sent "60 days prior to the statewide general election in even-numbered years"). Public reporting suggests North Carolina was already in the process of complying with the Rule before the Court issued its TRO. *See, e.g.*, Jen Rice, *Facing Time Crunch*, *North Carolina takes first step to comply with new USPS*

*mail rule while fighting it*, Democracy Docket (Aug. 27, 2026).[1] But if the Court's TRO stands, once September 4 passes, North Carolina will be in at least partial non-compliance with the Rule for the 2026 General Election.

For Intervener States, the 14-day limit on the Court's TRO will run out the clock on being able to *voluntarily* follow (and benefit from) the Rule for the 2026 general elections. Alabama, for example, starts sending mail ballots out on September 9. *See* Ala. Code § 17-11-12. If the Court's TRO stands for 14 days, Alabama will be forced to start sending out ballots that do not comply with the Rule—thus wasting an opportunity to bolster the integrity of its elections.

Therefore, the Court's TRO functions like a preliminary injunction due to the fact that the parties' rights will be—at least in part—conclusively settled within the next 14 days. Therefore, Intervener States can appeal this Court's order. *See Dep't of Educ. v. California*, 604 U.S. at 651.

**2. The Elections Clause does not support Plaintiffs.**

The Elections Clause has no relevance. The Elections Clause specifically empowers Congress to set rules for federal elections. U.S. Const. art. I, § 4. The Constitution also specifically authorizes Congress to set rules for a federal postal service. U.S. Const. art. I, § 8. As discussed above, Congress delegated broad authority to USPS to place conditions on the sending of mail. Under plain statutory text, that broad authority extends to election mail—just like any other type of mail. This Rule is plainly consistent with Congress's authority under the Postal Clause.

**3. This is not a major question.**

The major questions doctrine cannot be used to artificially narrow the construction of 39 U.S.C. § 401(2). Plaintiffs' invocation of the major questions doctrine fails because they frame the Rule at too high level of generality using hyperbole and misrepresenting the Rule as regulating

---

[1] https://www.democracydocket.com/news-alerts/facing-time-crunch-north-carolina-takes-first-step-to-comply-with-new-usps-mail-voting-rule-while-fighting-it/

voter eligibility. USPS merely wants States to provide a list of individuals the States deem eligible to vote by mail—so that USPS can assign security barcodes to assist in securely transmitting election mail. 91 Fed. Reg. at 54,969. The States surely already keep lists of individuals they deem eligible to vote by mail, as Plaintiff States acknowledged during a prior hearing before this Court. *See* Hr'g Tr. 85:6–20 (June 2, 2026), Doc. 155. For example, in California ballots are automatically sent to "every registered voter." Cal. Elec. Code § 3000.5(a). Requiring States to provide an already-existing list of individuals eligible to vote by mail, and using unique barcodes for each voter, is not an "unheralded power representing a transformative expansion of [USPS's] regulatory authority." *West Virginia v. EPA*, 597 U.S. 697, 724 (2022) (internal quotations and citation omitted). It is a simply a new instantiation of authority long exercised by USPS. *See Council of Greenburgh Civic Ass'ns*, 453 U.S. at 123.

Nor are the markers deemed relevant by the Supreme Court in assessing major questions doctrine cases relevant here. The Supreme Court has previously suggested that a rule implicates a major question if it imposes an "economic impact" of around $50 billion. *See Alabama Ass'n of Realtors v. HHS*, 594 U.S. 758, 664 (2021) (per curiam). Plaintiffs' alleged compliance costs are *de minimis* by comparison. Doc. 207 at 22–23. Nor are there outlandish implications to USPS's regulatory theory. *See West Virginia*, 597 U.S. at 722. Whereas the EPA's regulatory theory in *West Virginia* would have given it the power to shut down coal and natural-gas-powered plants around the country, *see id.* at 722, USPS's theory is merely that it can impose conditions on the sending of mail—a reality anyone who has ever bought a postage stamp understands. And while mail voting—as a general matter—is controversial, *cf. West Virginia*, 597 U.S. at 532, USPS is *not* claiming that it could simply bar States from sending election mail. USPS's regulation is more akin to EPA trying to limit carbon emissions by mandating the use of new technology for

smokestacks—something the Supreme Court agreed would not be a major question even though it related to a nationwide debate about climate change. *See West Virginia*, 597 U.S. at 725.

In sum, Intervener States are likely to succeed on the merits, and this Court should stay its TRO.

**II. The other stay factors are met.**

**A. Intervener States will be irreparably injured absent a stay.**

Additionally, the States "indisputably ha[ve] a compelling interest in preserving the integrity of [their] election process[es]." *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006) (per curiam) (citation omitted). This election integrity interest extends to "the orderly administration of elections and in vigilantly reducing opportunities for voting fraud." *Tex. LULAC v. Hughs*, 978 F.3d 136, 146 (5th Cir. 2020) (citing *Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181, 195–96 (2008)). And this interest is "acute when it comes to mail-in ballots." *Id.* This Rule directly addresses this "acute" interest by improving mail-in and absentee voting security in Intervener States. Ex. A, Hoskins Decl. ¶ 6. If this Rule is enjoined, Intervener States who wish to benefit from the Rule's enhanced ballot transmission security provisions, like Intervener States, Ex. A, Hoskins Decl. ¶ 9, will be directly and irreparably harmed through the loss of election integrity measures they lack the ability to implement on their own.

**B. The public interest is served by a lawful Rule, which also means that a Stay will not substantially injure Plaintiffs.**

The third and fourth stay factors largely turn on the merits of the Rule. *See Nken*, 556 U.S. at 435 (balance of the equities and public interest "merge" when seeking relief against the government). As explained above, the Rule is lawful. It is "always" in the public interest to enforce the law, *id.*, and a party cannot be harmed through the enforcement of a valid law, *see*

*Tenn. Elec. Power Co. v. Tenn. Valley Authority*, 306 U.S. 118, 140 (1939). Therefore, Intervener States satisfy the remaining stay factors, and this Court should stay its TRO.

* * *

For those reasons, Intervener States respectfully request that the Court enter a temporary administrative stay of its temporary restraining order so that the Intervener States may promptly seek an appeal from the First Circuit.

Date: August 28, 2026

Respectfully submitted,

**STEVE MARSHALL**
ALABAMA ATTORNEY GENERAL

*/s/ A. Barrett Bowdre*
A. Barrett Bowdre*
*Solicitor General*
STATE OF ALABAMA
OFFICE OF THE ATTORNEY GENERAL
501 Washington Avenue
Montgomery, Alabama 36104
Telephone: (334) 353-8892
Fax: (334) 353-8400
Barrett.Bowdre@AlabamaAG.gov

**CATHERINE L. HANAWAY**
MISSOURI ATTORNEY GENERAL

*/s/ Louis J. Capozzi III*
Louis J. Capozzi III, DC Bar No. 90018764*
*Solicitor General*
J. Michael Patton*
*Deputy Solicitor General*
Benjamin S. Gilberg*
*Deputy Solicitor General*
Missouri Attorney General's Office
815 Olive Street, Suite 200
St. Louis, MO 63101
Tel. (573) 645-9662
Fax (573) 751-0774
Louis.Capozzi@ago.mo.gov
Michael.Patton@ago.mo.gov
Benjamin.Gilberg@ago.mo.gov

**JAMES UTHMEIER**
FLORIDA ATTORNEY GENERAL

*/s/ David M.S. Dewhirst*
David M.S. Dewhirst*
*Solicitor General*
Jason J. Muehlhoff*
*Chief Deputy Solicitor General*
Office of the Attorney General
PL-01, The Capitol
Tallahassee, FL 32399-1050
(850) 414-3300
david.dewhirst@myfloridalegal.com

**THEODORE E. ROKITA**
INDIANA ATTORNEY GENERAL

/s/ *James A. Barta*
James. A Barta, DC Bar No. 1032613*
*Solicitor General*
Office of the Indiana Attorney General
302 W. Washington Street
IGC South, Fifth Floor
Indianapolis, IN 46204-2770
Phone: (317) 232-0709
Fax: (317) 232-7979
James.Barta@atg.in.gov

**KRIS W. KOBACH**
KANSAS ATTORNEY GENERAL

*/s/ James R. Rodriguez*
James R. Rodriguez*
*Assistant Attorney General*
Kansas Office of the Attorney General
Topeka, Kansas 66612
Phone: (785) 368-8197
jay.rodriguez@ag.ks.gov

**ELIZABETH B. MURRILL**
LOUISIANA ATTORNEY GENERAL

*/s/ J. Benjamin Aguiñaga*
J. Benjamin Aguiñaga*
*Solicitor General*
Louisiana Department of Justice
1885 N. Third St.
Baton Rouge, LA 70802
(225) 506-3746
AguinagaB@ag.louisiana.gov

**AUSTIN KNUDSEN**
MONTANA ATTORNEY GENERAL

*/s/ Christian B. Corrigan*
Christian B. Corrigan*
*Solicitor General*
Montana Department of Justice
215 N. Sanders Helena, MT 59601
(406) 444-2707 (o)
Christian.Corrigan@mt.gov

**MICHAEL T. HILGERS**
NEBRASKA ATTORNEY GENERAL

/s/ *Cody S. Barnett*
Cody S. Barnett*
*Solicitor General*
Nebraska Department of Justice
1445 K Street, Room 2115
Lincoln, Nebraska 68508
Tel.: (402) 471-2683
Fax: (402) 471-3297
cody.barnett@nebraska.gov

**GENTER DRUMMOND**
OKLAHOMA ATTORNEY GENERAL

*/s/ Garry M. Gaskins, II*
Garry M. Gaskins, II*
*Solicitor General*
Office of the Attorney General of Oklahoma
313 NE Twenty-First St.
Oklahoma City, OK 73105
(405) 521-3921
garry.gaskins@oag.ok.gov

**ALAN WILSON**
SOUTH CAROLINA ATTORNEY GENERAL

*/s/ Joseph D. Spate*
Joseph D. Spate*
*Deputy Solicitor General*
1000 Assembly Street
Columbia, South Carolina 29201
Tel. (803) 734-3371
Fax (803) 734-3677
josephspate@scag.gov

**MARTY J. JACKLEY**
SOUTH DAKOTA ATTORNEY GENERAL

/s/ *Grant Flynn*
Grant Flynn*
*Assistant Attorney General*
South Dakota Office of the Attorney General
1302 East SD Highway 1889,
Suite 1
Pierre, SD 57501-8501
Telephone: (605) 773-3215
Email: grant.flynn@state.sd.us

**KEN PAXTON**
TEXAS ATTORNEY GENERAL

s/ *David Bryant*
David Bryant*
*Senior Special Counsel*
Office of the Attorney General of Texas
Special Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Tel.: (512) 463-2100
david.bryant@oag.texas.gov

/s/ *Ian D. Prior*
Ian D. Prior (Bar No. 655704)
America First Legal Foundation
611 Pennsylvania Ave S.E. No. 231
Washington, D.C. 20003
(410) 205-9681
ian.prior@aflegal.org

* *Admitted pro hac vice*

**CERTIFICATE OF SERVICE**

I certify that on August 28, 2026, the above was filed electronically through the Court's electronic filing system to be served electronically on counsel for the parties.

/s/ *Louis J. Capozzi III*

**CERTIFICATE OF CONFERRAL**

All parties conferred. Plaintiffs oppose the motions for stays from both the Federal Defendants and the State Defendants.

/s/ *Louis J. Capozzi III*