**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

LEAGUE OF WOMEN VOTERS OF MASSACHUSETTS, *et al.*,

*Plaintiffs*,

v.

DONALD J. TRUMP, in his official capacity as President of the United States, *et al.*,

*Defendants*.

Case No. 1:26-cv-11549-IT

***Leave to file granted on August 31, 2026***

**REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

## INTRODUCTION

With 64 days until election day, USPS is attempting to impose an entirely new set of disruptive requirements on how states administer mail voting—requirements Congress never authorized, the Constitution forbids, and that will lead to confusion, error, and disenfranchisement.

USPS has no authority to do this. The Supreme Court has long held that the Postal Service cannot "exclude letters" absent "some law of Congress" authorizing it. *Am. Sch. of Magnetic Healing v. McAnnulty*, 187 U.S. 94, 109 (1902). The Final Rule commands USPS to withhold ballots sent to voters unless the states use a particular envelope design and provide USPS an advance list of mail voters with information that exactly matches each ballot. Congress has not authorized either mandate; rather, it has prohibited USPS from refusing to deliver otherwise valid mail. Without Congress's express delegation of authority, the Constitution prohibits USPS's usurpation of election powers.

USPS and Intervenors minimize the Final Rule's harms by noting that states remain free to determine mail-voting eligibility. But even where a state deems a voter eligible and mails them a ballot, USPS may still refuse to deliver it unless the state pre-submitted identical voter data to USPS in the prescribed manner. This makes USPS the gatekeeper of which state-authorized mail ballots reach voters. The Rule upends state regimes for mail voting and creates chaos, directly threatening Plaintiffs' core voter-engagement activities and putting their members at substantial risk of being unable to cast mail ballots. Plaintiffs therefore face irreparable harm, and the balance of equities favors them. The Court should grant the preliminary injunction.

## ARGUMENT

### I. Plaintiffs Have Standing and Face Irreparable Harm.

The Court correctly held that Plaintiffs have standing because the Final Rule causes direct harm both to their members and to their core activities. Mem. & Ord., Dkt. 218 at 8.

*First*, the Rule will prevent Plaintiffs' members from casting mail ballots: the undisputed record shows Plaintiffs' millions of members span every state and many rely on mail voting. *See* 3d Stewart Decl. ¶¶ 3, 11, 36, 39, Dkt. 208-1; 3d Speer Decl. ¶¶ 9, 12, 35, Dkt. 208-2; 3d Nguyen Decl. ¶¶ 3–7, 13, 17, 35–36, 47, Dkt. 208-3; 3d Canavan Decl. ¶ 6, Dkt. 208-4; 3d Washington Decl. ¶¶ 12–13, 31–34, Dkt. 208-5. Plaintiffs also have identified members who need to vote by mail and now risk being unable to vote at all. *See, e.g.*, 3d Nguyen Decl. ¶¶ 33–39 (identifying college-student members who cannot vote in-person); 3d Canavan Decl. ¶¶ 24–25, 58, 59(a)–(c) (identifying members with health issues preventing them from voting in person).

This harm is not "speculative" or "generic." Intvrs. Br., Dkt. 234 at 7; Defs. Br., Dkt. 235 at 7, 15. USPS "will" refuse to transmit mail ballots that do not comply. *See* Ballot Mail for Federal Elections, 91 Fed. Reg. 54966, 54991 (§ 705.24.5.3) (Aug. 26, 2026). States and localities face a high likelihood that they cannot implement the Final Rule in whole or part for the November 2026 elections. *See, e.g.*, *California v. Trump*, No. 26-cv-13917 (D. Mass. Aug. 26, 2026), Dkt. 5 at 24–25; Pls. Br., Dkt. 207 at 13–14. In at least some of those jurisdictions, the Final Rule would direct USPS to refuse to deliver mail ballots entirely. This includes states that conduct elections almost entirely by mail where the League of Women Voters (LWV) has many members. Ex. 1, Fourth Decl. of Celina W. Stewart (4th Stewart Decl.) ¶¶ 6–8.[1] Even states that attempt to comply will have some voters not receive ballots because of "errors and omissions" in the USPS state-specific lists. *California*, Dkt. 5 at 24; Pls. Br. 14–15. Because Plaintiffs' members reside in every state—including in jurisdictions that, despite their best efforts, cannot comply or that will make material errors or omissions, Pls. Br. 19—they face an imminent risk that USPS will refuse to transmit their

[1] Exhibit is attached to the concurrently filed Declaration of Sophia Lin Lakin.

ballots. *See*, *e.g.*, *California*, Dkt. 5 at 19–23 (cataloguing jurisdictions' lack of time, resources, and technical expertise to comply); *see also* 4th Stewart Decl. ¶¶ 6, 9 (explaining that based on their years of experience and the information they recently learned about Harris County, Texas, the LWV understands that last-minute process changes under the Final Rule will create a significant risk that some eligible voters, including some of their members, will be disenfranchised). As a result, this Court rightly held that Plaintiff organizations "likely . . . have standing based on the significant risk of their members' disenfranchisement." Dkt. 218 at 7.

*Second*, "the late-adopted rule" directly injures Plaintiffs by "causing substantial confusion among their members (whom the Plaintiff Organizations are trying to educate about their voting rights)." Dkt. 218 at 7; *see* Pls. Br. 15–18. Neither *Trump v. California*, No. 26A124, 2026 WL 2473573 (U.S. Aug. 24, 2026) (per curiam), nor *DSCC v. Trump*, No. 26-5193, 2026 WL 2168617 (D.C. Cir. July 28, 2026), undermines this Court's finding to that effect. Dkt. 218 at 8. Both decisions preceded the Final Rule. *Trump v. California* even rested its standing analysis on the absence of such a rule, emphasizing that the Order was "not a proposed rule, let alone a final rule." 2026 WL 2473573, at *4. Now that the Final Rule has been issued, there can be no doubt that its issuance has caused and will cause concrete and particularized injuries to Plaintiffs.

Intervenors are also wrong (at 6–7) that these harms are not sufficiently concrete under *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021), mislabeling them as non-cognizable forms of "resource-diversion." As Plaintiffs explained (at 15–16), civic organizations suffer cognizable Article III injury when government action interferes with core voter-engagement work—including by creating confusion and uncertainty that frustrate those efforts. *See* Mem. & Ord., Dkt. 175 at 6–9. Here, the uncertainty caused by the Final Rule about whose mail ballots will be transmitted directly interferes with Plaintiffs' ongoing efforts to inform voters about how to cast those ballots.

That is a concrete injury regardless of how one characterizes the confusion and fear that leads to it. *See, e.g.*, *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 9 (D.C. Cir. 2016).

## II. Plaintiffs Are Likely to Succeed on the Merits of Their Claims that the Final Rule is Ultra Vires and Unconstitutional.

*The Final Rule is ultra vires.* Congress never authorized USPS to exercise the mail-ballot gatekeeping role that it assigned itself. USPS (at 9–10) and Intervenors (at 9) rely on USPS's broad authority over the mails. But those provisions authorize USPS to execute its statutorily assigned functions and to provide for the "collection, handling, transportation, delivery, forwarding, returning, and holding of mail" and the investigation of "postal offenses." 39 U.S.C. §§ 404(a)(1), (6); *id.* § 401(2). They do not authorize USPS to refuse ballot mail when its intended recipient is not enrolled on a USPS-administered list. General authority to carry out USPS's postal functions does not create a new function Congress never assigned: "[The] right to exclude letters, or to refuse to permit their delivery to persons addressed, must depend upon some law of Congress." *McAnnulty*, 187 U.S. at 109. USPS identifies no such law.

To the contrary, Congress has expressly identified categories of nonmailable matter in 39 U.S.C. §§ 3001–3018, and mail ballots that do not comply with the Rule's regulations are not on that list. USPS (at 9–12) and Intervenors (at 2–3) invoke USPS's authority to regulate particular categories of mail. But their examples turn on characteristics of the mail piece, and—more importantly—are tethered to specific congressional authorizations. Rules governing cremated remains and replica explosives address postal handling concerns; *USPS v. Council of Greenburgh Civic Associations*, 453 U.S. 114 (1981), concerned a statute restricting unstamped matter placed in mailboxes; and *Associated Third Class Mail Users v. USPS*, 600 F.2d 824 (D.C. Cir. 1979), concerned implementation of a statute governing "letters and packets." Here, the Rule is driven by supposed "election integrity," 91 Fed. Reg. at 54966, not "postal integrity" concerns, and

conditions ballot acceptance on states providing voter-specific information that exactly matches each ballot. *McAnnulty* requires congressional authority for USPS's actions. USPS cites none.

USPS offers four counterarguments; none is persuasive. *First*, they claim (at 15) that the Final Rule does not "create a new category of non-mailable matter," but simply "place[s] certain conditions on acceptance of federal ballot mailings." They suggest USPS "could refuse to mail a heavy package if the customer failed to pay sufficient postage, but that does not mean that heavy packages are nonmailable." *Id.* Not so. Congress authorized USPS to prescribe "the amount of postage and the manner in which it is to be paid." 39 U.S.C. § 404(a)(2); *see also id.* § 404(b) (authorizing USPS to establish classes of mail; rates of postage and fees). Congress has also specified that matter exceeding applicable size and weight limits for a class of mail is nonmailable. *Id.* § 3001(c)(1). Thus, USPS may condition a package's acceptance on requirements that Congress authorized. But Congress never authorized USPS to condition acceptance of ballot mail on the submission of voter-specific information or compliance with election-specific envelope designs.

*Second*, USPS argues (at 15) that the Final Rule is lawful even if it is a nonmailability provision, because the categories of nonmailable matter in 39 U.S.C. §§ 3001–3018 are not "the *exclusive* categories of 'nonmailable matter,'" and USPS may use its general rulemaking authority to create new categories without congressional authorization. The Supreme Court, however, rejects such unbounded executive action "[a]gainst this backdrop of clear and limited delegations," particularly where "the purported delegation involves" a "core congressional power"—such as postal and federal-election regulation. *Learning Res., Inc. v. Trump*, 607 U.S. 229, 243–44 (2026).

Defendants' reading also flouts two basic canons of statutory interpretation. First, Congress's specific provisions governing nonmailable matter control over the general rulemaking authorities in 39 U.S.C. §§ 401 and 404. *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566

U.S. 639, 645 (2012). Second, Congress's "established series" of provisions identifying nonmailable matter "necessarily bespeaks a negative implication" as to categories Congress omitted. *Esteras v. United States*, 606 U.S. 185, 195 (2025) (internal quotation marks omitted). And the Final Rule never itself claims authority to create new categories of nonmailable matter, so Defendants cannot invoke that rationale now. *SEC v. Chenery Corp.*, 318 U.S. 80, 95 (1943).

*Third*, USPS suggests (at 12) that the Final Rule is lawful because it is no different from other "election-mail-specific rules." They point (at 4, 12) to the "Kit 600 [Rule]" concerning election mail prioritization. But that rule is *optional*, merely offering a set of nonbinding recommendations and guidance for election mail. *See* 91 Fed. Reg. at 54991 (§ 705.24.5.3). The Final Rule is different: it imposes on every state *mandatory* requirements that *interfere* with election mail, directly conditioning USPS's acceptance of ballots on compliance with requirements that states have not otherwise chosen to adopt. It is thus materially different from USPS's prior actions regarding election mail, such as issuing "non-binding," efficiency-focused guidance recommending such measures as election-mail logos, tracking technology, and envelope designs compatible with sorting equipment. Mem. & Ord., Dkt. 183 at 3.

*Finally*, USPS's contention (at 8–9) that Plaintiffs must satisfy the heightened standard described in *Nuclear Regulatory Commission v. Texas*, 605 U.S. 665, 681–82 (2025) (*NRC*), is incorrect. That standard does not apply where, as here, Congress provided no alternative review regime; rather, courts simply exercise their equitable powers to determine whether the challenged conduct is authorized by law. *See, e.g.*, *McAnnulty*, 187 U.S. 94 (reviewing, in equity, a challenge to ultra vires postal action). Indeed, last Term, the Supreme Court twice reviewed statutory ultra vires claims without applying *NRC*, asking only whether the challenged action was authorized by law. *See Trump v. Cook*, 146 S. Ct. 2234, 2251 n.2 (2026); *Learning Res., Inc.*, 607 U.S. at 240.

Regardless, Plaintiffs satisfy *NRC* because the Rule plainly exceeds any powers delegated to USPS and is contrary to the universal-service command in 39 U.S.C. § 403(a) and the nonmailability provisions in 39 U.S.C. §§ 3001–3018.

*The Final Rule is unconstitutional.* The Rule also violates the constitutional separation of powers by seizing powers over the manner of federal elections, which the Elections Clause assigns to Congress and the states.

USPS contends (at 14) that Plaintiffs' constitutional claims collapse into their statutory claims because both turn on whether Congress authorized the Final Rule. Not so. Plaintiffs' separation-of-powers claim challenges USPS's intrusion into "the domain of regulating federal election procedure, which the Elections Clause reserves for the States and Congress alone." *LULAC v. Exec. Off. of the President*, 808 F. Supp. 3d 29, 72 (D.D.C. 2025). This exclusive reservation of election regulation powers under the Elections Clause provides an independent ground for invalidating federal executive action relating to elections and requires an especially clear congressional delegation of authority to overcome. But the federal statutes governing elections—including the NVRA and HAVA—"assign[] no relevant role" to USPS. *Id.*

Plaintiffs also challenge USPS's intrusion into the *states*' authority by screening voters for eligibility to receive a mail ballot. The argument that the Rule does not regulate elections because states retain authority over voter rolls and who may vote blinks reality. The issue is not whether states may still determine eligibility as a legal matter; it is that USPS conditions ballot carriage on states' redesign of ballot envelopes, creation of bar codes, and pre-submission of error-free voter information, and will block transmission of ballots to voters whom the states have deemed eligible if they do not comply with the Rule. This works in every practical sense as a regulation of the states' administration of elections. Nothing in the Constitution gives USPS that power.

## III. The Equities and Public Interest Strongly Favor Plaintiffs.

On balance, the equities favor Plaintiffs. *First*, Plaintiffs have shown irreparable harm to their members if the Rule is implemented, given the high likelihood it will impede voters' receipt of mail ballots. Voting by mail is a critical feature of U.S. elections, with USPS delivering over 99 million ballots in the November 2024 elections alone.[2] But USPS will refuse to transmit ballots to eligible voters if election officials cannot meet the rushed timeframe to design new ballot envelopes, receive USPS approval of those envelopes, develop the Absentee and Mail-In Participation Lists, and submit those lists into the USPS portal—not to mention the likelihood of technical errors during the portal's hurried rollout. As a result, certain eligible voters will not receive their ballots and others will forgo requesting one out of justified fear of not receiving it. Near-certain disruption of the voting process is contrary to the public interest, which "is served by protecting 'the fundamental political right to vote.'" *League of Women Voters of N.H. v. Kramer*, No. 24-cv-73, 2025 WL 3260024, *5 (D.N.H. Oct. 17, 2025) (quoting *Obama for Am. v. Husted*, 697 F.3d 423, 436–37 (6th Cir. 2012)); *see also Mancuso v. Taft*, 476 F.2d 187, 193 (1st Cir. 1973) (recognizing the "public interest in an unhampered, unconditioned vote").

*Second*, an injunction preserves Plaintiffs' ability as nonpartisan voter-service organizations to carry out their core missions. USPS published the Final Rule, which significantly changes how mail voting functions, less than 70 days before election day. Plaintiffs are in a crucial period, educating the many eligible voters who are requesting mail ballots or deciding whether to request one. They lack sufficient time to complete all the work necessary to be prepared for the

[2] USPS, *U.S. Postal Service Releases 2024 Post-Election Analysis Report Detailing the Successful Efforts Taken to Deliver the Nation's Election Mail Securely and Effectively* (Dec. 2, 2024), https://about.usps.com/newsroom/national-releases/2024/1202-usps-releases-2024-post-election-analysis-report.htm.

Final Rule's implementation, and if the Rule is implemented, would be "unable to assist many . . . voters through . . . voter outreach efforts," *N.H. Youth Movement v. Scanlan*, 830 F. Supp. 3d 199, 213–14 (D.N.H. 2026); *see also LULAC v. Exec. Off. of the President*, 780 F. Supp. 3d 135, 189 (D.D.C. 2025) (harming both Plaintiffs and the public). Without an injunction, Plaintiffs will have to dedicate significant resources to amending materials and undertaking mass outreach campaigns to address confusion about mail voting created by the Final Rule—all at the expense of typical but time-sensitive election-year work like registering voters and providing information on how to vote.

*Third*, the public interest is not served by "the perpetuation of unlawful agency action." *Somerville Pub. Schs. v. McMahon*, 139 F.4th 63, 76 (1st Cir. 2025) (quoting *Newby*, 838 F.3d at 12). As a federal agency, USPS has no "interest in enforcing a regulation that violates federal law." *Louisiana by & through Murrill v. FDA*, 175 F.4th 310, 322 (5th Cir. 2026). USPS argues (at 21–22) that USPS faces harm, pointing to "the interests furthered by the Final Rule," and putting forward broad claims about a duty "to ensure the faithful execution of federal law." But USPS does not cite, let alone support with evidence, how the Rule would stop any unlawful practices. Indeed, "[t]he record continues to lack any evidence regarding fraudulent absentee or mail-in voting," Dkt. 218 at 10, and USPS's "generalized worries . . . do not amount to irreparable harm." *KalshiEX LLC v. Commodity Futures Trading Comm'n*, 119 F.4th 58, 67 (D.C. Cir. 2024).

Intervenors claim (at 18) irreparable harm from "the loss of election integrity measures," but do not explain how preventing USPS from seizing their own ballots—which the states themselves have deemed eligible and mailed—serves those interests. This "speculative and conclusory statement" does not suffice. *New York v. Trump*, 133 F.4th 51, 72 (1st Cir. 2025).

This Court rightly concluded that "USPS's interest in correcting an unsubstantiated problem through likely unconstitutional means is dwarfed by the overwhelming risk of pervasive

disenfranchisement of citizens who need access to mail ballots in order to vote." Dkt. 218 at 10. The equities and the public interest favor protecting "an unhampered, unconditioned vote," *Mancuso*, 476 F.2d at 193, through the issuance of an injunction.

**IV. Plaintiffs' Requested Relief is Proper.**

Plaintiffs request a preliminary injunction barring USPS from enforcing the Final Rule—including, to the extent the Court agrees USPS lacks authority to screen ballot mail against a Rule-mandated list of voters, barring USPS from collecting those lists through the USPS portal. Intervenors argue (at 19) that states should be permitted to comply with the Final Rule voluntarily, but the requested injunction runs only against USPS. No state needs the Final Rule to format its own ballot envelopes and nothing in an injunction against USPS enforcement would prevent a state from voluntarily conforming its election materials to the Rule's specifications, subject to state law and any other legal requirements. Intervenors seek not the freedom to comply, but a federal program to comply with—but states' wishes cannot save a program that lacks congressional authorization. *See McAnnulty*, 187 U.S. at 108.

At a minimum, the Court should enjoin the Rule's mandatory operations: USPS's rejection and return of ballot mail for noncompliance, 91 Fed. Reg. at 54991 (§§ 705.24.5.1, 705.24.5.2 (first two sentences), 705.24.5.3(a)–(c)), with no exception for opt-in states. Congress did not authorize USPS to reject ballot mail and a state's decision to opt in does not change that or lessen the injury to voters whose ballots USPS refuses.

**CONCLUSION**

Plaintiffs respectfully request that the Court grant the preliminary injunction.

Dated: August 31, 2026

Respectfully submitted,

/s/ Sophia Lin Lakin
Sophia Lin Lakin*
Theresa J. Lee*
Davin Rosborough*
Ethan Herenstein*
Jonathan Topaz*
Ming Cheung*
William Hughes*
Clayton Pierce*
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2500
slakin@aclu.org
tlee@aclu.org
drosborough@aclu.org
eherenstein@aclu.org
jtopaz@aclu.org
mcheung@aclu.org
whughes@aclu.org
cpierce@aclu.org

Sarah Brannon*
Adriel I. Cepeda Derieux*
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
915 15th Street NW
Washington, DC 20005
(202) 457-0800
sbrannon@aclu.org
acepedaderieux@aclu.org

Leah C. Aden*
Brenda Wright*
John S. Cusick*
NAACP LEGAL DEFENSE & EDUCATIONAL FUND, INC.
40 Rector Street, 5th Floor
New York, NY 10006
(212) 965-2200
laden@naacpldf.org
bwright@naacpldf.org
jcusick@naacpldf.org

Jessie J. Rossman (BBO #670685)
Suzanne Schlossberg (BBO #703914)
AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF MASSACHUSETTS, INC.
One Center Plaza, Suite 850
Boston, MA 02108
(617) 482-3170
jrossman@aclum.org
sschlossberg@aclum.org

Eliza Sweren-Becker*
Wendy Weiser*
Andrew B. Garber*
BRENNAN CENTER FOR JUSTICE AT NYU SCHOOL OF LAW
120 Broadway, Suite 1750
New York, NY 10271
(646) 292-8310
sweren-beckere@brennan.law.nyu.edu
weiserw@brennan.law.nyu.edu
garbera@brennan.law.nyu.edu

Justin Lam*
BRENNAN CENTER FOR JUSTICE AT NYU SCHOOL OF LAW
777 6th Street NW, Suite 1100
Washington, DC 20001
(202) 249-7190
lamju@brennan.law.nyu.edu

Niyati Shah*
Noah Baron*
Ejaz Baluch, Jr.*
ASIAN AMERICANS ADVANCING JUSTICE-AAJC
1620 L Street NW, Suite 1050
Washington, DC 20036
(202) 296-2300
nshah@advancingjustice-aajc.org
nbaron@advancingjustice-aajc.org
ebaluch@advancingjustice-aajc.org

Miranda Galindo*
Latino Justice PRLDEF
475 Riverside Drive, Suite 1901
New York, NY 10115
(212) 392-4752
mgalindo@latinojustice.org

I. Sara Rohani*
NAACP LEGAL DEFENSE &
EDUCATIONAL FUND, INC.
700 14th Street NW, Suite 600
Washington, DC 20005
(202) 682-1300
srohani@naacpldf.org

**Admitted pro hac vice*

*Counsel for Plaintiffs League of Women Voters of Massachusetts, League of Women Voters Lotte E. Scharfman Memorial Education Fund, League of Women Voters of the United States, League of Women Voters Education Fund, Association of Americans Resident Overseas, U.S. Vote Foundation, OCA-Asian Pacific American Advocates, and Delta Sigma Theta Sorority, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 31, 2026, a true copy of the above document was filed via the Court's CM/ECF system and that a copy will be sent automatically to all counsel of record.

August 31, 2026 /s/ Sophia Lin Lakin

Sophia Lin Lakin